UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 07-21162-LENARD

FIREMAN'S FUND INSURANCE COMPANY, a
foreign corporation a/s/o BASIC RESOURCES, INC.,
and GEORGE REED, INC., a foreign corporation,

　　　Plaintiff,

vs.

GERLING AMERICA INSURANCE COMPANY, a
foreign corporation,

　　　Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, FIREMAN'S FUND INSURANCE COMPANY ("FFIC") a/s/o

BASIC RESOURCES, INC. ("BASIC RESOURCES") and GEORGE REED,

INC. ("GEORGE REED") by and through their undersigned counsel, and pursuant

to the Federal Rules of Civil Procedure, as well as the additional legal authorities

cited herein, respectfully sue the defendant, GERLING AMERICA INSURANCE

COMPANY ("GERLING") and so alleges:

## PARTIES

1.　　At all times material, FFIC was and remains a foreign insurance

corporation, existing under the laws of the State of California, and registered with

the State of Florida, Department of Insurance, and is thereby authorized to conduct

business in the State of Florida.

2.      At all times material, FFIC insured BASIC RESOURCES, foreign corporation, existing under the laws of the State of California, with its principal place of business at 928 12th Street, Modesto, CA 95354 and GEORGE REED, a foreign corporation, existing under the laws of the State of California, with its principal place of business at 928 12th Street, Modesto, CA 95354, under a policy of insurance numbered S08MZX80757126 ("the FFIC Insurance Policy").

3.      FFIC is subrogated, both legally and equitably, to the interests of its insureds, BASIC RESOURCES and GEORGE REED to the extent of certain insurance payments made by FFIC to these insured's pursuant to the policy with respect to the insured's claim for property damages incurred as a direct result of an explosion of a 12,000 pound Stationary Asphalt Batch Plant (the "Plant").

4.      At all times material, GERLING was and remains a foreign insurance company, existing under the laws of the State of New York. Upon information and belief, GERLING was also, at all times material, and remains registered with the State of Florida, Department of Insurance; GERLING is thereby authorized to do business and is doing business in the State of Florida, most particularly by insuring, in Florida, GENCOR INDUSTRIES, INC. ("GENCOR") a Delaware corporation whose principal place of business and corporate headquarters are located at 5201 N. Orange Blossom Trail, Orlando, Florida 32810, per the Policy of Insurance attached hereto as Exhibit 1.

.

2

## STATEMENT OF JURISDICTION

5.    This Court has original diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332 in that this matter is a civil action between citizens of different states in which the amount in controversy exceeds \$75,000.00.

## STATEMENT OF VENUE

6.    Venue is proper in the Miami Division of the Southern District of Florida because GERLING does business in the State of Florida including the Southern District of Florida and because the Southern District is the most convenient venue for this case.

## GENERAL ALLEGATIONS

7.    On or about February 8, 2000, BASIC RESOURCES and GEORGE REED, entered into a written contract with GERLING's insured, GENCOR, for the purchase of the parts comprising the Plant which was constructed by GEORGE REED. FFIC is not suing on the underlying contract and therefore does not attach a copy.

8.    GENCOR sold the parts to BASIC RESOURCES and GEORGE REED for \$1,989,679.00, and thereafter provided technical services including "start-up" for operation of the Plant.

9.    On or about April 18, 2001, the Plant exploded, causing significant and extensive property damage and causing additional damages, including but not limited to out-of-pocket expenses, replacement costs, repair and reimbursement costs, property damages, loss of profits, and business interruption damages.

3

10.    Thereafter, BASIC RESOURCES and GEORGE REED timely presented their claim for damages to FFIC. FFIC responded by conducting an investigation of the cause of the explosion and resulting damages and determined that the claim was "covered" under the FFIC policy issued to BASIC RESOURCES. Accordingly and pursuant to the terms of the policy, FFIC paid the claim of its insured, less the deductible. By so doing, and as a matter of law and of fact, FFIC was and remains subrogated to all of the rights, demands, and claims of its insured against any and all third parties whose acts or omissions caused or contributed to the explosion and resulting damages.

11.    Thereafter, FFIC sued GENCOR in the State Court action entitled "Fireman's Fund Insurance Company, a foreign corporation, as Subrogee of (a/s/o) Basic Resources, Inc., and George Reed, Inc., a foreign corporation v. Gencor Industries, Inc., a foreign corporation" in the 9th Judicial Circuit Court in and for Orange County, Florida, Case No.: 04-CA-7746, Division 32; Complex Business litigation Court, (the "State Court Action").

12.    GERLING defended its insured, GENCOR, in the State Court Action up to and including a trial by jury. On January 26, 2007, the jury returned its verdict in favor of FFIC determining that GENCOR breached the Contract with BASIC RESOURCES/GEORGE REED and that GENCOR was negligent.

13.    On June 11 2007, the Amended Final Judgment in the State Court Action was entered against GENCOR in the sum of $1,751,913.10 (exclusive of

4

attorneys' fees and costs). A copy of the Amended Final Judgment is attached as
Exhibit 2.

14.    GERLING's Policy of Insurance, pursuant to which GERLING
defended GENCOR in the State Court Action, provides coverage for the FFIC
claim for damages as particularly set forth in the Amended Final Judgment,
including FFIC's attorney's fees and costs. GERLING, however, has denied
FFIC's claims for such coverage.

15.    In its capacity as a Judgment Creditor in the State Court Action,
FFIC is an intended third-party beneficiary under GERLING's Policy of
Insurance.

16.    FFIC has performed all conditions precedent to bringing this action
or such performance of conditions precedent have been waived.

17.    FFIC has retained undersigned counsel and has agreed to pay
counsel a reasonable fee for prosecuting this action.

## COUNT I: DECLARATORY RELIEF

18.    FFIC realleges Paragraphs 1-17 as if fully set forth herein.

19.    This is a cause of action for Declaratory Relief brought pursuant to
Sec. 86.04, Fla.Stat., with respect to GERLING's Policy of Commercial General
Liability Insurance, pursuant to which GERLING provided GENCOR a defense in
the State Court Action, and under which GERLING has failed and refused to
satisfy the Amended Final Judgment entered in favor of FFIC.

5

20. This cause of action presents no question/issues of fact to be resolved but rather seeks the Court's interpretations/construction of GERLING's Policy of Commercial General Liability insuring GENCOR on the date of the Plant explosion.

21. As the Judgment Creditor of GERLING's insured, GENCOR, FFIC brings this action as an intended third-party beneficiary to the insurance benefits and proceeds under the GERLING Policy. However, FFIC is in doubt as to its rights, powers, and/or privileges and in doubt as to GERLING's obligations, duties, liabilities and powers under such Policy, and so, seeks declaratory relief.

22. FFIC respectfully requests that this Court grant relief in the form of a Declaratory Judgment which clarifies, declares, and adjudicates the parties' respective rights and obligations with respect to FFIC's demand for satisfaction of the State Court Amended Final Judgment entered in FFIC's favor and against GERLING's insured, GENCOR, and for all other relief deemed just and legally proper under the circumstances including FFIC's attorney's fees and costs, incurred in this action pursuant to § 627.408, Fla.Stat.

**WHEREFORE,** FFIC demands Declaratory Judgment entered against GERLING, declaring GERLING contractually liable to provide insurance benefits to FFIC and to enter said judgment against GERLING in the total amount of the State Court Amended Final Judgment together with any award of attorney's fees in favor of FFIC in the State Court Action, and for all other relief deemed just and

6

legally proper under the circumstances, including interest and FFIC's attorney's fees and costs, incurred in this action, pursuant to § 627.408, Fla. Stat.

## COUNT II: BREACH OF CONTRACT

23.    FFIC realleges Paragraphs 1-17 as if fully set forth herein.

24.    This is a cause of action for Breach of the GERLING Commercial General Liability Insurance Policy insuring GENCOR, pursuant to which GERLING provided GENCOR with a defense in the State Court Action, and under which, GERLING has failed and refused to honor its contractual obligations to satisfy the Amended Final Judgment, together with any additional Judgment for attorneys' fees and costs that may be entered in favor of FFIC in the State Court Action.

25.    FFIC is an intended third-party beneficiary of the GERLING Policy of Insurance.

26.    GERLING is in material breach of the contractual duty owed to FFIC by failing and refusing to satisfy the Amended Final Judgment together with any award to FFIC of its attorney's fees and costs, presently due and owing FFIC.

27.    FFIC is entitled to recover the full amount of the Judgment up to the GERLING policy limit of One Million Dollars ($1,000,000.00) or such other sums as this Court determines to be owing.

28.    FFIC is entitled to its attorney's fees and costs incurred in this action pursuant to § 627.408, Fla. Stat.

7

**WHEREFORE,** FIREMAN'S FUND INSURANCE COMPANY, a foreign corporation a/s/o BASIC RESOURCES, INC., and GEORGE REED, INC., a foreign corporation, respectfully requests this Court to enter Judgment in favor of FFIC and against Defendant, GERLING AMERICA INSURANCE COMPANY, a foreign corporation, in an amount exceeding $75,000.00 and for all other relief deemed just and proper under the circumstances, including the costs in bringing this action and attorneys' fees in accordance with § 627.408, Fla. Stat.

**DATED** this _____ 15 _____ day of _____ June _____ 2007.

Respectfully submitted,

By: _Shirley Jean M'Eachern 321044_

JON D. DERREVERE
FBN: 330132
jdd@derreverelaw.com
DERREVERE, HAWKES & BLACK
470 Columbia Drive, Building "B"
West Palm Beach, Florida 33409
(561) 684-3222; Fax: (561) 640-3050
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _____ 15 _____ day of _____ June _____, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on: **Andy Spector, Esquire, Hyman Spector & Mars, LLP, Museum Tower, 27th Floor, 150 W. Flagler Street, Suite 2701, Miami, Florida 33130,** andrews@hsmattys.com via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: _Shirley Jean M'Eachern_

JON D. DERREVERE   321044
FBN: 330132

# EXHIBIT 1 TO PLAINTIFF'S AMENDED COMPLAINT-GERLING POLICY OF INSURANCE

Dbt f !2;18.dw 32273.KBM!!!!Epdvf f ou3.3!!!!!Fouf sf e!po!GMT E!Epdl f u ~ 2603118!!!!!Qbhf !3!pg73

# MURPHY & NEALE, P.A.
## ATTORNEYS AND COUNSELORS AT LAW

David W. Evoy
Patrick J. Murphy
Thomas E. Neale
Sarah H.L. Shelton

550 Fairway Drive, Suite 203
Deerfield Beach, Florida 33441
(Fort Lauderdale, Broward County Area)
(954) 525-5509
(954) 525-4509 Fax
Respond To: Deerfield Beach

Fifth Avenue Executive Suites
649 Fifth Avenue South
Naples, Florida
34102
(888) 771-6772
www.murphynealelaw.com

February 14, 2006

*Via Facsimile 561-640-3050 and regular mail*

Jon D. Derrevere, Esq.
Derrevere & Hawkes
470 Columbia Drive, Building "B"
West Palm Beach, FL 33409-1949

     Re:   *Fireman's Fund Insurance v. Gencor*
           Case No.:    2004-CA-7746
           Claim No.:   GLP06076
           Our File No.:  050-129

Dear Mr. Derrevere:

     Enclosed please find a copy of the Defendant's insurance policy in response to the Request for Production, item #1.

     Thank you for your courtesy and cooperation with this matter.

                   Very truly yours,

                   (Dictated not read, sent in
                    Atty's absence to avoid delay)

                   PATRICK J. MURPHY
                   pmurphy@murphymcfarlane.com

PJM:psc
Enclosure



*Deerfield Beach  &  Naples, Florida*

Dbt f !2;18. dw 32273. KBM!!!!Epdvn f ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f u!FC26O3118!!!!!Qbhf !4!pg73

# COMMERCIAL LINES POLICY

## COMMON POLICY
## DECLARATIONS



**GERLING**
AMERICA INSURANCE COMPANY

717 Fifth Avenue
New York, NY 10022-8101
Telephone 212-756-2600
Telefax 212-319-5626

**Renewal of Number** _____ **New**

**Policy No.** _____ **4 003 527 GLP**
_____ **4 003 527 EBL**

Named Insured and Mailing Address (No., Street, Town or City, County, State, Sip Code)

Gencor Industries, Inc.                      Sedgwick of Florida, Inc.
P.O. Box 609506                              555 Winderley Place, Suite 400
Orlando, FL 32860                            Maitland, FL 32751

Policy Period    From **06/30/98** to **06/30/99**    at 12:01 a.m. Standard Time at your mailing
                 address shown above.

Business Description:    **Manufacturer of grinding equipment.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

|  |  | PREMIUM |
|---|---|---|
| Commercial Property Coverage Part | $ | Not Covered |
| Commercial General Liability Coverage Part | $ | 153,459.00 |
| Commercial Crime Coverage Part | $ | Not Covered |
| Commercial Inland Marine Coverage Part | $ | Not Covered |
| Boiler and Machinery Coverage Part | $ | Not Covered |
| Employee Benefits Liability Coverage Part | $ | 425.00 |
| TOTAL | $ | 153,884.00 |

Premium shown is payable: **$ 153,884.00**    at inception; $    1ˢᵗ Anniversary;
$    2ⁿᵈ Anniversary.

Form(s) and Endorsement(s) made part of this policy at time of issue *: **See Form 0039**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

Countersigned: _____    By _2/2/11_    _signature_

    Countersignature    Date    Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDIITONS. COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE
FORM(S) AND ENDORSEMENTS. IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

IDI 190 (0) 0 (Ed. 06/96) includes copyrighted material of Insurance Services Office Inc., with its permission  Copyright, Insurance Services Office Inc., 1983, 1984

Dbt f !2;18.dw 32273.KBM!!!!Epdvn f ou3.3!!!!!Fouf sf!po!GMTE!Epdl f u 260 118!!!!!Qbhf !5!pg73

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE, READ IT CAREFULLY

# POLICY CHANGES

Policy Change
Number 1

| POLICY NUMBER<br><br>4 003 527 GLP | POLICY CHANGES<br>EFFECTIVE<br>06/30/98 | COMPANY<br><br>Gerling America Ins. Co. |
|---|---|---|
| NAMED INSURED<br><br>Gencor Industries, Inc. | | AUTHORIZED<br>REPRESENTATIVE |
| COVERAGES<br><br>Commercial General Liability Coverage Part | | |

## CHANGE

It is hereby agreed and understood that the following changes are made to the
policy:

1. Form CGL-SIRC1 Self-Insured Retention Endorsement is deleted from the policy.
2. Form GCD-0004, Additional Insured Endorsement is added to the policy.
3. Mental Injury is included in the personal and advertising injury liability.

All other terms and conditions of the policy remain the same.

IL12 01  11 85     Copyright, Insurance Service Office, Inc., 1984     Page 1 of 1
Copyright, ISO Commercial Risk Services, Inc., 1983

Dbt f !2;18.dw.32273.KBM!!!!Epdvn f ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f u¬2603118!!!!!Qbhf !6!pg73

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE, READ IT CAREFULLY**

# POLICY CHANGES

Policy Change
Number 2

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| 4 003 527 GLP | 07/28/98 | Gerling America Ins. Co. |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Gencor Industries, Inc. | |

**COVERAGES**

Commercial General Liability Coverage Part

## CHANGE

It is hereby agreed and understood that CG 20 28 (11/85), Additional Insured - Lessor of Leased Equipment is added to the policy.

All other terms and conditions of the policy remain the same.

IL12 01  11 85      Copyright, Insurance Service Office, Inc., 1984      Page 1 of 1
Copyright, ISO Commercial Risk Services, Inc., 1983

Dbt f !2;18.dw32273.KBM!!!!Epdvff ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f u￢￢26C3118!!!!!Qbhf !7!pg73

POLICY NUMBER: **4 003 527 GLP**          **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**  A & A Rental & Sales, Inc.
                                     PO Box 8810
                                     Stockton, CA 95208

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;
2. To "bodily injury" o. "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

**CG 20 28 11 85**          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1          ☐

Dbt f !2;18.dw 32273. KBM!!!!Epdvn f ou3.3!!!!!Fouf sf e!po!GMf E!Epdl f u TFC2603118!!!!!Qbhf !8!pg73

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART**

### SCHEDULE

**Name of Person or Organization:**      As required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you.

If required by your agreement with such Insured, this insurance shall be primary insurance for such Insured. If anyone also provides similar insurance for such Insured, then that insurance will be primary, and this insurance will be excess over, or secondary to that insurance.

The inclusion of one or more Insured under the terms of this endorsement does not increase our limits of liability.

All other terms and conditions remain unchanged.

GERLING AMERICA INSURANCE COMPANY

GCD-0004 (05/96)                                                        Page 1 of 1

Dbt f !2;18.dw 32273. KBM!!!!Epdvm f ou3.3!!!!!Fouf sf e!po!GMT E!Epdl f u™ 260B118!!!!!Qbhf !9!pg73

# FORMS AND ENDORSEMENTS

# MADE PART OF THIS POLICY AT TIME OF ISSUANCE

**Named Insured:**    Gencor Industries, Inc.
**Policy # :**    4 003 527 GLP

## COMMON POLICY FORMS

| | | |
|---|---|---|
| 0016 | (08/97) | Policy Jacket |
| JDL 190(0)-0 | (06/96) | Common Policy Declarations |
| IL0017 | (11/85) | Common Policy Conditions |
| CG0220 | (07/92) | Florida Changes - Cancellation and Nonrenewal |

## COMMERCIAL GENERAL LIABILITY FORMS

| | | |
|---|---|---|
| 0018 | (06/96) | Commercial General Liability Policy Declarations |
| CG0001 | (01/96) | Commercial General Liability Coverage Form |
| CRPEA01 | (06/96) | Composite Rating Endorsement Plan |
| 0043 | (05/91) | Exclusion - Asbestos Liability |
| 0040 | (05/91) | Notice of Occurrence |
| 0044 | (06/96) | Amendment of Common Policy Conditions - Cancellation |
| 0046 | (05/91) | Broad Named Insured Endorsement |
| IL0021 | (11/94) | Nuclear Energy Liability Exclusion Endorsement |
| CG2147 | (10/93) | Employment-Related Practices Exclusion |
| CG2155 | (03/97) | Total Pollution Exclusion With A Hostile Fire Exception |
| CG2243 | (01/96) | Exclusion - Engineers, Architects or Surveyors Professional Liability |
| CG2404 | (10/93) | Waiver of Transfer of Rights of Recovery Against Others to Us |
| CG2010 | (03/97) | Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization |
| CG2504 | (11/85) | Amendment - Aggregate Limits of Insurance (Per Location) |
| CG2015 | (11/88) | Additional Insured - Vendors |
| CG9901 | (11/85) | Motor Vehicle Laws |
| CGL-SIRC1 | (06/96) | Self-Insured Retention Endorsement - C |
| CP 014 | (09/94) | Stop-Gap Employers Liability |
| O/GP-020 | (05/96) | Amendment - Worldwide Coverage Territory |
| NOWA01 | (06/96) | Non-Owned Watercraft Amendment |
| Endorsement # 1 | | Named Insured |
| Endorsement # 2 | | Fellow Employee Exclusion |
| Endorsement # 3 | | Nose Endorsement |

Dbt f !2;18.dw 32273. KBM!!!!Epdwr f ou3.3!!!!!Fouf sf e!po!GMTE !Epdl f u~e603118!!!!!Qbhf !: !pg73

Policy No. 4 003 527 continued.....

## EMPLOYEE BENEFITS LIABILITY COVERAGE FORMS

| 0045 | (05/91) | Employee Benefits Liability Coverage Declarations |
| 0045Add. | (05/91) | Employee Benefits Liability Coverage - Supplementary Payments |

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85        Copyright, Insurance Services Office, Inc., 1982, 1983        Page 1 of 1

Dbt f !2;18.dw.32273.KBM!!!!EpdVm f ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f uℑ2603118!!!!!Qbhf !22!pg73

COMMERCIAL GENERAL LIABILITY
CG 02 20 07 92

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the CANCELLATION Common Policy Condition is replaced by the following:

   **2.** CANCELLATION OF POLICIES IN EFFECT:

   **a.** FOR 90 DAYS OR LESS

   If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      (a) A material misstatement or misrepresentation; or

      (b) A failure to comply with the underwriting requirements established by the insurer.

   **b.** FOR MORE THAN 90 DAYS

   If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

   (1) Nonpayment of premium;

   (2) The policy was obtained by a material misstatement;

   (3) Failure to comply with underwriting requirements within 90 days of the effective date of coverage;

   (4) A substantial change in the risk covered by the policy; or

   (5) The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

      (a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in paragraph 2.b.

**B.** The following is added and supersedes any other provision to the contrary:
   **NONRENEWAL**

   **1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

   **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Dbt f !2;18.dw32273.KBM!!!!EpdVff ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f ut 260118!!!!!Qbhf !23!pg73

# COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS



**GERLING**

AMERICA INSURANCE COMPANY

717 Fifth Avenue
New York, NY 10022-8101
Telephone 212-756-2600
Telefax 212-319-5626

| POLICY NUMBER | PREVIOUS POLICY NUMBER |
|---|---|
| 4 003 527 GLP | New |

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

**Gencor Industries, Inc.**
**P.O. Box 609506**
**Orlando, FL 32860**

Policy Period:   From **06/30/98** to **06/30/99**      at 12:01 A.M. Standard Time at your mailing
address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $ | 2,000,000. |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000. |
| Personal and Advertising Injury Limit | $ | 1,000,000. |
| Each Occurrence Limit | $ | 1,000,000. |
| Fire Damage Limit | $ | 1,000,000. Any One Fire |
| Medical Expense Limit | $ | 10,000. Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**
Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: __None__      (Enter Date or "None" if no Retroactive Date applies)

**DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES**
Form of Business:
[ ] Individual     [ ] Joint Venture     [ ] Partnership           [ x ] Organization (Other than Partnership or Joint Venture)
Business Description:     **Manufacturer of grinding equipment.**

Location of All Premises You Own, Rent or Occupy:
**Same as above**

| Premium | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | Rate | | Advance Premium | |
| Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | | All Other |
| | | **PER SCHEDULE OF OPERATIONS** | | | | | |
| Premium shown is payable: $ | | at inception | | Total Advance Premium: **$153,884.00** | | | |

**FORMS AND ENDORSEMENTS: See Form 0039**
**FORMS APPLICABLE PER LIABILITY FORMS LIST SEPARATELY ATTACHED.**

Countersigned: _____        By: _____
          Countersigned                    Date              Authorized Signature

0018 (06/96)                                                          Page 1 of 1

Dbtf!2;18.dw32273.KBM!!!!EpdVff ou3.3!!!!!Fouf sfe!po!GMTE!Epdl f ulTre263118!!!!!Qbhf !24!pg73

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES
## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Dbt f !2;18. dw 32273. KBM!!!!Epdvnf ou3.3!!!!!Fou sf e!po!GMTE!Epdf u f 1r2 603118!!!!!Qbhf !25!pg73

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or sub-contractors working directly or indi-rectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or re-placed because "your work" was in-correctly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this ex-clusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations haz-ard".

**k. Damage to Your Product**

"Property damage" to "your product" aris-ing out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations haz-ard".

This exclusion does not apply if the dam-aged work or the work out of which the damage arises was performed on your be-half by a subcontractor.

**m. Damage to Impaired Property or Prop-erty Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or ex-pense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is with-drawn or recalled from the market or from use by any person or organization because of a known or suspected defect, defi-ciency, inadequacy or dangerous condi-tion in it.

Exclusions c. through n. do not apply to dam-age by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIM-ITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVER-TISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as dam-ages because of "personal injury" or "advertising injury" to which this insur-ance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the in-sured against any "suit" seeking damages for "personal injury" or "advertising in-jury" to which this insurance does not ap-ply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judg-ments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is cov-ered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to:

Copyright, Insurance Services Office, Inc., 1994

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

   Copyright, Insurance Services Office, Inc., 1994

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.  The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

   a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

   a.  Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b.  Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c.  Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

Copyright, Insurance Services Office, Inc., 1994                   □

## 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

   When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and is not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

Dbt f !2;18.dw 32273. KBM!!!!EpdVff ouJ3.3!!!!!Fouf sf e!po!GMTE !Epdl f uT 260B118!!!!!Qbhf !37!pg73

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPOSITE RATING ENDORSEMENT PLAN

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## Schedule

1) Unit of Exposure (Check One):

|  |  |  |  |
|---|---|---|---|
| ☐ | Acreage | ☐ | Receipts |
| ☐ | Admissions | ☐ | Revenue |
| ☐ | Area | ☒ | Sales |
| ☐ | Gallons | ☐ | Units |
| ☐ | Payroll |  |  |

1) ☐ per 100      ☒ per 1,000      ☐ each      ☐ other

2) | Coverage Unit of Exposure | Rate(s) | Estimated Premium(s) |
|---|---|---|
| $170,000,000 | $.9027 | $153,459.00 |

3) Deposit Premium $ __153,459.00__

4) Minimum Premium $ _N/A_____
   Premium subject to Audit

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations applicable to this endorsement.)

The premium Audit Condition, paragraph 5, of Section IV- COMMERCIAL GENERAL LIABILITY CONDITIONS IS REPLACED BY THE FOLLOWING:

a. We will compute all premiums for this Coverage Part in accordance with our rules and the composite rates shown in the Schedule.

b. For policies other than Annual Reporting. The deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 15

days following the end of each audit period, the earned premium.

c.  As soon as practicable after the policy expires, we will compute the earned premium for the policy period. The premium will be computed by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit premium and the audit premium, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than 80% of the estimated annual premium, or the Minimum Premium shown in the Schedule.

d.  The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

e.  For purposes of this endorsement, the following definitions shall apply:

1)  "Acreage" means by acre.

2)  "Admissions" means the total number of persons, other than employees of the Named Insured admitted to the events conducted on the premises whether on paid admission tickets or complimentary passes;

3)  "Area" means total number of square feet of floor space at the Insured premises.

4)  "Gallons" means the total number of gallons of liquefied petroleum gases invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases;

5)  "Payroll" means remuneration. Remuneration means money · or substitutes for money, as calculated in accordance with individual state laws.

6)  "Receipts" means the gross amount of money charged by the Named Insured for such operations by the Named Insured or by others during the policy period as are rated on a receipt basis other than receipts from telecasting, broadcasting or motion picture, and including taxes, other than taxes which the Named Insured collects as a separate item and remits directly to a governmental division;

7)  "Revenue" means gross revenue earned, including charges for delinquent payments, before discounts, but does not include taxes collected for any governmental unit;

8)  "Sales" means gross amount charged by the named Insured, concessionaires of the Named Insured or by others trading under the Insured's name.

9)  "Units" means the average over the annual period between the initial unit count and final unit count. If there is no anticipated difference in these counts when the policy is written than the initial count may be used when the policy is written, but this is to be adjusted at audit based on an actual average of counts between such initial and final numbers;

All other terms and conditions remain unchanged.

Dbt f !2;18.dw.32273.KBM!!!!EpdW f ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f u1 e2603118!!!!!Qbhf !39!pg73

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## EXCLUSION - ASBESTOS LIABILITY

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part**
**Products / Completed Operations Coverage Part**

The following additional exclusion applies to Coverages A and B of the Commercial General Liability Coverage Part:

This insurance does not apply to "bodily injury," "personal injury," or "property damage" caused by, resulting from or arising out of:

1.  Asbestos, asbestos fibers or asbestos products or any obligation of the insured to indemnify another  and/or contribute with another because of damages arising out of, or as a result of such "bodily injury," "personal injury," or "property damage";

2.  Any supervision, instructions, recommendations, notices, warnings or advice given or which should have been given in connection with the manufacturing, selling and/or distributing of asbestos, asbestos fibers or asbestos products or products containing asbestos;

3.  Removal of asbestos including:

    a.  Cost of asbestos removal and replacement with other materials;

    b.  Property damage in the course of removing asbestos, asbestos fibers or asbestos products.

In addition, we shall not be obligated to investigate, to pay any claim or judgement or to defend any suit for "bodily injury," "personal injury," or "property damage" caused by, resulting from or arising out of asbestos, asbestos fibers or asbestos products.

0043(0591)        GERLING AMERICA INSURANCE COMPANY        Page 1 of 1

Dbt f !2;18.dw 32273. KBM!!!!Epdvn f ou3.3!!!!!Fouf sf e!po!GMTE !Epdl f u1702603118!!!!!Qbhf !3: !pg73

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the policy issued to:

**Named Insured:**    Gencor Industries, Inc.
**Policy #:**    4 003 527 GLP

### NOTICE OF OCCURRENCE

In the event of an Occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the event and the names and addresses of the Insured and of available witnesses, shall be given by or for You to Us or any of Our authorized agents as soon as practical after notice has been received by You.

### KNOWLEDGE OF OCCURRENCE

Knowledge of an Occurrence falling within the coverage provided by this policy by Your agent, servant or employee shall not in itself constitute knowledge by You unless the Corporate Risk Manager of Your corporation shall have received notice of such Occurrence from its agent, servant or employee.

### UNINTENTIONAL ERRORS AND OMISSIONS/FAILURE TO DISCLOSE

Failure by You to disclose all hazards existing on the effective date of this policy shall not prejudice You with respect to the coverage afforded by this policy provided such failure or any such omission is not intentional.

Dbt f !2;18.dw.32273.KBM!!!!EpdVn f ou3.3!!!!!Fouf sf e!po!GMTE!Epdl f u1 26 3118!!!!!Qbhf !41!pg73

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF COMMON POLICY CONDITIONS

## CANCELLATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**

**Named Insured:**      Gencor Industries, Inc.

1.  Common Policy Conditions A., Cancellation, paragraph 2., sub-paragraph a., is deleted in its entirety and replaced with the following:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

    or

2.  Common Policy Conditions A. Cancellation, paragraph 2, sub-paragraph b., is deleted in its entirety and replaced with the following:

    b.  Any amendatory endorsement which modifies this policy's cancellation provisions is amended in part to show that in no event will we mail or deliver the notice of cancellation or non-renewal less than _____ 90 _ days before the effective date of cancellation or non-renewal.  The number of days' notice given will never be less than the number of days specified in the printed policy Conditions, and amendatory endorsements (if any) or the number of days required by the laws of the state in which this policy is issued.

All other terms and conditions remain unchanged.

Dbt f !2;18.dw.32273.KBM!!!!Epdvn f ouJ3.3!!!!!Fouf sf e!po!GMFE!Epdl f u?0263118!!!!!Qbhf !42!pg73

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## BROAD NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

### Commercial General Liability Coverage Part
### Products / Completed Operations Coverage Part

WHO IS INSURED (Section II) is amended to include as an insured:

1. Any of Your subsidiaries and sub-subsidiaries;

2. Any organization, partnership, company or corporation in which You have ownership interest or operate under a written management agreement; and

3. Any associated or affiliated entity while acting on Your behalf;

which is under Your active management.

All agents, servants, directors, officers, partners, consultants and employees, whether active or inactive, of each of the entities listed above shall also be considered an Insured, but only while acting within the scope of their duties as such.

Dbt f !2;18.dw 32273. KBM!!!!EpdⅥf ou3.3!!!!!Fouf sf e!po!GⅦE!Epdl f u Ⅳ 2608 118!!!!!Qbhf !43!pg73

IL 00 21 11 94

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
 TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Dbt f !2;18.dw 32273. KBM!!!!Epdvn f ou3.3!!!!!Fou sf e!po!GMTE!Epdl f u!770608118!!!!!Qbhf !45!pg73

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992