# EXHIBIT A

**LexisNexis®** *Total Research System*

Switch Client ┊ Preferences ┊ Sign Off ┊ [?] Help

*My Lexis™* ┊ Search ┊ Research Tasks ┊ Get a Document ┊ *Shepard's®* ┊ Alerts ┊ Total Litigator ┊ Transactional A

Source: My Sources > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined [i]
Terms: **San Diego housing commission v. Industrial indemnity company, 95 cal. app. 4th 669** (Edit
Search | Suggest Terms for My Search | Feedback on Your Search)

✔Select for FOCUS™ or Delivery
☐

*95 Cal. App. 4th 669, \*; 116 Cal. Rptr. 2d 103, \*\*;*
*2002 Cal. App. LEXIS 722, \*\*\*; 2002 Cal. Daily Op. Service 774*

View Official Reports PDF of This Document  **($)**

**SAN DIEGO HOUSING COMMISSION** et al., Plaintiffs and Respondents, v. **INDUSTRIAL
INDEMNITY COMPANY,** Defendant and Appellant.

No. D035239.

COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT, DIVISION ONE

**95 Cal. App. 4th 669**; 116 Cal. Rptr. 2d 103; 2002 Cal. App. LEXIS 722; 2002 Cal. Daily
Op. Service 774; 2002 Daily Journal DAR 943

January 28, 2002, Decided

**NOTICE: [\*\*\*1]** Opinion certified for partial publication. [1]

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with
the exception of parts II and III.

**SUBSEQUENT HISTORY:** Review Denied April 10, 2002, Reported at: 2002 Cal. LEXIS
2474.

**PRIOR HISTORY:** APPEAL from a judgment of the Superior Court of **San Diego** County.
Super. Ct. No. 680684. Thomas Oliver LaVoy, Judge.

**DISPOSITION:** Affirmed as modified.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** In an action against defendant insurer brought by plaintiff
judgment creditor, which sought insurance policy proceeds under Cal. Ins. Code § 11580
(b)(2) to recover under a liability insurance policy's supplementary payments provision
(SPP), the insurer appealed a monetary judgment of the **San Diego** County Superior
Court (California) in favor of the judgment creditor in the amount of $ 957,212, as well as
an award of costs.

**OVERVIEW:** The dispute in this case concerned financial responsibility for an underlying
default judgment for damages for construction defects on a **housing** project that the
judgment creditor obtained against the insured. The insurer contended that interest on the
prior default judgment, costs, and attorneys' fees were improperly awarded against it
pursuant to the SPP provision. The judgment creditor argued that the trial court

erroneously ruled there was no liability coverage for any occurrence of property damage within the 1982-1983 policy period, arising out of plumbing defects at the project. The instant court concluded that the SPP dealing with costs and interest should have been construed as creating defense rights for the insured that were not enforceable by the judgment creditor of the insured, based on contract principles of third party beneficiary law as applied in the § 11580(b)(2) context. The judgment creditor was entitled to recover against the insurer on the policy, pursuant to the judgment it had earlier obtained against the insured. The instant court deleted that part of the costs award to the judgment creditor that was based on Cal. Code Civ. Proc. § 998.

**OUTCOME:** The judgment was affirmed as modified to strike the damages awards except for the $ 200,000 representing **indemnity,** and to reduce the costs award to $ 35,950. As so modified, the judgment in favor of the judgment creditor was affirmed. Each party was to bear its own costs on appeal.

**CORE TERMS:** insured, insurer, housing, coverage, judgment creditors, duty to defend, defended, party beneficiary, indemnity, property damage, taxed, insurance contract, italics, supplementary, claimant, bad faith, party claimant, underlying action, default judgment, retrial, owed, insurance policy, underlying judgment, prior opinion, condition precedent, covenant's, contracting parties, entire amount, occurrence, lawsuit

## LEXISNEXIS® HEADNOTES                                        ⊟ **Hide**

Contracts Law > Debtor & Creditor Relations 🔍
Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement 🔍
Contracts Law > Third Parties > Beneficiaries > Defenses 🔍

*HN1* ⬆ In an action under Cal. Ins. Code § 11580(b)(2) to recover under the liability insurance policy's supplementary payments provision (SPP), the judgment creditor is entitled to recover against the insurer on the policy and subject to its terms and limitations, pursuant to a judgment the creditor had earlier obtained against the insured. An SPP dealing with costs and interest, which refers to all costs taxed against the insured in any suit defended by the insurer and all interest on the entire amount of any judgment therein, should be construed as creating defense rights for the insured that are not enforceable by the judgment creditor of the insured, based on contract principles of third party beneficiary law as applied in the § 11580(b)(2) context.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🔍
*HN2* ⬆ Cal. Ins. Code § 11580 requires that a liability insurance policy issued in California shall contain certain specified provisions, including one set forth in subdivision (b) (2): Whenever judgment is secured against the insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.  More Like This Headnote

Civil Procedure > Judgments > General Overview 🔍
Insurance Law > General Liability Insurance > Obligations > Defense 🔍
*HN3* ⬆ The threshold issue presented in a case brought under Cal. Ins. Code § 11580(b) (2) is whether the judgment, upon which plaintiff seeks to recover, represents damages of a type for which the insurer agreed to indemnify the insured. The plaintiff is in court as a beneficiary of the contract between the insured and the insurer, and must bring her claim - the judgment - within the terms of that

contract. Only legal questions are presented as to the scope of the risks covered by the insurance, the risks excluded by the terms of the policy, and the nature of the damages awarded by the judgment. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview

**HN4** De novo review of the text of insurance policy provisions applies. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Debtor & Creditor Relations

Contracts Law > Third Parties > General Overview

Contracts Law > Types of Contracts > Covenants

**HN5** Under Cal. Ins. Code § 11580(b)(2), the judgment creditor of an insured is a third party beneficiary of the insurance contract between the insurer and the insured. A third party beneficiary's right to performance is based upon the contracting parties' intent to benefit it, and the third party beneficiary should not be permitted to enforce covenants made not for his benefit, but rather for others. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pretrial Judgments > Default > Default Judgments

Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview

**HN6** Where a party's rights are those of a third party beneficiary of the insurance contract, courts should examine the context in which a supplementary payments provision clause is found in the policy, to determine its scope of relief and the identity of the parties who may seek redress to obtain such relief. Determining these rights is a legal question dealing with the scope of the coverage of the policy and the nature of the damages and costs and interest awarded. More Like This Headnote

Insurance Law > Claims & Contracts > Contract Formation > General Overview

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview

Insurance Law > Claims & Contracts > Premiums > General Overview

**HN7** An insurance policy is a contract between an insurer and an insured, the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss. To yield their meaning, the provisions of a policy must be considered in their full context. More Like This Headnote

Insurance Law > General Liability Insurance > Obligations > Defense

**HN8** In the liability context, loss exposure can take one of two forms. It may be the possibility of legal liability imposed on the defendant, or alternatively, there is an exposure based on the necessity of mounting a defense against a claim or lawsuit which seeks the imposition of liability. The latter type of loss is addressed by the duty to defend expressed in the coverage clause and the supplementary payments provision. More Like This Headnote

Insurance Law > Claims & Contracts > General Overview

Insurance Law > General Liability Insurance > Obligations > Defense

Insurance Law > General Liability Insurance > Obligations > Indemnification

**HN9** The duty to defend runs directly to the insured, and is discharged when the action against the insured is concluded. Standard comprehensive or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to

indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim. They also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim. The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved. By definition, it entails the payment of money in order to resolve liability. By contrast, the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed. It entails the rendering of a service, viz., the mounting and funding of a defense in order to avoid or at least minimize liability. It is discharged when the action is concluded. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > General Overview
Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement
Insurance Law > General Liability Insurance > Obligations > Defense

**HN10** Special contractual rules apply in the third party beneficiary context created by Cal. Ins. Code § 11580(b)(2), to limit the rights of a third party claimant against an insured. As a general rule, absent an assignment of rights or a final judgment, a third party claimant may not bring a direct action against an insurance **company** on the contract because the insurer's duties flow to the insured. There are several exceptions to the general rule which prohibits a third party claimant from suing an insurer. For example, once a party has a final judgment against the insured, the claimant becomes a third party beneficiary of the insurance policy and may enforce the terms which flow to its benefit pursuant to § 11580. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Third Parties > Beneficiaries > Types > General Overview
Insurance Law > General Liability Insurance > Obligations > Defense

**HN11** A claimant may sue the insurer as a third party beneficiary utilizing traditional contract principles, when the duties under the policy flow directly in favor of the third party (e.g., medical payment provisions in a liability policy). These rights are grounded in Cal. Civ. Code § 1559 which provides that a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. Such third party beneficiary principles do not require that the person to be benefited be named in the contract, but rather allow the third party to qualify as a contract beneficiary if the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Third Parties > Beneficiaries > Types > General Overview
Contracts Law > Types of Contracts > Covenants

**HN12** Cal. Civ. Code § 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Entry of Judgments > General Overview
Civil Procedure > Judgments > Entry of Judgments > Nonparties
Insurance Law > Bad Faith & Extracontractual Liability > Refusals to Defend

**HN13** The implied-in-law duty to settle found in the insurance policy does not flow to the third party claimant, and an assignment is needed for a claimant to enforce it. Similarly, there are other limits on a judgment creditor/third party claimant's

ability to sue the insurer of the tortfeasor.  More Like This Headnote |
*Shepardize: Restrict By Headnote*

Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement
Insurance Law > General Liability Insurance > Obligations > Defense
HN14 Absent an assignment, a third party claimant cannot bring an action upon a duty
owed to the insured.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Insurance Law > General Liability Insurance > Obligations > Defense
HN15 Any allowable recovery by a judgment creditor under Cal. Ins. Code § 11580(b)
(2) is that which is on the policy and subject to its terms and
limitations.  More Like This Headnote

Contracts Law > Types of Contracts > Covenants
Insurance Law > General Liability Insurance > Obligations > Defense
HN16 The insurer's defense duty is a covenant in the policy that runs only to the
insured. The defense duty terminates at the end of the action. An action for its
breach can be brought by the insured or assigned away. However, there is no
continuing defense duty that can be redressed later by the third party judgment
creditor, by seeking damages for the supplementary payments provision
amounts under Cal. Ins. Code § 11580(b)(2).  More Like This Headnote

Civil Procedure > Judgments > Entry of Judgments > General Overview
Civil Procedure > Judgments > Entry of Judgments > Nonparties
Contracts Law > Types of Contracts > Covenants
HN17 The judgment creditor can only enforce those covenants in the insurance policy
that were included for the benefit of the third party creditor. As to the defense
duty, the third party judgment creditor is not a creditor beneficiary, but only an
incidental beneficiary.  More Like This Headnote | *Shepardize: Restrict By Headnote*


## HEADNOTES / SYLLABUS

⊟ **Hide**


### SUMMARY:

### CALIFORNIA OFFICIAL REPORTS SUMMARY


A city's **housing commission** and **housing** authority brought an action for construction
defects against a general contractor. The contractor's insurer declined to provide a
defense, and plaintiffs obtained a default judgment. They then sued the contractor's
insurer under Ins. Code, § 11580, subd. (b)(2) (action by third party against insurer after
securing judgment against insured). After a jury trial, plaintiffs were awarded damages,
including amounts under the policy's supplementary payments provision (SPP), which
required the insurer to pay all costs taxed against the insured in any suit defended by the
insurer, and interest on any judgment therein accruing after entry of judgment. Although
there had been no suit defended by the insurer (because the insurer had declined to
provide a defense), the trial court ruled that the insurer had breached its duty to defend
and that breach should not inure to the insurer's benefit. (Superior Court of **San Diego**
County, No. 680684, Thomas Oliver LaVoy, Judge.)

The Court of Appeal modified the judgment to strike most of the award of damages and costs, and affirmed the judgment as modified. The court held that the insurer's duty to defend was owed solely to the insured, and in the absence of an assignment of a failure-to-defend claim, plaintiffs could not recover defense costs and interest on the judgment under the SPP as a policy benefit by way of a third party beneficiary theory. The court held that the duty to defend ordinarily terminates at the end of the underlying action, and its existence or breach does not automatically transfer rights to an insured's judgment creditor falling within the benefits of the policy's coverage provisions under Ins. Code, § 11580, subd. (b)(2). (Opinion by Huffman, J., with Benke, Acting P. J., and Nares, J., concurring.)

## HEADNOTES

## CALIFORNIA OFFICIAL REPORTS HEADNOTES
Classified to California Digest of Official Reports

CA(1)⬆(1) **Insurance Contracts and Coverage § 1--Nature of Insurance.** --Insurance is a means of distributing risks of loss. The policy is a contract between an insurer and an insured, the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss. To yield their meaning, the provisions of the policy must be considered in their full context.

CA(2)⬆(2) **Insurance Contracts and Coverage § 106--Extent of Loss of Insured and of Liability of Insurer--Liability and Indemnity Insurance--Insurer's Loss Exposure.** --In the liability context, an insurer's loss exposure can take one of two forms. It may be the possibility of legal liability imposed on the insured, or alternatively, there is an exposure based on the necessity of mounting a defense against a claim or lawsuit that seeks the imposition of liability. The latter type of loss is addressed by the duty to defend, expressed in the coverage clause and supplementary payments provisions.

CA(3)⬆(3) **Insurance Contracts and Coverage § 107--Extent of Loss of Insured and of Liability of Insurer--Liability and Indemnity Insurance--Obligation to Defend Insured.** --An insurer's duty to defend runs directly to the insured, and runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed. It entails the rendering of a service, i.e., the mounting and funding of a defense in order to avoid or at least minimize liability. The duty is discharged when the action is concluded.

CA(4)⬆(4) **Insurance Contracts and Coverage § 140--Actions--By Injured Person Against Insurer--Where Direct Action Allowed.** --As a general rule, absent an assignment of rights or a final judgment, a third party claimant may not bring a direct action against an insurance **company** on the contract because the insurer's duties flow to the insured. There are several exceptions to this rule. For example, once the claimant has a final judgment against the insured, the claimant becomes a third party beneficiary of the insurance policy and may enforce the terms that flow to its benefit under Ins. Code, § 11580.

[See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1150.]

CA(5)⬆(5) **Insurance Contracts and Coverage § 123--Actions--Parties--Third Party Beneficiaries.** --A claimant may sue an insurer as a third party beneficiary utilizing traditional contract principles, when the duties under the policy flow directly in favor of the third party, e.g., medical payment provisions in a liability policy. These rights are grounded

in Civ. Code, § 1559 (contract made expressly for benefit of third person may be enforced by that person). Third party beneficiary principles do not require that the person to be benefited be named in the contract, but rather allow the third party to qualify as a contract beneficiary if the contracting parties intended to benefit that individual, and that intent appears in the terms of the agreement. However, Civ. Code, § 1559, excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. A third party should not be permitted to enforce covenants made not for that party's benefits but rather for others.

CA(6)⊥(6) **Insurance Contracts and Coverage § 107--Extent of Loss of Insured and of Liability of Insurer--Liability and Indemnity Insurance--Obligation to Defend Insured--Interpretation of Costs and Interest Provision.** --In an action under Ins. Code, § 11580, subd. (b)(2), against an insurer by judgment creditors of the judgment debtor's insured, seeking to recover insurance proceeds under the liability policy's supplementary payments provision (SPP), which required the insurer to pay all costs taxed against the insured in any suit defended by the insurer, and all interest on the entire amount of any judgment therein accruing after entry of judgment, the costs and interest provisions of the SPP were required to be treated together. Both provisions were equally clearly linked to the defense of the action by the insurer, even though an underlying judgment can be entered and accrue interest regardless of whether there was an insurance defense provided. Further, in the interest provision, the phrase "any judgment therein" referred back to the suit that was defended by the insurer. Thus, a proper interpretation of the SPP required that the costs and interest provisions be treated alike.

CA(7a)⊥(7a) CA(7a)⊥(7b) **Insurance Contracts and Coverage § 146--Actions--By Injured Person Against Insurer--Judgment and Damages--Costs and Interests in Underlying Suit Against Insured.** --In an action by judgment creditors under Ins. Code, § 11580, subd. (b)(2), against the insurer of the judgment debtor, the trial court erred in determining that plaintiffs could recover under the liability policy's supplementary payments provision, which required the insurer to pay all costs taxed against the insured in any suit defended by the insurer, and interest on any judgment therein accruing after entry of judgment. There had been no suit defended by the insurer, since the insurer refused to provide a defense for the judgment debtor, but the trial court ruled that that refusal constituted a breach that should not inure to the insurer's benefit. However, the insurer's duty to defend was owed solely to the insured, and in the absence of an assignment of a failure-to-defend claim, a judgment creditor should not be able to recover these related defense costs and interest on the judgment as a policy benefit by way of a third party beneficiary theory. The duty to defend ordinarily terminates at the end of the underlying action, and its existence or breach does not automatically transfer rights to an insured's judgment creditor falling within the benefits of the policy's coverage provisions under § 11580, subd. (b)(2).

CA(8)⊥(8) **Insurance Contracts and Coverage § 140--Actions--By Injured Person Against Insurer--Where Assignment of Claim Required.** --A third party claimant cannot bring an action upon a duty owed only to the insured, such as the duty to defend, without an assignment of the cause of action for breach of that duty. In contrast, because of the statutory purpose of Ins. Code, § 11580, subd. (b)(2) (action by third party against insurer after securing judgment against insured), to ensure recovery for injured claimants, there is no need for an assignment of the covered insurance benefits portion of the underlying judgment, in order for a judgment creditor to enforce it.

**COUNSEL:** Edwards, Sooy & Byron; Grace, Brandon & Hollis and Thomas W. Byron for Defendant and Appellant.

Detisch & Christensen, Charles B. Christensen and Sean D. Schwerdtfeger for Plaintiffs and

Respondents.

**JUDGES:** Opinion by Huffman, J., with Benke, Acting P. J., and Nares, J., concurring.

**OPINION BY:** HUFFMAN

**OPINION**

[\*672]  [\*\*106]  **HUFFMAN, J.**

This case requires us to determine the rights of a judgment creditor of an insured, in an action against an insurer seeking insurance  [\*673]  policy proceeds under Insurance Code [2] section 11580, subdivision (b)(2), to recover under the liability insurance policy's supplementary payments provision (SPP).  [\*\*\*2]  *HN1* In this type of action, the judgment creditor is entitled to recover against the insurer "on the policy and subject to its terms and limitations," pursuant to a judgment the creditor had earlier obtained against the insured. We will conclude that the SPP dealing with costs and interest, referring to "all costs taxed against the insured *in any suit defended by the Company* and all interest on the entire amount of any judgment *therein*," should be construed as creating defense rights for the insured that are not enforceable by the judgment creditor of the insured, based on contract principles of third party beneficiary law as applied in the section 11580, subdivision (b)(2) context. ( *Murphy v. Allstate Ins. Co.* ⊽ (1976) 17 Cal. 3d 937, 943-944 [132 Cal. Rptr. 424, 553 P.2d 584] (*Murphy*).)

**FOOTNOTES**

[2] All statutory references are to this code unless otherwise stated.

This is the second appeal arising from the dispute between plaintiffs and respondents [\*\*\*3]  **San Diego Housing Commission** and **San Diego Housing** Authority (collectively, **Housing**; respectively, the **Commission** and the Authority) and the insurer of the general contractor who built a **housing** project for **Housing**, **Industrial Indemnity Company** ⊽ (IIC). In 1983 through 1984, John B. Reed Construction Co. (JBR or the insured) was the general contractor for a low-income **housing** project, Calle Primera (the project), built for the **Commission** on land owned by the Authority. The current dispute concerns financial responsibility for an underlying default judgment for damages for construction defects that **Housing** obtained against JBR, whom IIC insured under a liability policy. (**Housing** *Authority of the City of* **San Diego** *v. Reed Construction* **Co**. (Super. Ct. **San Diego** County, 1992, No. 651235) (the underlying action).)

This follow-up lawsuit was originally tried in 1996, on **Housing's** claims of entitlement to insurance coverage by IIC of all or a portion of the default judgment in the underlying action. **Housing** obtained judgment against IIC of over $ 1 million damages on several theories. IIC appealed, and this court filed its opinion December 10, 1998, reversing the trial court judgment [\*\*\*4]  and remanding for retrial on the claims under section 11580, subdivision  [\*\*107]  (b)(2) (**Housing** as a third party beneficiary of the JBR insurance policy). ( *San Diego Housing Com. v. Industrial Indemnity Co.* ⊽ (1998) 68 Cal. App. 4th 526 [80 Cal. Rptr. 2d 393] (SDHC), a partially published opinion referred to here as the prior opinion, regarding both published and nonpublished portions.) Upon remand, jury trial was held in October 1999 and resulted in special verdicts and judgment in **Housing's** favor in the amount of $ 957,212.25 damages, as well as an award of costs of suit.

IIC now appeals the judgment after retrial, chiefly contending the damages award is unsupported on the section 11580, subdivision (b)(2) theory [*674] regarding a particular portion of the policy, the SPP. Further, IIC contends the trial judge erroneously allowed certain evidence to be admitted with respect to **Housing's** claim that IIC had a duty to defend its insured, JBR, objecting that such evidence was actually impermissible evidence of bad faith claims-handling practices (contrary to the holding of our prior opinion).

In addition, **Housing** has cross-appealed the judgment on [***5] the basis that the trial court erroneously ruled there was no liability coverage for any occurrence of property damage within the 1982-1983 policy period, arising out of plumbing defects (corrosion) at the project. We find the cross-appeal has no merit. However, our interpretation of the SPP requires us to affirm the judgment as modified to reduce the damages awarded only to the $ 200,000 **indemnity** portion, while also deleting that part of the costs award to **Housing** that is based on Code of Civil Procedure section 998. As so modified, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The background facts of the 1983-1984 construction of the project are set forth in our prior opinion. ( *SDHC, supra,* 68 Cal. App. 4th at pp. 532-536.) During construction, JBR and its subcontractors created numerous problems, including sloping floors that had to be corrected, concrete that had to be redone, and drainage problems that needed further work. Copper plumbing pipes were installed in backfilled rocky trenches in areas with mildly corrosive soil. The pipes passed pressure tests before project completion. (Later, however, was another story. [***6] )

At the outset of construction, JBR was insured by IIC under a comprehensive general liability insurance (CGL) policy that had a three-year term beginning June 11, 1981, and due to end June 11, 1984. A certificate of coverage was issued for this project on March 30, 1983. The policy provided broad form property damage coverage and required an occurrence within the policy period for coverage to attach. Completed operations coverage was provided, and there was an exclusion for property damage to the project occurring during the course of construction. A "Separate Limit Plan" was supplied to provide different policy limits for different types of coverage, although the general policy limit for property damage was $ 100,000 per occurrence. The SPP dealt with costs taxed against the insured in any suit defended by the **company,** and interest on an underlying judgment against an insured, as will be more fully described later.

The project was completed and inspected by officials of the City of **San Diego** in March and April 1984; tenants began moving in beginning April 4, [*675] 1984. Beginning in 1989 and 1990, tenants made complaints to **Housing** concerning defects at the project. According [***7] to the underlying construction defect complaint against JBR (filed in 1992), defects at the site included plumbing and drainage problems, door and light fixture problems, uneven [**108] floors, cracked stucco, and other problems. **Housing's** technical services supervisor and maintenance coordinator received complaints and did repairs. **Housing** notified JBR of the defects in February 1992 and then filed its complaint for damages for construction defects on April 27, 1992.

From February to May 1992, JBR attempted to obtain a defense of the construction defect action from IIC. IIC resisted providing coverage on several grounds. It took the position that the policy had effectively been canceled in March or April 1984 by JBR's principal Reed, and the original expiration date of the policy, June 11, 1984, should not apply. (One of the issues sent back for this retrial was the effective date of cancellation of the policy; prior opn.) [3] However, no defense was provided, and **Housing** obtained a default judgment against JBR for $ 1,150,603.92, which included repair costs, relocation costs, and attorney fees and costs (the prior default judgment).

**FOOTNOTES**

**3** IIC makes no argument here that the jury verdict and judgment were incorrect that the policy had not been effectively canceled before its June 11, 1984 expiration date. That fact is unchallenged.

[***8] Based on the prior default judgment, **Housing** brought this action against IIC and related entities. **Housing** pled a cause of action as a judgment creditor to recover on the policy, subject to its terms and limitations. (§ 11580, subd. (b)(2).) **4** As outlined above, the first jury trial against IIC resulted in a large judgment for **Housing**, which combined recovery for bad faith theories and the section 11580, subdivision (b)(2) claim. Upon our reversal of that judgment, retrial began in October 1999. The trial court made various rulings designed to implement the policy interpretations set forth in our prior opinion, which we will summarize as follows.

**FOOTNOTES**

**4** Eventually a Code of Civil Procedure section 998 offer of $ 750,000 was made by **Housing** but rejected by IIC. Subsequently, the trial court awarded costs in part on this basis, because **Housing's** damages award exceeded the offer amount. (See fn. 9, *post*.)

Specifically, our prior opinion upheld the first trial court's interpretation [***9] of the Separate Limit Plan, as allowing liability for separate occurrences in separate policy years to be aggregated. That trial court correctly concluded there were two separate annual policy years involved, as a reasonable construction of the policy and the evidence. However, there were also two potential separate coverages for property damage, one for the course of operations performed for the insured (JBR) by independent contractors, and [*676] one for property damage included within the completed operations hazard. Thus, we determined previously that it was a reasonable construction of the policy for the trial court to conclude "that two separate $ 100,000 limits applied, and for two separate years each, *assuming that it can be shown that occurrences of property damage took place within the policy period*. This interpretation of the separate limit plan [] may remain established in any retrial on remand. . . ." (Prior opn., italics added.) **5**

**FOOTNOTES**

**5** The basic coverage part of this liability policy provides: "The **Company** will pay on behalf of the insured all sums *which the insured shall become legally obligated to pay as damages* because of: . . . Coverage B - *property damage to which this insurance applies, caused by an occurrence*, and the **Company** *shall have the right and duty to defend any suit against the insured* seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the **Company** shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the **Company's** liability has been exhausted by payment of judgments or settlements." (Italics added.) As defined by the policy, " 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

[***10] [**109] Further, the trial court in this retrial applied our prior opinion's

interpretation of the SPP. The text of that provision states that the insurer will pay, "in addition to the applicable limit of liability: [P] (a) . . . all costs taxed against the insured *in any suit defended by the* **Company** and all interest on the entire amount of *any judgment therein* which accrues after entry of the judgment and before the **Company** has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the **Company's** liability thereon." (Italics added.) We said, "At any further proceedings, the trial court should specify whether such awards properly fall within the scope of the supplementary payments provision, since the underlying action was not in fact '*defended by the* **Company** . . . .' " (Prior opn.) [6]

**FOOTNOTES**

[6] Pursuant to **Housing's** request, we have taken judicial notice of its petition for rehearing in the prior appeal, and the order denying that petition. ( Evid. Code, §§ 452, subd. (d), 459.) One of the issues raised in the petition was the scope of the SPP provision, but the order denying the petition does not indicate that any further clarification was required at that time.

**[\*\*\*11]** At the retrial, the parties extensively disputed how to handle the fact that IIC had not in fact defended the underlying action against JBR, for purposes of the section 11580, subdivision (b)(2) claim. The trial court took the approach of presenting to the jury an advisory issue of whether there was a duty to defend, based on the facts known at the time, and then the court decided the applicability of the SPP as a matter of law. The trial court directed the parties to stay away from any bad faith aspect of the case.

Accordingly, at the retrial, **Housing** presented extensive evidence about the nature of the construction defects at the project, and when they occurred **[\*677]** or were manifested. This was directed toward proving to the jury that there was a duty to defend JBR on IIC's part, due to the potential of coverage under the policy, within the IIC policy period. **Housing** called as witnesses on the duty-to-defend issue IIC's former claims adjusters Robert Blake and Joe Jenny, as well as JBR's principal, J. Michael Reed. Reed testified about the efforts of JBR to inform IIC of the facts with respect to obtaining coverage. Blake did not recall anything of the coverage dispute, **[\*\*\*12]** while Jenny described what was in the claims files. In addition, **Housing** called an expert witness on insurance issues, Thomas Carter, on the duty-to-defend issue based on factual disputes. IIC cross-examined these witnesses and argued its interpretation of their testimony. [7]

**FOOTNOTES**

[7] As it did in the prior appeal, **Housing** contends IIC invited any error on the bad faith theory by examining the witnesses and presenting its own theories on that topic. However, it was again appropriate for IIC to present evidence to controvert **Housing's** claims in that respect. ( *Hoel v. City of Los Angeles* (1955) 136 Cal. App. 2d 295, 310 [288 P.2d 989].)

The jury was instructed on the elements of the section 11580, subdivision (b)(2) case, and told this was not a bad faith insurance case. It then rendered special verdicts on property damages, tenant relocation, and litigation expenses, as well as an advisory verdict on the duty-to-defend issue as it applied to JBR, the insured. Judgment was entered in which the **[\*\*\*13]** trial court set forth its findings. First, the court stated, "Two juries have found that defendant **Industrial Indemnity Company** had a duty to defend the insured J.B. Reed Construction **Company** in the underlying **[\*\*110]** lawsuit filed by plaintiffs against

J.B. Reed Construction **Company,** decisions with which this Court agrees." [8] It then noted that the prior default judgment against JBR included costs and attorney fees awards in favor of **Housing.** Next, the court stated, "Had **Industrial Indemnity Company** ▾('IIC') not breached its contractual duty to defend, it would have been unquestionably responsible for both the costs and fees awarded against its insured, and additionally for interest on the entire judgment accruing after entry of the judgment and until IIC paid or tendered or deposited in court that part of the judgment that does not exceed the limits of IIC's liability thereon," but no payment had been made. The court then made this key finding: "IIC may not benefit by its breach of duty to defend Reed to the detriment of its insured against whom a judgment has been rendered. *Sanchez v. Truck Insurance Exchange* ▾ (1994) 21 Cal. App. 4th 1778 [26 Cal. Rptr. 2d 812]. **[\*\*\*14]** "

**FOOTNOTES**

**8** We review the judgment, not the trial court's reasoning. ( *D'Amico v. Board of Medical Examiners (1974) 11 Cal. 3d 1, 19 [112 Cal. Rptr. 786, 520 P.2d 10]*.) The reference to the prior jury's finding is merely superfluous. "Superfluity does not vitiate." ( Civ. Code, § 3537.)

Continuing, the trial court concluded that **Housing,** as a third party beneficiary of the policy, was entitled to recover under it. Thus, since the **[\*678]** jury had determined that JBR's liability to **Housing** arose out of events covered by the policy in question and within the policy period, **Housing** was entitled to benefits of the policy under both the Separate Limit Plan and the SPP of the policy. The damages award was made as follows: damages in the aggregate amount of $ 957,212.25, plus costs of suit, as taxed, in the amount of $ 116,959.82, plus postverdict interest. [9] This damages award is comprised of the following amounts:

**FOOTNOTES**

**9** The costs of suit award includes an amount attributable to expert witness fees ($ 81,005.50), pursuant to Code of Civil Procedure section 998, since this damages verdict was greater than the $ 750,000 offer **Housing** made to settle the suit before trial. However, our affirmance of the judgment as modified to reduce the damages due to **Housing** requires the costs award under Code of Civil Procedure section 998 to be stricken, thus reducing the costs of suit figure to $ 35,950.32.

**[\*\*\*15]** "a. The Court awards property damages pursuant to the subject separate limit plan (Coverage B) for property damage suffered by plaintiffs within one policy year, June 11, 1983, to June 10, 1984, under the policy's separate limit plan involving floor damage and relocation expenses, and improper drainage property damage in the aggregate amount of Two Hundred Thousand Dollars ($ 200,000.00).

"Pursuant to *Montrose Chemical Corp. v. Admiral Insurance* **Co**. *(1995) 10 Cal. 4th 645 [42 Cal. Rptr. 2d 324, 913 P.2d 878]*, this Court finds that property damage arising out of pipe leaks did not occur during a policy period.

"b. Interest on the judgment dated March 15, 1994, as against insured J.B. Reed Construction **Company** [in the amount of []($ 1,150,603.92)], is awarded to Plaintiffs to the date of filing of the verdict, October 29, 1999, at the rate of ten percent (10) per annum, simple interest, a total amount of []$ 647,169.51, *pursuant to the Supplementary Payments coverage of the CGL policy;*

"c. Costs of []$ 17,913.19 and attorneys' fees of []$ 92,129.55 awarded against defendants' insured, are awarded Plaintiffs *pursuant to the Supplementary Payments* **[\*\*\*16]** *coverage of the defendants' CGL policy* . . . ." (Italics added.)

**[\*\*111]** IIC appeals, chiefly to challenge the SPP award. **Housing** cross-appeals the judgment as to the property damage award.

DISCUSSION

Section 11580 *HN2*⟱requires that a liability insurance policy issued in California shall contain certain specified provisions, including this one set forth in **[\*679]** subdivision (b)(2): "[W]henever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

*HN3*⟱The threshold issue presented in a case brought under section 11580, subdivision (b)(2) is "whether the judgment, upon which plaintiff seeks to recover, represents damages of a type for which the insurer agreed to indemnify the [insured]. The plaintiff is in court as a beneficiary of the contract between the [insured] and **[\*\*\*17]** the insurer, and must bring her claim--the judgment--within the terms of that contract. [Citations.]" ( *Rafeiro v. American Employers' Ins. Co.* (1970) 5 Cal. App. 3d 799, 805 [85 Cal. Rptr. 701] (*Rafeiro*).) Only legal questions are presented as to the scope of the risks covered by the insurance, the risks excluded by the terms of the policy, and the nature of the damages awarded by the judgment. (*Ibid.*)

We discuss IIC's specific challenges to the judgment, which deal with the proper interpretation of the SPP and the evidentiary issues raised. We then turn to the **Housing** cross-appeal, which contends the trial court erroneously set the amount of covered property damage under the JBR policy periods.

I. *Appeal--SPP Issues*

A. *Introduction*

*HN4*⟱De novo review of the text of policy provisions applies. ( *Parsons v. Bristol Development Co.* (1965) 62 Cal. 2d 861, 865 [44 Cal. Rptr. 767, 402 P.2d 839].) The text of the SPP states that the insurer will pay, "in addition to the applicable limit of liability: [P] (a) . . . all costs taxed against **[\*\*\*18]** the insured *in any suit defended by the* **Company** and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the **Company** has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the **Company's** liability thereon." (Italics added.) In our prior opinion, we specified, "At any further proceedings, the trial court should specify whether such awards properly fall within the scope of the supplementary payments provision, since the underlying action was not in fact '*defended by the* **Company** . . . .' " (Prior opn.) We did not discuss any issues regarding the award of interest under the SPP, although **[\*680]** the underlying original judgment on review included an interest award on the prior default judgment. ( *SDHC, supra,* 68 Cal. App. 4th 526.) The prior opinion reversing that judgment thus left all the SPP issues open for further factual and legal development, consistent with the analysis of the prior opinion, which is in fact what occurred at this retrial.

Specifically, the trial court's judgment here confirmed the jury's advisory finding that IIC had a duty to defend **[\*\*\*19]** its insured JBR in the underlying **Housing** lawsuit. The court ruled, "IIC may not benefit by its breach of duty to defend Reed to the detriment of its

insured against whom a **[\*\*112]** judgment has been rendered." This ruling essentially held IIC liable under the SPP to **Housing**, due to the IIC inaction toward its insured, JBR.

At this point, we wish to clarify that although the underlying judgment in this case was taken by default against the insured JBR, the analysis we make under <u>section 11580, subdivision (b)(2)</u> does not depend on the default status of the underlying proceedings. Here, it is not disputed that the prove-up hearing on default was procedurally sufficient under the "Action Against **Company**" clause of the policy to establish that some damage was suffered by **Housing** within the meaning of the policy. Our issue is whether the judgment creditor bringing a <u>section 11580, subdivision (b)(2)</u> action is entitled to recover under the SPP, "on the policy and subject to its terms and limitations" (*ibid.*), in place of the insured against whom the underlying action was successful.

B. *Contentions on Appeal*

To support its contention that interest on the prior default judgment **[\*\*\*20]** ($ 647,169.51) and costs of $ 17,913.19 and attorney fees of $ 92,129.55 (in the nature of costs awarded against defendants' insured) were improperly awarded against it "*pursuant to the Supplementary Payments coverage of the CGL policy*," IIC makes several arguments. First, it contends the plain meaning of the SPP language is that it cannot apply absent an insurer's conducting of a defense in an underlying suit. It argues the purpose of the SPP is to call to account those insurers who defend cases brought against their insureds, but who nevertheless delay such case resolution to the insureds' detriment. It argues the SPP was not designed to apply to this type of situation, and if it applies here, the policy language "in any suit defended by the **Company**" has no meaning.

Further, IIC contends that the SPP must be read in the context of the basic insuring clause, which would not ordinarily cover such costs and fees **[\*681]** derived from an underlying lawsuit. It contends the SPP should be read strictly according to its literal language. Additionally, in its view, this was a very close case regarding coverage under the policy for property damage, which should militate against application **[\*\*\*21]** of the SPP.

Finally, since IIC does not believe that there may be any contractual basis for an award of SPP costs and interest under these peculiar facts, it argues that the award must be one of extracontractual damages, or bad faith, which would be improper in the context of an action under <u>section 11580, subdivision (b)(2)</u>. (See <u>Amato v. Mercury Casualty **Co.** (1997) 53 Cal. App. 4th 825, 838-839 [61 Cal. Rptr. 2d 909]</u> (*Amato*).) Further, since a <u>Code of Civil Procedure section 998</u> offer of $ 750,000 was made by **Housing** but rejected by IIC, IIC claims certain costs were improperly awarded against it, since if the SPP award was improper, only $ 200,000 **indemnity** damages remains and thus the <u>Code of Civil Procedure section 998</u> offer was not bettered at trial.

**Housing** responds to these arguments in a number of ways. It first claims that the insurance policy as so construed was merely an illusory bargain, because its recovery as a judgment creditor would be so severely limited if only **indemnity** payments, not recovery of costs and interests, were allowed. It argues other insurance doctrines indicate the **[\*\*\*22]** fallacy of the IIC position (e.g., the no action clause). For example, in *Sanchez v. Truck Ins. Exchange,* ▾ *supra,* <u>21 Cal. App. 4th 1778</u> (*Sanchez*), the court held that an insurer which refuses to defend its **[\*\*113]** insured cannot rely on the "no action" clause in its policy to preclude an action under <u>section 11580</u>. ( *Sanchez, supra,* 21 Cal. App. 4th at p. 1783.) There, a stipulated judgment was entered in the plaintiff's favor after a pretrial settlement of an action by the plaintiff against her employer, but the trial court found the judgment was unenforceable against the employer's insurer. The Court of Appeal reversed, on the grounds that the plaintiff and her employer had settled the case in good faith after the insurer failed to provide the insured with a defense against the complaint, which sought potentially covered damages. ( <u>*Id.* at pp. 1781-1783</u>.)

As part of its analysis, the court in *Sanchez* cited *Malmgren v. Southwestern Auto. Ins. Co.* (1927) 201 Cal. 29, 33 [255 P. 512], which held that a policy could not require as a condition precedent to an injured person's right of action that additional **[\*\*\*23]** requirements beyond the statutory terms be met, because such imposition of additional requirements was in derogation of or in conflict with the purpose of the statute. ( *Sanchez, supra,* 21 Cal. App. 4th at p. 1783.) **Housing** is arguing here that a duty to defend was owed to the **[\*682]** insured and the provisions of section 11580, subdivision (b)(2), indicate there should be consequences to the failure to perform that duty, in the form of statutory recovery by a judgment creditor of the insured.

**Housing** also argues IIC is in error in claiming these are extracontractual rights not to be allowed to a third party beneficiary of an insurance contract. It contends **Housing** should recover these costs and interest awards under the written policy terms, because the Action Against **Company** clause in the policy provides rights to the judgment creditor to recover "to the extent of the insurance afforded by the policy," and "insurance" amounts to a whole bundle of different types of rights to recovery.

Most convincingly, **Housing** contends this is a fairly simple example of the excuse of a condition precedent, due to the actions of the contracting party in preventing or making **[\*\*\*24]** impossible the performance or happening of a condition precedent. ( *Rains v. Arnett* (1961) 189 Cal. App. 2d 337, 347 [11 Cal. Rptr. 299]; *Exchequer Acceptance Corp. v. Alexander* (1969) 271 Cal. App. 2d 1, 14 [76 Cal. Rptr. 328].) Although IIC responds that this basic doctrine should not be applied in the insurance context, since few appellate authorities have done so, it does not explain why ordinary rules of contractual interpretation may not apply in this context. ( *AIU Ins. Co. v. Superior Court* (1990) 51 Cal. 3d 807, 822 [274 Cal. Rptr. 820, 799 P.2d 1253].)

The trial court ruled in favor of **Housing**, concluding on the SPP issue, "IIC may not benefit by its breach of duty to defend Reed to the detriment of its insured against whom a judgment has been rendered. [Citation.]"

After the appeal was briefed and oral argument was held, this court requested further briefing from the parties on the difficult issues surrounding the applicability of the SPP in this action by a judgment creditor of an underlying judgment against the insured. **[\*\*\*25]** [HN5] ⊤ Under section 11580, subdivision (b)(2), the judgment creditor of an insured is a third party beneficiary of the insurance contract between the insurer and the insured. ( *Murphy, supra,* 17 Cal. 3d 937, 942-943.) In light of the rule stated in *Murphy* that a third party beneficiary's right to performance is based upon the contracting parties' intent to benefit it, and the third party beneficiary "should not be permitted to enforce covenants made not for his benefit, but rather for others" ( *id.* **[\*\*114]** at p. 944, 132 Cal. Rptr. 424, 553 P.2d 584), we asked whether the SPP in this case was such a contract term or covenant that was made solely for the benefit of the contracting parties (insurer and insured), such that a third party beneficiary should not be allowed to enforce it. We also inquired whether the record showed that this prior default judgment against JBR, the insured, was obtained through a **[\*683]** fully litigated proceeding, such that sufficient evidence supports the underlying judgment, and whether the policy provided coverage according to the **indemnity** relief awarded in the judgment.

Finally, in our letter to counsel, we noted **[\*\*\*26]** that in *Prichard v. Liberty Mutual Ins. Co.* (2000) 84 Cal. App. 4th 890, 911-913 [101 Cal. Rptr. 2d 298] (*Prichard*), the analysis is made that an SPP entitlement is a function of the insurer's defense obligation, not its **indemnity** obligation. The court there states that SPP payments are independent of coverage. The parties duly filed their supplemental briefs responding to these issues.

*C. Analysis*

To analyze these issues, we first reiterate that the prior opinion in this case left open for retrial the entire question of any entitlement of **Housing** to enforce the SPP. Such an entitlement under the SPP must stem from the coverage afforded JBR "on the policy and subject to its terms and limitations." (§ 11580, subd. (b)(2).) [HN6]**Housing's** rights are those of a third party beneficiary of the insurance contract. We should examine the context in which the SPP clause is found in the policy, to determine its scope of relief and the identity of the parties who may seek redress to obtain such relief. Determining these rights is a legal question dealing with the scope of the **[\*\*\*27]** coverage of the policy, and the nature of the damages and costs and interest awarded by the prior default judgment. ( *Rafeiro, supra,* 5 Cal. App. 3d 799, 805.) We should focus not upon general public policy considerations, but on the language of the particular policy. ( *Knippen v. Glens Falls Ins. Co.* (D.C. Cir. 1977) 564 F.2d 525, 529.) To address these issues, we outline the terms of the policy and then the applicable rules for interpreting it, as they have arisen in varying factual contexts.

1. *Policy Terms*

The text of the SPP that gave rise to the award of costs and interest to **Housing** states that the insurer will pay, "*in addition to the applicable limit of liability*: [P] (a) . . . *all costs taxed against the insured in any suit defended by the Company* and all *interest on the entire amount of any judgment therein* which accrues after entry of the judgment and before the **Company** has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the **Company's** liability thereon." (Italics added.) As suggested by the italics above, there are several particularly significant portions of the SPP, **[\*\*\*28]** including costs, interest, and the limit of liability under the policy.

**[\*684]** We read the SPP together with other controlling portions of the policy. As relevant here, the insuring clause reads: "The **Company** will pay on behalf of the insured *all sums which the insured shall become legally obligated to pay as damages* because of: . . . Coverage B - property damage to which this insurance applies, caused by an occurrence, and the **Company** shall have the right and *duty to defend* any suit against the insured seeking damages on account of such bodily injury or property damage . . . ." (Italics added.)

**[\*\*115]** The general intent of section 11580, subdivision (b)(2) is implemented in this policy by the Action Against **Company** clause: "No action shall lie against the **Company** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the **Company.** Any person . . . who has secured such judgment or written agreement **[\*\*\*29]** shall thereafter *be entitled to recover under this policy to the extent of the insurance afforded by this policy* . . . . Bankruptcy or insolvency of the insured . . . shall not relieve the **Company** of any of its obligations hereunder."

2. *Applicable Doctrines in Contract and Insurance Law*

In order to decide **Housing's** entitlement to the SPP award of costs and interest, we are required to take into account several doctrines in interpreting these policy provisions. [CA(1)] **(1)** Insurance is a means of distributing risks of loss. "[HN7]An insurance policy is a contract between an insurer and an insured [citations], the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss [citations]. [P] To yield their meaning, the provisions of a policy must be considered in their full context. [Citations.]" ( *Buss v. Superior Court* (1997) 16 Cal. 4th 35, 44-45 [65 Cal. Rptr. 2d 366, 939 P.2d 766].)

CA(2)☇(2) HN8☇In the liability context, such **[\*\*\*30]** loss exposure can take one of two forms. It may be the possibility of legal liability imposed on the defendant, or alternatively, "there is an exposure based on the necessity of mounting a defense against a claim or lawsuit which seeks the imposition of liability." The latter type of loss is addressed by the duty to defend expressed "in the coverage clause and the 'supplementary payments' provision." (4 Cal. Insurance Law and Practice (2001) §§ 41.05[1], 41.05[5], pp. 41-19, 41-23, fn. omitted.)

CA(3)☇(3) HN9☇The duty to defend runs directly to the insured, and is discharged when the action against the insured is concluded: "Standard comprehensive **[\*685]** or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim. They also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim. . . . [P] The insurer's duty to indemnify runs to claims that are **[\*\*\*31]** actually covered, in light of the facts proved. [Citations.] By definition, it entails the payment of money in order to resolve liability. [Citations.] . . . [P] *By contrast, the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed.* [Citations.] *It entails the rendering of a service, viz., the mounting and funding of a defense* [citations] *in order to avoid or at least minimize liability* [Citation.] . . . It is discharged when the action is concluded. [Citation.]" ( *Buss v. Superior Court, supra,* 16 Cal. 4th at pp. 45-46, fn. omitted and italics added.)

CA(4)☇(4) HN10☇Special contractual rules apply in the third party beneficiary context created by section 11580, subdivision (b)(2), to limit the rights of a third party claimant against an insured: " **[\*\*116]** As a general rule, absent an assignment of rights or a final judgment, a third party claimant may not bring a direct action against an insurance **company** on the contract because the insurer's duties flow to the insured. [Citations. **[\*\*\*32]** ] There are several exceptions to the general rule which prohibits a third party claimant from suing an insurer. For example, once a party has a final judgment against the insured, the claimant becomes a third party beneficiary of the insurance policy and may enforce the terms which flow to its benefit pursuant to Insurance Code section 11580. [Citations.]" ( *Harper v. Wausau Ins. Co.* (1997) 56 Cal. App. 4th 1079, 1086-1087, fn. omitted [66 Cal. Rptr. 2d 64] (*Harper*).)

CA(5)☇(5) Accordingly, HN11☇a claimant may sue the insurer as a third party beneficiary utilizing traditional contract principles, when the duties under the policy flow directly in favor of the third party (e.g., medical payment provisions in a liability policy). (*Harper, supra,* 56 Cal. App. 4th at pp. 1086-1087.) These rights are grounded in Civil Code section 1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." ( *Harper, supra,* 56 Cal. App. 4th at p. 1086.) **[\*\*\*33]** Such third party beneficiary principles do not require that the person to be benefited be named in the contract, but rather allow the third party to qualify as a contract beneficiary if "the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement." ( *Id.* at p. 1087.) Further: "It is well settled, however, HN12☇that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. [Citations.] The Supreme Court has held: 'A third **[\*686]** party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.]' [Citations.]" (*Ibid.*)

When the judgment creditor of an insured proceeds against the insurer under section 11580, subdivision (b)(2), many problems can arise concerning (for example) the nature and extent of the injured party's interests in the **[\*\*\*34]** insurance policy, to what extent the insurer is

bound by the judgment or to what extent it can be challenged in the third party claimant's action, and what is the meaning of the language in the statute, "subject to its terms and limitations." (4 Cal. Insurance Law and Practice, *supra,* § 41.60[1], pp. 41-117 to 41-119.) Additionally, the statute allows that the insurer may assert against the creditor (the injured party) any defenses the insurer would have had against the insured. These usually include lack of cooperation with or notice to the insurer. (*Id.*, § 41.62, pp. 41-132 to 41-133.) These concerns are addressed by the policy provision commonly entitled Action Against **Company,** or the no action clause, such as we have here. (*Ibid.*)

For example, in *Murphy, supra,* 17 Cal. 3d at pages 943-944, it is stated that **HN13**the implied-in-law duty to settle found in the insurance policy does not flow to the third party claimant, and an assignment is needed for a claimant to enforce it. Similarly, there are other limits on a judgment creditor/third party claimant's ability [***35] to sue the insurer of the tortfeasor. "The question plaintiff's contention raises is whether a third party judgment creditor of the insured may bring suit against the insurer [**117] for breach of the duty to defend. **HN14**Absent an assignment, the answer is no; a third party claimant cannot bring an action upon a duty owed to the insured." ( *Jane D. v. Ordinary Mutual* (1995) 32 Cal. App. 4th 643, 650 [38 Cal. Rptr. 2d 131] (*Jane D.*).)

To examine whether the SPP should be considered to be a provision not flowing to the benefit of a third party judgment creditor, either directly or indirectly, we look to case law under section 11580.

3. *Related Case Law Analysis*

In *Sanchez, supra,* 21 Cal. App. 4th 1778, as relied on by the trial court here, the Court of Appeal held that where an insurer has refused to defend its insured, the injured claimant may settle the action as he or she sees fit, as long as there is no fraud or collusion. The court stated no authority had been presented giving effect to a no action clause where the insurer had wrongfully [***36] failed to provide a defense to its insured. Accordingly, the no action clause in the policy was no bar to an action by the third party claimant to [*687] recover benefits from the insurer under section 11580. ( *Sanchez, supra,* 21 Cal. App. 4th at p. 1783.) As explained by a commentator, this case represents the principle that a stipulated judgment may be enforceable in a direct action against the insurer under section 11580, subdivision (b)(2) where the insurer has "cast the insured adrift" BY REFUSING TO PROVIDE A DEFENSE: " 'Where the insurer refuses to defend, to indemnify or to participate in any way in the underlying lawsuit, the insured may settle the lawsuit to his or her best advantage, so long as there is no fraud or collusion.' [Citation.] " (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) P 15:1052, p. 15-189.)

This scenario in *Sanchez, supra,* 21 Cal. App. 4th 1778, is different from the case between **Housing** and IIC, because the policy proceeds sought by the injured claimant were evidently **indemnity** monies, not costs and interest under an SPP. More importantly, IIC is not relying on the Action Against [***37] **Company** clause to say the underlying case was inadequately litigated, but instead is saying that there is no contractual right for **Housing** to recover defense costs, because **Housing** itself was not owed a defense duty, and these are not the types of policy proceeds recoverable by a person or entity who is not itself the insured.

Another related case is *Hand v. Farmers Ins. Exchange* ▾ (1994) 23 Cal. App. 4th 1847 [29 Cal. Rptr. 2d 258], in which the court distinguished between the established rule not allowing a judgment creditor of the insured a right to sue the insurer for bad faith refusal to settle, and a newly announced rule that the judgment creditor may directly sue the insurer for bad faith refusal to pay a final judgment against the insured. (See 2 Cal. Insurance Law and Practice, *supra,* § 13.03[3][e], p. 13-30.) The Rutter Group commentators point out that although the usual rule is that in an action under section 11580, subdivision (b)(2), the

judgment is enforceable against the insurer only up to its policy limits," "the result is different where the insurer committed bad faith after the judgment became final. As stated above, the judgment creditor [***38] is a third party beneficiary of the policy (including its covenant of good faith and fair dealing). Thus, the insurer owes a duty to exercise good faith in not withholding adjudicated damages owing to the judgment creditor. [See, *Hand v. Farmers Ins. Exch.,* supra, 23 CA4th at 1859, 29 CR2d at 266--insurer continued to unreasonably deny coverage and refused payment of judgment rendered against its insured]." (Croskey et al., Cal. [**118] Practice Guide: Insurance Litigation, *supra,* P 15:1041, p. 15-186, italics omitted.) The commentators then say, "It has been suggested that allowing a judgment creditor to sue for bad faith may be inconsistent with [California Insurance Code section] 11580(b)(2), which [*688] limits the creditor to an action 'to recover on the judgment' and subjects that judgment to the policy's 'terms and limitations.' [P] One case states, '[T]he analysis in *Hand* might be viewed as improperly extending the law of tortious bad faith.' [Citations.]" (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* P 15:1040.1, p. 15-187, italics omitted.) Moreover, since there is no bad faith theory [***39] or implied covenant analysis legitimately involved in the case before us, the authority of *Hand, supra,* 23 Cal. App. 4th 1847, is not helpful.

Another related case is *Amato, supra,* 53 Cal. App. 4th 825, 838-839, in which the insured was allowed to recover damages for his insurer's tortious breach of the duty to defend, which caused him to suffer a default judgment. Even though there was no coverage on the underlying case, the insured in *Amato* was still allowed to recover because of the judicially expanded duty to defend that was breached, as to questionable claims where there had been a potential of coverage. Since **Housing** is not the insured who is clearly owed the duty to defend, this case does not advance the analysis here.

More relevant is *Jane D., supra,* 32 Cal. App. 4th 643, in which the plaintiff had obtained a default judgment for damages against a priest for sexual misconduct. She then sought declaratory relief establishing coverage for the judgment under a liability insurance policy issued to the priest's employer, in part by asserting the insurer had failed to defend the priest. However, she had not been able to obtain [***40] an assignment of the priest's cause of action against the insurer for failure to provide a defense. Accordingly, she, as his judgment creditor, could not assert such a duty against the insurer to support her claim under the policy. ( *Id.* at p. 650, citing *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal. 3d 1009, 1018 [278 Cal. Rptr. 64, 804 P.2d 689].)

In *Insurance Co. of North America v. National American Ins. Co.* (1995) 37 Cal. App. 4th 195 [43 Cal. Rptr. 2d 518] (*INA*), an action between successive insurers to determine allocation of liability, this court discussed whether an amount awarded for attorney fees and costs against the insured in the underlying litigation should be applied to reduce the amount due from one insurer under the policy limits, or should be characterized as a " 'cost[] taxed against the Insured in any suit defended by the **Company**' under the 'Supplementary Payments' section of the policy." ( *Id.* at p. 206.) This court concluded as between the two insurers that the fees and costs award was an amount falling under the supplementary payments section of the policy, because there was [***41] an underlying contractual fee agreement in an **indemnity** agreement between the insured (a subcontractor) and the general contractor. This court noted: "That contract included a 'prevailing party' clause entitling [*689] the prevailing party to its attorney fees. Attorney fees under such a contractual clause are allowable as costs. [Citation.] In the underlying [construction defect] suit, the court's award against [the insured] included 'costs,' among which were . . . attorney fees. This evidence supports the conclusion the [fees and costs award] was a 'cost' assessed against [the insured] under the prevailing party clause, which would fall within the Supplementary [**119] Payments provision." ( *Id.* at pp. 206-207.)

In *Prichard, supra,* 84 Cal. App. 4th 890, a liability insurance bad faith action, the court states that an SPP providing for costs is a function of the insurer's defense obligation, not its

**indemnity** obligation: "In a word, the insurance contract obligates the insurer to pay 'costs' *whenever it must defend the suit,* independent of whether those costs would otherwise be covered by way of the insurer's **indemnity** obligation. [Citation.]" ( *Id.* at p. 895, italics added.) There it was the insured who was seeking from his insurer an award of costs assessed against him in the underlying litigation, which he lost even though he received a partial defense under a reservation of rights. ( *Id.* at p. 911.)

A commentator in the area has explained the basis for these latter two holdings as follows: **"Attorney fee awards not 'damages':** Attorney fee awards are not 'damages' under a CGL policy. Fee awards do not compensate claimants for the injury that brought them to court and therefore do not fit the concept of 'damages' in its ordinary and popular sense. [Citations.] [P] . . . **Compare--covered as 'costs taxed against insured':** *However, a CGL policy also obligates a liability insurer to pay 'with respect to any claim or "suit" WE DEFEND: . . . 5. All costs taxed against the insured in the "suit." '* . . . [P] Attorney fee awards *authorized 'by contract, statute or law' are recoverable as costs of suit. [Citation.] [P] Therefore, fee awards against the insured fall within the insurer's defense obligation. [Prichard v. Liberty Mut. Ins. Co.,* supra, 84 **[\*\*\*43]** [Cal. App. 4th] at 912 . . .; *Insurance Co.* of North America v. National American Ins. *Co.* of Calif.[, *supra,*] 37 [Cal. App. 4th] 195, 206-207 . . .] [P] . . . **Comment:** Insurers complain that forcing them to pay attorney fee awards against an insured is unfair because the amount awarded often bears no relation to the damages involved (e.g., because of 'lodestar' multipliers). However, if insurers want to exclude coverage for fee awards, they should revise the CGL form. [See *Prichard v. Liberty Mutual Ins. Co., supra,* [84 Cal. App. 4th] at 912 . . ., fn. 22.]" (Croskey, et al., Cal. Practice Guide: Insurance Litigation, *supra,* PP 7:160, 7:160.1, 7:160.2, p. 7A-52, italics omitted and added.)

While this analysis is illuminating, we do not believe it applies to the facts before us, where there is no insured who is seeking recovery due to the duty **[\*690]** to defend, nor is there any issue regarding reimbursement between insurers of such applicable costs provisions. In *INA, supra,* 37 Cal. App. 4th 195, the insurer NAICC was apparently involved in defending the underlying construction defect action, and paid that claimant over **[\*\*\*44]** $ 300,000 on the underlying judgment. ( *Id.* at p. 200.) As between successive insurers, it was properly held liable under its SPP for the attorney fees and costs its insured had to pay a claimant, as part of its defense obligation, so that both **indemnity** and SPP amounts were separately owed. ( *Id.* at pp. 200-201.)

The court in *Prichard, supra,* 84 Cal. App. 4th 890, was dealing with a version of the SPP which read in relevant part as follows: " 'We will pay, *with respect to any claim or "suit" we defend:* [P] . . . [P] 5. All costs taxed against the insured in the "suit." ' " ( *Id.* at p. 911, italics added.) In that case, the insurer had defended the underlying action up to a point. Then, in subsequent bad faith litigation, **[\*\*120]** the insured Prichard was allowed to seek reimbursement from his insurer for attorney fees awarded against him when he lost the underlying suit that was being defended by the insurer, which then refused to indemnify him. These fees were directly related to the defense obligation to the insured and were not sought by a third party judgment creditor.

In contrast, our **Housing**/JBR/IIC **[\*\*\*45]** case involves a claim under the policy's SPP by a nonparty seeking to invoke the defense duty owed to the insured, where there was no defense provided below to that insured, JBR. Later, coverage under the policy was found proper. The question remains whether there is any basis for IIC to be held liable under the SPP to **Housing**, a third party judgment creditor, due to its breach of the duty to defend the insured JBR.

4. *Application of Above Rules*

CA(6)☞**(6)** Returning to the policy provisions, a threshold question to be resolved is whether

we must treat the costs and interest portions of the SPP differently in this context. In relevant part, the SPP requires that the insurer will pay, "*in addition to the applicable limit of liability*: [P] (a) . . . *all costs taxed against the insured in any suit defended by the* **Company** and all *interest on the entire amount of any judgment therein* which accrues after entry of the judgment . . . ." (Italics added.) **Housing** would argue that either or both of the costs and interest portions may separately justify awards, based on the amounts assessed against the insured, JBR, because the language "*in any suit defended by the* **Company**" may **[\*\*\*46]** or may not apply both to the "*all costs taxed against the insured*" and the "*all interest on the entire amount of any* **[\*691]** *judgment therein*" language. However, we disagree, because both the costs provision and the interest provision are equally clearly linked to the defense of the action by the insurer, even though an underlying judgment can be entered and accrue interest regardless of whether there was an insurance defense provided. (See *Knippen v. Glens Falls Ins. Co., supra*, 564 F.2d 525, 529-531, regarding an insurer's duty to tender funds to the insured to stop interest thereon from accruing.) In any case, this policy language regarding interest, "any judgment therein," refers back to the suit that was defended by the Insurer. Thus, we will read the SPP as treating both the costs and interest provisions alike.

*CA(7a)* **(7a)** The key question here is: For whose benefit was the SPP written into the insurance contract, and who can enforce it, in the situation in which there was no defense provided in an underlying action? The SPP obligation clearly arises out of the defense duty. It does not make any difference that it is entitled "supplementary" to the **[\*\*\*47]** applicable limits of liability, because the coverage question and the SPP issues are different entitlements, based on the type of loss anticipated and to whom.

A similar question arises from reading the SPP together with the Action Against **Company** clause. Is the "insurance that is afforded by this policy" only **indemnity** money, or may it also include litigation expenses and other costs and fees as part of the whole bundle of insurance policy entitlements? *HN15* Any allowable recovery by a judgment creditor under the statute is that which is "on the policy and subject to its terms and limitations." (§ 11580, subd. (b)(2).)

Having considered the available authority, we find several important rules work against **Housing's** claim to the SPP award of costs and interest. First, *HN16* the defense duty is a covenant in the policy that runs only to the insured. Under **[\*\*121]** *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295 [24 Cal. Rptr. 2d 467, 861 P.2d 1153], the defense **[\*\*\*48]** duty terminates at the end of the action. An action for its breach can be brought by the insured or assigned away. (See *Jane D., supra*, 32 Cal. App. 4th 643, 650.) However, there is no continuing defense duty that can be redressed later by the third party judgment creditor, by seeking damages for the SPP amounts under *section 11580, subdivision (b)(2)*. Thus, the trial court's analysis was off the mark to say IIC should not benefit from its breach of duty to defend JBR, so therefore an award was due to **Housing**.

Next, third party beneficiary rules in the insurance context suggest that the statute creates a third party beneficiary relationship between the insurer and **[\*692]** the judgment creditor, but only as to those policy terms that inure directly to the benefit of a judgment creditor. These are the policy terms that deal with the imposition of legal liability. (See 4 Cal. Insurance Law and Practice, *supra*, § 41.05[1], p. 41-19.) The Action Against **Company** clause says the creditor is entitled to recover "to the extent of the insurance afforded by the policy." Insurance is not defined as a policy term, and could include both substantive **indemnity** rights **[\*\*\*49]** and the exposure to litigation expenses. However, it is clear that *HN17* the judgment creditor can only enforce those covenants in the policy that were included for the benefit of the third party creditor. ( *Murphy, supra*, 17 Cal. 3d 937.) As to the defense duty, the third party judgment creditor is not a creditor beneficiary, but only an incidental beneficiary. (See *Harper, supra*, 56 Cal. App. 4th 1079, 1089.) It seems unlikely

that the defense costs provision, or the linked interest provision applying to the judgment rendered "therein" (i.e., in an action defended by the insurer on behalf of the insured) was intended by the parties to the insurance contract to inure to the benefit of an eventual third party judgment creditor.

In *Murphy, supra,* 17 Cal. 3d at pages 940, 942, the court discusses the duty to settle, which is not found directly within the insurance policy but which is only implied in law, as not justifying recovery outside the policy terms. Here we have a written, not implied, duty to defend, but it nevertheless runs only to the [***50] insured and exists only in the underlying action. (See coverage clause in fn. 5, *ante*.) Accordingly, there is no indication that the third party beneficiary judgment creditor was intended to benefit from it.

Similarly, other limits have been imposed on the judgment creditor/third party claimant's ability to sue the insurer of the tortfeasor. *CA(8)*⨏(8) A third party claimant cannot bring an action upon a duty owed only to the insured, such as the duty to defend, without an assignment of the cause of action for breach of such duty. ( *Jane D., supra,* 32 Cal. App. 4th 643, 650.) In contrast, because of the statutory purpose of the section 11580, subdivision (b)(2) cause of action to ensure recovery for injured claimants, there is no need for an assignment of the covered insurance benefits portion of the underlying judgment, in order for a judgment creditor to enforce it. *CA(7b)*⨏(7b) Thus, since the defense duty ordinarily terminates at the end of the underlying action, its existence or breach does not automatically transfer rights to the insured's judgment creditor that would fall within the scope of the benefits provided by the policy's coverage provisions under section 11580, subdivision [***51] (b)(2). Like the implied covenant's duty to settle, the defense duty and related costs/interest SPP fall outside the scope of [**122] the policy provisions that may be enforced by a judgment creditor of the insured, where there has been no assignment of such a cause of action.

[*693] Reading the three important policy provisions together (SPP, insuring clause, Action Against **Company**), we conclude the duty to defend was owed solely to the insured JBR, and in the absence of an assignment of a failure to defend claim, **Housing** as the judgment creditor should not be able to recover these related defense costs and interest on the judgment therein as a policy benefit under the SPP by way of a third party beneficiary theory. Otherwise, the duty to defend issue presented by the SPP becomes too closely tied up with the bad faith issues that were not allowed to be included in the retrial, and which unfortunately caused a lot of confusion at trial here.

We are well aware that the condition precedent argument made by **Housing** has great equitable appeal (i.e., any policy requirement that a defense have been actually provided earlier should be excused as a condition precedent to recovery [***52] under the SPP by the creditor, due to the actions of the contracting party [Insurer] in preventing or making impossible the performance or happening of a condition precedent; *Rains v. Arnett, supra,* 189 Cal. App. 2d 337, 347). However, we do not read the SPP as containing a condition precedent that the underlying action must have been defended or required to have been defended by the insurer, in order for the SPP to apply, or that such a condition precedent can be excused. Even if it does, the judgment creditor remains only an incidental beneficiary of the insurance contract in this respect. Instead, we read the SPP as giving the right to recover costs taxed against the insured in any suit defended by the insurer, or interest on such a judgment, only to the insured who was directly owed the defense duty. Here, the insured, JBR is defunct. Nevertheless, there simply were no *"costs taxed against the insured in any suit defended by the* **Company**" that exist in the underlying judgment. Also, there could have never have been any *"interest on the entire amount of any judgment therein,"* since there was no such suit defended by IIC, and **Housing** cannot now create one [***53] through operation of law under section 11580, subdivision (b)(2).

Finally, since only the $ 200,000 **indemnity** payment remains recoverable as covered

property damage under the policy by **Housing, Housing** therefore has not improved upon the $ 750,000 demand that it earlier made, and thus the Code of Civil Procedure section 998 costs should be deleted from the costs provision of the judgment, and we order it modified accordingly (to delete the $ 81,005.50 expert fees awarded).

II, III *

## FOOTNOTES

* See footnote 1, *ante*, page 669.

. . . .

**[*694]** DISPOSITION

The judgment is affirmed as modified to strike the damages awards except for the $ 200,000 representing **indemnity**, and to reduce the costs award to $ 35,950.32, by deleting that part of the costs award to **Housing** that is based on Code of Civil Procedure section 998. As so modified, the judgment in favor of **Housing** is affirmed. Each party to bear its own costs on appeal. The trial court is directed **[***54]** to prepare a new judgment as modified above.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied February 19, 2002, and respondents' petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.

Source: My Sources > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined ⓘ
Terms: **San Diego housing commission v. Industrial indemnity company, 95 cal. app. 4th 669** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Friday, March 21, 2008 - 10:48 AM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
(A) - Citing Refs. With Analysis Available
(i) - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

LexisNexis® *Total Research System*

Switch Client ⦙ Preferences ⦙ Sign Off ⦙ ?⦙ Help

My Lexis™ ⟍ Search ⟍ Research Tasks ⟍ Get a Document ⟍ Shepard's® ⟍ Alerts ⟍ Total Litigator ⟍ Transactional A

Service: **Get by LEXSEE®**
Citation: **84 Cal. App. 4th 890**

*84 Cal. App. 4th 890, \*; 101 Cal. Rptr. 2d 298, \*\*;*
*2000 Cal. App. LEXIS 858, \*\*\*; 2000 Cal. Daily Op. Service 9031*

View Official Reports PDF of This Document  **($)**

CHARLES E. PRICHARD et al., Plaintiffs and Respondents, v. LIBERTY MUTUAL INSURANCE COMPANY, Defendant and Appellant.

No. G021825.

COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT, DIVISION THREE

84 Cal. App. 4th 890; 101 Cal. Rptr. 2d 298; 2000 Cal. App. LEXIS 858; 2000 Cal. Daily Op. Service 9031; 2000 Daily Journal DAR 11974

November 8, 2000, Decided

**SUBSEQUENT HISTORY:** **[\*\*\*1]** As Modified on Denial of Rehearing December 6, 2000. Review Denied February 14, 2001, Reported at: 2001 Cal. LEXIS 1082.

**PRIOR HISTORY:** Appeal from a judgment and an order of the Superior Court of Orange County. Super. Ct. No. 745598. William F. McDonald, Judge.

**DISPOSITION:** The judgment and new trial order are affirmed in part and reversed and remanded with directions in part, in accord with the summary provided at the beginning of this opinion. Given the split decision, each side will bear its costs in this appeal.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant insurer appealed an order of the Superior Court of Orange County, California, which determined defendant had a duty to defend plaintiff insured in a defamation action.

**OVERVIEW:** Plaintiff insured was sued in a defamation action and sought the aid of defendant, its insurer. Certain of the claims were covered by a policy issued by defendant, others were not. An insurance dispute ensued and the trial court issued a ruling that: (1) the insurer had a duty to defend the underlying "mixed action" to the end; and (2) the insurer breached its duty to defend by trying to reserve its rights to obtain reimbursement of attorneys' fees expended in an appeal. On appeal, the court reversed in part. The usual formulation of the termination point of the duty to defend was until no potential coverage existed. Here, the potential for defendant's indemnification liability continued into the appeal period. However, it was clear error for the trial court to conclude that the insurer had breached its duty to defend by unilaterally reserving its rights to seek reimbursement for costs incurred to defend portions of the action for which defendant had no obligation to defend.

**OUTCOME:** Judgment affirmed in part, reversed in part, and remanded. Defendant's duty to defend plaintiff continued into the appeal period; however, defendant did not lose its right to reimbursement of attorneys' fees expended in an appeal.

**CORE TERMS:** insurer, reimbursement, insured, coverage, underlying action, duty to defend, defamation, policy period, settlement, policyholder, cause of action, mixed, bad faith, new trial, indemnification, underlying case, indemnity, trial order, obligated, breached, underlying suit, implied in law, contractual, defending, italics, insurance contract, reservation of rights, attorney fees, unilaterally, declaratory

## LEXISNEXIS® HEADNOTES                                                              ⊟ **Hide**

Civil Procedure > Judgments > General Overview 🖫
Civil Procedure > Appeals > Reviewability > Adverse Determinations 🖫
*HN1*⚓A party can appeal from a partial new trial order and attack even those parts of the judgment that are not subject to the new trial order.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🖫
*HN2*⚓The usual formulation of the termination point of the duty to defend is until the underlying suit is concluded or it has been shown that there is no potential for coverage.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > Excess Insurance > Obligations > Defense 🖫
Insurance Law > General Liability Insurance > Obligations > Defense 🖫
*HN3*⚓An insurer can not unilaterally terminate a defense for which it potentially is responsible. However, the insurer can obtain reimbursement from excess carriers for defense costs for the period between actual exhaustion of policy limits and proof of exhaustion.  More Like This Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🖫
*HN4*⚓An insurer's right to seek reimbursement from an insured is implied in law as a matter of fairness to balance out the seeming unfairness of requiring an insurer to defend claims which it never contractually agreed to defend.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🖫
*HN5*⚓An insurer's duty to defend may include, in an appropriate case, a duty to appeal.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🖫
*HN6*⚓An insurer's right to seek reimbursement is implied in law, as a counterbalance to an insured's right, also implied in law, to have a defense of the whole of an action.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Types of Contracts > Implied-in-Law Contracts 🖫
Insurance Law > General Liability Insurance > Obligations > Defense 🖫
*HN7*⚓An insurer's right to reimbursement for defense costs for never-even-potentially-covered-claims is predicated on a legal right implied in law as quasi-contractual, not a matter of any agreement between the parties.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Types of Contracts > Implied-in-Fact Contracts 🖫
Contracts Law > Types of Contracts > Implied-in-Law Contracts 🖫

Insurance Law > Claims & Contracts > Reservation of Rights > General Overview 🖼
*HN8*⬆The insurer has a right of reimbursement that is implied in law as quasi-
contractual, whether or not it has one that is implied in fact in the policy as
contractual. More Like This Headnote | *Shepardize*: Restrict By Headnote

Insurance Law > Claims & Contracts > Reservation of Rights > General Overview 🖼
*HN9*⬆An insurer can reserve its reimbursement right unilaterally and without any
agreement. More Like This Headnote

Criminal Law & Procedure > Counsel > Right to Counsel > General Overview 🖼
Insurance Law > General Liability Insurance > Multiple Insurers 🖼
Insurance Law > General Liability Insurance > Obligations > Defense 🖼
*HN10*⬆Courts can order the sharing of defense costs where coverage is provided by
more than one insurer. More Like This Headnote

Insurance Law > General Liability Insurance > Exclusions > Contractual Liabilities 🖼
*HN11*⬆The insurer has the burden of establishing the applicability of a policy
exclusion. More Like This Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🖼
*HN12*⬆An insurer doesn't necessarily escape an indemnity obligation just because a
case is settled. More Like This Headnote | *Shepardize*: Restrict By Headnote


**HEADNOTES / SYLLABUS**                                           ⊟**Hide**


**SUMMARY:**

**CALIFORNIA OFFICIAL REPORTS SUMMARY**


An insured brought an action against his liability insurer and other insurance companies,
alleging multiple causes of action and seeking a declaration that the liability insurer had an
obligation to defend the insured in an underlying action for defamation and other claims
until its conclusion. The trial court filed a judgment ruling that the insurer had a duty to
defend the underlying mixed action (one in which some of the claims are at least
potentially covered and the others are not), that the insurer breached its duty to defend
by trying to reserve its rights to obtain reimbursement of defense costs, and that the
insurer was estopped to assert its right to contest coverage of the one cause of action
(defamation) that was potentially covered in the underlying action because it breached its
duty to defend. The trial court filed an order granting a partial new trial, so the insured
could seek recovery of damages for bad faith and the costs for the underlying action.
(Superior Court of Orange County, No. 745598, William F. McDonald, Judge.)

The Court of Appeal affirmed the judgment and new trial order in part, and reversed and
remanded with directions in part. The court held that the insurer was obligated to defend
the insured after the close of evidence in the underlying case, and therefore the insurer
was required to continue defending during the appeal, since the underlying case was not
yet over, and it was still possible that the insurer might have had some indemnification
liability, even after the close of evidence. The court also held that the trial court erred in
concluding that the insurer, by unilaterally reserving its rights to reimbursement, breached

its duty to defend. An insurer's right to seek reimbursement is implied in law, as a counterbalance to an insured's right, also implied in law, to have a defense of the whole of a mixed action. The court further held that the insurer did not breach the duty to provide a defense to its insured in the underlying action by sharing the defense costs with a second insurer. The court also held that the trial court did not err in denying the insurer an offset for a settlement paid by a second insurer. (Opinion by Sills, P. J., with Crosby and Bedsworth, JJ., concurring.)


**HEADNOTES**


**CALIFORNIA OFFICIAL REPORTS HEADNOTES**
Classified to California Digest of Official Reports


CA(1)⚖(1) **Appellate Review § 14--Decisions Appealable--Final Judgments-- Inadvertent Failure to Dispose of All Causes--Amendment of Judgment on Appeal.** -- In an insured's action against his liability insurer, seeking a declaration that the insurer had an obligation to defend the insured in an underlying action until its conclusion, the matter was cognizable on appeal, notwithstanding that the cause of action for bad faith was apparently not disposed of by the trial court, where the bad faith cause of action was omitted merely by inadvertence. In substance, that cause of action was subsumed in the trial court's determination that the insurer was not liable for bad faith and the provision in the judgment that the insured take nothing by way of the more specific cause of action for unreasonable denial of policy benefits. Under these circumstances, the appropriate course was for the appellate court to amend the judgment to reflect the manifest intent of the trial court. Given that there was a final judgment, the insurer had the right to attack the judgment in an appeal from a partial new trial order.

CA(2)⚖(2) **Insurance Contracts and Coverage § 107--Liability of Insurer--Duty to Defend Insured--After Close of Evidence in Underlying Case.** --The trial court properly ruled that a liability insurer was obligated to defend its insured after the close of evidence in the underlying case, and therefore the insurer was required to continue defending during the appeal. Usually the duty to defend terminates when the underlying suit is concluded, or when it has been shown that there is no potential for coverage. In this case the insurer was required to continue defending, since the underlying case was not yet over, and it was still possible that the insurer might have had some indemnification liability, even after the close of evidence. Just because evidence has closed in the underlying case does not mean the facts against the policyholder have necessarily calcified. A new trial could have been granted, and witnesses might have changed their stories or their memories might have improved. Also, the defamation judgment against the insured could have been overturned and another could have taken its place on remand.

[See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1135 et seq.]

CA(3)⚖(3) **Insurance Contracts and Coverage § 107--Liability and Indemnity Insurance--Duty to Defend Insured--Insurer's Reimbursement of Defense Costs for Claims Potentially Covered--Unilateral Reservation of Rights.** --In an insured's action against his liability insurer, seeking a declaration that the insurer had an obligation to defend the insured in an underlying action for defamation and other claims until its conclusion, the trial court erred in concluding that the insurer, by unilaterally reserving its rights to reimbursement, breached its duty to defend. The trial court concluded that the right of an insurer to obtain reimbursement in a mixed action (one in which some of the claims are at

least potentially covered and the others are not) is contractual, so that there must be new consideration, in addition to that provided by the contract, to support a reimbursement claim. However, the California Supreme Court held to the contrary in an unrelated case shortly after the trial court in this case ruled. The Supreme Court held that an insurer's right to seek reimbursement is implied in law, as a counterbalance to an insured's right, also implied in law, to have a defense of the whole of a mixed action. The insurer has a right of reimbursement for defense costs that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. The insurer's reimbursement right merely balances out the insured's right to a defense of the entirety of a mixed action.

*CA(4)*±(4) **Insurance Contracts and Coverage § 107--Liability and Indemnity Insurance--Duty to Defend Insured--Insurer's Sharing of Defense Costs with Second Insurer.** --A liability insurer did not breach the duty to provide a defense to its insured in an underlying action by sharing the defense costs with a second insurer. Courts can order the sharing of defense costs where coverage is provided by more than one insurer. Nor did the insured demonstrate that the insurer failed to provide a full defense when it refused to pay the insured's appellate counsel of choice more than $ 150 per hour, leaving the insured to pay any fees beyond that. The insured pointed to no evidence that the insurer actually paid appellate attorneys who were retained by it in the ordinary course of business, in the defense of similar actions in the community where the claim arose, more than $ 150 an hour.

*CA(5)*±(5) **Insurance Contracts and Coverage § 117--Offset--For Liability Insurer Based on Settlement Paid by Second Insurer.** --In an insured's action against his liability insurer, seeking a declaration that the insurer had an obligation to defend the insured in an underlying action for defamation and other claims until its conclusion, the trial court did not err in denying the insurer an offset for a $ 600,000 settlement paid by a second liability insurer. The $ 600,000 settlement did not necessarily include any portion attributable to the defamation award. The record did not necessarily contain all the evidence that might have borne on the insured's bad faith claims against the second insurer, which may have been willing to pay the $ 600,000 sum just to avoid whatever bad faith exposure its lawyers might have imagined it had.

*CA(6)*±(6) **Insurance Contracts and Coverage § 137--Actions--Costs--Policy Requiring Insurer to Pay Costs in Any Lawsuit Insurer Defends.** --In an insured's action against his liability insurer, seeking a declaration that the insurer had an obligation to defend the insured in an underlying action for defamation and other claims until its conclusion, the trial court properly granted the insured's motion for a new trial to determine whether costs assessed against the insured in the underlying action were covered under the insured's supplementary payments coverage. The trial court had originally denied the insured's request for costs based on a policy period defense. However, the policy obligated the insurer to pay the costs in any lawsuit it defended. The supplementary payments provision providing all costs taxed was a function of the insurer's defense obligation, not its indemnity obligation. The insurer's position that its policy would not apply to a defended mixed action (one in which some of the claims are at least potentially covered and the others are not) where there was no actual coverage was belied by the direct references to the defense obligation and the allegation of damages. Nor did the settlement of the underlying case act as an automatic bar to any claim for the costs that were taxed against the insured in the underlying suit, even though the cost award existed only for the period of time between the judgment and the settlement. The settlement of the whole underlying suit included the cost award.

**COUNSEL:** Kern and Wooley, Ronald J. Skocypec, Lisa M. Kralik and Melodee A. Yee for Defendant and Appellant.

The Ford Law Firm, William H. Ford III and Paul C. Cook for Plaintiffs and Respondents.

**JUDGES:** Opinion by Sills, P. J., with Crosby and Bedsworth, JJ., concurring.

**OPINION BY:** SILLS

**OPINION**

**[*894]   [**300]   SILLS, P. J.**

I. SUMMARY

Procedurally, this liability insurance bad faith action comes to us contorted as a sheepshank knot. Some unraveling is necessary.

The trial court filed a judgment ruling:

--The insurer had a duty to defend the underlying "mixed action" to the end;

--The insurer breached its duty to defend by trying to reserve its rights to **[***2]** obtain reimbursement of attorney fees expended in an appeal of the underlying action even though the insurer, in conjunction with another insurer, had paid for the defense of the underlying action;

--The insurer was estopped to assert its rights to contest coverage of the one cause of action (defamation) that was potentially covered in the underlying action because it breached its duty to defend. (Ironically, the trial court also held, in ruling on an in limine motion regarding *costs*, that there was no coverage because the defamations occurred outside the policy period.) As a result, the policyholder was awarded about $ 218,000 for the indemnification of the defamation claim;

--However, the insurer had *not* acted in bad faith;

--And, the insurer did *not* owe the costs awarded against the insureds in the underlying action.

Then the trial court filed an order granting a partial new trial, so the insured could seek recovery of damages for bad faith and for the costs in the underlying action. The insurer appealed from both the judgment and the new trial order.

At the time, the trial court did not have the benefit of *Buss v. Superior Court* (1997) 16 Cal. 4th 35 [65 Cal. Rptr. 2d 366, 939 P.2d 766] **[***3]** (*Buss*), which was decided about a month after the new trial order. As we explain below, *Buss* greatly clarified the law concerning an insurer's right to seek reimbursement of defense fees in a "mixed action" (one where at least one cause of action is potentially covered, but the others are not), but in so doing rejected the theory used by the trial court to conclude that the insurer here had breached its duty to defend. In fact, *Buss* plainly rejected the idea on which the policyholders have predicated much of their case: that *new* **[*895]** *consideration*, in addition to that provided in the insurance contract, is necessary for the insurer to have a right of reimbursement. As *Buss* makes clear, an insurer does nothing wrong in unilaterally reserving its reimbursement rights in a mixed action. [1]

**FOOTNOTES**

1 Precisely describing the insurer's right of reimbursement in cases such as this is a mouthful. In her dissent in *Buss*, it took Justice Kennard six lines in the official reporter to describe the majority holding concerning that right. (See *Buss, supra*, 16 Cal. 4th at p. 62 (dis. opn. of Kennard, J.).) Hence, when we speak of the "reimbursement right" or similar words in this opinion, it is shorthand for the right to seek reimbursement of defense costs for claims that were never even potentially covered in "mixed actions," that is, those actions where the suit against the policyholder includes at least one claim that was potentially covered and therefore triggered the duty to defend.

[***4] Now, in the light of *Buss*, it is apparent that the trial court's decision about the breach and estoppel cannot stand. The insurer cannot be estopped to assert a defense because of a breach it did not commit. In the wake of that determination, it is clear that the $ 218,000 indemnification award, based on the underlying defamation judgment, must be reversed. To be fair to both parties, the question of whether the defamation award is actually [**301] covered must be remanded for decision in the trial court, since it was never really litigated there the first time.

Ironically, as it turned out, the trial court was also wrong in deciding in *favor* of the insurer on the question of costs in the underlying suit. But it corrected that error by granting the policyholders a new trial on the issue. In a word, the insurance contract obligates the insurer to pay "costs" whenever it must defend the suit, independent of whether those costs would otherwise be covered by way of the insurer's indemnity obligation. (See *Insurance Co. of North America v. National American Ins. Co.* (1995) 37 Cal. App. 4th 195, 206-207 [43 Cal. Rptr. 2d 518].)

In light of these determinations, [***5] both the judgment and the new trial order will have to be affirmed in part, and reversed and remanded in part as follows:

--The judgment is affirmed to the extent it declares the insurer had an obligation to defend the policyholders in the underlying action until its conclusion, and not just through the close of evidence at trial;

--The judgment is reversed to the extent it declares the insurer breached its obligation to defend the policyholders, and we direct the trial court to enter a new judgment ruling that the insurer did not so breach;

--The judgment is reversed to the extent it declares the insurer could not assert a policy period defense to coverage, and the matter is remanded for further proceedings;

[*896] --The judgment is affirmed to the extent it declares the insurer did not act in bad faith;

--By the same token, the new trial order is reversed to the extent it contemplates a new trial to allow the policyholders to recover bad faith damages;

--On the other hand, the new trial order is affirmed to the extent it contemplates the recovery of the costs awarded against the policyholder in the underlying action. 2

## FOOTNOTES

2 As we explain later, the affirmance only applies to two of the plaintiffs, Charles E. Prichard and La Carona Foods. As a technical matter, the new trial motion is reversed as to the remaining plaintiffs.

[***6] II. THE UNDERLYING CASE

By the late 1980's, the Johnston Yogurt company ³ was losing money and was in need of cash. A wealthy Sacramento-area egg farmer named Edward Minni loaned some $ 600,000 to Johnston Yogurt. The company still didn't turn a profit, so Minni agreed with Charles E. Prichard, kingpin of Johnston Yogurt, ⁴ to put in more money (bringing his input to $ 1 million) in return for an agreement whereby Minni became a 50 percent shareholder, had a seat on the company's board, and one of Minni's trusted associates, William Evans, would have one as well.

#### FOOTNOTES

3 By Johnston Yogurt, we refer to a variety of entities used by Charles E. Prichard, including Button Industries and La Carona Foods. The precise relationship between these entities is not relevant to this insurance litigation, though of course it played a role in the underlying corporate litigation.

4 We will not attempt to describe the precise legal relationship between Prichard and Johnston Yogurt; there seems to be no dispute that the Liberty Mutual Insurance Company ⌄policy covered Prichard.

[***7] Minni was elderly, and looked to Evans to act as his "eyes and ears." Prichard, however, reneged on the deal, and found ways (the details of the corporate machinations are irrelevant here) to exclude both Minni and Evans from the company. Prichard went so far, in fact, as to have the Johnston Yogurt plant in Sacramento stripped of its equipment, which was taken for use by another company under his control.

Minni, Evans and related parties filed a lawsuit against Prichard and related parties in June 1991 for a variety of causes of action (breach of contract, misrepresentation, violation of various provisions of the Corporations Code, breach of fiduciary duty, etc.) related to Prichard's actions in [**302] excluding them from the company. One of these causes of action was for defamation. After the Johnston Yogurt plant had been shut down and Minni and Evans had been effectively ousted as directors of the company, Prichard [*897] allegedly began to tell people in the industry that Evans was stealing from Johnston Yogurt. The charging language in the complaint was that Prichard had at least one conversation with two executives in the food industry in which "Prichard stated [***8] that Evans stole from [the Johnston Yogurt company] and was dishonest in his capacity as an officer of [that company]."

Prichard requested a defense of the underlying action in July 1991 from Liberty Mutual, and two other Johnston Yogurt insurers, Aetna Casualty and The Standard Fire Insurance Company. He got what he requested. In the words of Prichard's own separate statement of undisputed facts later submitted in connection with a summary adjudication motion filed in 1996, "Liberty provided the Prichard parties a defense [of the Minni action] under a reservation of rights set forth in Liberty's 5/27/92 letter to the Prichard parties." ⁵ (Indeed, even though the respondent's brief refuses to acknowledge it, Liberty, in conjunction with Aetna, *has paid all the defense costs of the underlying action*.)

#### FOOTNOTES

5 It is a direct quote, but we omit the irritating use of all capital letters for parties' names often used at the trial level (and sometimes appellate level as well). Any other quotations

following the same practice are similarly treated.

[***9] Liberty's May 1992 letter accepting the defense did not even mention any reimbursement of defense costs. The letter plainly accepted the defense of the action. Most of the letter involved notice of various coverage defenses, such as Prichard's own knowledge of the falsity of the allegedly defamatory statements, whether the defamatory statements took place before the beginning of the policy period (which began Mar. 22, 1991), and whether various of the Prichard parties might have acted outside their corporate capacities for their own benefit. The letter also reserved the right to withdraw from the defense "should facts develop which establish a lack of coverage under our policy, or if all potentially covered allegations or counts are dismissed from this action."

Minni's underlying action against Prichard came to trial in January 1995. During the trial, Liberty Mutual wrote a letter which, while explicitly not changing any position of Liberty's (including, presumably, Liberty's decision to provide a defense), advised Prichard's independent defense counsel that testimony at trial appeared to show that the "first publication" of Prichard's accusation of Evans's dishonesty had been made [***10] in October 1990, prior to Liberty Mutual's policy period.

The underlying suit resulted in a judgment for some $ 1.35 million for Minni and about $ 245,000 (though some of that was later reduced to $ 218,000 to account for offsets) for Evans on the defamation claim. Both Evans and Minni were awarded $ 253,000 in costs. The judgment was [*898] quickly appealed, and the case almost as quickly settled: The underlying suit was settled by Prichard (without Liberty's consent) in February 1996 for $ 1.33 million plus interest; as part of the settlement, Prichard agreed to dismiss his appeal.

III. THIS CASE

Now, to how this insurance bad faith litigation wound itself up into a procedural pretzel. Prichard's complaint was first filed in April 1995, while the underlying case was still in progress. Liberty Mutual was not even mentioned as a defendant in the initial complaint, which listed only Aetna Casualty and The Standard Fire Insurance Company. In May, however, Aetna brought in Liberty Mutual on a cross-complaint for declaratory relief. Liberty filed its own cross-complaint for declaratory relief in October, and by late November 1995 Prichard was allowed to file a first [***11] amended complaint adding Liberty Mutual as a defendant.

After the filing of a supplemental complaint in October 1996, the Prichard parties ended up with an amended complaint asserting 11 causes of action against Liberty [**303] Mutual, Aetna, and The Standard Fire Insurance Company. Of these, Nos. 3 and 7 were only asserted against Aetna and Standard, which settled in March 1996. Number 9, conspiracy to commit bad faith, had been knocked out on demurrer in April 1996.

Prichard was successful, in a summary adjudication motion heard in October 1996 as to cause of action No. 1, in seeking a declaration of Liberty's obligation to defend the underlying action to the end: Liberty was contending that its duty to defend Prichard terminated on February 2, 1996, when the evidence closed in the underlying action. (Liberty asserted that the uncontradicted testimony from the action was that Prichard had accused Evans of having stolen from Johnston Yogurt prior to October 10, 1990, that is, before the Liberty policy period.)

Prichard prevailed on the motion. The court declared that Liberty Mutual "was obligated to defend the *Evans/Minni* lawsuit until its conclusion." The notice of ruling given [***12] by Prichard's counsel, though, mentioned that "Liberty provided the Prichard parties a defense

under a reservation of rights."

Causes of action No. 2 (asking for a declaration that Liberty was obligated to accept a certain pretrial settlement offer made by Evans and Minni in Jan. 1995) and No. 4 (asking for declaration regarding the effects of a partial settlement attempt made by the insurers), were dismissed with prejudice by Prichard in December 1996.

The balance of the causes of action, Nos. 5 (alleging a breach of duty to indemnify), 6 (bad faith refusal to settle), 8 (general bad faith withholding of **[*899]** policy benefits), 10 (breach of contract on duty to defend), and 11 (asserting bad faith because of the reservation of rights letter regarding the appeal) all went to a court trial on legal issues (cf. <u>Code Civ. Proc., § 592</u>) in February 1997. Much of the case turned on a letter written by counsel for Liberty on December 1, 1995, involving the contemplated appeal by Prichard of the result in the underlying action.

Specifically, the letter dealt with Prichard's request that Edward Horowitz be retained as associate appellate counsel. The **[***13]** letter consisted of four paragraphs. The first paragraph acknowledged the request, and reiterated Liberty's position that its defense obligation had terminated, because the "undisputed evidence" at trial showed, among other things, that the "first publication" of the defamation exclusion applied. The second paragraph merely groused about the utility of "paying another attorney to gain familiarity with the underlying case."

The third paragraph then caved on the request, stating that Liberty *would* contribute "its proportionate share to retain Mr. Horowitz as associated appellate counsel under a strict reservation of rights" but then asserted (in language obviously alluding to <u>Civ. Code, § 2860, subd. (c)</u>) that because it "does not pay appellate counsel in Southern California $ 300 per hour for similar legal work," and because of a prior agreement between Liberty and the insureds, it would pay its share of $ 150 an hour for Horowitz's fees.

Finally, the fourth paragraph raised the reimbursement issue. We set that paragraph out now, in its entirety, to show that, contrary to the position strenuously advocated by Prichard in the respondents' brief, **[***14]** there was no "conditioning" of the duty to defend on any agreement between insurer and insured: "In agreeing to pay this share, Liberty Mutual fully reserves all of its rights available under the policies and California law, including all of the limitations on coverage and the payment of defense fees set forth in this correspondence, and prior correspondence. These rights include the right to seek reimbursement from the insureds for all of the defense fees paid on behalf of the insured from the date upon which the undisputed evidence adduced at the trial of the underlying action showed that there was no potential for coverage under the Liberty Mutual policies."

**[**304]** In late March 1997--with the Supreme Court's *Buss* decision still four months into the future--the trial court issued a statement of decision and judgment. [6] The court concluded that "By its letter dated 12/1/95, <u>Liberty Mutual Insurance Company</u> unilaterally attempted to condition the retention **[*900]** of Edward Horowitz as appellate counsel in the *Evans/Minni* lawsuit on the 'right' of reimbursement of all defense fees paid on behalf of its insureds after the jury verdict in February 1995." The court further concluded **[***15]** that the state of the law was, at the time, that an insurer could not "so condition its defense." It further held that the letter constituted a breach of Liberty's "contractual duty to defend in connection with its condition that the retention of Edward Horowitz as appellate counsel on the appeal would be subject to a right of reimbursement of all defense fees paid on behalf of its insureds after the jury verdict in February 1995 in the *Evans/Minni* lawsuit." [7] From these conclusions, the court further held that Liberty was estopped to assert its defense that the defamation judgment against Prichard was not covered because the first publication had occurred outside the policy period. However, the court further concluded that because the law concerning an insurer's right to reimbursement was uncertain, Liberty's "breach" of its

duty to defend was not "unreasonable."

## FOOTNOTES

6 The trial court noted in its statement of decision that the appellate court decision in *Buss* was then "currently before" the Supreme Court, but cited it as having been written "by Crosby, J." In reality, the intermediate appellate decision in *Buss* was written by "Croskey, J." [***16]

7 The court made these statements under the aegis of "findings of fact," but they are obviously conclusions of law, since they make categorical judgments about facts, rather than neutrally stating the facts themselves.

The ensuing judgment stated that the plaintiffs would take nothing by reason of causes of action Nos. 2 (though that had already been dismissed), 5, 6, and 8, but would be indemnified for the defamation award in the underlying suit ($ 218,421). The judgment omitted any reference to Prichard's bad faith claim set forth in cause of action No. 11.

The judgment was filed March 28, 1997, though apparently the filed version was not served. 8 In any event, *Prichard* filed a new trial motion on April 15, seeking a new trial or modification of the court's statement of decision as to two issues: (1) Whether the $ 253,000 of costs assessed against Prichard in the underlying action was covered under Liberty's supplementary payments coverage, and (2) whether the court's ruling that Liberty's "wrongfully conditioning its defense on appeal on a claim of reimbursement was not unreasonable [***17] as a matter of law," i.e., Prichard still wanted to press a bad faith claim based on the December letter.

## FOOTNOTES

8 The proof of service on the filed judgment is dated March 17, indicating that that was the date the *proposed* judgment was served.

In early June the trial court *granted* the new trial motion, stating in a minute order that the "moving parties' positions are well founded." 9 By the end of the month Liberty filed a notice of appeal from both the [**305] judgment and [*901] the new trial order. (Ironically, *Buss* was handed down by the high court the next month, in late July.) The question thus arises as to the precise posture of the case on appeal.

## FOOTNOTES

9 Liberty's argument that the motion was denied by operation of law because the 60-day time limit specified in section 660 of the Code of Civil Procedure ("the power of the court to rule on a motion for a new trial shall expire 60 days from and after the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 . . .") had already expired is unavailing. The minute order accompanying the judgment did *not* direct the clerk to mail notice of entry of judgment. (See *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal. 4th 51, 64 [61 Cal. Rptr. 2d 166, 931 P.2d 344] ["To avoid uncertainty, we clarify that . . . when the clerk of the court mails a file-stamped copy of the judgment, it will shorten the time for ruling on the motion for a new trial only when the order itself indicates that the court directed the clerk to mail 'notice of entry' of judgment"].) Thus, while we grant Liberty's request that we take judicial notice of the fact that Orange County is not a judgment book county, the

fact does it no good.

[***18]  IV. THE APPEALABILITY OF THIS CASE

*CA(1)*(1) Unraveling the appealability knot is not as hard as it might otherwise appear. Both parties agree, in response to supplemental briefing requested by this court when it appeared that not all causes of action had been disposed of, that cause of action No. 11 (for bad faith based on the Dec. 1995 reservation of rights letter) was omitted merely by inadvertence. *In substance*, cause of action No. 11 was subsumed within the trial court's determination that Liberty was not liable for bad faith and the provision in the judgment that Prichard take nothing by way of the more specific cause of action number 8 for unreasonable denial of policy benefits.

In such instances, the appropriate course is for the appellate court to amend the judgment to reflect the manifest intent of the trial court ( *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal. 4th 288, 308 [63 Cal. Rptr. 2d 74, 935 P.2d 781]), which we hereby do. And, given that there was a final judgment, then, Liberty had the right to attack the judgment in an appeal from a partial new trial order. (See *Beavers v. Allstate Ins. Co.* (1990) 225 Cal. App. 3d 310, 329-330 [274 Cal. Rptr. 766] [***19] [explaining why *HN1*a party can appeal from a partial new trial order and attack even those parts of the judgment that were not subject to the new trial order].)

V. THE MERITS OF THE JUDGMENT

A. *The Duty to Defend*

*CA(2)*(2) Liberty, of course, could not challenge the basic premise that it was obligated to defend the suit, at least at the time of tender: There was a clear potential for coverage under the portion of the policy which provides coverage for personal injury, defined as injury arising out of one of several "offenses," including "[o]ral . . . publication of material that slanders or libels a person." The only question is whether the trial court erred in ruling that Liberty was obligated to defend after the close of evidence in the underlying case, i.e., to provide a defense on appeal.

*HN2*The usual formulation of the termination point of the duty to defend is "until the underlying suit is concluded" or--and we note the Supreme  [*902]  Court's use of the passive voice--"it has been shown [***20]  that there is *no* potential for coverage." ( *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295 [24 Cal. Rptr. 2d 467, 861 P.2d 1153], original italics.)

When precisely "it has been shown" there is no potential for coverage is an interesting question. Must an insurer obtain a declaratory relief judgment, or may it unilaterally withdraw? There is authority both ways, but in different contexts.

*Hartford Accident & Indemnity Co. v. Superior Court* (1994) 23 Cal. App. 4th 1774 [29 Cal. Rptr. 2d 32] put the onus on the insurer where there was no question of an *initial duty to defend*, but there was a dispute over whether policy limits had been exhausted and the duty to defend thus terminated. In that situation, the *Hartford* court observed that *HN3*the insurer could not "unilaterally terminate a defense for which it potentially is responsible." ( *Id. at p. 1781*.) Then again, the *Hartford* court emphasized that the insurer could obtain reimbursement from excess carriers for defense costs for the period "between actual [***21]  exhaustion of policy limits and *proof* of exhaustion." ( *Id. at pp. 1781-1782*, italics added.)

*Hartford* declared that the duty to defend continues "until the insurer proves otherwise" ( *Hartford Accident & Indemnity Co. v. Superior Court, supra*, 23 Cal. App. 4th at p. 1781), thus indicating that a judge should make the determination before an insurer can withdraw. We would add, apropos *Hartford*'s observation about reimbursement **[**306]** from excess carriers, that any injustice to the insurer resulting from the time or expense of the declaratory relief action can be offset by the insurer's ability to obtain reimbursement, either from carriers who were obligated to defend after the insurer ceased to be so obligated, or from the insured. After all, one of the major themes of the *Buss* case (as explained in more detail below) is that *HN4*an insurer's right to seek reimbursement from an insured is implied in law as a matter of fairness to balance out the seeming unfairness of requiring an insurer to defend claims which it never contractually agreed to **[***22]** defend. 10

### FOOTNOTES

10 The problem of actual recovery of defense costs in a reimbursement action has nuances which have yet to be explored. For example, could a policyholder, in defending a claim for reimbursement of defense costs, argue that its insurer conducted an inefficient defense, i.e., paid too much? In the legal marketplace of early 21st-century America, such a scenario is unlikely to arise because, in general, policyholders want more expensive lawyers, while the insurers are able to use economies of scale to provide cheaper lawyers.

The more likely inequity is that the policyholder (as distinct from a deep pockets excess carrier) simply won't be able to pay any reimbursement judgment, and the insurer will be in effect left paying for the defense of a claim it never contracted to defend. But that is simply a risk inherent in well-established rules requiring the insurer to defend the whole of a mixed action.

On the other hand, *Ringler Associates Inc. v. Maryland Casualty Co*. (2000) 80 Cal. App. 4th 1165 [96 Cal. Rptr. 2d 136] **[***23]** suggested a different **[*903]** result where the insurer never actually had a duty to defend at all, but did so mistakenly. ( *Id*. at p. 1192.) *Ringler* stated, "there is no particular requirement that an insurer ask the permission of a trial court before withdrawing from a defense, once the insurer has determined that no potential for indemnification liability exists." (*Ibid*.) While continuation of a defense might be "prudent," it is not required "on pain of suffering liability for defense and settlement expenses not actually covered" under the terms of the policy. (*Ibid*.)

Clearly, *Ringler* represents the easier of the two contexts. It would be unfair to say that an insurer must continue defending an action it never had any duty to defend in the first place pending a declaratory relief judgment, just because the insurer acted prudently and gave its policyholder the benefit of the doubt (or more precisely, the benefit of the doubt as to whether there even was a doubt), when it received the initial request for a defense. To require a declaratory relief judgment before it could withdraw would mean that the insurer would be better off if it had never defended **[***24]** at all. Thus *Ringler* is undoubtedly correct in stating that an insurer should not be "lock[ed] into" defending an action it is not required to, just because of the absence of a declaratory relief judgment freeing it. (See *Ringler Associates Inc. v. Maryland Casualty Co., supra*, 80 Cal. App. 4th at p. 1192.) Indeed, the *Ringler* scenario happens every time an insurer correctly turns down a request for defense; no doctrine of insurance law requires it to run into court seeking a declaratory judgment attesting to the correctness of its decision. Mistakenly defending for a period of time is no different from that.

But *Ringler* cannot be applied to the genuine "mixed action" case as we have before us here, because in a mixed action case there *is* a duty to defend, at least at the beginning--and the

question is, how does anyone--the court, the policyholder, the insurer--*know* when the duty ceases. We need not attempt to formulate a one-size-fits-all rule here; it is enough to decide that the trial court *here* correctly ruled that Liberty's duty extended beyond the close of evidence, and therefore Liberty was required to continue defending during **[\*\*\*25]** the appeal.

Why? Because the underlying case was not yet over and it was *still* possible that **[\*\*307]** Liberty might have had some indemnification liability, even after the close of evidence.11 [11]

**FOOTNOTES**

[11] A fact that distinguishes this case from dicta in *California Union Ins. Co. v. Club Aquarius, Inc.* (1980) 113 Cal. App. 3d 243, 247 [169 Cal. Rptr. 685]. In a short, one-paragraph observation, the *Club Aquarius* court suggested that because the trial court in the underlying federal case had made it "clear" by formal findings of fact that "the [underlying] case, in fact, did not involve the limited risk set forth in [the] policy," the insurer there had "the right to withdraw from the defense" at *that* point. In *Club Aquarius* there was no suggestion that an appeal in the underlying case might yet result in indemnification liability for the insurer, and so the court never contemplated that possibility in its dicta.

Just because evidence has closed in the underlying case **[\*\*\*26]** does not mean the facts against the policyholder have necessarily calcified. Here, a new trial **[\*904]** might have been granted. Witnesses might have changed their stories or their memories might have improved. [12] The defamation judgment against Prichard could have been overturned, yet another take its place on remand. In short, the potential for indemnification liability continued into the appeal period. (Cf. *Jenkins v. Insurance Co. of North America* (1990) 220 Cal. App. 3d 1481, 1492 [272 Cal. Rptr. 7] (dis. opn. of Wallin, Acting P. J.) *HN5*["an insurer's duty to defend may include, in an appropriate case, a duty to appeal"].) [13]

**FOOTNOTES**

[12] In the present case, for example, there were two witnesses who testified to having heard Prichard accuse Evans of stealing equipment, but they could not remember *when* Prichard made the accusations. Perhaps their memories might have improved on retrial.

[13] The majority also believed the defense duty in *Jenkins* included a duty to prosecute an appeal. Justice Wallin's dissent, however, makes the valid point that the appellate system could not survive the proposition that insurers were *always* obligated to appeal any case they were otherwise defending. Other than the limited circumstances of this case, where it is clear that an appeal was going to be taken and the insurer was going to fund it anyway, we express no opinion as to whether and when an insurer must pay for an appeal.

**[\*\*\*27]** While the formal judgment filed March 28, 1997, did not mention the result of the earlier summary adjudication motion on the duty to defend, that was just an omission. Just as with cause of action No. 11, we hereby deem the judgment modified to incorporate the court's ruling. As so modified, the judgment is affirmed to that extent.

B. *No Breach of the Duty to Defend*

*CA(3)*(3) We now come to the core of Prichard's case against Liberty: Whether Liberty

"breached" its duty to defend by its reservation of rights letter sent December 1, 1995.

The trial court bought Prichard's argument that the right of an insurer to obtain reimbursement in a mixed action is, at root, contractual, so that there must be *new consideration*, in addition to that provided by the contract, to support a reimbursement claim. When *Buss* was handed down, however, it articulated a rule squarely to the contrary. *Buss* held that <sup>HN6</sup>an insurer's right to seek reimbursement is *implied in law*, as a counterbalance to an insured's right, also implied in law, to have a defense of the *whole* of an action.

Despite **[\*\*\*28]** *Buss*, Prichard *still* maintains that an insurer's reimbursement claim is contractual. His theory is revealed in one critical paragraph on page 16 of the respondents' brief, which is worth quoting in full now: "The evidentiary threshold for proving the existence of an *agreement to reimbursement* supported by consideration is low and dangerously easy to meet. In **[\*905]** *Buss*, the Supreme Court found a *modification of the policy* supported by new consideration where the insured responded to the insurer's reservation of the right to reimbursement by conceding it would reimburse the insurer for defense fees if a court ultimately determined reimbursement was owed. ( *Buss, supra,* 16 Cal. 4th at pp. 43, 60, fn. 27.) The insured did nothing more than *agree* to **[\*\*308]** abide by any future legal determination of the right to reimbursement, and this was sufficient for the California Supreme Court *to find an agreement for reimbursement* supported by consideration." (Italics added.)

Wrong, wrong, wrong. The whole point of the *Buss* case is that <sup>HN7</sup>an insurer's right to **[\*\*\*29]** reimbursement for defense costs for never-even-potentially-covered-claims is predicated on a legal right "implied in law as quasi-contractual," not a matter of any agreement between the parties. As the *Buss* majority stated: <sup>HN8</sup>"The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual." ( *Buss, supra,* 16 Cal. 4th at p. 51.)

That is the reason Justice Kennard dissented. She believed that unless the right to reimbursement is in the written contract, i.e., exists as a matter of agreement, not law, it shouldn't exist. To juxtapose the majority's position against her own, she characterized Justice Mosk's majority opinion as holding that "an insurance carrier that has defended its insured in a third party action seeking damages potentially within the policy's indemnity coverage may thereafter require the insured to reimburse the carrier for some of its defense costs *despite the absence of any agreement* between the carrier and the insured permitting **[\*\*\*30]** such reimbursement." ( *Buss, supra,* 16 Cal. 4th at p. 62 (dis. opn. of Kennard, J.).) Justice Kennard rejected the quasi-contract implied-in-law model of insurer reimbursement adopted by the majority, arguing that "[i]nsurance policies are written contracts governed by the rules of contract law, not equity or quasi-contract." ( *Id.* at p. 65.)

The majority in *Buss* most assuredly did not predicate the court's decision on the existence of an agreement for reimbursement supported by consideration. That much is absolutely clear from the critical text on pages 50-51 of the opinion explicating the court's rationale, <sup>14</sup> as well from Justice Kennard's dissent. The footnote relied on by Prichard here is mostly concerned with the need for insurers to give *notice* of its *unilateral* reservation **[\*906]** of the right to seek reimbursement. The footnote is very clear that <sup>HN9</sup>an insurer can reserve its reimbursement right unilaterally and without any agreement: "We also note that the Court of Appeal was evidently of the view that the insurer can reserve its right **[\*\*\*31]** of reimbursement for defense costs *by itself, without the insured's agreement.* **[\*\*309]** Such a view is in accord with the 'modern trend.' [Citation.] More importantly, it is sound. Because the right is the *insurer's alone,* it may be reserved by it *unilaterally.*" ( *Buss, supra,* 16 Cal. 4th at p. 61, fn. 27, 65 Cal. Rptr. 2d 366, 939 P.2d 766, italics added.)

**FOOTNOTES**

**14** Which we will now quote, including surrounding context: "As to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs. Apparently, all the decisional law considering such claims in and of themselves so assumes. [Citations.] So has it been held: 'California law clearly allows insurers to be reimbursed for attorney's fees' and other expenses 'paid in defending insureds against claims for which there was no obligation to defend.' [Citation.] [P] The reason is this. Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. To attempt to shift them would not upset the arrangement. [Citation.] The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, *whether or not it has one that is implied in fact in the policy as contractual*. As stated, under the law of restitution such a right runs against the person who benefits from 'unjust enrichment' and in favor of the person who suffers loss thereby. The 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.' " ( *Buss, supra*, 16 Cal. 4th at pp. 50-51, italics added, fn. omitted.)

The footnote that was omitted was just as plain: "That the insurer does not have a right of reimbursement express in the policy does not mean that it does not have one implied in law. Rather, that *it has an implied-in-law right* helps explain why it does not have an express-in-policy one." ( *Buss, supra*, 16 Cal. 4th at p. 51, fn. 13, italics added.)

**[\*\*\*32]** It is the last two sentences of the footnote (though one appears to be a sentence fragment) **15** on which the policyholders here appear to have predicated their characterization of *Buss* as saying that some sort of agreement is necessary. Here are those sentences: "Not only did Transamerica [the insurer in *Buss*] reserve all its rights, contractual and otherwise [*sic*]. But, receiving consideration, Buss agreed thereto." ( *Buss, supra*, 16 Cal. 4th at p. 61, fn. 27.)

**FOOTNOTES**

**15** Which have their uses, stylistically.

This language comes nowhere close to saying that an agreement is necessary. It merely observes that the policyholder in *Buss* did impliedly agree to a reservation by virtue of receiving "consideration." And while the nature of that "consideration" was not specified by the high court in the footnote, a reader can gather from the main text that the court was referring to an insurer's providing *a defense of claims for which the policyholder never bargained* **[\*\*\*33]** , which is the main theme of *Buss's* rationale: "With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. . . . [P] . . . Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part--especially an action with many claims that are not even **[\*907]** potentially covered and only a few that are--lest the insurer give, and the insured get, more than they agreed." ( *Buss, supra*, 16 Cal. 4th at pp. 51-52.) **16**

**FOOTNOTES**

**16** Putting the *Buss* rationale in its most contractual terms, at the absolute most what the court was implying in footnote 27 is that an insured receives consideration every time a

defense is provided for the whole of a mixed action, and that this consideration forms the basis for an implied-in-*law* agreement to allow the insurer to seek reimbursement. The critical difference between this formulation, and the policyholders' here, is that no *new* consideration is required to support the insurer's reimbursement right beyond the provision of a defense to the whole of a mixed action in the first place.

[***34] Indeed, the underlying rationale for the rule in *Buss* is one that goes hand in hand with an insurer's *unilateral* reservation of reimbursement rights. Essentially, the *Buss* court said: "What's good for the goose is good for the gander." That is, the well-established duty of an insurer to defend the *entirety* of a "mixed action," i.e., one in which "some of the claims are at least potentially covered and the others are not" (see *Buss, supra*, 16 Cal. 4th at p. 48) is *not* founded in the contractual agreement, but is itself imposed by law: "We cannot justify the insurer's duty to defend the entire 'mixed' action contractually, as an obligation arising out of the policy, and have never even attempted to do so. . . . [P] That being said, we can, and do, justify the insurer's duty to defend the entire 'mixed' action prophylactically, as an obligation *imposed by law in support of the policy*." ( *Id.* at pp. 48-49, italics added.) The insurer's reimbursement right merely *balances out* the insured's right to a defense of the entirety of a mixed action.

Prichard's use of the phrase "unlawfully conditioned" to describe Liberty's December 1, 1995 reservation [***35] of rights letter [17] is [**310] thus not only inaccurate, but unfair, mangling the word "conditioned" beyond any meaningful recognition. [18] Liberty did not say: "We won't defend this action *unless* you agree to let us seek reimbursement later." RATHER, LIBERTY SAID: "We will defend you *and* we reserve the right to seek reimbursement."

## FOOTNOTES

[17] The best example is in the respondents' brief: "Prichard demanded Liberty's performance of the defense duty without modification. [Citation to record.] Liberty, however, refused to retract, and thereby rendered Prichard vulnerable to its later claim that the 'benefit' of the defense had been 'accepted' with knowledge of the reimbursement claim. On these facts Liberty would claim an implied-in-fact agreement. [Citation to Civ. Code, § 1621]. Liberty's refusal to defend without withdrawal of the unlawful condition was a poison seed which Liberty attempted to plant as evidence Prichard had 'acquiesced' in Liberty's defense subject to the condition of reimbursement of defense fees for potentially covered claims."

We deal later with the insinuation, not supported by the record, that Liberty tried to reserve the right to recoup defense fees for potentially covered claims, as distinct from never-even-potentially-covered claims. [***36]

[18] One thinks of the scene in Brideshead Revisited (Waugh, 1945) where an English guest is invited into a London home for dinner, and throughout the dinner the host blithely talks to the guest as if the guest had grown up in the United States, to the guest's utter bewilderment. That is, there is a vague, surrealistic air to the contention that Liberty "conditioned" its defense. It is nothing more than playing with a category that doesn't fit.

[*908] Nor can Liberty's use of the phrase "all of the defense fees paid on behalf of the insured" somehow be contorted into a "conditioning" of a defense obligation it rightfully owed. Prichard makes much of the word "all," trying to make it seem as if Liberty were reserving the right to obtain reimbursement of the costs of defending even the potentially covered claims. But when the whole of the sentence is read *in context* it is clear that the reservation only refers to such fees as would *not* be owed under its duty to defend. The

qualifying clause after the words "all . . . fees" which reads "from the date upon which the undisputed evidence [***37] adduced at the trial of the underlying action showed that there was *no potential for coverage* under the Liberty Mutual policies" shows the intention to limit the reimbursement claim to fees which Liberty never was obligated to pay in the first place. [19]

## FOOTNOTES

[19] Early in this opinion we decided that the trial court was correct in concluding that Liberty's defense obligation did not necessarily end at the close of evidence, and that a judicial determination was needed. It does not follow, however, from our decision that Liberty still could not seek *reimbursement* of fees expended after the time when, to quote from the reservation of rights letter, "undisputed evidence adduced at the trial of the underlying action showed that there was *no potential for coverage* under the Liberty Mutual policies." The basic theory of *Buss* is that because there are times when an insurer *must* pay for, as a matter of law, a defense that it is not contractually obligated to pay, it should have the right, as a matter of law, to seek reimbursement of the costs of that defense. Reimbursement of defense fees not owed is a different concept than the idea that it is only a court, and not the insurer acting as judge in its own case, who can determine *prospectively* when the duty to defend ceases.

[***38] The trial court made a mistake that has been made by at least one other court (see *Old Republic Ins. Co. ▾ v. FSR Brokerage, Inc.* (2000) 80 Cal. App. 4th 666, 677 [95 Cal. Rptr. 2d 583] ["Here, the trial court applied the rule rejected in *Buss* that Old Republic's right to reimbursement required an agreement-in-fact or understanding between Old Republic and FSR"].) And the mistake is all the more understandable in light of the fact that *Buss* had not yet been handed down by the Supreme Court when the judgment and new trial orders were made. Even so, a mistake it was: It was clear error for the trial court to have concluded that the insurer had breached its duty to defend by unilaterally reserving its rights. By the same token, it would be beyond the bounds of reason to give Prichard a partial new trial on the bad faith claim when there was no breach and therefore no bad faith.

Prichard's contention that Liberty "breached" its duty to defend by "conditioning" its "defense obligation on *retroactive* termination of its obligation" (italics added) is a mere variation on the main argument, and is likewise untenable. The salient fact is that Liberty did, in [***39] fact, defend the whole of the underlying action. A "retroactive termination" is simply an ominous phrase for "reimbursement right," and *Buss* plainly allows for insurers to have reimbursement rights.

[*909] *CA(4)*(4) Prichard also argues that Liberty somehow breached the duty to provide a defense by *sharing* the whole of the defense costs with Aetna. In the words of [**311] the respondents' brief, "Prichard had the right to demand full performance from Liberty, unreduced by performance from Aetna." Because all reasonable defense costs have been paid by the two insurers, Prichard's argument is as frivolous as it is inequitable. In essence, Prichard is saying that Liberty was under an obligation to double pay defense counsel.

It is, of course, well established that *HN10*courts can order the sharing of defense costs "where coverage is provided by more than one insurer." (See *Continental Cas. Co. v. Zurich Ins. Co.* (1961) 57 Cal. 2d 27, 36 [17 Cal. Rptr. 12, 366 P.2d 455].) It is nothing less than silly that several insurers should *each* be required to pay the whole [***40] of an attorney's bill, subject to--well what? A right of reimbursement from the lawyers for the *overpayment*? There was clearly no breach by Liberty in paying only its share of the defense costs. Prichard's real argument in this regard is that he had to pay Horowitz's fees to the extent those fees exceeded $ 150 per hour, and that therefore Liberty had not provided him

a "full defense."

Not so. Horowitz was clearly *Cumis* counsel--Liberty was already funding the appeal--hence the reference to Horowitz acting as "associate" counsel. Since Prichard points to no evidence that *Liberty* actually pays appellate attorneys who are "retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended" (see Civ. Code, § 2860, subd. (c)) more than $ 150 an hour, asserting that Liberty was not providing a "full defense" is not persuasive.

The judgment was incorrect in declaring that Liberty "breached" the duty to defend, and, in the wake of that determination, could not raise the defense to Prichard's indemnification claim. We now turn to the indemnity question.

C. *The Merits of* [***41] *the Indemnification Claim*

Because the trial court erroneously concluded that Liberty had breached its duty to defend merely by reserving its reimbursement right, it held that Liberty was estopped to assert a policy period defense to the defamation award. This error creates yet more complications. [20]

**FOOTNOTES**

[20] One complication, however, that we are spared is whether the settlement of the underlying action without Liberty's consent operates as a *per se* barrier to any indemnity recovery by Prichard. While Liberty argues that the settlement operates as a bar to any claim for *costs* taxed against Prichard in the underlying suit (an issue that we discuss below), it does not argue that the very fact of a settlement without consent bars Prichard's indemnity claim.

In the course of ruling on the question of the *costs* in the underlying action, the trial judge plainly stated: "Liberty has shown that there was no [*910] coverage for defamation, no defamatory statements within the policy period, so the [***42] insurance does not apply." The trial court further noted that the policyholders made no argument that the defamatory statements had been made in the policy period.

The problem is, because the trial court erroneously concluded that Liberty was estopped to disclaim coverage based on the absence of actual defamation within its policy period, Prichard never had the opportunity to attack the trial court's "ruling" that there were "no [defamatory] statements within the policy period," particularly given that the ruling arose in the context of the cost issue (the merits of which we discuss in the next section) and not the indemnification of the defamation award.

It would be unfair to try to determine the merits of the claim for indemnification of the defamation award in this appeal. The reason is that there are two aspects of Liberty's policy period defense to that claim, but each aspect entails a distinctly different burden. First, Liberty's [**312] insurance contract had an insuring agreement requiring that defamation be committed "during the policy period" [21] for there to be coverage. An insured, such as Prichard here, has the burden of establishing that his or her claim comes within the [***43] "scope of basic coverage." (See *American Star Ins. Co. v. Insurance Co. of the West* (1991) 232 Cal. App. 3d 1320, 1325 [284 Cal. Rptr. 45]; see also *Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal. App. 3d 532, 537 [226 Cal. Rptr. 435].) On the other hand, Liberty's contract also contained an exclusion for defamations whose "first publication took place before the beginning of the policy period." [HN11] The insurer has the burden of establishing the applicability of an exclusion. (See *American Star, supra,* 232 Cal. App. 3d at p. 1325; *Royal Globe, supra,* 181 Cal. App. 3d at p. 537.) Thus Liberty would have the

burden of establishing that--even if there *were* defamations inside its policy period--the "first publication" of those defamations was before the policy period.

## FOOTNOTES

21 Under "Insuring Agreement," THE POLICY STATED: "This insurance applies to 'personal injury' only if caused by an offense: [P] (1) Committed in the 'coverage territory' during the policy period . . . ."

[***44] Because the trial court erred in concluding that Liberty could not assert a policy period defense, it would be meaningless to try to determine, on appeal, whether Prichard carried the burden of showing defamations during the policy period, or whether, that burden having been carried, Liberty then carried its burden of showing that the first publication of those defamations occurred before its policy period. The ruling that Liberty was estopped [*911] meant the trial court never engaged in the process of determining who carried which burden in the first place. Accordingly, the matter must be remanded, to give the parties the opportunity for the first time to carry their respective burdens.

CA(5)⌖(5) A loose end on the indemnification question is whether Liberty might be entitled to an offset for sums paid by Aetna to settle the case against it (though the issue might be rendered moot if the trial court rules in Liberty's favor on the indemnification claim on remand). Liberty claims in this appeal that the trial court erred in denying it any offset for a $ 600,000 settlement paid by Aetna. The theory is that since Prichard received a complete defense from both Aetna and Liberty together, [***45] the $ 600,000 represents a windfall to Prichard given that the defamation award was only about a third of that sum. The settlement, as one would expect, was unallocated between various claims Prichard had against Aetna.

On the offset point, the trial judge was correct. It cannot be inferred that the $ 600,000 settlement necessarily included *any* portion attributable to the defamation award. The record here, for example, voluminous as it is, does not necessarily contain all the evidence that might have borne on Prichard's bad faith claims against Aetna. Aetna may have been willing to pay the $ 600,000 sum just to avoid whatever bad faith exposure its lawyers might have imagined it had.

D. *The Cost Claim*

CA(6)⌖(6) Ironically, the trial judge's ruling on the merits of the policy period defense was not applied to Prichard's request for indemnification, but was applied to deny his request for an award of the some $ 253,000 in costs that were assessed against him in the underlying action. The large amount of the costs can be traced to Minni's being able to collect his attorney fees pursuant to prevailing party clauses.

The cost claim is not, as Liberty suggests here, a substantive [***46] replay of the indemnity issue. The policy, in essence, obligates the insurer to pay the *costs* in any lawsuit it *defends*.

The supplementary payments provision provides in part: "We will pay, with respect to any claim or 'suit' *we defend*: [P] . . . [P] 5. All costs taxed against the insured in the 'suit.' " A "suit" is defined to mean "a civil proceeding in which damages because of . . . 'personal injury' . . . to which this insurance applies *are alleged*." (Italics added.)

[**313] As the italicized words indicate, the supplementary payments provision providing all "costs taxed" is a function of the insurer's defense obligation, [*912] not its indemnity

obligation. Liberty's contention that its insurance policy would not "apply" to a defended mixed action where there is no actual coverage is belied by the direct references to the defense obligation and the allegation of damages.

The case law is in accord. In *Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority* (1994) 31 Cal. App. 4th 617, 630 [37 Cal. Rptr. 2d 106], the appellate court rejected the idea that because the plaintiffs in the underlying action (a civil **[***47]** rights action under the Voting Rights Act of 1965) had a substantive claim for attorney fees, there was any possibility of indemnity for damages. Just because the underlying plaintiffs could collect attorney fees as part of the underlying action did not mean those attorney fees were potentially covered damages implicating the duty to defend. The court noted that awarded attorney fees are "inconsistent with the concept of 'damages.' " ( *Id.* at p. 632.)

Even more to the point is *Insurance Co. of North America v. National American Ins. Co., supra*, 37 Cal. App. 4th 195, 206-207, which held that costs awarded against the insured because of prevailing party attorney fee clauses applicable in the underlying litigation were part of the supplementary payments section of the policy. As the case also noted, such attorney fees are statutorily defined as costs. ( *Id.* at p. 206.) ²²

### FOOTNOTES

22 It may be the case, as suggested by Liberty, that the absence of even the possibility of coverage for the causes of action that generated the large cost award is somehow unfair because the insured is getting a benefit he never paid for by being *in effect* indemnified for exposure on claims the defense of which he never paid a premium for. The problem, however, is in the insurance contract, not the law. If the ISO (Insurance Services Office) forms are written so that attorney fees awarded as part of prevailing party clauses can be considered costs associated with the insurer's *defense* obligation, there is nothing we can do about it.

**[***48]** The question then arises as to the settlement of the underlying case. Is the settlement, as Liberty now argues, an *automatic bar* to any claim for the costs that were "taxed" against Prichard in the underlying suit, given that the cost award existed only for the short period of time between the judgment and the settlement? ²³

### FOOTNOTES

23 The speed of the settlement in the wake of the judgment obviates any argument that Liberty somehow "breached" its defense duty by not immediately cutting a check for the amount.

Answer: no. The settlement of the whole underlying suit included the cost award. *HN12* An insurer doesn't necessarily escape an indemnity obligation just because a case is settled (e.g., *Fireman's Fund Ins. Co. v. Maryland Casualty* Co. (1998) 65 Cal. App. 4th 1279, 1307-1308 [77 Cal. Rptr. 2d 296]; see also *Collins Development Co. v. D. J. Plastering, Inc.* (2000) 81 Cal. App. 4th 771, 776 [97 Cal. Rptr. 2d 83] **[***49]** [general principles of indemnity where indemnity **[*913]** settles without trial]), so there is no reason that there should be any per se immunity from the supplementary payments obligation, particularly given that such payments (unlike the classic indemnification obligation but like defense costs), are independent of actual coverage.

The trial court was thus well within the bounds of reason to grant a new trial as to the costs

issue. We need not comment further on the issues that might be part of any new trial.

There is, finally, the question of the standing of certain of the Prichard parties at the retrial, though it is probably only an academic matter. Only two of the Prichard entities, Prichard himself and La Carona Foods, were sued on the one potentially covered cause of action, defamation. From this it follows that only they were owed a defense, and from that we must conclude that only they have a claim for the "costs taxed" in the underlying action. As a housekeeping matter, then, the plaintiffs **[\*\*314]** on retrial will only be Prichard and La Carona. (The new trial order, then, is technically reversed insofar as it applies to any other plaintiffs than Prichard and **[\*\*\*50]** La Carona, but is affirmed as to them.)

## VI. *DISPOSITIONS*

To recap our conclusions: Liberty defended the underlying action, and did not breach its duty to defend. Ergo, Liberty did not breach the contract in bad faith, and therefore was not estopped to assert a policy period defense. The merits of that defense must be tried on remand. Likewise, because the insurance contract obligated Liberty to pay all costs in any lawsuit it defends, Prichard certainly may have a new trial in which to seek the costs assessed him in the underlying action.

The judgment and new trial order are affirmed in part and reversed and remanded with directions in part, in accord with the summary provided at the beginning of this opinion. Given the split decision, each side will bear its costs in this appeal.

Crosby, J., and Bedsworth, J., concurred.

A petition for a rehearing was denied December 6, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by Supreme Court was denied February 14, 2001.

Service: **Get by LEXSEE®**
Citation: **84 Cal. App. 4th 890**
View: Full
Date/Time: Friday, March 21, 2008 - 10:59 AM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

EXHIBIT C

LexisNexis® *Total Research System*

*My Lexis™* ┊ Search ┊ Research Tasks ┊ Get a Document ┊ *Shepard's®* ┊ Alerts ┊ Total Litigator ┊ Transactional A

Source: My Sources > States Legal - U.S. > California > Find Cases > **CA Federal & State Cases, Combined** ⓘ
Terms: **insurance company of north america v. national american insurance co. of california, 37 cal. app. 4th
195** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

✦Select for FOCUS™ or Delivery
☐

*37 Cal. App. 4th 195, \*; 43 Cal. Rptr. 2d 518, \*\*;
1995 Cal. App. LEXIS 751, \*\*\*; 95 Cal. Daily Op. Service 6245*

View Official Reports PDF of This Document **($)**

**INSURANCE COMPANY** OF **NORTH AMERICA** et al., Plaintiffs and Respondents, v.
**NATIONAL AMERICAN INSURANCE COMPANY** OF **CALIFORNIA,** Defendant and
Appellant.

No. D019356.

COURT OF APPEAL OF **CALIFORNIA,** FOURTH APPELLATE DISTRICT, DIVISION ONE

**37 Cal. App. 4th 195**; 43 **Cal.** Rptr. 2d 518; 1995 **Cal.** App. LEXIS 751; 95 **Cal.** Daily Op.
Service 6245; 95 Daily Journal DAR 10204

July 28, 1995, Decided

**SUBSEQUENT HISTORY:  [\*\*\*1]**  Review Denied November 21, 1995, Reported at: 1995
**Cal.** LEXIS 7069.

**PRIOR HISTORY:** Superior Court of San Diego County, No. 650025, S. Charles Wickersham,
Judge.

**DISPOSITION:** The judgment is affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant insurer challenged a judgment entered by the
Superior Court of San Diego County (**California**) for respondent successor insurer, in
respondent's action for reimbursement of payments made to a single insured under
successive policies issued by both of the parties. Appellant claimed its liability was barred
by a work-performed exclusion, or limited to a single policy period, and also denied
liability for its insured's legal fees.

**OVERVIEW:** Respondent successor insurer sought reimbursement from appellant insurer
for payments made to a subcontractor insured by both of the parties who was liable for
negligence pursuant to an indemnity agreement with its general contractor. Judgment was
entered for respondent. On review, appellant claimed that a work-performed exclusion
precluded any coverage obligation to the parties' insured, or that coverage was limited to
a single policy period. The court disagreed, and held that a broad-form endorsement
expanded the coverage of appellant's policy, and that appellant owed coverage to the
extent its insured was liable for the negligence of third parties. The court reasoned that
the indemnity agreement between the insured and its general contractor defined the scope
of the insured's derivative liability, and the work performed exclusion, as modified by the

broad-form endorsement, only excluded damages caused by the insured's own conduct. Evidence supported the insured's derivative liability for both of the terms for which appellant issued policies, and appellant was also liable for attorney's fees under a "prevailing party" clause. Accordingly, the judgment was affirmed.

**OUTCOME:** The judgment for respondent successor insurer was affirmed, because the work-performed exclusion that precluded coverage for the insured's own negligence, was modified by a broad-form endorsement that expanded coverage to include the insured's derivative liability. Substantial evidence supported appellant's liability for both of its policy terms, and attorney's fees were covered under a "prevailing party" clause in appellant's policies.

**CORE TERMS:** coverage, insured, policy periods, phases, roof, insurer, subcontractor, indemnity agreement, endorsement, broad-form, work-performed, contractor, fault, occurrence, correctly, roofing, settlement, underlying action, implicated, homeowners', derivatively, general contractor, fees incurred, attorney fees, manifestation, condominium, indemnity, manifest, policy year, work performed

**LEXISNEXIS® HEADNOTES**                                                          ⊟**Hide**

   Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards 🔍
   Insurance Law > Claims & Contracts > Costs & Attorney Fees > General Overview 🔍
*HN1*⬆A "prevailing party" clause entitles the prevailing party to its attorney fees. Attorney fees under a "prevailing party" clause are allowable as costs. **Cal.** Civ. Proc. Code §1032, 1033.5(a)(10)(A).  More Like This Headnote |
   *Shepardize:* Restrict By Headnote

   Insurance Law > Bad Faith & Extracontractual Liability
   Insurance Law > Claims & Contracts > Declaratory Relief > General Overview 🔍
   Insurance Law > Claims & Contracts > Disclosure Obligations > Materiality 🔍
*HN2*⬆An insurer's duty to defend encompasses the duty to pursue an appeal where reasonable grounds exist for such an appeal.  More Like This Headnote

**HEADNOTES / SYLLABUS**                                                          ⊟**Hide**

**SUMMARY:**

**CALIFORNIA OFFICIAL REPORTS SUMMARY**

An insurer that paid the bulk of a roofer's liability to a general contractor for construction defects brought an action for reimbursement against the insurer whose policies were in effect for two policy periods preceding plaintiff's policies. Defendant asserted that a clause in its policy (the "work-performed" exclusion) excluded coverage for the roofer's liability, but the trial court rejected that contention. Defendant alternatively argued that even if the "work-performed" exclusion did not apply, all damages to the roofs were part of a "single occurrence," and hence any coverage was limited to the first policy year because that was the year in which the damages first became manifest. The trial court also rejected that argument, and instead required both of defendant's policies to cover portions of the

liability. The trial court entered judgment in favor of plaintiff accordingly. (Superior Court of San Diego County, No. 650025, S. Charles Wickersham, Judge.)

The Court of Appeal affirmed, holding that the trial court correctly construed the focus of the "work-performed" exclusion, and substantial evidence existed to support the conclusion that both of defendant's policies were implicated. The court held that the roofer's comprehensive liability policy provided coverage to the extent the roofer was liable to the general contractor for damage to the roofs caused by the negligence of third parties. The policy contained a "broad-form endorsement," which excluded property damage to work performed by the named insured "arising out of" the work and deleted the exclusion for work performed "on behalf of" the insured. This endorsement continued to exclude coverage to the extent the roofer damaged the roof through its own negligence, but provided coverage to the extent it was liable for damage caused by the negligence of third parties for whom the roofer was derivatively liable, such as subcontractors. Exclusionary language--"arising out of the insured's work"--was not triggered by the insured's being a contributing cause of third parties' liability. The exclusion distinguished between the insured's liability for its own negligence--for which there was no coverage, and the insured's derivative liability--for which there was coverage. The court further held that the trial court properly found that both of defendant's consecutive policies provided coverage for damage occurring during each of the policy periods. The construction was done in phases, and damage to three units occurred during the first policy period, and damage to the next three units occurred during the second policy period. The "manifestation" rule did not mean, in this third party policy, that since the damage, which was similar in all phases, first manifested itself during the first policy period, only that policy was implicated. (Opinion by Froehlich, J., with Kremer, P. J., and Haller, J., concurring.)


**HEADNOTES**


**CALIFORNIA OFFICIAL REPORTS HEADNOTES**
Classified to **California** Digest of Official Reports


CA(1)⚖(1) **Insurance Contracts and Coverage § 80--Coverage of Contracts--Risks Covered by Liability Insurance--Exclusions and Limitations--Broad-form Endorsement--Work-performed Exclusion.** --The trial court properly construed a roofer's comprehensive liability policy as providing coverage to the extent the insured was liable to a general contractor for damage to condominium roofs caused by the negligence of third parties. The policy contained a "broad-form endorsement," which excluded property damage to work performed by the named insured arising out of the work and deleted the exclusion for work performed "on behalf of" the insured. This endorsement continued to exclude coverage to the extent the roofer damaged the roof through its own negligence, but provided coverage to the extent it was liable for damage caused by the negligence of third parties for whom the roofer was derivatively liable, such as subcontractors. Exclusionary language-- "arising out of the insured's work"--was not triggered by the insured's being a contributing cause of third parties' liability. The exclusion distinguished between the insured's liability for its own negligence--for which there was no coverage, and the insured's derivative liability-- for which there was coverage.

CA(2)⚖(2) **Insurance Contracts and Coverage § 79--Coverage of Contracts--Risks Covered by Liability Insurance--Construction--Consecutive Policies--Defects in Separate Phases of Construction--Third Party Policy--Manifestation Rule.** --In an

action by one liability insurer against another for reimbursement for payments made to a roofer for liability to the general contractor under an indemnity agreement covering defective work, the trial court properly found that both of defendant insurer's consecutive policies provided coverage for damage occurring during each of the policy periods. The construction was done in phases, and damage to three units occurred during the first policy period, and damage to the next three units occurred during the second policy period. The "manifestation" rule did not mean, in this third party policy, that since the damage, which was similar in all phases, first manifested itself during the first policy period, only that policy was implicated. A key predicate to deciding which policy is implicated is that some damage (i.e., physical injury to property) has actually been suffered during the relevant policy period. Thus, the court properly looked at the date the injury became appreciable, not the date of the negligent cause of the injury, i.e., continuing shoddy workmanship. Since there was no evidence any of the buildings in phases four through six showed actual damage until the second of defendant's policy periods, the trial court correctly ruled that both policies were implicated.

CA(3)±(3) **Insurance Contracts and Coverage § 107--Extent of Loss of Insured and of Liability of Insurer--Liability and Indemnity Insurance--Obligation to Defend Insured--Independent Counsel--Fees.** --An attorney hired by an insurer to represent the best interests of its insured is not barred from billing the insurer for settlement efforts, including an effort to convince the insurer to contribute to a settlement.

**COUNSEL:** Fisher & Hurst, Dennis Gildea and Lori A. Sebransky for Defendant and Appellant.


Cozen & O'Connor and M. Stuart Goldin for Plaintiffs and Respondents.

**JUDGES:** Opinion by Froehlich, J., with Kremer, P. J., and Haller, J., concurring.

**OPINION BY:** FROEHLICH, J.

   **OPINION**


   [*197]  [**519] **FROEHLICH, J.**

This action involves a dispute over the allocation of liability between two **insurance companies** which had insured a single  [*198]  insured, Hacienda Roofing, Inc. (Hacienda). Appellant **National American Insurance Company** of **California** ▾(NAICC) insured Hacienda under two liability policies covering the 1984-1985 and 1985-1986 periods. Those policies contained a "broad-form endorsement" expanding the types of coverage afforded Hacienda. Respondent **Insurance Company** of **North America** ▾(INA) insured Hacienda under similar policies during succeeding years.

Hacienda was the roofing contractor on a condominium project. The roofs failed. In the ensuing construction defect lawsuit, the [***2] general contractor, Buie Corporation (Buie), was held liable to the homeowners association, and Hacienda was held liable (under a "Type I" indemnity agreement) to pay Buie's liability to the homeowners association. INA paid the bulk of Hacienda's liability to Buie. INA now seeks reimbursement from  [**520] NAICC for NAICC's alleged share of the liability.

The issue is whether Hacienda's liability to Buie was covered by NAICC's policy. NAICC asserts that a clause in its policy (the "workperformed" exclusion) excludes coverage for Hacienda's liability to Buie; the trial court, applying *Maryland Casualty Co. v. Reeder* (1990) 221 **Cal.** App. 3d 961 [270 **Cal.** Rptr. 719], rejected that contention. NAICC alternatively argues that even if the work-performed exclusion did not apply, all damages to the roofs

were part of a "single occurrence," and hence any coverage was limited to the first policy year because that was the year in which the damages first became manifest. The trial court rejected that argument, and instead required both of NAICC's policies to cover portions of the liability.

We conclude the trial court correctly construed the focus of the work-performed exclusion, [***3] and substantial evidence exists to support the conclusion that both of NAICC's policies were implicated.

I. *FACTUAL BACKGROUND*

A. *The Insurers*

Hacienda was a roofing contractor. NAICC and INA had insured Hacienda under substantively identical general liability policies which contained a broad-form endorsement. NAICC had coverage for two policy years (1984-1985 and 1985-1986), and INA provided coverage for the next three policy years.

[*199] B. *The Project*

Buie developed the Oaks **North** condominium project. Buie subcontracted the roofing portion of the project to Hacienda. As part of its responsibilities, Hacienda was to install its roof in a manner which incorporated the work and materials previously supplied or installed by other subcontractors.

As partial consideration for receiving the subcontract, Hacienda agreed to indemnify Buie under a so-called Type I indemnity agreement. That agreement provided:

"Subcontractor [Hacienda] shall further indemnify Contractor [Buie] and Owner against, and hold them, and each of them, harmless for all claims, demands and liability of every nature arising from injury to persons or property resulting from Subcontractor's [***4] performance of this Agreement.

"Such indemnification shall extend to all claims, demands and liability arising from the activities of sub-subcontractors and Subcontractor's suppliers while engaged in the performance of the work to be done under this Agreement. This indemnification agreement applies to claims, demands and liability for injury contributed to by the negligence or other misconduct of Contractor [Buie], as long as the injury is caused in part by the negligence or misconduct of Subcontractor, or by its subcontractor, employees, agents or suppliers."

C. *The Liability Lawsuit*

The homeowners association sued Buie and others for defects in the project. The suit alleged, among other things, that the built-up and tile roofs were defectively constructed and installed, causing decay in the roof and structural members. Buie cross-complained for indemnity against Hacienda and other subcontractors.

The jury in the underlying action found Buie strictly liable for the defects, and found damages from the built-up and tile roof defects in the amount of $ 2,492,832.95. [1] The jury found Hacienda had caused $ 931,900.26 of those damages. With the exception of the structural [***5] defects and the tile pot shelves defects, both of which the jury concluded were solely the result of Buie's negligence, the jury allocated the fault among several of the parties. The jury [*200] assessed 32.4 percent of the fault to Hacienda, 2 percent to [**521] two other subcontractors, and the balance to Buie. [2]

**FOOTNOTES**

**1** The jury also found other defects had caused some damage: "wood pot shelves" defects in the amount of $ 33,344.46; "tile pot shelves" defects in the amount of $ 85,597.03; and structural defects in the amount of $ 38,240.65. The jury also found Buie liable for investigation expenses of $ 129,771 and past cost of repairs in the amount of $ 95,000.

**2** The special verdict form assessed 2 percent of the fault to two sheet metal contractors, and instructed the jury that it was to assess to Buie all fault attributable either to Buie *or* to any parties not present in the litigation. For example, to the extent some of the fault was attributable to the framing contractor, that percentage was amalgamated with the fault directly attributable to Buie's negligence.

[***6] On Buie's cross-complaint against Hacienda, the trial court upheld the enforceability of the Type I indemnity agreement, concluding that under the express terms of the indemnity agreement Hacienda was obligated to indemnify Buie for the entire amount of roof damages which Buie was obligated to pay the homeowners, including the costs of investigation and repair. Buie also was awarded its attorney fees and costs. The trial court ultimately awarded Buie attorney fees and costs of $ 289,983.72.

D. *The Settlement With Buie*

The total judgment in favor of Buie and against Hacienda was $ 2,847,593.67, which included attorney fees and costs of $ 289,983.72. To discharge that judgment, INA paid $ 2 million and NAICC paid $ 309,983.72 to Buie.

II. *THE PRESENT ACTION*

INA's suit claims INA is entitled to some reimbursement from NAICC because part of the damage was manifested during NAICC's two policy periods and was within the coverage of the policies because NAICC provided coverage for any liability assumed by Hacienda under an "incidental contract"--that is, the type of liability Hacienda had assumed by entering the Type I indemnity agreement with Buie. INA contended that, [***7] on the facts of this case, the work-performed exclusion had only partial application, and to the extent it was not applicable INA claimed the right to partial indemnity from NAICC.

NAICC sought to avoid *all* liability by contending the work-performed exclusion applied to all of the roofing damage. NAICC alternatively argued that to the extent it had any liability all of the damages were attributable to its first policy (the 1984-1985 policy year), because 1984-1985 was the year the damages to the first units became manifest. NAICC also contended the court miscalculated the remaining available policy limits under its 1984-1985 policy. NAICC argued that its payment of $ 289,983.72 was paid as part of its indemnity obligation under the first policy, thereby depleting the [*201] remaining limits and leaving just over $ 5,000 on the first policy. Finally, NAICC contended it had no liability for certain attorney fees incurred by an appellate lawyer.

III. *THE WORK-PERFORMED EXCLUSION WAS PROPERLY CONSTRUED AND APPLIED HERE*

*CA(1)*⊼**(1)** NAICC first contends it had no obligation to indemnify Hacienda because of the work-performed exclusion. We conclude that because Hacienda had purchased [***8] a broad-form endorsement expanding the coverage afforded by the comprehensive general liability policy, Hacienda obtained coverage to the extent it was liable for damage to the roofs caused by the negligence of third parties.

A. *The Policy Language*

Under a comprehensive general liability policy which does *not* contain a broad-form endorsement, exclusion (o) excludes "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof." The effect of this clause is to eliminate coverage for damage the insured or those working on its behalf might cause to the very work the insured is constructing, and places on the insurer the cost of repairing the work. The courts, construing clause (o), have opined: "[Such a policy] is neither a performance bond nor an 'all risk' policy. [Citation.] Rather, the effect of the policy is to make the contractor stand its own replacement and repair losses while the insurer takes the risk of injury to the property of others. [P] . . . By excluding repair and replacement losses, the insurer gives the contractor an incentive to exercise care in workmanship thereby reducing the risk that is **[\*\*\*9]** covered: damage to property of third parties. **[\*\*522]** Coverage of repair and replacement costs would undermine this incentive." ( *Western Employers Ins. Co. v. Arciero & Sons, Inc.* (1983) 146 **Cal.** App. 3d 1027, 1031 [194 **Cal.** Rptr. 688].)

Had exclusion (o) been the operative exclusion, the damage to the roofs (i.e., the work performed) would have been excluded whether caused by Hacienda's negligence or by the negligence of third parties working with Hacienda.

However, Hacienda purchased a broad-form endorsement, which, among other things, replaced exclusion (o) with a different exclusion. The modified language excluded ". . . property damage to work performed *by the named insured* arising out of such work or any portion thereof" and thus deleted the "or on behalf of" clause from the highlighted language. In *Maryland* **[\*202]** *Casualty Co. v. Reeder, supra,* 221 **Cal.** App. 3d 961, this court construed the intent behind the modified language. In *Maryland Casualty* the insureds (a developer and a general contractor) had built and sold condominiums, and were later sued for damages from defective construction. ( *Id.* at pp. 965-966.) The insurer claimed **[\*\*\*10]** there was no coverage because the condominiums constituted the "work" and the insureds had no coverage for the work they performed. However, the *Maryland Casualty* court, examining the language and intent of the broad-form endorsement, concluded the modified language was designed to provide the insured with coverage for damage to the insured's work which resulted from the negligence of the insured's subcontractors. ( *Id.* at pp. 971-974.)

B. *Application of the Broad-form Work-performed Exclusion*

The broad-form endorsement thus continues to exclude coverage to the extent Hacienda damaged the roofs through its own negligence, but provides coverage to the extent Hacienda had liability for damage to the roofs caused by the negligence of third parties for whom Hacienda was derivatively liable. This was precisely how the trial court applied the exclusion in this case. In the underlying action the jury and court found (1) Hacienda was derivatively liable under the Type I indemnity agreement for the damages to the roof which resulted from the negligence of third parties (i.e., Buie and other subcontractors); (2) the negligence of several parties (i.e., Hacienda, Buie and other **[\*\*\*11]** subcontractors) caused the damages; and (3) of the total roof damages of $ 2,492,832.95, a portion thereof ($ 931,900.26) was caused by Hacienda's negligence.

With these findings the court in this action concluded the work-performed exclusion did not act as a complete bar to INA's action for reimbursement, because part of the roof damage ($ 1,560,932.69) did *not* result from Hacienda's negligent work and hence was *not* excluded under the broad-form endorsement but was an amount for which Hacienda was derivatively liable. [3] We now turn to the various challenges NAICC makes to this conclusion.

**FOOTNOTES**

3 To determine the extent of NAICC's liability to INA for reimbursement, the court went through a series of calculations. It first apportioned the non-Hacienda caused damage between NAICC and INA. It then divided NAICC's amount (i.e., the non-Hacienda-caused damage for which NAICC was liable) between NAICC's two policy years. It then applied a percentage calculation to reach the final determination of how much each of the two policies was required to pay in order to reimburse INA.

**[\*\*\*12]** NAICC's principal contention effectively urges that *Maryland Casualty* was wrongly decided. NAICC argues that the exclusion (by excluding **[\*203]** damage "arising out of [Hacienda's] work") is triggered so long as Hacienda was a contributing cause of the damage to the roofs, even though the negligence of others *also* created damage for which Hacienda is derivatively liable. If this were correct, *Maryland Casualty* would be gutted: damages to a work *always* arise out of a developer's or general contractor's work. The import of *Maryland Casualty* is to distinguish between the insured's liability for its own negligence for which there is no coverage, and the insured's derivative liability for the negligence of others for which there is coverage. Since *Maryland Casualty* construed the language of the exclusion as providing coverage in the latter instance, **[\*\*523]** NAICC's claim that such coverage should be extinguished if the insured was also contributorily negligent would effectively destroy the efficacy of the coverage *Maryland Casualty* concluded the broad-form endorsement would provide.

NAICC argues the underlying action necessarily adjudicated that **[\*\*\*13]** all of the damages arose out of Hacienda's negligence, since enforcement of the Type I indemnity agreement depended on a finding the claim arose from Hacienda's activity. While the court in the underlying action did hold Hacienda liable for *all* roofing damages, it did so *not* because Hacienda's work was the sole cause of 100 percent of the damage, but because of the Type I indemnity agreement. That agreement made Hacienda contractually liable for all damages, including those caused by the negligent conduct of others (i.e., the type of coverage afforded under *Maryland Casualty*), so long as *some* of the fault was attributable to Hacienda. Thus, so long as there was some evidence to support the conclusion Hacienda was held liable derivatively (i.e., for the negligent work of others) rather than for its sole negligence, the work-performed exclusion would apply only to the latter, not to the entire, liability.

NAICC claims there was no evidence others were at fault in causing the damages for which Hacienda was held liable. NAICC is wrong. The underlying judgment did assess comparative fault to Buie and two subcontractors; an expert testified in INA's action about both faulty **[\*\*\*14]** workmanship, which could have been attributable to other trades, and scheduling (normally Buie's responsibility as general contractor); and the project plans showed the scope of the roofing work was to include "incorporat[ion] [of] other trades' flashing, sleeves and jacks," permitting an inference other trades *did* supply work to the job and Hacienda then overlaid its work onto the prior work.

At bottom, NAICC seems to assume that the work-performed exclusion and the Type I indemnity agreement are triggered by the same facts. NAICC is wrong. The focus of each of the two contracts is distinct. The indemnity **[\*204]** agreement focuses on creating derivative liability for the negligence of others and uses the "arising from" language to define the scope of that derivative liability. The exclusion focuses on the insured's own conduct and uses the "arising out of" language to except from coverage those damages caused by the insured's own conduct, while leaving coverage for injuries caused by others, for which injuries the insured is derivatively liable.

Because the indemnity agreement creates derivative liability, and the exclusion (as construed

by *Maryland Casualty*) does **[\*\*\*15]** not bar coverage for such liability, the trial court correctly ruled Hacienda's liability to Buie was within the scope of coverage afforded by NAICC's policy.

## IV. *THE TRIAL COURT CORRECTLY HELD THAT BOTH OF NAICC'S POLICIES WERE IMPLICATED*

*CA(2)* **(2)** NAICC alternatively argues there was only a single occurrence and all damages must be limited to the 1984-1985 policy, since this was the policy period during which the damages from the defective construction first became manifest.

The factual background for this contention is not disputed. The condominium project was built in nine phases. The first three phases were completed during NAICC's 1984-1985 policy period; the second three phases were completed during NAICC's 1985-1986 policy period; and the remaining buildings were completed during INA's policy coverage. There was physical damage to the first three phases during NAICC's 1984-1985 policy period, and there was physical damage to the second three phases during NAICC's 1985-1986 policy period. In all phases the roofs were constructed the same way (i.e., using the same plans, installation methods and contractor) and the same or similar defects caused the same or similar damages to **[\*\*\*16]** the buildings in each of the phases.

NAICC relies on the "manifestation" rule in its attempt to limit coverage to the 1984-1985 policy. NAICC contends the 1984-1985 policy is liable for *all* damages, including damage to the phases not completed until the 1985-1986 policy period, arguing the 1984-1985 **[\*\*524]** **insurance** policy was on risk at the time damages first became manifest and hence such policy is responsible for all damages, including those which surfaced after that policy lapsed. While NAICC correctly states the general rule applicable to first party policies (see *Prudential-LMI Com.* ***Insurance*** *v. Superior Court* (1990) 51 **Cal.** 3d 674, 699 [274 **Cal.** Rptr. 387, 798 P.2d 1230]), the Supreme Court recently announced that a different analysis is applicable to third party policies. ( *Montrose Chemical Corp. v. Admiral Ins.* **Co.** (1995) 10 **Cal.** 4th 645 [42 **Cal.** Rptr. 2d 324, 897 P.2d 1].)

**[\*205]** The *Montrose* court cautioned that a key question is whether property damage occurred "during the policy period." (10 **Cal.** 4th at p. 699.) Thus, a key predicate to deciding which policy is implicated is that some damage (i.e., physical injury to property or person) **[\*\*\*17]** has *actually* been suffered during the relevant policy period. Here NAICC claims that the damage to phases 4 through 6 occurred *before these phases were even finished*, but there is no evidence any of those buildings *actually* suffered any appreciable damage prior to completion. Indeed, there was no evidence Hacienda had even *begun* its roofing work on phases 4 through 6 when the damages first became manifest in phases 1 through 3. It would be illogical to hold that an **insurance** policy covers damages to a structure on which its insured had not even worked during the policy period, merely because the insured had shown a proclivity for poor workmanship on other buildings during the policy period. ⁴ We must examine the date the injury became appreciable, not the date of the negligent cause of the injury. ( *Remmer v. Glenn Falls Indem.* **Co.** (1956) 140 **Cal.** App. 2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379].)

## FOOTNOTES

4 Indeed, NAICC's theory could lead to rather absurd results. For example, the date of manifestation is often deemed to be coextensive with the date the injured party's cause of action accrued--that is, the date on which a reasonable person would have noticed appreciable damage. (Cf. *Prudential-LMI Com.* ***Insurance*** *v. Superior Court*, *supra*, 51 **Cal.** 3d 674, 699 [suggesting manifestation and "inception of the loss" for purposes of first party claims may be the same date].) Under NAICC's theory, the manifestation of the

injury in the first three phases would trigger the causes of action against Hacienda even for unconstructed buildings.

[***18] NAICC's reliance on *Economy Lumber **Co. v. Insurance Co.** of **North America*** (1984) 157 **Cal.** App. 3d 641 [204 **Cal.** Rptr. 135] is misplaced. NAICC claims *Economy Lumber* held that where one defect causes damages to multiple units, there is only one occurrence. NAICC misreads *Economy Lumber*. The court there decided only whether application of defective sidings could be treated as an "accident," not whether all eight of the houses to which the defective siding was applied would be treated as one occurrence rather than eight. ( *Id.* at pp. 647-648.) *Economy Lumber* is of no aid to NAICC. ⁵

**FOOTNOTES**

⁵ NAICC also relies on two federal cases: *Appalachian Ins. **Co.** v. Liberty Mut. Ins. **Co***. (3d Cir. 1982) 676 F.2d 56, and *Chemstar, Inc. v. Liberty Mut. Ins. **Co***. (C.D.**Cal.** 1992) 797 F. Supp. 1541. There were two issues in *Appalachian*: (1) whether numerous injuries from a single cause (a discriminatory employment policy) should be treated as a single or multiple occurrence; and (2) when the injury occurred (whether at the time the policy was adopted or when the injurious effects of the policy were felt). On the issue of "when," the court concluded the injury occurred when the injurious effects of the policy became manifest. Even if that criteria could be applied here, the injurious effects of the poor workmanship could not have been felt in buildings 4 through 6 until those buildings existed.

In *Chemstar*, 28 homeowners sued the insured because of pitting of the plaster on their homes. The issues were: (1) the number of "occurrences"; and (2) the time of the occurrences. ( *Chemstar Inc. v. Liberty Mut. Ins. **Co.**, supra*, 797 F. Supp. at pp. 1543-1544.) The court in *Chemstar* used the "causation" rule to determine whether there was one or more occurrences, and concluded the single cause of all 28 cases of pitting was the failure to warn that the plaster was unsuitable for indoor use. ( *Id.* at pp. 1546-1547.) The court then ruled that the policy in effect at the time the first home experienced pitting was liable for all losses arising from the failure to warn. ( *Id.* at p. 1552.) *Chemstar* cited no authority for this latter conclusion. More importantly, *Chemstar* involved a single cause (failure to warn) which produced multiple injuries. In this case, however, there was not a "single cause." Buildings 4 through 6 were not damaged because of the work done on buildings 1 through 3, but instead were damaged by the work done on buildings 4 through 6. However valid *Chemstar*'s facts might be, they are irrelevant to this case.

[***19] [*206] [**525] Since there was no evidence any of the buildings in phases 4 through 6 showed actual damage until the second of NAICC's policy periods, the trial court correctly ruled that both of NAICC's policies were implicated.

V. *THE TRIAL COURT'S AWARD DID NOT EXCEED THE REMAINING POLICY LIMITS AVAILABLE FOR THIS CLAIM*

NAICC next urges that the 1984-1985 policy limits had only $ 5,616.28 remaining to pay this claim, and hence the award to INA of $ 296,000 from that policy was error.

The 1984-1985 policy had a $ 500,000 limit. The parties agree NAICC paid $ 184,000 on two unrelated claims, reducing its remaining limits to $ 316,000. NAICC also paid $ 309,983.72 as its contribution to the settlement of the Buie/Hacienda litigation, of which $ 20,000 was for damage-related items. The dispute is over how to account for the remainder of that contribution (i.e., $ 289,983.72), which represented the amount awarded to Buie for attorney

fees and costs in the underlying litigation. NAICC claimed the $ 289,983.72 should be applied to reduce the remaining policy limits under the 1984-1985 policy, while INA contended the $ 289,983.72 represented a "cost[] taxed against **[\*\*\*20]** the Insured in any suit defended by the **Company**" under the "Supplementary Payments" section of the policy. [6]

### FOOTNOTES

[6] The Supplementary Payments section provided that NAICC would pay "*in addition to the applicable limit of liability*: (a) all expenses incurred by [NAICC], *all costs taxed against the insured in any suit defended by [NAICC]* . . . ." (Italics added.)

We conclude the trial court correctly held that the $ 289,983.72 was an amount falling under the Supplementary Payments section of the policy. In the underlying action Buie asserted entitlement to indemnity based on, among other theories, a contractual agreement. **HN1** ⚓That contract included a "prevailing party" clause entitling the prevailing party to its attorney fees. Attorney fees under such a contractual clause are allowable as costs. ( Code Civ. Proc., § 1032, 1033.5, subd. (a)(10)(A).) In the underlying Buie v. Hacienda suit, the court's award against Hacienda included "costs," among **[\*207]** which were Buie's attorney fees. This **[\*\*\*21]** evidence supports the conclusion the $ 289,983.72 was a "cost" assessed against Hacienda under the prevailing party clause, which would fall within the Supplementary Payments provision.

NAICC argues the attorney fees awarded Buie were fees incurred by Buie in defending itself against the homeowners association, rather than fees incurred in its suit against Hacienda, and hence the only basis for "passing through" those fees was under the indemnity clause (P J of the contract), not under the prevailing party clause (P U of the contract). We reject this claim. First, NAICC cites no evidence to support its claim that the fees awarded Buie in the underlying action were to defend the homeowners' action rather than to prosecute Buie's contractual claim against Hacienda. Second, the award in the underlying action demonstrates the trial court there could identify when a cost award was attributable to the indemnity agreement, since the underlying judgment identified four separate categories of costs Buie was to recover, one of which was "Expert witness fees paid by Buie *pursuant to P J.*" (Italics added.) However, the judgment awarding attorney fees incurred by Buie was not similarly limited. **[\*\*\*22]** This evidence permits the inference the award of attorney fees fell under a provision other than paragraph J--that is, that the award was under the "prevailing party clause" of paragraph U.

VI. *THE TRIAL COURT CORRECTLY REQUIRED NAICC TO CONTRIBUTE TO THE FEES INCURRED BY APPELLATE COUNSEL*

NAICC's final challenge asserts it was improper to require NAICC to pay one-half of the fees paid to Mr. Lincoln, the attorney hired by INA to represent Hacienda on appeal. NAICC does not dispute the fact **HN2**⚓that an insurer's duty to defend encompasses the duty to pursue an appeal where reasonable grounds exist for such an appeal. ( *Jenkins v.* **Insurance Co. of North America** (1990) 220 **Cal.** App. 3d 1481, 1489-1491 [272 **Cal.** Rptr. 7].) Lincoln testified that he was retained to represent Hacienda's interests on appeal, and that his review of the material **[\*\*526]** identified appellate issues which he believed were worthy of pursuit. He indicated the fees incurred in that effort were approximately $ 43,000 and were fair and reasonable.

NAICC argues it was improper to charge one-half of Lincoln's fees to NAICC because the evidence did not disclose what portion of the fees was related to **[\*\*\*23]** the appeal and what portion to Mr. Lincoln's efforts to settle the case, which included an effort to obtain contribution from NAICC to fund **[\*208]** such a settlement. [7] **CA(3)**⚓**(3)** While the evidence

suggests Lincoln did engage in both appellate work and settlement discussions, NAICC cites no authority holding that an attorney hired by an insurer to represent the best interests of its insured is barred from billing the insurer for settlement efforts, including an effort to convince the insurer to contribute to settlement.

## FOOTNOTES

7 NAICC also claims it was improper to charge NAICC for Lincoln's fees because NAICC was already paying separate counsel to represent Hacienda's interests on appeal. Our effort to locate evidence supporting that claim was fruitless.

Ample evidence exists to show Lincoln's efforts were undertaken in the best interests of the insured, his fees for such efforts were reasonable, and such fees should be paid under the obligation to pay defense costs.

DISPOSITION

The judgment is affirmed.

Kremer, [***24] P. J., and Haller, J., concurred.

A petition for a rehearing was denied August 24, 1995, and appellant's petition for review by the Supreme Court was denied November 21, 1995.

Source:  My Sources > States Legal - U.S. > California > Find Cases > **CA Federal & State Cases, Combined** ⓘ
Terms:  **insurance company of north america v. national american insurance co. of california, 37 cal. app. 4th 195** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View:  Full
Date/Time:  Friday, March 21, 2008 - 11:08 AM EDT

\* Signal Legend:
● -  Warning: Negative treatment is indicated
Ⓠ -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

_My Lexis_™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help



About LexisNexis | Terms & Conditions | Contact Us
® **LexisNexis®**  Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT D

LexisNexis® *Total Research System*

Switch Client ┆ Preferences ┆ Sign Off ┆ ? Help

My Lexis™ ┆ Search ┆ Research Tasks ┆ Get a Document ┆ Shepard's® ┆ Alerts ┆ Total Litigator ┆ Transactional A

Source: Legal > States Legal - U.S. > Florida > Find Cases > FL Federal & State Cases, Combined i
Terms: **employers ins. co. v. hofrichter, p.a. 670 so. 2d 1023** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

✔Select for FOCUS™ or Delivery
☐

*670 So. 2d 1023, \*; 1996 Fla. App. LEXIS 1605, \*\*;*
*21 Fla. L. Weekly D 527*

PACIFIC **EMPLOYERS** INSURANCE COMPANY, Appellant, v. ALEX **HOFRICHTER, P.A.,** et al., Appellees.

CASE Nos. 94-1232, 94-610, 94-611

COURT OF APPEAL OF FLORIDA, THIRD DISTRICT

**670 So. 2d 1023**; 1996 Fla. App. LEXIS 1605; 21 Fla. L. Weekly D 527

February 28, 1996, Filed

**SUBSEQUENT HISTORY:** [\*\*1] Rehearing Denied April 17, 1996. Released for Publication April 17, 1996.

**PRIOR HISTORY:** Appeals from the Circuit Court for Dade County, Eleanor Schockett, Judge. LOWER TRIBUNAL NO. 86-16785.

**DISPOSITION:** Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant insurer sought review of the order from the Circuit Court for Dade County (Florida), which granted appellee partner's summary judgment motion in appellant's declaratory judgment action against appellee insured to determine appellant's liability under a malpractice issuance policy appellant issued to appellee insured.

**OVERVIEW:** Appellant insurer provided legal malpractice insurance coverage for appellee insured who was being sued by appellee partner. After appellant insurer had defended appellee insured in a malpractice lawsuit for a number of years and controlled the litigation, when the lower court was about to issue a cost judgment against appellant, appellant brought a declaratory judgment action against appellee insured to determine appellant's liability under the policy. The lower court entered summary judgment against appellant and assessed appellant's liability. Appellant sought review of the order assessing its liability. The court affirmed the ruling of the lower court. The court concluded that the clear language of the malpractice insurance policy provided that in light of appellant's undertaking of appellee insured's defense, appellant was obligated to pay the cost judgment which followed. The supplementary payments provision of the policy applied independent of whether or not there was coverage, and the policy at issue contained no restrictions or limitations on that promise. The lower court properly enforced the policy as written.

**OUTCOME:** The court affirmed the lower court's order, which granted appellee partner's summary judgment motion; appellant was obligated to pay the costs taxed against appellee insured because appellant had undertaken appellee insured's defense.

**CORE TERMS:** insured, insurer, coverage, taxed, summary judgment, defended, obligated to pay, disclose, pending claims, partnership, malpractice, partial

**LEXISNEXIS® HEADNOTES**                                                    ⊟ **Hide**

Insurance Law > Malpractice Insurance > Defense Obligations
Insurance Law > Malpractice Insurance > Exclusions

*HN1* The supplementary payments provision of a policy applies independent of whether or not there is coverage.  More Like This Headnote

**COUNSEL:** Arnall Golden & Gregory; Marlow, Connell, Valerius, Abrams, Lowe & Adler and Robert Scott Newman, for appellant.

Cooper & Wolfe and Sharon L. Wolfe and Maureen E. Lefebvre; Arnold R. Ginsberg and Alex **Hofrichter** and Todd R. Schwartz, for appellees.

**JUDGES:** Before SCHWARTZ, C.J., and HUBBART and NESBITT, JJ.

**OPINION**

[*1024] PER CURIAM.

In 1986, the law partnership of **Hofrichter,** Quiat & Zuckerman dissolved. Shortly thereafter, Zuckerman filed suit against **Hofrichter** seeking an accounting and a formal dissolution of the partnership. **Hofrichter** answered and counterclaimed. **Hofrichter** then filed a separate suit against Zuckerman alleging conspiracy, fraud, conversion, theft, and unjust enrichment.

Zuckerman then applied with Pacific **Employer's** Insurance ("PEIC") for malpractice insurance for his new firm. Zuckerman's application did not disclose **Hofrichter's** two pending claims against Zuckerman. PEIC issued a policy covering any professional malpractice claim made between the [**2] period of Nov 86-87, or prior to this period provided no insured had knowledge of any claims. The policy additionally contained an exclusion for claims brought by one insured against another insured.

However the policy also contained a Supplemental Payment Provision which stated:

B. The Company shall pay the following as part of the limits of liability under this policy:

(1) All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limits of the Company's liability thereon.

Zuckerman subsequently notified PEIC of **Hofrichter's** pending claims and sought coverage. PEIC retained attorney Paul Huck to defend Zuckerman. After the insurer had defended for a number of years and controlled the litigation, when the trial court was about to issue a cost judgment against the insured, PEIC brought a declaratory judgment action against Zuckerman to determine the insurer's liability under the policy.

The trial court **[**3]** entered a final judgment for $ 358,120.12 against Zuckerman in favor of **Hofrichter.** The trial court also held that **Hofrichter** was entitled to recover $ 719,100 in legal fees taxed as costs, that determination now on appeal in case no. 94-465. **Hofrichter** then obtained writs of garnishment against PEIC seeking to garnish the proceeds of Zuckerman's professional liability insurance policy to cover the awards. The court granted partial summary judgment in favor of **Hofrichter** as to PEIC's liability for **[*1025]** costs and attorney's fees, and thereafter granted final summary judgment in favor of **Hofrichter** assessing such liability at $ 719,100 plus interest at 12% per annum until paid. PEIC here appeals the partial summary judgment on liability, the denial of the insurer's ore tenus motion to abate that order, and the subsequent final summary judgment.

As was the case in the trial court, we need go no further than the clear language of the insurance policy to conclude that in light of the insurer's undertaking of Zuckerman's defense, it was obligated to pay the cost judgment which followed. This court has already held that *HN1* the supplementary payments provision of a policy applies independent of **[**4]** whether or not there is coverage. *Tri-State Ins. Co. of Minnesota v. Fitzgerald, 593 So. 2d 1118 (Fla. 3d DCA 1992); see Scottsdale Ins. Co. v. Deer Run Property Owner's Ass'n, 642 So. 2d 786 (Fla. 4th DCA 1994).* The policy at issue contains no restrictions or limitations on that promise. The trial court enforced the policy as written. *See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467 (Fla. 1993); U.S. Liab. Ins. Co. v. Bove, 347 So. 2d 678 (Fla. 3d DCA 1977).* Neither the claim that Zuckerman failed to disclose critical facts, nor the claim that the policy was never to provide coverage for a claim by another insured, changes this result. Once PEIC defended, substantive coverage was not necessary to trigger the obligation to pay costs taxed against the insured in any suit .

Accordingly, we affirm the orders under review. The insurer is obligated to pay the costs taxed against Zuckerman in this suit. Affirmed.

Source:   Legal > States Legal - U.S. > Florida > Find Cases > FL Federal & State Cases, Combined ⓘ
Terms:   **employers ins. co. v. hofrichter, p.a. 670 so. 2d 1023**  (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View:   Full
Date/Time:  Thursday, March 20, 2008 - 11:41 AM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
[A] -  Citing Refs. With Analysis Available
[i] -  Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

Advisor | Counsel Selector

History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis  | Terms & Conditions  | Contact Us
Copyright ©  2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.