# EXHIBIT E

LexisNexis® *Total Research System*

Switch Client ⋮ Preferences ⋮ Sign Off ⋮ [?] Help

*My Lexis*™ ⎝ Search ⎞ Research Tasks ⎞ Get a Document ⎞ *Shepard's*® ⎞ Alerts ⎞ Total Litigator ⎞ Transactional A

Source: Legal > States Legal - U.S. > Florida > Find Cases > FL Federal & State Cases, Combined [i]
Terms: **montura trading post v. century sur. co.,**   (Edit Search | Suggest Terms for My Search | Feedback on Your
Search)

✔Select for FOCUS™ or Delivery
☐

*2006 U.S. Dist. LEXIS 45968, \**

⬇ View Available Briefs and Other Documents Related to this Case

**MONTURA TRADING POST,** INC., IRMA BRANAMAN, JAMES M. DICKSON, MARLON
MEDRANO, SUSANA DE SANTIAGO, individually, as the Personal Representative of the Estate
of Antonio De Santiago, and as the Guardian of Antonio De Santiago's minor children,
Plaintiffs, vs. **CENTURY** SURETY COMPANY, Defendant.

Case No. 2:05-cv-378-FtM-29DNF

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, FORT MYERS
DIVISION

2006 U.S. Dist. LEXIS 45968

July 7, 2006, Decided

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff insureds filed suit against defendant insurer, seeking a
declaratory judgment that the insurer had a duty to defend the insureds in a wrongful
death suit that had been filed against them in state court. The insurer moved for summary
judgment.

**OVERVIEW:** The insureds owned and operated a convenience store that included a gas
station and a pool hall. A patron was allegedly beaten to death with a pool stick by other
patrons. The deceased patron's family filed a wrongful death suit against the insureds,
alleging that the insureds acted carelessly and negligently in failing to establish reasonable
security precautions to protect its patrons. The insurer alleged that it did not have a duty
to defend the insureds in that underlying action. The court agreed. The policy contained an
unambiguous clause excluding coverage for claims that arose out of, were caused by, or
resulted from, in whole or in part, any insured or additional insured's failure to thwart,
avoid, stop, lessen, or prevent any attack, fight, or assault. The claims in the wrongful
death suit satisfied all of these requirements. Further, a policy exclusion pertaining to
assault and battery also unambiguously excluded coverage in the wrongful death suit
because the patron's injury arose out of a chain of events that included assault and
battery, regardless of whether the assault or the battery was the initial precipitating event
or a substantial cause of injury.

**OUTCOME:** The court granted the insurer's motion for summary judgment and ordered
that judgment be entered in favor of the insurer.

**CORE TERMS:** assault, insured, battery, duty to defend, coverage, indemnify, summary judgment, endorsement, battery-related, negligently, decedent, ambiguity, genuine, insurer, cause of injury, carelessly, thwart, hinder, lessen, fight, theft, safe, foil, business invitees, legally liable, state action, insurance policy, insurance contracts, quotation, precipitating

**LEXISNEXIS® HEADNOTES**                                                        ⊟ **Hide**

Civil Procedure > Summary Judgment > Standards > Appropriateness 🔍
Civil Procedure > Summary Judgment > Standards > Genuine Disputes 🔍
Civil Procedure > Summary Judgment > Standards > Materiality 🔍
*HN1*⬇Summary judgment is appropriate only when a court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. A fact is "material" if it may affect the outcome of the suit under governing law. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof >
Absence of Essential Element of Claim 🔍
Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants 🔍
*HN2*⬇On a motion for summary judgment, a moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which the movant believes demonstrate the absence of a genuine issue of material fact. In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. More Like This Headnote

Civil Procedure > Summary Judgment > Evidence 🔍
*HN3*⬇In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. More Like This Headnote

Civil Procedure > Federal & State Interrelationships > Erie Doctrine 🔍
Insurance Law > Claims & Contracts > Policy Interpretation > General Overview 🔍
*HN4*⬇Under the Erie doctrine, a federal court adjudicating state law claims applies the substantive law of the state. The construction of insurance contracts is governed by substantive state law. More Like This Headnote

Insurance Law > General Liability Insurance > Obligations > Defense 🔍
*HN5*⬇It is clear that a liability insurer's obligation to defend a claim made against the insured must be determined solely from the allegations in the complaint. The duty to defend arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. If the allegations in a complaint when fairly read, allege facts which create potential coverage under the policy, the insurer must defend the lawsuit. Any doubt about the duty to defend must be resolved in favor of the insured. Thus, the duty to defend is broader than the duty to indemnify, in the sense that the insurer must defend even if the facts alleged are actually untrue or the legal theories unsound. However, if the pleadings show the

applicability of a policy exclusion, the insurer has no duty to defend. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview

Insurance Law > General Liability Insurance > Obligations > Defense

HN6⬧An amended complaint supersedes an earlier complaint when it does not express an intention to save any portion of the original complaint, and in such a situation the allegations of the amended complaint control the duty to defend. More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > Construction Against Insurers

Insurance Law > Claims & Contracts > Policy Interpretation > Plain Language

HN7⬧Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy. However, if the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous. Such ambiguities are construed in favor of the insured and strictly against the drafter. And in cases that involve exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured. But courts should not strain to find ambiguity. Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule about ambiguity apposite. In sum, if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning. More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview

HN8⬧With regard to insurance policies, the Florida courts have defined and applied the term "arising out of" as broader in meaning than the term "caused by" and meaning originating from, having its origin in, growing out of, flowing from, incident to, or having connection with. More Like This Headnote

## ⮟Available Briefs and Other Documents Related to this Case:

U.S. District Court Motion(s)

**COUNSEL:  [*1]**  For **Montura Trading Post,** Inc., Irma Branaman, James M. Dickson, Marlon Medrano, Plaintiffs: Thomas Montgomery, Thomas Montgomery, P.A., Belle Glade, FL.

For Susan De Santiago, as Personal Representative of the Estate of Antonio De Santiago, as Guardian for Jamie DeSantiago, Antonio De Santiago, Jr., Ruben De Santiago, Esmeralda De Santiago, minor children of the Decedent, and wife of the Decedent, Plaintiff: John Louis De Leon, Law Office of Chavez and De Leon, P.A., South Miami, FL US.

For **Century** Surety Company, Defendant: John R. Catizone, Litchfield Cavo LLP, Tampa, FL.

**JUDGES:** JOHN E. STEELE, United States District Judge.

**OPINION BY:** JOHN E. STEELE

## OPINION

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #19) filed on December 8, 2005. Plaintiffs filed their responses on March 20, 2006. (Docs. #36, 37.) Defendant filed exhibits in support of its brief, and with the Court's permission, filed a Reply on March 30, 2006. (Doc. #43.)

## I.

*HN1*☂Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment [*2] as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. *HN2*☂The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which the movant believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000), cert. denied, 534 U.S. 815, 122 S. Ct. 42, 151 L. Ed. 2d 14 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will [*3] bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). *HN3*☂In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

Viewed in the light most favorable to plaintiffs, the summary judgment facts are as follows: Defendant **Century** Surety Company (**Century** or defendant), a foreign corporation, entered into an agreement with plaintiff **Montura Trading Post**, Inc. (**Montura**), a Florida corporation. Pursuant to the agreement, defendant provided a commercial general liability coverage policy (the Policy) for **Montura's** business operations, which were conducted on the premises located at 335 County Road 833 in Hendry County, Florida, for the relevant period of time.

Susana de Santiago (Mrs. de Santiago) brought a wrongful death action in the Circuit Court of the Eleventh Judicial Circuit in and for Hendry County, Florida. [1] An [*4] Amended Complaint filed in state court alleged that "[o]n December 13, 2003, Antonio de Santiago (the "Decedent") was an invitee of **Montura Trading Post** and its premises of a convenience store, gas station, storage warehouses and billiard room located at 335 County Road 833 in Hendry County, Florida (the "premises") where he was beaten by Juan Ignacio Cedeno Lopez about the face and jabbed with a pool stick in the left eyebrow area which penetrated the eye and left splinters in the brain area and killed Antonio de Santiago." (Doc. #20-2, P 12). The Amended Complaint further alleges that "[i]n fact, the Decedent had been attacked, that day December 13, 2003, numerous times at the location, at the time of his death, in different areas of the premises while the agents and owners of the premises did nothing to reasonably protect the safety of it's customer, the Decedent, nor took any reasonable steps to mitigate against the attack perpetrated upon him." Id. The Amended Complaint continued: "As the Decedent attempted to get away from his attacker and was able to enter his vehicle, his killer

reached him, continued his attack, while [the other defendants] did nothing to reasonably **[*5]** protect the decedent. Antonio de Santiago died as a result of the attack at the premises and the negligence of [the defendants]." Id.

## FOOTNOTES

1 The underlying state action is titled Susana de Santiago v. **Montura Trading Post, Inc.**, Branaman, Dickson, Medrano, Lopez, Case No. 2004-366-CA.

Mrs. De Santiago named as defendants Lopez and **Montura**, as well as Irma Branaman, James M. Dickson, and Marlon Medrano, who were allegedly the owners/operators of the **Montura's** business operations located at the subject premises. In the Amended Complaint, Mrs. de Santiago makes similar factual allegations against defendants **Montura**, Branaman, Dickson, and Medrano, asserting that each:

> [F]ailed to take reasonable precautions to provide for the safety of its' [*sic*] business invites including Decedent Antonio De Santiago, by doing or failing to do one or more of the following:
>
> a. By carelessly and/or negligently failing to provide reasonably adequate security, security guards or any security whatsoever for **[*6]** its business invitees, including Plaintiff herein; and/or
>
> b. By failing to warn its business invitees of the likelihood of physical harm caused by the intentional criminal or harmful acts of third persons; and/or
>
> c. By carelessly and/or negligently permitting dangerous and potentially violent individuals, including but not limited to Plaintiff's assailant, to remain and/or loiter on or about the aforesaid premises during the afternoon hours of October 20, 2002; and/or
>
> d. By carelessly and/or negligently failing to warn its business invitees, including Plaintiff herein, of the presence of dangerous and potentially violent individuals roaming and/or loitering on or about Defendant's premises; and/or
>
> e. By carelessly and/or negligently failing to maintain its premises including the common elements in a reasonably safe and/or secure condition so as to prevent or deter reasonably foreseeable criminal acts of third persons; and/or
>
> f. By carelessly and/or negligently failing to provide its business invitees with safe ingress and egress.

(Doc. #20-2, pp. 8, 11, 14, 18). As to defendant Lopez, the Amended Complaint alleges that he "negligently and deliberately **[*7]** caused the death of Antonio de Santiago." (Doc. #20-2, P 60). This case remains pending in the state court.

On July 13, 2005, **Montura**, Branaman, Dickson, and Medrano filed a Complaint for Declaratory Relief in state court seeking a declaration that the incident complained of in the wrongful death complaint is covered by the Policy and that defendant owed a duty and responsibility to defend the claims made against its insured under the Policy. On August 9, 2005, **Century** removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. #1-1.) On December 2, 2005, the Court granted defendant's motion to join Mrs. De Santiago as a plaintiff. (Doc. #18.) Defendant now asserts that judgment should be entered in its behalf declaring that defendant has no duty to defend the wrongful death suit and the

Policy provides no coverage for that conduct.

**III.**

HN4♦"Under the Erie doctrine, a federal court adjudicating state law claims applies the substantive law of the state." Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005) (quotation omitted, citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). [*8] "The construction of insurance contracts is governed by substantive state law." Sphinx Int'l, Inc., 412 F.3d at 1227 (quoting Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 819 (11th Cir. 1985)). Thus, the Court evaluates the insurance policy in this case under Florida law.

HN5♦"It is clear that a liability insurer's obligation to defend a claim made against the insured must be determined solely from the allegations in the complaint. The duty to defend arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." State Farm Fire and Casualty Co. v. Higgins, 788 So. 2d 992, 995 (Fla. 4th DCA 2001). "If the allegations in a complaint when fairly read, allege facts which create potential coverage under the policy, the insurer must defend the lawsuit." Cabezas v. Fla. Farm Bureau Cas. Ins. Co., 830 So. 2d 156, 158 (Fla. 3rd DCA 2002) (emphasis in original). "Any doubt about the duty to defend must be resolved in favor of the insured." Smith v. Gen. Accident Ins. Co. of Am., 641 So. 2d 123, 124 (Fla. 4th DCA 1994). "Thus, the duty to defend is broader [*9] than the duty to indemnify, in the sense that the insurer must defend even if the facts alleged are actually untrue or the legal theories unsound." Higgins, 788 So. 2d at 996. "However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." State Farm Fire & Cas. Co. v. Tippett, 864 So. 2d 31, 35 (Fla. 4th DCA 2003).

HN6♦An amended complaint supersedes an earlier complaint when it does not express an intention to save any portion of the original complaint, and in such a situation the allegations of the amended complaint control the duty to defend. Higgins, 788 So. 2d at 995. In this case, the Amended Complaint superceded the original complaint, and therefore the Court looks to the allegations in the Amended Complaint as to the duty of defendant to defend the underlying case.

With regard to insurance coverage, the relevant Florida legal principles governing interpretation of an insurance policy have recently been summarized in Sphinx Int'l, Inc.:

> HN7♦Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy. [*10] However, if the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous. Such ambiguities are construed in favor of the insured and strictly against the drafter. And in cases such as this one that involve exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: "exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured. But courts should not strain to find ambiguity. Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [about ambiguity] apposite. In sum, if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning.

412 F.3d at 1227-28 (citations and internal quotations omitted). See also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1327 (11th Cir. 2005) (quotation and citation omitted).

## IV.

Defendant contends that under the **[*11]** Policy it owes no duty to defend or indemnify plaintiffs **Montura,** Branaman, Dickson, and Medrano in the underlying wrongful death action brought by plaintiff Mrs. de Santiago in state court. Specifically, defendant asserts that section A(8) of the Special Exclusions and Limitations Endorsement and the Exclusion -- Assault and Battery endorsement preclude the duty to defend or indemnify. Plaintiffs respond that because the claims involve negligence and not an intentional tort such as assault and battery, the claims do not fall under any of the policy exclusions, and defendant is obligated to defend and indemnify the underlying action in state court.

The Special Exclusions and Limitations Endorsement to the Policy states in pertinent part:

> A. In consideration of the premium charges this policy has been issued subject to the following exclusions being added to Coverages A & B:
>
> This insurance does not apply to:
>
> . . .
>
> 8. Failure to Maintain Secure or Safe Premises Claims arising out of, caused by, resulting from, or alleging, in whole or in part, any insured or additional insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, **[*12]** assault, theft, or crime. The company has no obligation to defend or indemnify any such claims.
>
> . . .

(Doc. #1-2, p. 18.)

Additionally, the Exclusion -- Assault and Battery endorsement to the Policy states:

> 1. This insurance does not apply to "bodily injury", "property damage", or "personal advertising injury" arising out of or resulting from:
>
> (a) any actual, threatened or alleged assault or battery;
>
> (b) the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;
>
> (c) the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;
>
> (d) the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;
>
> (e) the negligent:
>
> (i) employment;
>
> (ii) investigation;

(iii) supervision;

(iv) training;

(v) retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **1. (a), (b), (c) or [*13] (d)** above,

(f) any other cause of action or claim arising out of or as a result of **1. (a), (b), (c) or (d)** above.

2. We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

(a) any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.

(b) any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

(c) any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

. . .

(Doc. #1-3, p. 2.)

After reviewing the record, the Court finds that defendant is not obligated to defend or indemnify plaintiffs for the underlying state action. The "Failure to Secure and Safe Premises" exclusion provision **[*14]** of the Policy provides that insurance does not apply to, and defendant has no obligation to defend or indemnify, (1) claims, (2) arising out of, caused by, resulting from, or alleging, (3) in whole or in part, (4) any insured or additional insured's (5) failure to thwart, foil, avoid, hinder, stop, lessen or prevent, (6) any attack, fight, assault, theft, or crime. All elements of this exclusion are plead in the Amended Complaint. The causes of action set forth in the Amended Complaint constitute "claims" within the meaning of the Policy. The claims clearly satisfy the "arising out of, caused by, resulting from, or alleging" requirement. **HN8** The Florida courts have defined and applied the term "arising out of" as "broader in meaning than the term 'caused by' and mean[ing] 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'" Hagen v. Aetna Cas. & Surety Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996) (citing National Indem. Co. v. Corbo, 248 So. 2d 238 (Fla. 3d DCA 1971)). See also Guideone Elite Ins. Co., 420 F.3d at 1327 ("The Florida courts have held that use of the **[*15]** phrase 'arising out of indicates a 'causal relationship' to the incident."). The Amended Complaint alleges that the negligence on the part of **Montura,** Branaman, Dickson, and Medrano was connected to the attack on Mr. de Santiago. The "in whole or in part" requirement is clearly satisfied by the allegations of the Amended Complaint, as is the requirement that the conduct be by "any insured or additional insured." The conduct excluded from coverage is the "failure to thwart, foil, avoid, hinder, stop, lessen or prevent, any attack, fight, assault, theft, or crime," and both components of these requirements are satisfied. The Amended Complaint clearly describes conduct by defendants which constitute a failure to "thwart, foil, avoid,

hinder, stop, lessen or prevent." No limitation is placed on the exclusion as to whether the failure must be the result of intentional conduct or negligent conduct. Finally, the type of activity to which this failure relates -- "any attack, fight, assault, theft, or crime," (emphasis added) -- is clearly satisfied by the description of the attack in the Amended Complaint.

Additionally, the Exclusion -- Assault and Battery endorsement unambiguously excludes **[*16]** a duty to defend and coverage under the facts alleged in the Amended Complaint. This endorsement states that defendant does not have a duty to defend a claim seeking damages where "any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury." (Doc. #1-3, p. 2.) The language also states that defendant has no duty to defend or indemnify any claim where "any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause." (Id.) The endorsement explicitly states that the insurance policy does not cover "the insured or anyone else for whom any insured is or could be held legally liable" whose actions may give rise to bodily injury resulting from an assault and battery event. (Id.)

The Court finds that this exclusionary clause excludes from coverage, and precludes any duty to defend, the actions described in the Amended Complaint resulting in Mr. de Santiago's death from the attack and any negligence of the individual defendants in connection with the attack. **[*17]** The facts alleged in the Amended Complaint clearly demonstrate that the conduct "arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury," and/or that "any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause." Thus, the Court finds that **Century** has no duty to defend plaintiffs in the underlying state action, and the Court concludes defendant's Motion for Summary Judgment is due to granted.

In sum, the Court finds that defendant has no duty to defend or indemnify plaintiffs because the allegations in the Amended Complaint, when fairly read, brings the underlying case within the exclusion provisions of the Policy.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #19) is **GRANTED.** Defendant has no duty to defend or provide coverage to any insured or purported insured in the underlying state action stated herein.

2. The Clerk of the Court shall enter judgment in favor of defendant **Century** Surety Company and close the file.

**DONE AND [*18] ORDERED** at Fort Myers, Florida, this 7th day of July, 2006.

**JOHN E. STEELE**

**United States District Judge**

Source:   Legal > States Legal - U.S. > Florida > Find Cases > **FL Federal & State Cases, Combined** [i]
Terms:   **montura trading post v. century sur. co.,**   (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View:   Full
Date/Time:   Thursday, March 20, 2008 - 11:36 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

---

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis  | Terms & Conditions  | Contact Us

Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT F

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Off ┊ ?|Help

My Lexis™ ⟍ Search ⟍ Research Tasks ⟍ Get a Document ⟍ Shepard's® ⟍ Alerts ⟍ Total Litigator ⟍ Transactional A

Source: Legal > States Legal - U.S. > Florida > Find Cases > FL Federal & State Cases, Combined ⓘ
Terms: **union am. ins. co. v. maynard 752 so. 2d 1266** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

✦Select for FOCUS™ or Delivery
☐

*752 So. 2d 1266, \*; 2000 Fla. App. LEXIS 2716, \*\*;*
*25 Fla. L. Weekly D 648*

**UNION** AMERICAN INSURANCE COMPANY, Appellant, v. CLIFFORD E. **MAYNARD**, LENCON, INC., PAUL LEONARD, and LYNN A. PITTS, as Personal Representative of the Estate of John A. Pitts, deceased, Appellees.

CASE NO. 4D98-4233

COURT OF APPEAL OF FLORIDA, FOURTH DISTRICT

**752 So. 2d 1266**; 2000 Fla. App. LEXIS 2716; 25 Fla. L. Weekly D 648

March 15, 2000, Opinion Filed

**SUBSEQUENT HISTORY:  [\*\*1]**  Released for Publication March 31, 2000.

**PRIOR HISTORY:** Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lucy Chernow Brown, Judge; L.T. Case No. CL 97-4102 AF.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant filed an appeal from a ruling entered in the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County, Florida, which granted summary judgment for appellee employer in a declaratory judgment action.

**OVERVIEW:** Appellant insurer issued a commercial, general liability insurance policy, naming appellee employer as the named insured. Appellee employee, an employee of appellee employer, was told to take a cement mixer to Fort Lauderdale for repairs. On his way to the repair shop, appellee employee crashed into a car, killing the driver. At the time of the accident, appellee employee was acting within the scope of his employment with appellee employer. The personal representative of decedent's estate filed suit against appellee employer, appellee employee, and appellee president (of the employer). Appellant insurer brought a declaratory judgment action seeking to establish that it owed no duty to defend or indemnify for the underlying suit. The appellate court held that the insurance policy covered the underlying accident, since the policy was to be construed in the broadest possible manner to effect the greatest extent of coverage.

**OUTCOME:** The judgment was affirmed, because appellee employer was covered by insurance policy issued by appellant insurer.

**CORE TERMS:** insured, coverage, endorsement, bodily injury', insurer, ambiguity, loaned,

insurance policy, executive officers, exclusionary clauses, rented, truck, policy provided coverage, policy's definition, construed liberally, insuring, cement mixer, declaratory judgment, obligated to pay, reasonable interpretations, stockholders, watercraft, performing, aircraft, repair

## LEXISNEXIS® HEADNOTES                                               ⊟ **Hide**

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview 🔍

**HN1**⬇️It is well settled that insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage. More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview 🔍

**HN2**⬇️Where the language in an insurance policy is subject to differing interpretations, the policy language should be construed liberally in favor of the insured and strictly against the insurer. More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Exclusions 🔍

**HN3**⬇️Exclusionary clauses in liability insurance policies are to be construed liberally in favor of the insured and strictly against the insurer. More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > General Overview 🔍

**HN4**⬇️To properly interpret an exclusion, the exclusion must be read in conjunction with the other provisions of the policy, from the perspective of an ordinary person. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Contract Conditions & Provisions > General Overview 🔍
Insurance Law > Claims & Contracts > Policy Interpretation > Exclusions 🔍

**HN5**⬇️The current Florida rule is that strict construction is required of exclusionary clauses in insurance contracts only in the sense that the insurer is required to make clear precisely what is excluded from coverage. If the insurer fails in the duty of clarity by drafting an exclusion that is capable of being fairly and reasonably read both for and against coverage, the exclusionary clause will be construed in favor of coverage. If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** Roberto M. Ureta of McLuskey, McDonald & Payne, P.A., Miami, for appellant.

William L. Roby of Crary, Buchanan, Bowdish, Bovie, Roby, Beres, Negron & Thomas, Chartered, Stuart, for Appellee-Lencon, Inc.

Alicia M. Santana, and Jeffrey Michael Cohen of Cohen, Berke, Bernstein, Brodie & Kondell, P.A., Miami, for Appellee-Lynn A. Pitts, as Personal Representative of the Estate of John A. Pitts, deceased.

**JUDGES:** GROSS, J., DELL and STONE, JJ., concur.

**OPINION BY:** GROSS

**OPINION**

**[*1267]** GROSS, J.

The salient facts of this case are not in dispute. **Union** American Insurance Company ("**Union** American") issued a commercial general liability insurance policy, naming Lencon, Inc. as the named insured. Clifford **Maynard** was an employee of Lencon. On September 11, 1995, Lencon's president told **Maynard** to take a cement mixer to Fort Lauderdale for repairs. **Maynard** attached the cement mixer to his own truck. On his way to the repair shop, **Maynard** crashed into a car driven **[**2]** by John Pitts, who died as a result of the accident. At the time of the accident, **Maynard** was acting within the scope of his employment with Lencon.

Lynne Pitts, as the personal representative of the estate of John Pitts, filed suit against **Maynard,** Lencon, and the president of Lencon. **Union** American brought a declaratory judgment action seeking to establish that it owed no duty to defend or indemnify Lencon for the Pitts suit.

The insurance policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Section I.A.2.g. set forth an exclusion under the policy:

**2. Exclusions.**

This insurance does not apply to:

* * * *

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

Section II of the policy defined an "insured" under the policy:

**SECTION II-WHO IS AN INSURED**

1. If you are designated in the Declarations **[**3]** as:

* * * *

c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

Under the policy, **Maynard** was an "insured." Without more, **Union** American should have prevailed in its declaratory judgment suit. However, significantly for this case, an endorsement to the policy provided:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Part 2.a. of WHO IS AN INSURED (Section II) does not apply.

The effect of this exclusion was to eliminate employees acting in the scope of their employment from the policy's definition of an "insured."

Both Lencon and **Union** American filed motions for summary judgment on the issue of whether the policy provided coverage **[**4]** to Lencon. The trial court ruled that the policy provided coverage to Lencon, finding that "the contract for insurance as a whole contains an inherent ambiguity as to" the issue of coverage. The court wrote:

   **[*1268]**  There are two reasonable interpretations of the contract of insurance because in this case the legal liability of the corporation Lencon Inc. is based upon the status of master and servant, employer/employee, and not upon the dangerous instrumentality doctrine. There is a reasonable interpretation of the pertinent provisions of the policy (page two of twelve, page six of twelve, and the endorsement), which would provide for coverage to LENCON, INC., considering the entity LENCON, INC. individually and separate and apart from the employee.

Accordingly, the Court finds that there is coverage. On the face of the policy, an insured is excluded as an employee. While an argument has been made that the *employee* is really the *corporation*, the Court finds such an interpretation is no more or less reasonable than the first which supports coverage. The Court must find in favor of coverage where there is such an ambiguity. There are two reasonable ways of interpreting the provisions

   **[**5]**  . . . . Having found ambiguity, the Court finds in favor of coverage.

We agree with the conclusion reached by the trial court. *HN1*It is well settled that insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage. See Westmoreland v. Lumbermens Mut. Cas. Co., 704 So. 2d 176, 179 (Fla. 4th DCA 1997), rev. dismissed, 717 So. 2d 534 (Fla. 1998). *HN2*Where the language in an insurance policy is subject to differing interpretations, the policy language should be construed liberally in favor of the insured and strictly against the insurer. See State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998); Premier **Ins**. Co. v. Adams, 632 So. 2d 1054, 1055 (Fla. 5th DCA 1994). *HN3*Exclusionary clauses in liability insurance policies are to be construed liberally in favor of the insured and strictly against the insurer. See Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. **Ins**. Co., 711 So. 2d 1135, 1138 (Fla. 1998); Premier, 632 So. 2d at 1055. *HN4*To properly interpret an exclusion, the exclusion must be read in conjunction **[**6]** with the other provisions of the policy, from the perspective of an ordinary person. See CTC Dev. Corp., 720 So. 2d at 1074-75; Mactown, Inc. v. Continental **Ins**. Co., 716 So. 2d 289, 291 (Fla. 3d DCA 1998). As we observed in Westmoreland:

*HN5*"The current Florida rule is that strict construction is required of exclusionary clauses in insurance contracts only in the sense that the insurer is required to make clear precisely what is excluded from coverage. If the insurer fails in the duty of clarity by drafting an exclusion that is capable of being fairly and reasonably read both for and against coverage, the exclusionary clause will be construed in favor of coverage. If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written."

704 So. 2d at 179 (quoting State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Florida, Inc., 678 So. 2d 397, 401 (Fla. 4th DCA 1996), affirmed, 711 So. 2d 1135 (Fla. 1998)).

In this case, the insuring clause of the policy stated that **Union** American would "pay those sums that the insured becomes legally **[**7]** obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Under the policy, damages "because of bodily injury" included damages claimed by any person for "care, loss of services, or death resulting at any time from 'bodily injury.'" John Pitts's death arose from "bodily injury" and the insured, Lencon, is legally obligated to pay damages because its employee caused the bodily injury while acting within the scope of his employment with Lencon.

Therefore, coverage for the incident exists unless the policy excludes it. The auto exclusion in paragraph I.A.2.g. applies to bodily injury arising out of the use of any auto "owned or operated by or rented or loaned to any insured." The policy's definition of an "insured" in paragraph II.2.a. included employees acting within the scope **[*1269]** of their employment or "performing duties related to the conduct" of Lencon's business. If the policy ended with this definition of an insured, then clearly there would have been no coverage for the injury to Pitts, since **Maynard** would be characterized as an insured under the policy.

However, the effect of the endorsement was to eliminate that portion of the **[**8]** policy including employees within the policy definition of an insured. Under the policy as modified by the endorsement, the only defined "insureds" are the corporation, its executive officers, and directors. Given this limitation on the definition, one reasonable reading of the auto exclusion is that **Maynard's** truck was not "owned or operated by or rented or loaned to any insured" within the meaning of the policy. Another potential reading is that when **Maynard** used his truck to perform corporate business he loaned it to the corporation, an interpretation that would trigger the operation of the exclusion. As we have observed, where an exclusion is "capable of being fairly and reasonably read both for and against coverage, the exclusionary clause will be construed in favor of coverage." Deni Assocs., 678 So. 2d at 401.

We distinguish this case from that primarily relied upon by **Union** American, Michael Carbone, Inc. v. General Accident Insurance Co., 937 F. Supp. 413 (E.D. Pa. 1996). That case involved the construction of a general liability policy containing an automobile exclusion similar to that in this case; however, the policy in Carbone **[**9]** did not contain an endorsement that excluded employees as defined insureds under the policy, as did **Union** American's policy. In this case, it is the operation of the endorsement on the language of the policy that creates the ambiguity which compels the result we reach.

AFFIRMED.

DELL and STONE, JJ., concur.

Source:   Legal > States Legal - U.S. > Florida > Find Cases > FL Federal & State Cases, Combined ⓘ
Terms:   union am. ins. co. v. maynard 752 so. 2d 1266  (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View:   Full
Date/Time:   Thursday, March 20, 2008 - 11:37 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated

**A** - Citing Refs. With Analysis Available

**I** - Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT G

*654 So. 2d 239, \*; 1995 Fla. App. LEXIS 4426, \*\*;*
*20 Fla. L. Weekly D 1016*

FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Appellant, v. TERRANCE JOHNSON, Appellee.

CASE No. 93-2414.

COURT OF APPEAL OF FLORIDA, FOURTH DISTRICT

654 So. 2d 239; 1995 Fla. App. LEXIS 4426; 20 Fla. L. Weekly D 1016

April 26, 1995, Filed

**SUBSEQUENT HISTORY:  [\*\*1]** Released for Publication May 12, 1995.

**PRIOR HISTORY:** Appeal from the Circuit Court for Palm Beach County; Richard B. Burk, Judge. L.T. CASE NO. CL92-10068AO.

**DISPOSITION:** The judgment entered against FIGA, including the costs of $ 3,062.11, is affirmed in all respects.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant insurance guaranty association sought review of an order of the Circuit Court for Palm Beach County (Florida) that entered a final judgment in favor of appellee individual for costs of $ 3,062.11, over and above a damage award of $ 9,900, for the failure to pay appellee's claim.

**OVERVIEW:** Pursuant to Fla. Stat. ch. 631.57(1)(b), appellant insurance guaranty association became liable to appellee individual upon the insolvency of a tortfeasor's insurer, after appellee's jury trial against the tortfeasor. Subsequently, the trial court awarded appellee $ 3,062.11, which represented his costs incurred in pursuing the action against the insurer and later, appellant, for the failure to pay. Appellant sought review of the cost award, arguing that the trial court committed reversible error in holding appellant liable for a cost judgment that was not within the coverage of the insolvent insurer's policy and was in excess of the obligation of the insolvent insurer under the applicable policy. The court affirmed the award of appellee's costs because appellant as the successor to the insolvent insurer was a party to the litigation, the award represented reasonable expenses incurred by appellee as a result of the litigation, and the supplementary payments provisions in the policy were intended to extend coverage.

**OUTCOME:** The court affirmed the order that awarded costs to appellee individual because appellant insurance guaranty association was a party to the litigation as the successor to the insolvent insurer, the award represented appellee's reasonable expenses as a result of the litigation, and the supplementary payments policy provisions extended coverage to cover such costs.

**CORE TERMS:** insurer, insured, insolvent insurer, limits of liability, insolvent, coverage, statutory basis, tortfeasor, policy language, covered claims, liberally, shoes, expenses incurred, litigate

**LEXISNEXIS(R) HEADNOTES**
Insurance Law > Industry Regulation > Insurance Guaranty Associations > Coverage
Insurance Law > Industry Regulation > Insurer Insolvency > General Overview
**HN1** After an insurer becomes insolvent, the state insurance guaranty association "stands in the shoes" of the insolvent insurer, and, pursuant to Fla. Stat. ch. 631.57(3)(b), is deemed the insurer to the extent of its obligations on covered claims, and, to such extent, has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

**COUNSEL:** John P. Joy of Walton Lantaff Schroeder & Carson, Miami, for appellant.

Steven S. Farbman of Singer, Jaffe & Farbman, P.A., Hollywood, for appellee.

Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for amicus curiae Academy of Florida Trial Lawyers.

**JUDGES:** POLEN, J., DELL, C.J., and STONE, J., concur.

**OPINION BY:** POLEN

**OPINION**

[*239] POLEN, J.

The Florida Insurance Guaranty Association, Inc. (FIGA) appeals a final judgment in favor of an injured plaintiff, Terrance Johnson, for costs of $ 3,062.11 over and above the damage award of $ 9,900.00. Pursuant to section 631.57(1)(b), Florida Statutes (1991), FIGA became liable to Johnson upon the insolvency of the tortfeasor's insurer, First Miami Insurance Company (First Miami), after Johnson's jury trial against the tortfeasor. FIGA contests the cost award as being in excess of the policy limits. [1] We affirm.

**FOOTNOTES**

1 First Miami's policy of insurance covering the tortfeasor had limits of liability of $ 10,000.00 less a $ 100.00 statutory deduction. This amount is not in dispute.

[**2] It is established law in Florida that [HN1] after an insurer becomes insolvent, FIGA "stands in the shoes" of the insolvent insurer, and, pursuant to section 631.57(3)(b) Florida Statutes (1991), will "be deemed the insurer [*240] to the extent of its obligations on the *covered claims*, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent" (emphasis added). *See Peoples v. Florida Ins. Guaranty Assoc.*, 313 So. 2d 40, 41 (Fla. 2d DCA 1975), *cert. denied*, 327 So. 2d 34 (Fla. 1976). Consequently, at bar, a crucial issue in this case is the *scope of coverage* of the insurance policy issued to the defendant by First Miami.

In the instant case, the appellant FIGA, in contending that the trial court erred, relies upon the language of the policy, which provides:

> The limits of liability shown in the declarations for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injuries sustained by any one person in any one auto accident.

Citing section 631.57 (1)(a)(3), Florida Statutes, FIGA argues that, based on this policy language, as well as the [**3] applicable provisions of the FIGA Act, the trial court committed reversible error in holding FIGA liable for a cost judgment which, it claims, was (a) not within the coverage of the insolvent insurer's policy, and (b) in excess of the obligation of the insolvent insurer under the policy from which the claim arose. FIGA cites *General Accident F. and L. Assur. Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972), for the proposition that "a court cannot, under the guise of construction, make a new contract for the parties."

Conversely, the appellee Johnson argues that the "costs" which it seeks are, in fact, *consistent* with the terms of the *existing* policy. The appellee contends that the "costs" are covered within the "Supplementary Payments" provision of the insolvent insured's policy, which provides, in pertinent part: "in addition to our limit of liability, we will pay on behalf of a covered person . . . other reasonable

expenses incurred at our request." At bar, Johnson asserts that the "request" referred to took the form of First Miami's *election to litigate* the matter. Johnson contends that, having thus *chosen* to litigate, the taxable costs [**4] entered against the insured were, therefore, expenses covered under the terms of the policy. The award of taxable costs in this case are reasonable expenses incurred by the plaintiff, and charged to the defendant, as a result of the litigation of the action.

In the instant case, First Miami made the decision to defend this action. Since First Miami had sole discretion regarding the decision to defend the lawsuit, it is obvious that the expenses incurred by the plaintiff in litigating the action were as a result of the choice of the insurance company's choice not to settle the action. Thus, those expenses were incurred at the insurer's request.

In addition, appellee contends that the language of the "Supplementary Payments" provision is unambiguous. However, the appellee additionally points out that, in the event this court should find it to be ambiguous, any uncertainty must be construed against the insurer and in favor of the insured. *See Stuyvesant Ins. Co. v. Butler*, 314 So. 2d 567 (Fla. 1975). *See also Valdes v. Smalley*, 303 So. 2d 342 (Fla. 3rd DCA 1974), *cert. discharged*, and *National Ben Franklin Ins. Co. v. Butler*, 314 So. 2d 567 (Fla. 1975) (policy language [**5] which permits more than one construction must be liberally construed in favor of the insured to provide coverage). Thus, the "Supplementary Payments" provisions obviously have the intent of extending coverage and, therefore, must be construed liberally in favor of the insured. Accordingly, we affirm the trial court's judgment in this regard.

The appellant further contends that there was no statutory basis upon which the court could have assessed the court costs against FIGA. Their position is that, pursuant to section 57.041, Florida Statutes (1991), costs are recovered against the "losing party." *See Johnson v. Schneegold*, 419 So. 2d 684 (Fla. 2d DCA 1982). *See also Puig v. Saga Corp.*, 543 So. 2d 238 (Fla. 3d DCA 1989). FIGA argues that because all costs incurred by Johnson, and subsequently assessed against FIGA, occurred *prior* to the time First Miami was declared insolvent, FIGA was not even a party to the action. Thus, the appellant further contends that, since FIGA was not the party against whom [*241] Johnson prevailed, the court erred in assessing those costs against FIGA.

In response, the appellee again argues that the statutory basis upon which it relies is section [**6] 631.57(1)(b), Florida Statutes (1991) (the association shall "be *deemed the insured* to the extent of its obligation on the covered claims . . .") (emphasis added). Thus, there is no merit to FIGA's argument that it was not a party to the action. By virtue of its obligation as one who "stands in the shoes of" the insolvent insurer, there is a statutory basis upon which to assess court costs against FIGA.

The judgment entered against FIGA, including the costs of $ 3,062.11, is affirmed in all respects.

DELL, C.J., and STONE, J., concur.

---

Service:   **Get by LEXSEE®**
Citation:  **654 So.2d 239**
View:  Full
Date/Time:  Friday, March 21, 2008 - 9:31 AM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

---

 LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT H

**LexisNexis®** *Total Research System*                     Switch Client ⋮ Preferences ⋮ Sign Off ⋮ [?] Help

*My Lexis*™ ▼ Search ▼ Research Tasks ▼ Get a Document ▼ *Shepard's*® ▼ Alerts ▼ Total Litigator ▼ Transactional A

Source: Legal > States Legal - U.S. > Florida > Find Cases > **FL Federal & State Cases, Combined** [i]
Terms: **steele v. kinsey, 801 so. 2d 297** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

✔Select for FOCUS™ or Delivery
☐

*801 So. 2d 297, *; 2001 Fla. App. LEXIS 17646, **;*
*26 Fla. L. Weekly D 2950*

KEVIN M. **STEELE,** Appellant, v. SUSAN B. **KINSEY** and UNITED AUTOMOBILE INSURANCE
COMPANY, Appellees.

Case No. 2D00-4295, Case No. 2D00-4384, Case No. 2D01-533, CONSOLIDATED

COURT OF APPEAL OF FLORIDA, SECOND DISTRICT

**801 So. 2d 297**; 2001 Fla. App. LEXIS 17646; 26 Fla. L. Weekly D 2950

December 14, 2001, Opinion Filed

**SUBSEQUENT HISTORY: [**1]** Released for Publication January 8, 2002.

**PRIOR HISTORY:** Appeal from the Circuit Court for Hillsborough County; James M. Barton,
II, Judge.

**DISPOSITION:** We affirm the judgment of the trial court finding no insurance coverage and
certify conflict .

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Pursuant to an automobile accident with appellee insured,
appellant victim instituted an action against the insured for damages. The Circuit Court for
Hillsborough County, Florida, found that the insured's insurance policy did not cover
attorney fees and costs that she owed the victim. The victim appealed.

**OVERVIEW:** The victim contended that the insurer's decision not to settle forced the
litigation to continue, causing further expense, and, thus, the subsequent fees and costs
were incurred at the insurer's request. The main question before the appellate court was
whether such language in the insurance policy's supplementary payments provision was
ambiguous so that it was to be construed in favor of the insured and provide coverage.
The appellate court held that the policy did not provide coverage for any fees and costs to
which the driver may have been entitled. The language "expenses incurred at our request"
was clear on its face and could be applied according to its generally understood meaning.
Such language could only have meant that the insurer must request the product or service
that incurred the expense. Such words could not be construed any further. The appellate
court held that it was not the ultimate consequences, intended or unintended, of the
insurer's decision to litigate that determined the meaning of the policy's plain language; it
was the words themselves.

**OUTCOME:** The judgment of the trial court was affirmed.

**CORE TERMS:** insurer, insured, supplementary, expenses incurred, coverage, settle, public policy, unambiguous, litigate, construe, insurance policy's, insurance coverage, policy's limit, provide coverage, plain language, jury verdict, settlement, unintended, ambiguous, certify, asking

## LEXISNEXIS® HEADNOTES                                               ⊟**Hide**

Contracts Law > Performance > General Overview

Insurance Law > Motor Vehicle Insurance > General Overview

**HN1** The common meaning of "request" is the act of asking, or expressing a desire, for something; solicitation or petition. The legal meaning of the word is "an asking or petition. The expression of a desire to some person for something to be granted or done, particularly for the payment of a debt or performance of a contract.  More Like This Headnote

Contracts Law > Contract Interpretation > General Overview

Insurance Law > Motor Vehicle Insurance > Coverage > General Overview

**HN2** It is not the ultimate consequences, intended or unintended, of an insurer's decision to litigate that determine the meaning of a policy's plain language; it is the words themselves.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > Unambiguous Terms

Insurance Law > Claims & Contracts > Policy Interpretation > Ordinary & Usual Meanings

Insurance Law > Claims & Contracts > Policy Interpretation > Plain Language

**HN3** When faced with an unambiguous provision, the trial court cannot give an insurance policy any meaning beyond that expressed by the plain language and must construe the provision in accord with the ordinary meaning of the language.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

**HN4** Although it seems unjust that an insured should be required to bear the brunt of satisfying an excess adverse judgment that resulted, at least in part, from the insurance company's total control of the litigation, any remedy for that injustice is within the sphere of the legislature, not the courts.  More Like This Headnote

**COUNSEL:** Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, and Dale Swope of Swope Law Group, Tampa, for Appellant.

Hilda Klein of Conroy Simberg Ganon Krevans & Abel, P.A., Hollywood, for Appellees.

**JUDGES:** CASANUEVA, Judge. SALCINES and STRINGER, JJ., Concur.

**OPINION BY:** CASANUEVA

**OPINION**

[*298]  CASANUEVA, Judge.

The issue presented in this consolidated appeal is whether certain language in an insurance policy's supplementary payments provision is ambiguous so that it must be construed in

favor of the insured and provide coverage. We affirm the trial court's determination that there is no coverage and certify conflict with *Florida Insurance Guaranty Ass'n v. Johnson*, 654 So. 2d 239 (Fla. 4th DCA 1995).

Susan B. **Kinsey** was insured under an automobile liability insurance policy with United Automobile Insurance Company. Her policy, in common with most auto liability policies, gave the insurer exclusive control over settling or litigating any claim against the insured for damages covered by the policy. The **[**2]** policy also had a supplementary payments provision stating that the insurer would pay certain costs relating to litigation, e.g., bail bonds and post-judgment interest, including "[o]ther reasonable expenses incurred at our request."

**[*299]** While this policy was in force, Ms. **Kinsey** was involved in an auto accident with Kevin M. **Steele** on March 13, 1995. Mr. **Steele** was injured in the accident and instituted an action against Ms. **Kinsey** for his damages. Pursuant to section 768.79, Florida Statutes (1995), the offer of judgment statute, Mr. **Steele** offered to settle his claim against Ms. **Kinsey** for her policy's limit of $ 10,000. The offer was not accepted.

During the course of the proceedings, Mr. **Steele**, Ms. **Kinsey**, and United Auto entered into a joint stipulation and settlement agreement based on *Cunningham v. Standard Guaranty Insurance Co.*, 630 So. 2d 179 (Fla. 1994), which held that the trial court had jurisdiction to decide, by stipulation of the parties, the insurer's liability for bad faith before adjudicating the underlying tort action. The parties' stipulation also contemplated that the trial court would decide whether Ms. **Kinsey's** policy **[**3]** covered, by virtue of the above-quoted language from the supplementary payments provision, any section 789.79 attorney's fees and costs which she might owe Mr. **Steele**. On Mr. **Steele's** motion, the trial court concluded that the policy provided no such coverage. Mr. **Steele** then appealed this adverse finding of the trial court.

The meaning of the supplementary payments language--"expenses incurred at our request"-- is at issue in this case. We agree with the trial court that Ms. **Kinsey's** policy does not provide coverage for any fees and costs to which Mr. **Steele** may be entitled under the offer of judgment statute. We find that the language "expenses incurred at our request" is clear on its face and should be applied according to its generally understood meaning. Our resolution of this issue puts us in conflict with the Fourth District's opinion in *Johnson*.

*HN1*☞The common meaning of "request" is "the act of asking, or expressing a desire, for something; solicitation or petition." *Webster's New World College Dictionary* 1218 (4th ed. 2001). The legal meaning of the word is "an asking or petition. The expression of a desire to some person for something to be granted or done, particularly **[**4]** for the payment of a debt or performance of a contract." *Black's Law Dictionary* 1172 (5th ed. 1979). Both of these commonly understood definitions reinforce the clear use of the term within the context of the policy--that the insurer intended to pay for expenses that it had authorized and over which it had control, such as the selection of a service or product of known value and cost.

Mr. **Steele** argues, however, based on *Johnson*, that the insurer's decision not to settle forced the litigation to continue, causing further expense, and, thus, the subsequent fees and costs were "incurred at [the insurer's] request." In *Johnson*, the Fourth District interpreted the same language, "other reasonable expenses incurred at our request," in a supplementary payments provision to include insurance coverage for taxable costs when the insurer elected not to settle but to litigate the matter. The Fourth District based its conclusion on the fact that the insurer, like Ms. **Kinsey's** insurer, had sole discretion to settle or defend. 654 So. 2d at 240. The injured plaintiff in *Johnson* had argued that the language at issue was unambiguous and favorable to him; but he argued **[**5]** alternatively that, in case the court found the language ambiguous, it should construe it against the insurer. The Fourth District found that the supplementary payments provision obviously had the intent of

extending coverage and, therefore, construed it liberally in favor of the insured. We find the same language unambiguous and to mean that there is no coverage for **[*300]** section 789.79 fees of the prevailing plaintiff/offeror.

It may be preferable, as a matter of public policy, for the entity that has the sole right to settle or litigate a damages claim to be ultimately responsible for paying the resulting extra expenses, such as the taxable costs in *Johnson* and the section 789.79 fees here, when the litigation concludes favorably to the other side. However, we cannot enforce such a public policy in the face of a written contract with such a clearly contradictory meaning. *HN2*It is not the ultimate consequences, intended or unintended, of an insurer's decision to litigate that determine the meaning of a policy's plain language; it is the words themselves. *Ross v. Savage*, 66 Fla. 106, 63 So. 148 (Fla. 1913); *Paoli v. Natherson & Co.*, 750 So. 2d 46 (Fla. 2d DCA 1999). **[**6]** *HN3*When faced with an unambiguous provision, the trial court cannot give it any meaning beyond that expressed by the plain language and must construe the provision in accord with the ordinary meaning of the language. The words at issue here, "reasonable expenses incurred at our request," can only mean that the insurer must request the product or service that incurs the expense. We see no need to construe them further.

Although Ms. **Kinsey**, by virtue of the *Cunningham* stipulation into which she entered, is insulated from personal liability for Mr. **Steele's** fees and costs no matter the further outcome of these proceedings, we note that not all personal injury defendants may be so fortunate. The result reached in *Johnson*, finding coverage despite clear and unambiguous language to the contrary, may well be an appropriate public policy result. One can well envision a scenario where, under section 768.79, an insurer may reject in good faith an offer of judgment, and the jury verdict so exceeds the offer that the resulting final judgment, combining the jury verdict and the section 789.79 fees and costs, is in excess of the insured's policy's limits. In such a case the losing insured **[**7]** defendant, and not the insurer who controlled the case, will be liable for the excess. *HN4*Although it seems unjust that an insured should be required to bear the brunt of satisfying an excess adverse judgment that resulted, at least in part, from the insurance company's total control of the litigation, any remedy for that injustice is within the sphere of the legislature, not the courts. [1]

## FOOTNOTES

1 Others have noted the disparate results that occur in applying the offer of judgment statute. In his concurring opinion in *Sparks v. Barnes*, 755 So. 2d 718, 720 (Fla. 2d DCA 2000), Judge Whatley described how section 768.79, Florida Statutes (1997), creates an uneven playing field between the insured and the insurer. *See also*, Tetrault v. Fairchild 26 Fla. L. Weekly D1854 (Fla. 5th DCA July 24, 2001) (Harris, J., concurring); *Pirelli Armstrong Tire Corp. v. Jensen*, 752 So. 2d 1275, 1277 (Fla. 2d DCA 2000) (Casanueva, J., concurring in part and dissenting in part). We, too, respectfully suggest that our legislature review the public policy of this important statute and the consequences, either intended or unintended, of applying it in cases such as this one.

**[**8]** We affirm the judgment of the trial court finding no insurance coverage and certify conflict with *Florida Insurance Guaranty Ass'n v. Johnson*, 654 So. 2d 239 (Fla. 4th DCA 1995), as to the interpretation of "reasonable expenses incurred at our request" in the insurance contract's supplementary payments provision when the insurer rejects a settlement that results in further litigation expense.

SALCINES and STRINGER, JJ., Concur.

Source: Legal > States Legal - U.S. > Florida > Find Cases > FL Federal & State Cases, Combined ⓘ
Terms: **steele v. kinsey, 801 so. 2d 297**  (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Thursday, March 20, 2008 - 11:43 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

---

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional
Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®     About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.