EXHIBIT M

Case 3:07-cv-06302-CRB     Document 22-5     Filed 03/25/2008     Page 2 of 88

**Online Sunshine**

Select Year: | 2007 | Go

# The 2007 Florida Statutes

| Title XXXVII | Chapter 627 | View Entire Chapter |
|---|---|---|
| INSURANCE | INSURANCE RATES AND CONTRACTS | |

**627.428 Attorney's fee.--**

(1)  Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

(2)  As to suits based on claims arising under life insurance policies or annuity contracts, no such attorney's fee shall be allowed if such suit was commenced prior to expiration of 60 days after proof of the claim was duly filed with the insurer.

(3)  When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

**History.**--s. 477, ch. 59-205; s. 1, ch. 67-400; s. 3, ch. 76-168; s. 1, ch. 77-457; ss. 2, 3, ch. 81-318; ss. 376, 377, 809 (2nd), ch. 82-243; s. 79, ch. 82-386; s. 114, ch. 92-318.

Copyright © 1995-2008 The Florida Legislature • Privacy Statement • Contact Us

# EXHIBIT N

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Off ┊ ? Help

*My Lexis™* ╲ Search ╲ Research Tasks ╲ Get a Document ╲ *Shepard's*® ╲ Alerts ╲ Total Litigator ╲ Transactional A

Service: **Get by LEXSTAT®**
TOC: Deering's California Code Annotated > / . . . / > Article 2. Actions on Policies Containing Liability Provisions >
    **§ 11580. Mandatory provisions regarding insolvency, bankruptcy, or death of insured**
Citation: **CAL. INS. CODE 11580**

*Cal Ins Code § 11580*

Retrieve State Legislative Impact®

**DEERING'S CALIFORNIA CODES ANNOTATED**
Copyright (c) 2008 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL URGENCY
LEGISLATION ENACTED \*\*\*
\*\*\* THROUGH 2007-2008 THIRD EXTRAORDINARY
SESSION CH. 6, APPROVED 2/16/08 \*\*\*

INSURANCE CODE
Division 2.  Classes of Insurance
Part 3.  Liability, Workers' Compensation, and Common
Carrier Liability Insurance
Chapter 1.  General Regulations
Article 2.  Actions on Policies Containing Liability Provisions

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Ins Code § 11580 (2008)

◆ **Practitioner's Toolbox**    ? ▫

⬇ **History**

⬇ **Notes**

⬇ **Notes of Decisions**

**Resources & Practice Tools**

⊕ **Related Statutes & Rules**

⊖ **Collateral References**

> Judicial Council of California Civil
  Jury Instructions, CACI No. 2360
  (Matthew Bender).

> Matthew Bender(R) Practice Guide:
  Federal Pretrial Civil Procedure in
  California, 2.16

⬇ More...

⊕ **Law Review Articles**

⊕ **Suggested Forms**

**§ 11580.  Mandatory provisions regarding insolvency, bankruptcy, or death of insured**

A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.

**(a)** Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered:

**(1)** Against loss or damage resulting from liability for injury suffered by another person other than (i) a policy of workers' compensation insurance, or (ii) a policy issued by a nonadmitted Mexican insurer solely for use in the Republic of Mexico.

**(2)** Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable, other than a policy which provides insurance in the Republic of Mexico, issued or delivered in this state by a nonadmitted Mexican insurer.

**(b)** Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions:

**(1)** A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.

**(2)** A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.

## ⌖ History:

Enacted 1935. Amended Stats 1949 ch 1380 § 8; Stats 1951 ch 579 § 1; Stats 1976 ch 1145 § 1.

## ⌖ Notes:

⬇ 1. Amendments
⬇ 2. Historical Derivation
⬇ 3. Note

⌖ 1. Amendments:
⬇ 1949 Amendment
⬇ 1951 Amendment
⬇ 1976 Amendment

### ⌖ 1949 Amendment:

Substituted subd (b)(2) for former subd (b)(2) which read:

"(2) A provision that whenever judgment is secured against the insured in an action brought by the injured person, or by his heirs or personal representatives in case death results from the accident, then an action may be brought against the insurer, on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

### ⌖ 1951 Amendment:

Substituted "based upon bodily injury, death or property damage," for "brought by the injured person or by his personal representatives, in the case of an action for personal injuries, or in an action brought by the heirs or personal representatives of the deceased, in the case of an action for wrongful death," after "deceased insured in an action" in subd (b) (2).

### ⌖ 1976 Amendment:

**(1)** Amended subd (a)(1) by **(a)** adding "(i)" after "person other than"; **(b)** substituting "workers' " for "workmen's"; and **(c)** adding ", or (ii) a policy issued by a nonadmitted Mexican insurer sole for use in the Republic of Mexico"; and **(2)** added ", other than a policy which provides insurance in the Republic of Mexico, issued or delivered in this state by a nonadmitted Mexican insurer" at the end of subd (a)(2).

⌖ 2.

# EXHIBIT O



Jon D. Derrevere, Esquire (FBN: 330132)
Derrevere, Hawkes & Black
470 Columbia Drive, Bldg B
West Palm Beach, FL 33409
561-684-3222


Attorneys for Plaintiff
FIREMAN'S FUND INSURANCE COMPANY,
a foreign corporation a/s/o BASIC RESOURCES, INC.
and GEORGE REED, INC., a foreign corporation

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, a foreign corporation a/s/o BASIC RESOURCES, INC. and GEORGE REED, INC., a foreign corporation, <br><br> Plaintiff, <br><br> vs. <br><br> GERLING AMERICA INSURANCE COMPANY, a foreign corporation, <br><br> Defendant. | CASE NO.  C 07 06302 CRB <br><br> **PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |

**COMES NOW** Plaintiff, FIREMAN'S FUND INSURANCE COMPANY ("FFIC") a/s/o

BASIC RESOURCES, INC. and GEORGE REED, INC. by and through undersigned counsel and

moves the Court for Leave to File the attached Third Amended Complaint and as grounds therefore

would state:

　　　1.　　　On September 7, 2007 the Honorable Renee Roche entered a Final Judgment

awarding Attorney Fees and Costs to FFIC in the sum of $84,000.00 in the Underlying State Court

1   Action.[1] Based upon the foregoing, the Complaint should be amended to reflect the additional

2   award pursuant to which FFIC requests that this Court "declare" as part of the insurance benefits

3   FFIC is entitled to recover and Defendant is obligated to pay FFIC as a Judgment Debtor of

4   Defendant's Insured and therefore as a rightful intended third-party beneficiary to insurance

5   benefits under the subject commercial general liability policy.

6

7        2.       This matter has not been set for trial, Defendant will not be prejudiced by the

8   amendment. At the time this matter was transferred to this venue from the United States District

9   Court, Southern District of Florida, Miami Division, the Court had not ruled on Plaintiff's Motion

10  for Leave to File Third Amended Complaint. As a result, Plaintiff herein renews this Motion.

11       3.       Pursuant to Civil L.R. 14, on February 25, 2008, counsel conferred by telephone

12  with counsel for the Defendant with respect to this amendment and is advised that counsel for

13  Defendant objects to this Motion.

14

15       **WHEREFORE,** Plaintiff, FIREMAN'S FUND INSURANCE COMPANY a/s/o BASIC

16  RESOURCES, INC. and GEORGE REED, INC. respectfully requests this Court grant this Motion,

17  Order the Third Amended Complaint be deemed filed as of the date of the Order, and Order the

18  Defendant respond within ten (10) days, and for all other relief deemed just and proper under the

19  circumstances.

20  DATED 25th DAY OF February 2008.

21

22  By:

23      JON D. DERREVERE
        Fla. Bar No.: 330132
24      Derrevere, Hawkes & Black
        470 Columbia Drive, Bldg B
25      West Palm Beach, FL 33409
        jdd@derreverelaw.com

26

27  [1] The Underlying Action for property and related business damages is entitled: Fireman's Fund
    Insurance Company a/s/o Basic Resources, Inc. and George Reed, Inc. v. Gencor Industries, Inc.,
28  Case No.: 04-CA-007746,

-2-

RENEWED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

1

2
*Admitted Pro Hac Vice*
Counsel for Plaintiff

3

4
CHARLES K. BRUNN
CBN: 28021

5
BRUNN & FLYNN
928 12th Street, Suite 200

6
P.O. Box 3366 (95353)
Modesto, California 95354

7
Email: CBrunn@Brunn-Flynn.com

8
Co-counsel for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENEWED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

**PROOF OF SERVICE**

*Fireman's Fund Ins. Co. v. Gerling American Ins.*

United States District Court, Northern District of California

Case No.: C 07 06302 CRB

I am employed in the City and County of West Palm Beach, State of Florida. I am over the age of 18 and not a party to the within action; my business address is: Derrevere, Hawkes & Black, 470 Columbia Drive, Building "B", West Palm Beach, Florida 33409.

On ~~February 25th~~, 2008, I served the foregoing document(s) described as:

**PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

On the interested parties in this action by placing [   ] the original [X] a true copy thereof enclosed in a sealed enveloped addressed as stated below:

## [X] BY REGULAR MAIL:

    I caused such envelopes to be deposited in the United States Mail at West Palm Beach, Florida with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with United States postal service each day and that practice was followed in the ordinary course of business for the service herein attested to.

Co-Counsel for Plaintiff
Charles K. Brunn, Esquire
Brunn & Flynn
928 12th Street, Suite 200
P.O. Box 3366 (95353)
Modesto, California 95354

## [X] BY ECF:

    I HEREBY CERTIFY that on this 25th day of February, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on: TINO X. DO, Barger & Wolen, LLP, 650 California Street, 9th Floor, San Francisco, CA 94108, tdo@barwol.com via transmission of Notices of Electronic Filing generated by CM/ECF.

**[X] FEDERAL** - I declare that I am employed in the office of a member of the Florida Bar, admitted to practice in all Florida Courts and who makes this Pro Hac Vice Application, that our co-counsel and sponsor is a member of the bar of this California Court, and at their direction this service was made. Executed at West Palm Beach, Florida on February 25th, 2008.

NAME: Deanna N. Menendez        Signature: *Deanna Menendez*

-4-

# THIRD AMENDED COMPLAINT

1  Jon D. Derrevere, Esquire (FBN: 330132)
   Derrevere, Hawkes & Black
2  470 Columbia Drive, Bldg B
   West Palm Beach, FL 33409
3  561-684-3222

4
   Attorneys for Plaintiff
5  FIREMAN'S FUND INSURANCE COMPANY,
   a California corporation a/s/o BASIC RESOURCES,
6  INC. and GEORGE REED, INC., California
   corporations
7

8

9            IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  FIREMAN'S FUND INSURANCE          )  CASE NO.  C 07 06302 CRB
    COMPANY, a California corporation )
13  a/s/o BASIC RESOURCES, INC.       )  **THIRD AMENDED COMPLAINT**
    and GEORGE REED, INC.,  California )
14  corporations,                     )
                                      )
15            Plaintiff,              )
                                      )
16       vs.                          )
                                      )
17  GERLING AMERICA INSURANCE         )
    COMPANY, a foreign corporation,   )
18                                    )
              Defendant.              )
19                                    )
                                      )
20  _____  )

21      Plaintiff,  FIREMAN'S  FUND  INSURANCE  COMPANY  ("FFIC")  a/s/o  BASIC

22  RESOURCES, INC. ("BASIC RESOURCES") and GEORGE REED, INC. ("GEORGE REED")

23  by and through their undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, as

24  well as the additional legal authorities cited herein, respectfully sue the defendant, GERLING

25  AMERICA INSURANCE COMPANY ("GERLING") and so alleges:

26

27

28
                          _____
                             THIRD AMENDED COMPLAINT

**PARTIES**

1.     At all times material, FFIC was and remains a California insurance corporation, existing under the laws of the State of California, and registered throughout the numerous States and is thereby authorized to conduct business in the State of California.

2.     At all times material, FFIC insured BASIC RESOURCES, a California corporation, existing under the laws of the State of California, with its principal place of business at 928 12th Street, Modesto, CA 95354 and GEORGE REED, a California corporation, existing under the laws of the State of California, with its principal place of business at 928 12th Street, Modesto, CA 95354, under a policy of insurance numbered S08MZX80757126 ("the FFIC Insurance Policy").

3.     FFIC is subrogated, both legally and equitably, to the interests of its insureds, BASIC RESOURCES and GEORGE REED to the extent of certain insurance payments made by FFIC to these insured's pursuant to the policy with respect to the insured's claim for property damages incurred as a direct result of an explosion of a 12,000 pound Stationary Asphalt Batch Plant (the "Plant").

4.     At all times material, GERLING was and remains a foreign insurance company, existing under the laws of the State of New York. Upon information and belief, GERLING was also, at all times material, and remains registered with the State of California, Department of Insurance; GERLING is thereby authorized to do business and is doing business in the State of California. At all times material, GERLING insured GENCOR INDUSTRIES, INC. ("GENCOR") a Delaware corporation whose principal place of business and corporate headquarters are located at 5201 N. Orange Blossom Trail, Orlando, Florida 32810, per the Policy of Insurance attached hereto as Exhibit 1.

## STATEMENT OF JURISDICTION

5.     This Court has original diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332 in that this matter is a civil action between citizens of different states in which the amount in controversy exceeds $75,000.00.

## STATEMENT OF VENUE

6.     Venue is proper in the San Francisco Division of the Northern District of California because GERLING does business in the State of California including the Northern District of California and because the Northern District was chosen by GERLING as the most convenient venue for this case.

## GENERAL ALLEGATIONS

7.     On or about February 8, 2000, BASIC RESOURCES and GEORGE REED entered into a written contract with GERLING's insured, GENCOR, for the purchase of the parts comprising the Plant which was constructed by GEORGE REED. FFIC is not suing on the underlying contract and therefore does not attach a copy of the GENCOR Contract.

8.     GENCOR sold the parts to BASIC RESOURCES and GEORGE REED for $1,989,679.00, and thereafter provided technical services including "start-up" for operation of the Plant.

9.     On or about April 18, 2001, the Plant exploded, causing significant and extensive property damage and causing additional damages, including but not limited to out-of-pocket expenses, replacement costs, repair and reimbursement costs, property damages, loss of profits, and business interruption damages.

10.     Thereafter, BASIC RESOURCES and GEORGE REED timely presented their claim for damages to FFIC. FFIC responded by conducting an investigation of the cause of the explosion and resulting damages and determined that the claim was "covered" under the FFIC policy issued to

BASIC RESOURCES. Accordingly and pursuant to the terms of the policy, FFIC paid the claim of its insured, less the deductible. By so doing, and as a matter of law and of fact, FFIC was and remains subrogated to all of the rights, demands, and claims of its insured against any and all third parties whose acts or omissions caused or contributed to the explosion and resulting damages.

11.    Thereafter, FFIC sued GENCOR in an action entitled "Fireman's Fund Insurance Company, a foreign corporation, as Subrogee of (a/s/o) Basic Resources, Inc., and George Reed, Inc., a foreign corporation v. Gencor Industries, Inc., a foreign corporation" in the 9th Judicial Circuit Court in and for Orange County, Florida, Case No.: 04-CA-7746, Division 32; Complex Business litigation Court, (the "State Court Action").

12.    GERLING defended its insured, GENCOR, in the State Court Action up to and including a trial by jury. On January 26, 2007, the jury returned its verdict in favor of FFIC determining that GENCOR breached the Contract with BASIC RESOURCES/GEORGE REED and that GENCOR was negligent.

13.    On June 11 2007, the Amended Final Judgment in the State Court Action was entered against GENCOR in the sum of $1,751,913.10 (exclusive of attorneys' fees and costs). A copy of the Amended Final Judgment is attached as Exhibit 2.

14.    On September 7, 2007, A Final Judgment awarding Attorney Fees and Costs was entered in the State Court Action in the total sum of $84,000.00. A copy of the Final Judgment awarding Attorney Fees and Costs is attached as Exhibit 3.

15.    GERLING's Policy of Insurance, pursuant to which GERLING defended GENCOR in the State Court Action, provides coverage for the FFIC claim for damages as particularly set forth in the Amended Final Judgment, including FFIC's attorney's fees and costs. GERLING, however, has denied FFIC's claims for such coverage.

16.    In its capacity as a Judgment Creditor in the State Court Action, FFIC is an intended third-party beneficiary under GERLING's Policy of Insurance.

17.    GERLING's Policy of Insurance was delivered to GENCOR in the State of Florida and includes applicable Florida coverage endorsements because GENCOR's principal place of business was and remains in the State of Florida. The law of the State of Florida governs in determining the rights and obligations of the parties pursuant to that policy and in adjudging any breach thereunder by GERLING.

18.    FFIC has performed all conditions precedent to bringing this action or such performance of conditions precedent have been waived. .

## COUNT I: DECLARATORY RELIEF

19.    FFIC realleges Paragraphs 1-18 as if fully set forth herein.

20.    This is a cause of action for Declaratory Relief brought pursuant to Sec. 86.04, Fla.Stat., with respect to GERLING's Policy of Commercial General Liability Insurance, pursuant to which GERLING provided GENCOR a defense in the State Court Action, and under which GERLING has failed and refused to satisfy the Amended Final Judgment and the Judgment for Attorney Fees and Costs entered in favor of FFIC.

21.    This cause of action presents no question/issues of fact to be resolved but rather seeks the Court's interpretations/construction of GERLING's Policy of Commercial General Liability Insurance insuring GENCOR on the date of the Plant explosion.

22.    As the Judgment Creditor of GERLING's insured, GENCOR, FFIC brings this action as an intended third-party beneficiary to the insurance benefits and proceeds under the GERLING Policy. However, FFIC is in doubt as to its rights, powers, and/or privileges and in doubt as to GERLING's obligations, duties, liabilities and powers under such Policy, and so, seeks declaratory relief.

23.    FFIC respectfully requests that this Court grant relief in the form of a Declaratory Judgment which clarifies, declares, and adjudicates the parties' respective rights and obligations with respect to FFIC's demand for satisfaction of the State Court Amended Final Judgment and Judgment for Attorney Fees and Costs entered in FFIC's favor and against GERLING's insured, GENCOR, and for all other relief deemed just and legally proper under the circumstances including an order requiring GERLING to satisfy the State Court Judgment and FFIC's costs, incurred in this action.

**WHEREFORE,** FFIC demands entry of a Declaratory Judgment against GERLING, declaring GERLING contractually liable to provide insurance benefits to FFIC and to enter said Judgment against GERLING in the total amount of the State Court Amended Final Judgment together with the award of Attorney Fees and Costs in favor of FFIC in the State Court Action, together with applicable Pre-Judgment interest and for all other relief deemed just and legally proper under the circumstances, including Post-Judgment interest and FFIC's costs, incurred in this action.

## COUNT II: BREACH OF CONTRACT

24.    FFIC realleges Paragraphs 1-18 as if fully set forth herein.

25.    This is a cause of action for Breach of the GERLING Commercial General Liability Insurance Policy insuring GENCOR, pursuant to which GERLING provided GENCOR with a defense in the State Court Action, and under which, GERLING has failed and refused to honor its contractual obligations to satisfy the Amended Final Judgment, together with the additional Judgment for Attorney Fees and Costs entered in favor of FFIC in the State Court Action.

26.    FFIC is an intended third-party beneficiary of the GERLING Policy of Insurance.

27.    GERLING is in material breach of the contractual duty owed to FFIC by failing and refusing to satisfy the Amended Final Judgment together with the Final Judgment awarding Attorney Fees and Costs.

28.    FFIC is entitled to recover the full amount of the Judgment up to the GERLING policy limit of One Million Dollars ($1,000,000.00) and additional sums in excess of the policy limit of One Million Dollars for supplementary payments including "all costs taxed against the insured", pre-judgment interest and all interest on the full amount of the State Court Judgment.

**WHEREFORE,** FIREMAN'S FUND INSURANCE COMPANY, a foreign corporation a/s/o BASIC RESOURCES, INC., and GEORGE REED, INC., a foreign corporation, respectfully requests this Court to enter Judgment in favor of FFIC and against Defendant, GERLING AMERICA INSURANCE COMPANY, a foreign corporation, in an amount exceeding $75,000.00 and for all other relief deemed just and proper under the circumstances, including the costs in bringing this action.

DATED: _____ DAY OF _____ 2008.

By: _____

JON D. DERREVERE
Fla. Bar No.: 330132
Derrevere, Hawkes & Black
470 Columbia Drive, Bldg B
West Palm Beach, FL 33409
jdd@derreverelaw.com

*Admitted Pro Hac Vice*
Counsel for Plaintiff

CHARLES K. BRUNN
CBN: 28021
BRUNN & FLYNN
928 12th Street, Suite 200
P.O. Box 3366 (95353)
Modesto, California 95354
Email: CBrunn@Brunn-Flynn.com

Co-counsel for Plaintiff

-7-

## PROOF OF SERVICE

*Fireman's Fund Ins. Co. v. Gerling American Ins.*

United States District Court, Northern District of California

Case No.: C 07 06302 CRB

I am employed in the City and County of West Palm Beach, State of Florida. I am over the age of 18 and not a party to the within action; my business address is: Derrevere, Hawkes & Black, 470 Columbia Drive, Building "B", West Palm Beach, Florida 33409.

On _____, 2008, I served the foregoing document(s) described as:

### THIRD AMENDED COMPLAINT

On the interested parties in this action by placing [  ] the original [X] a true copy thereof enclosed in a sealed enveloped addressed as stated below:

## [X] BY REGULAR MAIL:

I caused such envelopes to be deposited in the United States Mail at West Palm Beach, Florida with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with United States postal service each day and that practice was followed in the ordinary course of business for the service herein attested to.

Co-Counsel for Plaintiff
Charles K. Brunn, Esquire
Brunn & Flynn
928 12th Street, Suite 200
P.O. Box 3366 (95353)
Modesto, California 95354

## [X] BY ECF:

I HEREBY CERTIFY that on this _____day of _____, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on: TINO X. DO, Barger & Wolen, LLP, 650 California Street, 9th Floor, San Francisco, CA 94108, tdo@barwol.com via transmission of Notices of Electronic Filing generated by CM/ECF.

**[X] FEDERAL** - I declare that I am employed in the office of a member of the Florida Bar, admitted to practice in all Florida Courts and who makes this Pro Hac Vice Application, that our co-counsel and sponsor is a member of the bar of this California Court, and at their direction this service was made. Executed at West Palm Beach, Florida on _____, 2008.

NAME: Deanna N. Menendez                          Signature:

**EXHIBIT 1 TO PLAINTIFF'S THIRD AMENDED
COMPLAINT-GERLING POLICY OF INSURANCE**

# MURPHY & NEALE, P.A.

## ATTORNEYS AND COUNSELORS AT LAW

David W. Evoy
Patrick J. Murphy
Thomas E. Neale
Sarah H.L. Shelton

550 Fairway Drive, Suite 203
Deerfield Beach, Florida 33441
(Fort Lauderdale, Broward County Area)
(954) 525-5509
(954) 525-4509 Fax
Respond To: Deerfield Beach

Fifth Avenue Executive Suites
649 Fifth Avenue South
Naples, Florida
34102
(888) 771-6772
www.murphynealelaw.com

February 14, 2006

*Via Facsimile 561-640-3050 and regular mail*

Jon D. Derrevere, Esq.
Derrevere & Hawkes
470 Columbia Drive, Building "B"
West Palm Beach, FL 33409-1949

Re:    *Fireman's Fund Insurance v. Gencor*
     Case No.:     2004-CA-7746
     Claim No.:    GLP06076
     Our File No.:  050-129

Dear Mr. Derrevere:

Enclosed please find a copy of the Defendant's insurance policy in response to the Request for Production, item #1.

Thank you for your courtesy and cooperation with this matter.

Very truly yours,

(Dictated not read, sent in
Atty's absence to avoid delay)

PATRICK J. MURPHY
pmurphy@murphymcfarlane.com

PJM:psc
Enclosure

*Deerfield Beach   &   Naples,  Florida*

## COMMERCIAL LINES POLICY

### COMMON POLICY DECLARATIONS



**GERLING**
AMERICA INSURANCE COMPANY

717 Fifth Avenue
New York, NY 10022-8101
Telephone 212-756-2600
Telefax 212-319-5626

Renewal of Number _____ **New**

Policy No. _____ **4 003 527 GLP**
_____ **4 003 527 EBL**

Named Insured and Mailing Address (No., Street, Town or City, County, State, Sip Code)

**Gencor Industries, Inc.**
**P.O. Box 609506**
**Orlando, FL 32860**

**Sedgwick of Florida, Inc.**
**555 Winderley Place, Suite 400**
**Maitland, FL 32751**

Policy Period:  From **06/30/98** to **06/30/99**    at 12:01 a.m. Standard Time at your mailing address shown above.

Business Description:  **Manufacturer of grinding equipment.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| | | PREMIUM |
|---|---|---|
| Commercial Property Coverage Part | $ | Not Covered |
| Commercial General Liability Coverage Part | $ | 153,459.00 |
| Commercial Crime Coverage Part | $ | Not Covered |
| Commercial Inland Marine Coverage Part | $ | Not Covered |
| Boiler and Machinery Coverage Part | $ | Not Covered |
| Employee Benefits Liability Coverage Part | $ | 425.00 |
| TOTAL | $ | 153,884.00 |

Premium shown is payable: $ 153,884.00    at inception; $    1st Anniversary;
$    2nd Anniversary.

Form(s) and Endorsement(s) made part of this policy at time of issue *: **See Form 0039**

---

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

Countersigned: _____    By _7/23/10_    _[signature]_

Countersignature          Date          Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDIITONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND ENDORSEMENTS. IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

IPI 190 (0)-0 (Ed. 06/96) Includes copyrighted material of Insurance Services Office. Inc., with its permission. Copyright, Insurance Services Office, Inc. 1983, 1984

## THIS ENDORSEMENT CHANGES THE POLICY.
### PLEASE, READ IT CAREFULLY

# POLICY CHANGES

Policy Change
Number 1

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| 4 003 527 GLP | 06/30/98 | Gerling America Ins. Co. |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Gencor Industries, Inc. | |

**COVERAGES**

Commercial General Liability Coverage Part

### CHANGE

It is hereby agreed and understood that the following changes are made to the policy:

1. Form CGL-SIRC1 Self-Insured Retention Endorsement is deleted from the policy.
2. Form GCD-0004, Additional Insured Endorsement is added to the policy.
3. Mental Injury is included in the personal and advertising injury liability.

All other terms and conditions of the policy remain the same.

## THIS ENDORSEMENT CHANGES THE POLICY.
### PLEASE, READ IT CAREFULLY

# POLICY CHANGES

Policy Change
Number 2

| POLICY NUMBER<br><br>4 003 527 GLP | POLICY CHANGES EFFECTIVE<br>07/28/98 | COMPANY<br><br>Gerling America Ins. Co. |
|---|---|---|
| NAMED INSURED<br><br>Gencor Industries, Inc. | | AUTHORIZED REPRESENTATIVE |
| COVERAGES<br><br>Commercial General Liability Coverage Part | | |

### CHANGE

It is hereby agreed and understood that CG 20 28 (11/85), Additional Insured - Lessor of Leased Equipment is added to the policy.

All other terms and conditions of the policy remain the same.

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:** A & A Rental & Sales, Inc.
PO Box 8810
Stockton, CA 95208

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:
1. To any "occurrence" which takes place after the equipment lease expires;
2. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

CG 20 28 11 85            Copyright, Insurance Services Office, Inc., 1984            Page 1 of 1            ▢

POLICY NUMBER: 4 003 527 GLP                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART**

## SCHEDULE

**Name of Person or Organization:**    As required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you.

If required by your agreement with such Insured, this insurance shall be primary insurance for such Insured. If anyone also provides similar insurance for such Insured, then that insurance will be primary, and this insurance will be excess over, or secondary to that insurance.

The inclusion of one or more Insured under the terms of this endorsement does not increase our limits of liability.

All other terms and conditions remain unchanged.

GERLING AMERICA INSURANCE COMPANY

# FORMS AND ENDORSEMENTS

# MADE PART OF THIS POLICY AT TIME OF ISSUANCE

**Named Insured:**      Gencor Industries, Inc.
**Policy # :**          4 003 527 GLP

## COMMON POLICY FORMS

| | | |
|---|---|---|
| 0016 | (08/97) | Policy Jacket |
| JDL 190(0)-0 | (06/96) | Common Policy Declarations |
| IL0017 | (11/85) | Common Policy Conditions |
| CG0220 | (07/92) | Florida Changes - Cancellation and Nonrenewal |

## COMMERCIAL GENERAL LIABILITY FORMS

| | | |
|---|---|---|
| 0018 | (06/96) | Commercial General Liability Policy Declarations |
| CG0001 | (01/96) | Commercial General Liability Coverage Form |
| CRPEA01 | (06/96) | Composite Rating Endorsement Plan |
| 0043 | (05/91) | Exclusion - Asbestos Liability |
| 0040 | (05/91) | Notice of Occurrence |
| 0044 | (06/96) | Amendment of Common Policy Conditions - Cancellation |
| 0046 | (05/91) | Broad Named Insured Endorsement |
| IL0021 | (11/94) | Nuclear Energy Liability Exclusion Endorsement |
| CG2147 | (10/93) | Employment-Related Practices Exclusion |
| CG2155 | (03/97) | Total Pollution Exclusion With A Hostile Fire Exception |
| CG2243 | (01/96) | Exclusion - Engineers, Architects or Surveyors Professional Liability |
| CG2404 | (10/93) | Waiver of Transfer of Rights of Recovery Against Others to Us |
| CG2010 | (03/97) | Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization |
| CG2504 | (11/85) | Amendment - Aggregate Limits of Insurance (Per Location) |
| CG2015 | (11/88) | Additional Insured - Vendors |
| CG9901 | (11/85) | Motor Vehicle Laws |
| CGL-SIRC1 | (06/96) | Self-Insured Retention Endorsement - C |
| CP 014 | (09/94) | Stop-Gap Employers Liability |
| O/GP-020 | (05/96) | Amendment - Worldwide Coverage Territory |
| NOWA01 | (06/96) | Non-Owned Watercraft Amendment |
| Endorsement # 1 | | Named Insured |
| Endorsement # 2 | | Fellow Employee Exclusion |
| Endorsement # 3 | | Nose Endorsement |

Policy No. 4 003 527 continued.....

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORMS

| | | |
|---|---|---|
| 0045 | (05/91) | Employee Benefits Liability Coverage Declarations |
| 0045Add. | (05/91) | Employee Benefits Liability Coverage - Supplementary Payments |

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

COMMERCIAL GENERAL LIABILITY
CG 02 20 07 92

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the CANCELLATION Common Policy Condition is replaced by the following:

**2.** CANCELLATION OF POLICIES IN EFFECT:

**a.** FOR 90 DAYS OR LESS

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with the underwriting requirements established by the insurer.

**b.** FOR MORE THAN 90 DAYS

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) Failure to comply with underwriting requirements within 90 days of the effective date of coverage;

(4) A substantial change in the risk covered by the policy; or

(5) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in paragraph **2.b.**

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

    Copyright, Insurance Services Office, Inc., 1992       ▢

## COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS



**GERLING**

AMERICA INSURANCE COMPANY

717 Fifth Avenue
New York, NY 10022-8101
Telephone 212-756-2600
Telefax 212-319-5626

| POLICY NUMBER | PREVIOUS POLICY NUMBER |
|---|---|
| 4 003 527 GLP | New |

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

**Gencor Industries, Inc.
P.O. Box 609506
Orlando, FL 32860**

Policy Period:   From 06/30/98 to 06/30/99          at 12:01 A.M. Standard Time at your mailing
address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $ | 2,000,000. |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000. |
| Personal and Advertising Injury Limit | $ | 1,000,000. |
| Each Occurrence Limit | $ | 1,000,000. |
| Fire Damage Limit | $ | 1,000,000.  Any One Fire |
| Medical Expense Limit | $ | 10,000.  Any One Person |

### RETROACTIVE DATE (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:   **None**                     (Enter Date or "None" if no Retroactive Date applies)

### DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES

Form of Business:
[ ] Individual     [ ] Joint Venture        [ ] Partnership       [ x ] Organization (Other than Partnership or Joint Venture)
Business Description:    **Manufacturer of grinding equipment.**

Location of All Premises You Own, Rent or Occupy:
**Same as above**

### Premium

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| | | **PER SCHEDULE OF OPERATIONS** | | | | |

Premium shown is payable: $          at inception          Total Advance Premium: $153,884.00

FORMS AND ENDORSEMENTS: See Form 0039
                    FORMS APPLICABLE PER LIABILITY FORMS LIST SEPARATELY ATTACHED.

Countersigned: _____    By: _____

                  Countersigned                                   Date           Authorized Signature

COMMERCIAL GENERAL LIABILITY
CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

#### 2. Exclusions

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.  Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

   (1) A watercraft while ashore on premises you own or rent;

   (2) A watercraft you do not own that is:

      (a) Less than 26 feet long; and

      (b) Not being used to carry persons or property for a charge;

   (3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

   (4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

   (5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.  Mobile Equipment

"Bodily injury" or "property damage" arising out of:

   (1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   (2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i.  War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.  Damage to Property

"Property damage" to:

   (1) Property you own, rent, or occupy;

   (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

   (3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        (1) "Bodily injury" or "personal injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

        (2) "Property damage" to property:

            (a) Owned, occupied or used by,

            (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

    c. Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   b. **Excess Insurance**

      This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

      (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

      (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

      When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

      (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

  c.  While it is being moved from an aircraft,
      watercraft or "auto" to the place where it
      is finally delivered;

  but "loading or unloading" does not include
  the movement of property by means of a me-
  chanical device, other than a hand truck, that
  is not attached to the aircraft, watercraft or
  "auto".

11. "Mobile equipment" means any of the fol-
    lowing types of land vehicles, including any
    attached machinery or equipment:

  a.  Bulldozers, farm machinery, forklifts and
      other vehicles designed for use principally
      off public roads;

  b.  Vehicles maintained for use solely on or
      next to premises you own or rent;

  c.  Vehicles that travel on crawler treads;

  d.  Vehicles, whether self-propelled or not,
      maintained primarily to provide mobility
      to permanently mounted:

      (1) Power cranes, shovels, loaders, dig-
          gers or drills; or

      (2) Road construction or resurfacing
          equipment such as graders, scrapers or
          rollers;

  e.  Vehicles not described in a., b., c. or d.
      above that are not self-propelled and are
      maintained primarily to provide mobility
      to permanently attached equipment of the
      following types:

      (1) Air compressors, pumps and genera-
          tors, including spraying, welding,
          building cleaning, geophysical explo-
          ration, lighting and well servicing
          equipment; or

      (2) Cherry pickers and similar devices
          used to raise or lower workers;

  f.  Vehicles not described in a., b., c. or d.
      above maintained primarily for purposes
      other than the transportation of persons or
      cargo.

  However, self-propelled vehicles with the
  following types of permanently attached
  equipment are not "mobile equipment" but
  will be considered "autos":

  (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construc-
          tion or resurfacing; or

      (c) Street cleaning;

  (2) Cherry pickers and similar devices
      mounted on automobile or truck chassis
      and used to raise or lower workers; and

      (3) Air compressors, pumps and generators,
          including spraying, welding, building
          cleaning, geophysical exploration, light-
          ing and well servicing equipment.

12. "Occurrence" means an accident, including
    continuous or repeated exposure to substan-
    tially the same general harmful conditions.

13. "Personal injury" means injury, other than
    "bodily injury", arising out of one or more of
    the following offenses:

  a.  False arrest, detention or imprison-
      ment;

  b.  Malicious prosecution;

  c.  The wrongful eviction from, wrongful
      entry into, or invasion of the right of
      private occupancy of a room, dwelling
      or premises that a person occupies by
      or on behalf of its owner, landlord or
      lessor;

  d.  Oral or written publication of material
      that slanders or libels a person or or-
      ganization or disparages a person's or
      organization's goods, products or
      services; or

  e.  Oral or written publication of material
      that violates a person's right of pri-
      vacy.

14. "Products-completed operations hazard":

  a.  Includes all "bodily injury" and "property
      damage" occurring away from premises
      you own or rent and arising out of "your
      product" or "your work" except:

      (1) Products that are still in your physical
          possession; or

      (2) Work that has not yet been completed
          or abandoned. However, "your work"
          will be deemed completed at the earli-
          est of the following times:

          (a) When all of the work called for in
              your contract has been completed.

          (b) When all of the work to be done at
              the job site has been completed if
              your contract calls for work at
              more than one job site.

          (c) When that part of the work done at
              a job site has been put to its in-
              tended use by any person or or-
              ganization other than another con-
              tractor or subcontractor working
              on the same project.

      Work that may need service, maintenance,
      correction, repair or replacement, but
      which is otherwise complete, will be
      treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

POLICY NUMBER: **4 003 527 GLP**          COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPOSITE RATING ENDORSEMENT PLAN

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### Schedule

1) Unit of Exposure (Check One):

☐ Acreage            ☐ Receipts
☐ Admissions         ☐ Revenue
☐ Area               ☒ Sales
☐ Gallons            ☐ Units
☐ Payroll

1)  ☐ per 100      ☒ per 1,000      ☐ each      ☐ other

2)  <u>Coverage Unit of Exposure</u>      <u>Rate(s)</u>      <u>Estimated Premium(s)</u>

$170,000,000            $.9027            $153,459.00

3)  Deposit Premium  $__153,459.00__

4)  Minimum Premium  $__N/A__
    Premium subject to Audit

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations applicable to this endorsement.)

The premium Audit Condition, paragraph 5, of Section IV- COMMERCIAL GENERAL LIABILITY CONDITIONS IS REPLACED BY THE FOLLOWING:

a.  We will compute all premiums for this Coverage Part in accordance with our

rules and the composite rates shown in the Schedule.

b.  For policies other than Annual Reporting. The deposit premium shown in the Schedule is due and payable on the first day of the policy period. The first Named Insured will pay, within 15

GERLING AMERICA INSURANCE COMPANY

days following the end of each audit period, the earned premium.

c. As soon as practicable after the policy expires, we will compute the earned premium for the policy period. The premium will be computed by multiplying the composite rate against the total developed exposure. If the earned premium is greater than the sum of the deposit premium and the audit premium, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured. However, the earned premium will not be less than 80% of the estimated annual premium, or the Minimum Premium shown in the Schedule.

d. The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

e. For purposes of this endorsement, the following definitions shall apply:

1) "Acreage" means by acre.

2) "Admissions" means the total number of persons, other than employees of the Named Insured admitted to the events conducted on the premises whether on paid admission tickets or complimentary passes;

3) "Area" means total number of square feet of floor space at the Insured premises.

4) "Gallons" means the total number of gallons of liquefied petroleum gases invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases;

5) "Payroll" means remuneration. Remuneration means money or substitutes for money, as calculated in accordance with individual state laws.

6) "Receipts" means the gross amount of money charged by the Named Insured for such operations by the Named Insured or by others during the policy period as are rated on a receipt basis other than receipts from telecasting, broadcasting or motion picture, and including taxes, other than taxes which the Named Insured collects as a separate item and remits directly to a governmental division;

7) "Revenue" means gross revenue earned, including charges for delinquent payments, before discounts, but does not include taxes collected for any governmental unit;

8) "Sales" means gross amount charged by the named Insured, concessionaires of the Named Insured or by others trading under the Insured's name.

9) "Units" means the average over the annual period between the initial unit count and final unit count. If there is no anticipated difference in these counts when the policy is written than the initial count may be used when the policy is written, but this is to be adjusted at audit based on an actual average of counts between such initial and final numbers;

All other terms and conditions remain unchanged.

GERLING AMERICA INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## EXCLUSION - ASBESTOS LIABILITY

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part**
**Products / Completed Operations Coverage Part**

The following additional exclusion applies to Coverages A and B of the Commercial General Liability Coverage Part:

This insurance does not apply to "bodily injury," "personal injury," or "property damage" caused by, resulting from or arising out of:

1. Asbestos, asbestos fibers or asbestos products or any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such "bodily injury," "personal injury," or "property damage";

2. Any supervision, instructions, recommendations, notices, warnings or advice given or which should have been given in connection with the manufacturing, selling and/or distributing of asbestos, asbestos fibers or asbestos products or products containing asbestos;

3. Removal of asbestos including:

   a.   Cost of asbestos removal and replacement with other materials;

   b.   Property damage in the course of removing asbestos, asbestos fibers or asbestos products.

In addition, we shall not be obligated to investigate, to pay any claim or judgement or to defend any suit for "bodily injury," "personal injury," or "property damage" caused by, resulting from or arising out of asbestos, asbestos fibers or asbestos products.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the policy issued to:

**Named Insured:**   Gencor Industries, Inc.
**Policy #:**   4 003 527 GLP

### NOTICE OF OCCURRENCE

In the event of an Occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the event and the names and addresses of the Insured and of available witnesses, shall be given by or for You to Us or any of Our authorized agents as soon as practical after notice has been received by You.

### KNOWLEDGE OF OCCURRENCE

Knowledge of an Occurrence falling within the coverage provided by this policy by Your agent, servant or employee shall not in itself constitute knowledge by You unless the Corporate Risk Manager of Your corporation shall have received notice of such Occurrence from its agent, servant or employee.

### UNINTENTIONAL ERRORS AND OMISSIONS/FAILURE TO DISCLOSE

Failure by You to disclose all hazards existing on the effective date of this policy shall not prejudice You with respect to the coverage afforded by this policy provided such failure or any such omission is not intentional.

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF COMMON POLICY CONDITIONS

# CANCELLATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**

**Named Insured:**          Gencor Industries, Inc.

1.  Common Policy Conditions A., Cancellation, paragraph 2., sub-paragraph a., is deleted in its entirety and replaced with the following:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

    or

2.  Common Policy Conditions A. Cancellation, paragraph 2, sub-paragraph b., is deleted in its entirety and replaced with the following:

    b.  Any amendatory endorsement which modifies this policy's cancellation provisions is amended in part to show that in no event will we mail or deliver the notice of cancellation or non-renewal less than _____90__ days before the effective date of cancellation or non-renewal. The number of days' notice given will never be less than the number of days specified in the printed policy Conditions, and amendatory endorsements (if any) or the number of days required by the laws of the state in which this policy is issued.

All other terms and conditions remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## BROAD NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part**
**Products / Completed Operations Coverage Part**

WHO IS INSURED (Section II) is amended to include as an insured:

1.  Any of Your subsidiaries and sub-subsidiaries;

2.  Any organization, partnership, company or corporation in which You have ownership interest or operate under a written management agreement; and

3.  Any associated or affiliated entity while acting on Your behalf;

which is under Your active management.

All agents, servants, directors, officers, partners, consultants and employees, whether active or inactive, of each of the entities listed above shall also be considered an Insured, but only while acting within the scope of their duties as such.

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 55 03 97

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., **Exclusions** of **Coverage A – Bodily Injury And Property Damage Liability (Section I – Coverages)** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, pollutants.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

COMMERCIAL GENERAL LIABILITY
CG 22 43 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph 2., Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

   Copyright, Insurance Services Office, Inc., 1994     ☐

POLICY NUMBER: **4 003 527 GLP**
COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**   As required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

POLICY NUMBER: 4 003 527 GLP                              COMMERCIAL GENERAL LIABILITY
                                                                CG 20 10 03 97

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization: As required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Who Is An Insured (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT-AGGREGATE LIMITS OF INSURANCE
# (PER LOCATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

POLICY NUMBER: 4 003 527 GLP                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization (Vendor):**    As required by written contract.

**Your Products:** All products of Named Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following are added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

1. When this Coverage Part is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the coverage part for Bodily Injury Liability or Property Damage Liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

2. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverages required by any motor vehicle insurance law. We will provide the required limits for those coverages.

CG 99 01 11 85          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SELF-INSURED RETENTION ENDORSEMENT- C

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Self-Insured Retention | |
|---|---|---|
| Bodily Injury Liability | $ | per "claim" |
| | $ | per "occurrence" |
| Property Damage Liability | $ | per "claim" |
| | $ | per "occurrence" |
| Bodily Injury Liability and Property Damage Liability Combined | $ | per "claim" |
| | $25,000.00 | per "occurrence" |
| Personal and Advertising Injury | $ | per "claim" |
| | $ | per "occurrence" |
| | $ | per any one person or organization |
| Fire | $ | per fire |
| Medical Expenses | $ | per person |
| Aggregate Amount | $ _____1,000,000_____ | |

(If no entry appears in the above Schedule, information required to complete this Endorsement
will be shown in the Declarations of the policy to which this Endorsement applies.)

CGL-SIRC1 (06/96)         GERLING AMERICA INSURANCE COMPANY         Page 1 of 5
(ALAE reduce SIR)

## APPLICATION OF ENDORSEMENT

1.  Our obligation to pay those sums that you become legally obligated to pay as damages applies only to the amount of damages in excess of any Self-Insured Retention stated in the Schedule above to which the Policy would otherwise apply, subject to the Limits of Insurance set forth in the Declarations of the policy to which this Endorsement applies and the "occurrence" to which the Policy applies.

    "Allocated Loss Adjustment Expenses" for claims within the Self-Insured Retention shall be paid by you and shall reduce the Self-Insured Retention amounts stated in the above Schedule. After the Self-Retention amount has been exceeded, we shall pay all "Allocated Loss Adjustment Expenses".

    "Allocated Loss Adjustment Expenses" is defined as those expenses under the "Supplementary Payments" section of the Policy which we directly allocate to a particular claim.

2.  The Self-Insured Retention amounts stated in the above Schedule on a "per claim" basis, on a "per occurrence" basis or as an "Aggregate" apply as follows:

    A. **PER CLAIM BASIS** - If the Self-Insured Retention is on a "per claim" basis, the Self-Insured Retention amount applies:

    1.  Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

        a.  To all damages because of "bodily injury" sustained by one person, or

        b.  To all damages because of "property damage" sustained by one person or organization, as the result of any one "occurrence".

    2.  Under Bodily Injury Liability and Property Damage Liability Coverage combined, to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence".

    3.  Under the Personal and Advertising Injury Coverage, to all damages because of "personal injury" and "advertising injury" sustained by one person or organization, as the result of any one "occurrence".

    B. **PER OCCURRENCE BASIS** - If the Self-Insured Retention is on a "per occurrence" basis, the Self-Insured Retention amount applies:

    1.  Under Bodily Injury Liability or Property Damage Liability Coverage, respectively:

a. To all damages because of "bodily injury" as the result of any one "occurrence", or

b. To all damages because of "property damage" as the result of any one "occurrence"

regardless of the number of persons or organizations who sustain damages because of that "occurrence".

2. Under Bodily Injury Liability and Property Damage Liability Coverage combined, to all damages because of "bodily injury" and "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. Under the Personal and Advertising Injury Coverage, to all damages because of "personal injury" and "advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. **AGGREGATE AMOUNT** - If an "Aggregate Amount" is shown in the above Schedule:

1. When as a result of the application of the Self-Insured Retention, the total of all paid Self-Insured Retention losses exceeds the amount shown as "Aggregate Amount" in the above Schedule, we will then pay for all damages that would otherwise be payable without applying any further Self-Insured Retention, but the amount we will pay is limited as described under all provisions of the Policy applying to the Limits of Insurance.

2. The "Aggregate Amount" applies separately to each policy year. Each policy year:

a. begins with the inception or anniversary date of the Policy; and

b. ends at the next anniversary date or the expiration of the Policy.

3. In the event of any "occurrences", "claims" or "suits" which have or may result in payments within the Self-Insured Retention amount or the Limits of Insurance:

A. You must notify us in writing as soon as practicable but not later than 60 days after you receive notice of any "occurrence", "claims" or "suit" involving:

1. a fatality;

2. dismemberment or amputation;

    3. paraplegia or quadriplegia;

    4. loss or impairment of eyesight or hearing;

    5. any loss which in your reasonable judgment, taking into account past or anticipated "Allocated Loss Adjustment Expenses" in connection with the loss, may result in payments equal to or exceeding **50%** of the Self-Insured Retention;

    6. brain injuries;

    7. burns; or

    8. any claim in which a "suit" has been filed.

B. On a **quarterly** basis, you or your loss adjusting representative must provide us with a written summary of all "occurrences", "claims" or "suits" which have or may result in payments within the Self-Insured Retention amount. This written summary must show:

    1. the date of the "occurrence," and

    2. the name(s) of the injured person(s) or identification of the damaged property, and

    3. a description of the injury or damage, and

    4. the amount paid or set aside as a reserve, including "Allocated Loss Adjustment Expenses", resulting from the "occurrence", "claim" or "suit".

C. We reserve the right to audit and review the claim handling by the claim service provider at any time, and to verify that procedures, documentation and all other reasonable requirements are met.

4. You shall be responsible for the investigation, defense and settlement of any "claim" or "suit" for damages within the Self-Insured Retention, and for the payment of all "Allocated Loss Adjustment Expenses". You shall exercise utmost good faith, diligence and prudence to settle all "claims" and "suits" within the Self-Insured Retention.

We shall have the right but not the duty to participate with you at our own expense in the defense or settlement of any "claim" or "suit" seeking damages covered under the Policy. In the event of a "claim" or "suit" which in our reasonable judgment may result in payments, including "Allocated Loss Adjustment Expenses", in an amount in excess of the Self-Insured Retention, we may, at our sole discretion, assume control of the defense or settlement of such

"claim" or "suit". You will continue to be responsible for the payment of the Self-Insured Retention.

5.  We shall only be liable for losses covered under the Policy up to the Limits of Insurance in excess of the Self-Insured Retention listed in the Schedule hereof, whether or not such Self-Insured Retention is recoverable or collectible.

6.  If other insurance, whether or not recoverable or collectible, is available to you which is applicable to any "occurrence", "claim" or "suit" within the Self-Insured Retention, you shall continue to be responsible for the Self-Insured Retention listed in the Schedule hereof.

All other terms and conditions remain unchanged.

Countersigned: _____        By: _____
                  Countersignature        Date              Authorized Signature

POLICY NUMBER:  **4 003 527 GLP**          COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## STOP-GAP EMPLOYERS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY subsection 2.e., Exclusions - Employers Liability is amended as follows:

This exclusion does not apply to damages you become legally obligated to pay because of bodily injury to your employees provided:

A.    such employee is reported and declared under the Workers Compensation State Fund in the states of Nevada, North Dakota, Ohio, Washington, West Virginia and Wyoming; and

B.    such employment is necessary or incidental to your work in that designated state.

The damages we will pay, where recovery is permitted by law, include damages:

1.    for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.    for care and loss of services; and

3.    for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

Provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you.

For coverage provided by this endorsement, we will defend any suit against you seeking such damages. We may investigate and settle at our discretion any such claim or suit.

We will not defend any such suit or pay any such claim after we have used up the applicable Limit of Insurance applicable to this endorsement by payment of judgments or settlements.

**ADDITIONAL EXCLUSIONS:**

In addition to the exclusions provided under SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, subsection 2, Exclusions, Insurance provided by this endorsement does not apply to the following additional exclusions:

FINES OR PENALTIES

any assessment, penalty or fine levied by any regulatory or inspection agency or authority.

CP 014 (ED. 09/94)        GERLING AMERICA INSURANCE COMPANY        Page 1 of 3

### ASSUMED LIABILITY

any liability assumed by the insured under any contract or agreement.

### STATUTORY OBLIGATIONS TO EMPLOYEES

any obligation imposed by a Workers Compensation, occupational disease, unemployment compensation or disability benefits law, or under any similar law.

### UNLAWFUL EMPLOYMENT

bodily injury sustained by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers.

### VESSEL EMPLOYEES

bodily injury sustained by any employee while employed as a master or member of a crew or vessel.

### AIRCRAFT EMPLOYEES

bodily injury sustained by any employee while employed as a member of the flying crew of any aircraft.

### INTENTIONAL INJURY

bodily injury caused by any act committed by or at the direction of the insured with deliberate intent to injure. This exclusion does not apply to bodily injury sustained by any employee due to an intentional act of a fellow employee that is neither expected nor intended by you.

### AGE LAW VIOLATIONS

bodily injury sustained by any employee employed in violation of any law as to age with the actual knowledge of the insured.

### FAILURE TO COMPLY WITH WORKERS COMPENSATION LAWS

bodily injury with respect to which the insured is deprived of any defense or defenses or is otherwise subject to penalty because of failure to comply with the provisions of any Workers Compensation Law.

### FEDERAL STATUTES

bodily injury sustained by any employee of the insured in the course of any employment to the extent it is compensable under the:

1.  United States Longshoremen's and Harbors Workers'
    Compensation Act, U.S.C.A. (1927) Title 33,
    Section 901-49;

2.  Federal Employers' Liability Act, U.S.C.A. (1906)
    Title 45, Sections 931-936;

3.  Federal Mine Safety and Health Act, 30 U.S.C.A (1927)
    Sub Chapter 4, Sections 931-936;

including all amendments thereto.

## LIMITS OF INSURANCE

| | |
|---|---|
| Bodily Injury By Accident - Each Accident | $_____1,000,000_____ |
| Bodily Injury By Accident - Each Employee | $_____1,000,000_____ |
| Bodily Injury by Disease - Each Employee | $_____1,000,000_____ |
| Bodily Injury by Disease - Policy Limit | $_____1,000,000_____ |

Our Limits of Insurance for coverage provided by this endorsement are apply as explained below:

1.    Bodily Injury by Accident. The limit shown for "Bodily Injury by Accident - Each Accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident. The limit shown for "Bodily Injury by Accident - Each Employee" is the most we will pay for all damages because of bodily injury by accident to any one employee.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.    Bodily Injury by Disease. The limit shown for "Bodily Injury by Disease - Policy Limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "Bodily Injury by Disease - Each Employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily Injury by disease does not include disease that results directly from a bodily injury by accident.

Coverage provided under this endorsement applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.    The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.    Bodily injury by accident must occur during the policy period.

3.    Bodily injury by disease must be caused or aggravated by the conditions of your employment. the employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

The following additional conditions apply to coverage provided under this endorsement:

1.    The insured will maintain full workers compensation insurance coverage in the Workers Compensation State Fund in the state designated during the term of this insurance or shall be a qualified self insurer approved by the State Workers' Compensation Commission.

2.    This insurance supersedes and replaces any other similar insurance which may be found elsewhere in this policy.

3.    The Limits of Insurance provided in this endorsement are separate from any other liability limits provided by this policy. No other liability limits as described in SECTION III - LIMITS OF INSURANCE are applicable to coverage provided by this endorsement.

CP 014 (ED. 09/94)          GERLING AMERICA INSURANCE COMPANY          Page 3 of 3

**POLICY NUMBER:** 4 003 527 GLP          **COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# AMENDMENT - WORLDWIDE COVERAGE TERRITORY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  The definition of "coverage territory" is hereby deleted in its entirety and replaced with the following:

    "Coverage territory" means all parts of the world subject to the following additional conditions:

    a.  We will reimburse you for any incurred loss or expense if we are prevented by law or otherwise from making payments on your behalf;

    b.  Notwithstanding any other provision of this endorsement or of this policy, we shall have the right and the duty, if permitted by law or otherwise, to investigate, defend and settle any claim or "suit".  In the event we are not authorized to investigate, settle or defend any case you shall, with our supervision, make or cause to be made such investigation and defenses as are reasonably necessary and, subject to our prior authorization, will effect to the extent possible such settlement(s) as we and you deem necessary and, within the applicable limits of liability of the policy, for the amounts of such authorized settlements; and

    c.  We assume no responsibility to furnish certificates, other evidence of insurance, bonds, or comply with the laws of other nations relating to any coverage provided by this policy within such jurisdictions.  All penalties for non-admitted insurance which are imposed by any nation to which this coverage applies are your exclusive responsibility.

2.  The Other Insurance condition of the COMMERCIAL GENERAL LIABILITY CONDITIONS is hereby deleted in its entirety and replaced with the following:

    **OTHER INSURANCE**

    This Insurance is excess over all other insurance, whether primary, excess, contingent or on any other basis, unless purchased by you specifically to apply in excess of this insurance.

3.  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (1) The total amount that all such other insurance would pay for the loss in the absence of the insurance; and

    (2) The total of all deductible and self-insured amounts under all the other insurance.

Other terms and conditions of the policy remain unchanged.

GERLING AMERICA INSURANCE COMPANY

O/GP-020 (05/96)                                                    Page 1 of 1

POLICY NUMBER: **4 003 527 GLP**                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-OWNED WATERCRAFT AMENDMENT

This endorsement modifies insurance provided under the following

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is understood and agreed that with respects COMMERCIAL GENERAL LIABILITY COVERAGE FORM, Coverage A Exclusions Section, Paragraph g (2)(a) is amended to read as follows:

    (a)    Up to **51** feet long

All other terms and conditions remain unchanged.

GERLING AMERICA INSURANCE COMPANY

# ENDORSEMENT
## # 1

**THIS ENDORSEMENT EFFECTIVE:** 12:01 A.M. 06/30/98 **FORMS A PART OF**

**POLICY NO.:** 4 003 527 GLP **ISSUED TO:** Gencor Industries, Inc.

**BY:** **GERLING AMERICA INSURANCE COMPANY**

## NAMED INSURED

1.  Gencor Industries, Inc.
2.  Gencor Combustion Corporation a/k/a Genco
3.  Hy-Way Heat System
4.  Bituma-Stor, Inc.
5.  Bituma Corporation
6.  Bituma General Services
7.  Genco-Sellers, Inc.
8.  The Davis Line, Inc. a/k/a Gencor Hetherington and Berner
9.  Midwest Tank & Construction Holding Corporation
10. Midwest Tank & Mfg. Co., Inc.
11. Midwest Construction Co., Inc.
12. Gencor Systems, Inc.
13. Gencor FSC, Ltd.
14. Thermotech System Corporation
15. General Combustion, Ltd.
16. Equipment Service Group, Inc.
17. Gencor Travel Services
18. Consolidated Process Machinery
19. California Pellet Mills
20. Thermotech System Corporation of Florida
21. Zeig Sheet Metal
22. D. C. Carbotronics

_____
Authorized Representative

**Gerling America Insurance Company**

# ENDORSEMENT
# # 2

THIS ENDORSEMENT EFFECTIVE: 12:01 A.M. 06/30/98    FORMS A PART OF

POLICY NO.: 4 003 527 GLP        ISSUED TO: Gencor Industries, Inc.

BY:    GERLING AMERICA INSURANCE COMPANY

## FELLOW EMPLOYEE EXCLUSION

It is hereby understood and agreed that with respects to Commercial General Liability Coverage Form, Section II - Who is an Insured, Item 2.a. (1)(a) is deleted in its entirety.

All other terms and conditions remain unchanged.

_____
Authorized Representative

**Gerling America Insurance Company
Page 1 of 1**

# ENDORSEMENT
# # 3

THIS ENDORSEMENT EFFECTIVE:  12:01 A.M.  06/30/98  FORMS A PART OF

POLICY NO.:  4 003 527 GLP ISSUED TO:   Gencor Industries, Inc.

BY:    GERLING AMERICA INSURANCE COMPANY

## NOSE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that coverage hereunder is extended to include claims which are first made against the Insured during the period of this policy and which are also reported by the Insured to the Company hereunder in writing during the period of this policy and which arise solely out of occurrences occurring between the dates shown below:

| | |
|---|---|
| Mechtron International Corp. | 3/1/86 and 5/1/91 |
| Bituma Corporation | 5/1/87 and 5/1/91 |
| Bituma General Services | 5/1/87 and 5/1/91 |
| Bituma Construction Equipment | 5/1/87 and 5/1/91 |
| Bituma-Stor, Inc. | 5/1/87 and 5/1/91 |
| All Other Entities | 1/1/88 and 5/1/91 |

It is also understood and agreed that the inclusion of such coverage as is provided by this endorsement shall not exceed $1,000,000 in the aggregate.  This endorsement shall not increase or extend the overall aggregate limit of the Company.  The word "claim" as used in this endorsement shall mean a written demand to the Insured by a third party for monetary damages.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

**Gerling America Insurance Company**

# EMPLOYEE BENEFITS LIABILITY COVERAGE DECLARATION

## THIS COVERAGE FORM PROVIDES CLAIMS MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Important Note: This insurance provides limited coverage for liability which arises out of the Administration of Your Employee Benefits Program. In particular, it does not fully protect You or any other insured against liability created by the Employee Retirement Income Security Act of 1974 or any similar law.

Named Insured: Gencor Industries, Inc.          Policy No. 4 003 527 EBL

| | | |
|---|---|---|
| Item 1. | Effective Date: | **06/30/98** |
| | Expiration Date: | **06/30/99** |

This insurance does not apply to Occurrences which take place before the Retroactive Date of **06/30/98** (if "None", no Retroactive Date Applies)

| | | | |
|---|---|---|---|
| Item 2. | Limits of Liability: | $1,000,000. | Annual Aggregate |
| | | $1,000,000. | Each Claim |
| Item 3. | Deductible Amount: | $1,000. | Each Claim |
| Item 4. | Premium | | |
| | No. of Employees at inception: | As per file | |
| | Rate per Employee: | Included | |
| | Premium for this Coverage Part: (Subject to $100 Minimum) | $425.00 | |

Forms and Endorsements applicable to this Coverage Part: **See Form 0039**

## EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

### THIS COVERAGE FORM PROVIDES CLAIMS MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words You and Your refer to the Named Insured shown in the Declarations.  The words We, Us, and Our refer to the Company providing this insurance.

The word Insured means any person or organization qualified as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that are in quotations have special meaning.  Refer to Section VI - DEFINITIONS.

### SECTION I - EMPLOYEE BENEFITS LIABILITY COVERAGE

**1.    Insuring Agreement**

a.     We will pay those sums that the Insured becomes legally obligated to pay as damages because of any improper advice, error or omission in the "administration" of Your "Employee Benefits Programs" by persons authorized by You.  No other obligation or liability to pay sums or perform acts or services is covered.  This insurance applies only to such advice, errors or omissions which occur in the "coverage territory".  This insurance does not apply to any improper advice, error or omission in the "administration" of Your "Employee Benefits Programs" which occurred before the Retroactive date, if any, shown in the Declarations or which occurs after the policy period.  We will have the right and duty to defend any "suit" seeking those damages.  But:

(1)    The amount We will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE;

(2)    We may investigate and settle any claim or "suit" at Our Discretion; and

(3)    Our right and duty to defend ends when We have used up the applicable limit of insurance in the payment of judgments or settlements.

b.     This insurance applies to claims for damages first made against any Insured during the policy period.

(1)    A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any Insured or by Us, whichever comes first.

(2)     All claims for damages arising from the same or substantially similar , or continuous or repeated improper advice, error or omission committed against the same person, including damages claimed by any person or organization for care, loss of services or any other damages, will be deemed to be a single claim which was made at the time the first of those claims is made against any Insured.

**2.     Exclusions**

This insurance does not apply to:

a.      Any claim based upon unlawful discrimination.

b.      Any claim with respect to which insurance is afforded in whole or in part under any other policy, coverage part or endorsement.

c.      Any claim based upon Your failure or the failure to pay or provide the benefits allegedly due under the contracts relating to "Employee Benefits Programs".

d.      Any claim based on the failure of stock, compensation, investment or saving program to produce the financial gain represented.

e.      Any claim based on dishonest, fraudulent, criminal or malicious act or acts or omission by any Insured or employee.

## SECTION II - WHO IS AN INSURED

The qualified word Insured includes You and also includes:

1.      All of Your elected and appointed general, division and department officers, directors and stockholders while acting within the scope of their duties as such; and

2.      Any of Your employees who are authorized by You to act in the "administration" of Your "Employee Benefits Programs".

## SECTION III - LIMITS OF INSURANCE

1.      The Limits of Insurance shown in the Declarations of this coverage and the rules below fix the most We will pay regardless of the number of:

a.      Insureds;
b.      Claims made or "suits" brought; or
c.      Person or organizations making claims or bringing "suits".

2.   The aggregate limit is the most We will pay for all damages arising out of all claims covered by this insurance during each consecutive annual period, starting with the beginning of the policy period shown in the Declarations.

3.   Subject to 2. above, the Each Claim limit is the most We will pay for all damages arising out of any one claim.

4.   If a Deductible Amount - Each Claim is shown in the Declarations, You are obligated to pay that amount of damages for each claim to which this insurance applies. We are obligated to pay only that portion of the total of all damages (subject to the Limits of Insurance) which exceeds that Deductible amount.

## SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS

1.   Duties in the Event of "Occurrence", Claim or "Suit"

   a.   You must see to it that We are notified promptly when improper advice, error or omission in the "administration" of Your "Employee Benefits Programs" occurs which may result in a claim. Notice should include:

      (1)   How, when and where the improper advice, error or omission took place; and

      (2)   The names and addresses of any potential claimant and witnesses.

   b.   If a claim is made or "suit" is brought against any Insured, You must see to it that We receive prompt written notice of the claim or "suit".

   c.   You and any other involved Insured must:

      (1)   Immediately send Us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2)   Authorize Us to obtain records and other information;

      (3)   Cooperate with Us in the investigation, settlement or defense of the claim or "suit";

      (4)   Assist Us, upon Our request, in the enforcement of any right against any person or organization which may be liable to You because of damage to which this insurance may apply.

   d.   No Insured will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense without Our consent.

## 2.   Legal Action Against Us

No person or organization has a right under this Coverage Part:

a.    To join Us as a party or otherwise bring Us into a "suit" asking for damages from an Insured; or

b.    To sue Us on this Coverage Part unless all of its terms have been complied with.

**3.    Transfer of Rights of Recovery Against Others To Us**

If any Insured has rights to recover all or part of any payment We have made under this Coverage Part, those rights are transferred to Us. The Insured must do nothing after loss to impair them. At Our request, the Insured will bring "suit" or transfer those rights to Us and help Us enforce them.

## SECTION V - EXTENDED REPORTING PERIODS

1.    We will provide one or more Extended Reporting Periods, as described below, if:

a.    This Coverage Part is canceled or not renewed; or

b.    We renew or replace this Coverage Part with insurance that:

(1)    Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

(2)    Does not apply to advice, error or omission on a claims-made basis.

2.    Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for improper advice, error or omission in the "administration" of Your "Employee Benefits Programs" committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be canceled.

3.    A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a.    Five years for claims arising out of an "occurrence" reported to Us, not later than 60 days after the end of the policy period, in accordance with paragraph 1.a. of SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS; or

b.    Sixty days for all other claims.

The Basic Extended Reporting Period does not apply to claims that are covered under subsequent insurance You purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4.    A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

You must give Us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless You pay the additional premium promptly when due.

We will determine the additional premium in accordance with Our rules and rates. In doing so, We may take into account the following:

    a.     The exposures insured;

    b.     Previous types and amounts of insurance;

    c.     Limits of Insurance available under this Coverage Part for future payment of damages; and

    d.     Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including the provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

5.     The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

6.     If the Supplemental Extended Reporting Period is in effect, We will provide the separate aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

The separate aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for Annual Aggregate.

Paragraph 2. of SECTION III - LIMITS OF INSURANCE will be amended accordingly.

## SECTION VI - DEFINITIONS

1.     **Administration means:**

    a.     The determination of the eligibility of employees to participate in "Employee Benefits Programs";

    b.     The enrollment of employees in those programs;

    c.     The keeping of records as to those programs;

d.    Interpretation of the provisions of those programs; and

e.    The giving of advice or counsel to employees or their beneficiaries as to their rights or interests in those programs.

2.    **Employee Benefits Programs means:**

a.    Group life insurance;

b.    Accident and health insurance;

c.    Dental insurance;

d.    Pension;

e.    Employee stock subscription;

f.    Profit sharing;

g.    Disability;

h.    Retirement; or

i.    Any similar programs offered to employees and their beneficiaries within the "coverage territory".

It also includes workers' compensation, unemployment insurance and social security. If during this policy period You offer additional "Employee Benefits Programs" not described in this policy, then this insurance will also apply to those programs.

3.    **Occurrence** means improper advice, error or omission in the "administration" of Your "Employee Benefits Programs", including continuous or repeated advice, error or omission involving substantially the same general condition as respects each employee.

4.    **Suit** means a civil proceeding in which damages because of improper advice, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which You must submit or submit with Our consent.

5.    **Coverage Territory** means the United States of America, its territories and possessions, Puerto Rico and Canada.

# EMPLOYEE BENEFITS LIABILITY COVERAGE
## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim or "suit" We defend:

1.   All expenses We incur.

2.   The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

3.   All reasonable expenses incurred by the Insured at Our request to assist Us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

4.   All costs taxed against the Insured in the "suit."

5.   Prejudgment interest awarded against the Insured on that part of the judgment We pay.  If We make an offer to pay the applicable limit of insurance, We will not pay any prejudgment interest based on that period of time after the offer.

6.   All interest on the full amount of any judgment that accrues after entry of the judgment and before We have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

# EXHIBIT 2 TO PLAINTIFF'S THIRD AMENDED
# COMPLAINT-AMENDED FINAL JUDGMENT

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO.:  04-CA-007746
DIVISION: 32
COMPLEX BUSINESS
LITIGATION COURT

FIREMAN'S FUND INSURANCE COMPANY, a
Foreign corporation a/s/o BASIC RESOURCES, INC.,
and GEORGE REED, INC., a foreign corporation,

       Plaintiff,

vs.

GENCOR INDUSTRIES, INC., a foreign corporation,

       Defendant.

_____/

## AMENDED FINAL JUDGMENT

This cause having come before the Court for Jury Trial, with a true and correct

Verdict having been rendered herein on January 26, 2007, and having come before the

Court on May 29, 2007 on Defendant's Motion for Re-Hearing, which was granted in part,

Amended Final Judgment is entered in favor of Plaintiff, FIREMAN'S FUND

INSURANCE COMPANY, a foreign corporation as subrogee of (a/s/o) BASIC

RERSOURCFS, INC. and GEORGE REED, INC., a foreign corporation Plaintiff ("FFIC")

and against Defendant, GENCOR INDUSTRIES, INC., a foreign corporation

("GENCOR") solely on the Breach of Contract Count in the total sum of $1,751,913.10,

which is inclusive of pre-judgment interest in the sum of $558,088.15 but is exclusive of

costs and any attorney's fees that may be awarded hereafter as follows:

1.    On FFIC's Breach of Contract Count, Plaintiff shall recover the total sum of $1,193,825.00, comprising $959,787.00 for physical damage to property, $64,322.00 for lost profits, and $169,716.00 for additional expense. FFIC shall also recover pre-judgment interest on the foregoing, in accordance with *Burns International Security Services, Inc. of Florida v. Philadelphia Indemnity Insurance Company, 899 So. 2d 361 (Fla. 4th DCA 2005)* based upon the dates of payment by FFIC to its insured and the interest rates then applicable in the sum of $558,088.15. Post Judgment interest shall accrue at the rate of 11 percent per annum in accordance with Florida Statute § 55.05.

2.    On FFIC's Negligence Count, Plaintiff shall recover the total sum of $716,194.00 comprising $575,872.00 for physical damage to property, $38,593.00 for lost profits, and $101,829.00 for additional expense. Plaintiff shall also recover pre-judgment interest on the foregoing in accordance with *Burns International Security Services, Inc. of Florida v. Philadelphia Indemnity Insurance Company, 899 So. 2d 361 (Fla. 4th DCA 2005)* based upon the dates of payment by FFIC to its insured and the interest rates then applicable in the sum of $415,517.80. Post Judgment interest shall accrue at the legal rate of 11 percent per annum in accordance with Florida Statute § 55.05.

In accordance with the Stipulation of record executed by and between the parties and GENCOR's insurer, Gerling America Insurance Company ("GERLING"), and pursuant to the terms and requirements of the GENCOR bankruptcy proceeding in United States Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No.: 00-3597-6J1, this is not an in personam Judgment against GENCOR and shall not be subject to execution against GENCOR.

This Court reserves jurisdiction to award FFIC's taxable costs and to consider any claim for an award of attorney's fees and additional costs pursuant to Florida Statute § 768.79 upon appropriate motion and notice to all affected parties.

**DONE AND ORDERED** in Orange County, Florida, on this _11_ day of _June_, 2007.

*Renee A. Roche*

**Honorable Renee Roche**
Circuit Court Judge

Copies Furnished to:

**Jon D. Derrevere, Esquire**
Derrevere, Hawkes, Black
470 Columbia Drive, Bldg B
West Palm Beach, Florida 33409

**Patrick J. Murphy, Esquire**
Murphy & Neale, P.A.
550 Fairway Drive, Suite 203
Deerfield Beach, Florida 33441

**Andy Spector, Esquire**
Hyman Spector & Mars, LLP
Museum Tower, 27th Floor
150 W. Flagler Street, Suite 2701
Miami, Florida 33130

# EXHIBIT 3 TO PLAINTIFF'S THIRD AMENDED COMPLAINT-FINAL JUDGMENT AWARDING FEES & COSTS

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO.:  04-CA-007746
DIVISION: 32
COMPLEX BUSINESS
LITIGATION COURT

FIREMAN'S FUND INSURANCE COMPANY, a
Foreign corporation a/s/o BASIC RESOURCES, INC.,
and GEORGE REED, INC., a foreign corporation,

       Plaintiff,

vs.

GENCOR INDUSTRIES, INC., a foreign corporation,

       Defendant.

_____/

## FINAL JUDGMENT AWARDING ATTORNEY FEES AND COSTS

This cause having come before the Court on the Motion to Award Attorney Fees and

Costs by FIREMAN'S FUND INSURANCE COMPANY, a/s/o BASIC RERSOURCES,

INC. and GEORGE REED, INC. ("FFIC") and the Court being duly advised in the

premises, it is hereby

**ORDERED AND ADJUDGED** that Final Judgment is entered in favor of FFIC in

the sum of $42,000.00 for attorney fees and $42,000.00 for costs. This is not an *in personam*

judgment against Gencor Industries, Inc. and this Judgment is not subject to execution

against Gencor Industries, Inc. Interest shall run on this judgment at the sum of eleven

percent per annum until satisfied.

**DONE AND ORDERED** in Orange County, Florida, on this ___7___ day of

_September_ 2007.

**Honorable Renee Roche**
Circuit Court Judge

Copies Furnished to:

**Jon D. Derrevere, Esquire**
Derrevere, Hawkes, Black
470 Columbia Drive, Bldg B
West Palm Beach, Florida 33409

**Patrick J. Murphy, Esquire**
Murphy & Neale, P.A.
550 Fairway Drive, Suite 203
Deerfield Beach, Florida 33441

**Andy Spector, Esquire**
Hyman Spector & Mars, LLP
Museum Tower, 27th Floor
150 W. Flagler Street, Suite 2701
Miami, Florida 33130