# EXHIBIT A

*376 U.S. 612, \*; 84 S. Ct. 805, \*\*;*
*11 L. Ed. 2d 945, \*\*\*; 1964 U.S. LEXIS 1537*

VAN DUSEN, U.S. DISTRICT JUDGE, ET AL. v. BARRACK, ADMINISTRATRIX, ET AL.

Nos. 56 and 80

SUPREME COURT OF THE UNITED STATES

376 U.S. 612; 84 S. Ct. 805; 11 L. Ed. 2d 945; 1964 U.S. LEXIS 1537

January 8-9, 1964, Argued
March 30, 1964, Decided

**PRIOR HISTORY:** CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT.

**DISPOSITION:** 309 F.2d 953, reversed and remanded.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioners sought review of a decision by the United States Court of Appeals for the Third Circuit, which overturned a grant of transfer of venue within the federal judicial system to petitioners and held that a transfer, under the Judicial Code of 1948, 28 U.S.C.S. § 1404(a), could only be granted if respondents had qualified to sue in the state of the transferee court at the time the suits were brought.

**OVERVIEW:** Petitioners sought review of decision overturning a grant of transfer to them and holding that transfer, under the Judicial Code of 1948, 28 U.S.C.S. § 1404(a), could only be granted if at the time the suits were brought, the respondents were qualified to sue in the state of the transferee court. The Court held that both the history and purpose of 28 U.S.C.S. § 1404(a) indicated it was a federal judicial housekeeping measure intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms. Therefore, when petitioners sought transfer, the transferee court was obligated to apply the state law that would have been applied if there had been no change of venue. The Court held that Fed. R. Civ. P. 17(b) provided that, for personal representatives, capacity to sue or be sued should be determined by law of the state in which the district court sat, that would otherwise be the source of the applicable laws. Fed. R. Civ. P. 17(b) should not be interpreted to force denial of 28 U.S.C.S. § 1404(a) transfer. Fed. R. Civ. P. 17(b) was intended to work an accommodation of interests within the federal system.

**OUTCOME:** The Court reversed the order and remanded to the district court to reconsider the motion to transfer. The Federal venue statute was a federal judicial housekeeping measure intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms. When petitioners sought transfer, the transferee district was obligated to apply the state law that would have applied if there had been no change of venue.

**CORE TERMS:** transferee, venue, transferor, state laws, convenience, change of venue, personal representatives, transferred, interest of justice, present case, choice-of-law, convenient, capacity to sue, statutes of limitations, barge, accompanied, culpability, fiduciary, Massachusetts Death Act, civil actions, sit, Liability Act, federal forum, convenient forum, instituted, conveniens, wrongful death, federal districts, venue statutes, inconvenient

**LEXISNEXIS® HEADNOTES**                                      ⊟ **Hide**

Civil Procedure > Venue > Motions to Transfer > Convenience of Parties 🗔
Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses 🗔
Civil Procedure > Venue > Motions to Transfer > Interests of Justice 🗔

*HN1* ⬇ The Judicial Code of 1948, 28 U.S.C.S. § 1404(a), allows a change of venue within the federal judicial system, and provides that: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Parties > Capacity of Parties > Representatives 🗔

*HN2* ⬇ See Fed. R. Civ. P. 17(b).

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗔

*HN3* ⬇ The United States Supreme Court reviews decisions in Judicial Code of 1948, 28 U.S.C.S. § 1404(a), transfer cases which the Court of Appeals reviewed through exercise of the mandamus power. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗔

*HN4* ⬇ Judicial Code of 1948, 28 U.S.C.S. § 1404(a), reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗔

*HN5* ⬇ The purpose of Judicial Code of 1948, 28 U.S.C.S. § 1404(a), is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. To this end it empowers a district court to transfer any civil action to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice. This transfer power is, however, expressly limited by the final clause of 28 U.S.C.S. § 1404(a) restricting transfer to those federal districts in which the action might have been brought. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗔

*HN6* ⬇ Despite a defendant's waivers or consent, a forum which is improper for both venue and service of process is not a forum where the action might have been brought. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗔

*HN7* ⬇ The "might-have-been-brought" language of Judicial Code of 1948, 28 U.S.C.S. § 1404(a), plainly refers to the similar wording in related federal statutes and not directly to the laws of the State of the transferee forum. More Like This Headnote |

*Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🔍ALL
**HN8** ⬇️ The idea behind Judicial Code of 1948, 28 U.S.C.S. § 1404(a), is that where a civil action to vindicate a wrong -- however brought in a court -- presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court. This remedial purpose -- the individualized, case-by-case consideration of convenience and fairness -- militates against restricting the number of permissible forums within the federal system. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔍ALL
**HN9** ⬇️ There is no valid reason for reading the words "where it might have been brought" to narrow the range of permissible federal forums beyond those permitted by federal venue statutes which, after all, are generalized attempts to promote the same goals of convenience and fairness. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🔍ALL
**HN10** ⬇️ In construing Judicial Code of 1948, 28 U.S.C.S. § 1404(a), the court should consider whether a suggested interpretation would discriminatorily enable parties opposed to transfer, by means of their own acts or omissions, to prevent a transfer otherwise proper and warranted by convenience and justice. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔍ALL
**HN11** ⬇️ The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔍ALL
Governments > Fiduciary Responsibilities 🔍ALL
**HN12** ⬇️ The words "where it might have been brought" must be construed with reference to the federal laws delimiting the districts in which such an action may be brought and not with reference to laws of the transferee State concerning the capacity of fiduciaries to bring suit. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Parties > Capacity of Parties > Representatives 🔍ALL
**HN13** ⬇️ Fed. R. Civ. P. 17(b) provides that the capacity of personal representatives to sue or be sued shall be determined by the law of the state in which the district court is held. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔍ALL
Civil Procedure > Parties > Capacity of Parties > General Overview 🔍ALL
**HN14** ⬇️ Although Fed. R. Civ. P. 17(b) may be irrelevant to a determination of where an action "might have been brought," the effect of Fed. R. Civ. P. 17(b) may necessarily render a change of venue against the interest of justice. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > General Overview 🔍ALL
Governments > Legislation > Statutes of Limitations > General Overview 🔍ALL

Torts > Strict Liability > Harm Caused by Animals > Defenses

*HN15* Whenever the law of the transferee State significantly differs from that of the transferor State -- whether that difference relates to capacity to sue, statutes of limitations, or substantive rules of liability -- it becomes necessary to consider what bearing a change of venue, if accompanied by a change in state law, would have on the interest of justice. More Like This Headnote | *Shepardize:* Restrict By Headnote

Torts > Wrongful Death & Survival Actions > Remedies > General Overview

*HN16* The Massachusetts Death Act provides that one who negligently causes the death of another shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability. Mass. Gen. Laws ch. 229, § 2. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Federal & State Interrelationships > General Overview
Torts > Damages > General Overview
Torts > Wrongful Death & Survival Actions > General Overview

*HN17* Under Pennsylvania law the recovery of damages (1) is based upon the more common principle of compensation for losses rather than upon the degree of the tortfeasor's culpability and (2) is not limited to $ 20,000. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview

*HN18* The most convenient forum is frequently the place where the cause of action arose and the conflict-of-laws rules of other States may often refer to the substantive rules of the more convenient forum. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview

*HN19* The decisions of the lower federal courts, taken as a whole, reveal that courts construing Judicial Code of 1948, 28 U.S.C.S. § 1404(a), have been strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview
Governments > Legislation > Statutes of Limitations > General Overview

*HN20* In removal cases the Federal Court must apply the state law and the state policy. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview

*HN21* Although as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case should remain as it was in all respects but location. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview

*HN22* Plaintiffs retain whatever advantages may flow from the state laws of the forum they have initially selected. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers 🖫ᴀʟʟ
HN23⬇Judicial Code of 1948, 28 U.S.C.S. § 1406(a), provides for transfer from forums
in which venue is wrongly or improperly laid.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🖫ᴀʟʟ
HN24⬇Judicial Code of 1948, 28 U.S.C.S. § 1404(a), operates on the premise that the
plaintiff has properly exercised his venue privilege.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🖫ᴀʟʟ
HN25⬇Judicial Code of 1948, 28 U.S.C.S. § 1404(a), was not designed to narrow the
plaintiff's venue privilege or to defeat the state-law advantages that might accrue
from the exercise of this venue privilege but rather the provision was simply to
counteract the inconveniences that flowed from the venue statutes by permitting
transfer to a convenient federal court.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🖫ᴀʟʟ
HN26⬇Both the history and purposes of Judicial Code of 1948, 28 U.S.C.S. § 1404(a),
indicate that it should be regarded as a federal judicial housekeeping measure,
dealing with the placement of litigation in the federal courts and generally
intended, on the basis of convenience and fairness, simply to authorize a change
of courtrooms.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place 🖫ᴀʟʟ
Civil Procedure > Federal & State Interrelationships > Erie Doctrine 🖫ᴀʟʟ
HN27⬇The United States Supreme Court has often formulated the Erie doctrine by
stating that it establishes the principle of uniformity within a state, and declaring
that federal courts in diversity of citizenship cases are to apply the laws of the
states in which they sit.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview 🖫ᴀʟʟ
Civil Procedure > Federal & State Interrelationships > Erie Doctrine 🖫ᴀʟʟ
HN28⬇The policy that underlies Erie R. Co. v. Tompkins is that for the same transaction
the accident of a suit by a non-resident litigant in a federal court instead of in a
State court a block away should not lead to a substantially different
result.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🖫ᴀʟʟ
Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place 🖫ᴀʟʟ
Civil Procedure > Federal & State Interrelationships > Erie Doctrine 🖫ᴀʟʟ
HN29⬇Where the defendants seek transfer, the transferee district court must be
obligated to apply the state law that would have been applied if there had been
no change of venue. A change of venue under Judicial Code of 1948, 28 U.S.C.S.
§ 1404(a), generally should be, with respect to state law, but a change of
courtrooms.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Federal & State Interrelationships > Erie Doctrine 🖫ᴀʟʟ
HN30⬇The transferee District Court may apply its own rules governing the conduct and
dispatch of cases in its court.  More Like This Headnote | *Shepardize:* Restrict By Headnote



Civil Procedure > Parties > Capacity of Parties > Representatives
Estate, Gift & Trust Law > Probate > Personal Representatives > Claims By & Against

**HN31** Fed. R. Civ. P. 17(b) provides that for personal representatives, capacity to sue or be sued shall be determined by the law of the state in which the district court is held. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Federal & State Interrelationships > Erie Doctrine
Civil Procedure > Parties > Capacity of Parties > General Overview

**HN32** The Fed. R. Civ. P. 17(b) reference to the State in which the district court is held was intended to achieve the same basic uniformity between state and federal courts as was intended by the decisions which have formulated the Erie policy in terms of requiring federal courts to apply the laws of the States in which they sit. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Federal & State Interrelationships > Erie Doctrine
Civil Procedure > Parties > Capacity of Parties > General Overview

**HN33** Fed. R. Civ. P. 17(b) was intended to work an accommodation of interests within our federal system and that in interpreting it in new contexts the court should look to its guiding policy and keep it free from entanglements with analytical or terminological niceties. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place
Civil Procedure > Parties > Capacity of Parties > General Overview

**HN34** Where a Judicial Code of 1948, 28 U.S.C.S. § 1404(a), transfer is held not to effect a change of law but essentially only to authorize a change of courtrooms, the reference in Fed. R. Civ. P. 17(b) to the law of the State "in which the district court is held" should be applied in a corresponding manner so that it will refer to the district court which sits in the State that will generally be the source of applicable laws. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Federal & State Interrelationships > Erie Doctrine

**HN35** A Judicial Code of 1948, 28 U.S.C.S. § 1404(a), transfer will not alter the state law to be applied. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview

**HN36** The matters to be weighed in assessing convenience and fairness are pervasively shaped by the contours of the applicable laws. The legal rules obviously govern what facts will be relevant and irrelevant, what witnesses may be heard, what evidence will be most vital, and so on. Not only do the rules thus affect the convenience of a given place of trial but they also bear on considerations such as judicial familiarity with the governing laws and the relative ease and practicality of trying the cases in the alternative forums. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Federal Venue Transfers > General Overview

**HN37** There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers

*HN38* ⬇ 28 U.S.C.S. § 1404 (a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. The Supreme Court does not suggest that elements of uncertainty in transferor state law would alone justify a denial of transfer; but the Court does think that the uncertainty is one factor, among others, to be considered in assessing the desirability of transfer. More Like This Headnote | *Shepardize:* Restrict By Headnote

## LAWYERS' EDITION DISPLAY                              ⊟ **Hide**

### SUMMARY:

The present case concerns 40 of the wrongful death actions brought in the United States District Court for the Eastern District of Pennsylvania by personal representatives of victims of an airplane crash in Massachusetts. Relying upon 28 USC 1404(a), which authorizes, for the convenience of the parties and witnesses, in the interest of justice, the transfer of a civil action to any other district "where it might have been brought," the defendants moved to transfer the actions to the District of Massachusetts, where over 100 other similar actions were pending. The District Court granted the motion (204 F Supp 426), but in mandamus proceedings the Court of Appeals for the Third Circuit directed vacation of the transfer order (309 F2d 953), holding that the transfer could not be granted because at the time the suits were brought the plaintiffs had not qualified to sue in Massachusetts.

On certiorari, the United States Supreme Court reversed the judgment of the Court of Appeals and remanded the case to the District Court. In an opinion by Goldberg, J., expressing the views of eight members of the Court, it was held that (1) the words of the statute "where it [the action] might have been brought" must be construed with reference to the federal laws limiting the districts in which such an action "may be brought" and not with reference to the laws of the transferee state concerning the capacity of fiduciaries to bring suit; (2) the transferee District Court, in a case, such as the instant case in which the defendants sought the transfer, was obligated to apply the state law that would have been applied if there had been no change of venue; and (3) Federal Civil Procedure Rule 17(a), which, dealing with persons acting in a representative capacity, provides that capacity to sue shall be determined by the law of the state "in which the district court is held," must be interpreted similarly so that the capacity to sue will also be governed by the laws of the transferor state.

Black, J., concurred in the reversal substantially for reasons set forth in the opinion of the court, but expressed the view that the Supreme Court should go further and hold that it was error to order the actions transferred to the District of Massachusetts.

### LAWYERS' EDITION HEADNOTES:

[***LEdHN1]

APPEAL §312

error in construction of statute -- Supreme Court review --

Headnote:*LEdHN[1]* ⬇ [1]

The United States Supreme Court, having jurisdiction to review a judgment of a Court of Appeals rendered in mandamus proceedings which attack an order of a District Court transferring a case to another district under 28 USC 1404(a), may, without deciding the propriety of mandamus as remedy, correct errors of the courts below in interpreting 1404 (a).

**[\*\*\*LEdHN2]**

COURTS §630

federal -- transfer between districts --

Headnote:*LEdHN[2]*↓[2]

The purpose of 28 USC 1404(a), authorizing, for the convenience of parties and witnesses, in the interest of justice, the transfer of a civil action from one Federal District Court to another, is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.

**[\*\*\*LEdHN3]**

COURTS §630

federal -- transfer between districts --

Headnote:*LEdHN[3A]*↓[3A]*LEdHN[3B]*↓[3B]

The final clause of 28 USC 1404 (a), which allows the transfer of a civil action to any other district "where it might have been brought," does not restrict the availability of convenient federal forums by referring to state-law rules, such as those concerning the capacity of personal representatives to bring suit, which would have applied if the action had originally been instituted in the transferee federal court; the final clause must be construed with reference to the federal laws limiting the districts in which such an action "may be brought."

**[\*\*\*LEdHN4]**

COURTS §630

federal -- transfer between districts --

Headnote:*LEdHN[4]*↓[4]

The idea behind 28 USC 1404(a) is that where a civil action to vindicate a wrong--however brought in a court--presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court.

**[\*\*\*LEdHN5]**

COURTS §630

federal -- transfer between districts --

Headnote:*LEdHN[5]*[5]

A party's power to defeat a transfer to the convenient federal forum under 28 USC 1404 (a) derives from his rights and privileges as conferred by federal law, and not from his deliberate conduct.

## [***LEdHN6]

COURTS §631

federal -- transfer between districts -- capacity to sue --

Headnote:*LEdHN[6]*[6]

Although Federal Civil Procedure Rule 17(b), under which the capacity of one acting in a representative capacity to bring suit shall be determined by the law of the state in which the District Court is held, is irrelevant to a determination of where an action "might have been brought," within the meaning of 28 USC 1404 (a) authorizing, on grounds of convenience and in the interest of justice, the transfer of a civil action to another district where it might have been brought, the effect of Rule 17(b) may necessarily render a change of venue against the "interest of justice."

## [***LEdHN7]

COURTS §787

federal -- following state law -- conflict of laws --

Headnote:*LEdHN[7]*[7]

In a diversity of citizenship case federal courts must follow conflict of laws rules prevailing in the states in which they sit.

## [***LEdHN8]

COURTS §630

federal -- transfer between districts --

Headnote:*LEdHN[8]*[8]

Although both 28 USC 1404(a) and 28 USC 1406(a) are broadly designed to allow, instead of dismissal, transfer of a civil case to another district, the latter section provides for transfer from forums in which venue is wrongful or improperly laid, whereas the former section operates on the premise that the plaintiff has properly exercised his venue privilege.

## [***LEdHN9]

COURTS §630

COURTS §787

federal -- transfer between districts -- applicable state law --

Headnote:*LEdHN[9]*[9]

The doctrine of Erie R. Co. v Tompkins, under which in a diversity of citizenship action a
Federal District Court is bound to apply the law of the state in which the court is sitting,
does not require that a District Court to which a case is transferred under 28 USC 1404(a)
should apply the law of the state in which it sits rather than the law of the transferor state.

## [***LEdHN10]

COURTS §632

COURTS §787

federal -- transfer between districts -- effect on applicable law --

Headnote:*LEdHN[10]*[10]

In a case in which the defendant procures a transfer to another district under 28 USC
1404(a), the transferee District Court is obligated to apply the state law that would have
been applied if there had been no change of venue; with respect to state law, such a
change of venue is but a change of courtrooms.

## [***LEdHN11]

COURTS §544

federal -- capacity to sue -- applicable state law --

Headnote:*LEdHN[11]*[11]

The purpose of Federal Civil Procedure Rule 17(a), which, dealing with persons acting in a
representative capacity, provides that capacity to sue shall be determined by the law of
the state "in which the district court is held," is to achieve basic uniformity between state
and federal courts, and to work an accommodation of interests within the federal system;
in interpreting the provision in new contexts, the court should look to its guiding policy
and keep it free from entanglements with analytical or terminological niceties.

## [***LEdHN12]

COURTS §544

COURTS §632

federal -- transfer between districts -- capacity to sue -- applicable state law --

Headnote:*LEdHN[12]*[12]

The language in Federal Civil Procedure Rule 17(a) which, dealing with persons acting in a
representative capacity, provides that capacity to sue shall be determined by the law of
the state "in which the district court is held" refers to the law of the state of the transferor
court, rather than of the transferee court, where a transfer of a case under 28 USC 1404
(a) does not effect a change in law.

## [***LEdHN13]

COURTS §631

transfer between districts -- determinative factors -- applicable laws --

Headnote:$^{LEdHN[13]}$⬆[13]

In determining whether a proposed transfer of a case to another district under 28 USC 1404(a) can be justified when measured against the relevant criteria of convenience and fairness, the matters to be weighed are pervasively shaped by the contours of the applicable laws, the legal rules not only affecting the convenience of a given place of trial but also bearing on considerations such as judicial familiarity with the governing laws and the relative ease and practicality of trying the cases in the alternative forums.

[***LEdHN14]

COURTS §631

transfer between districts -- uncertainty in law --

Headnote:$^{LEdHN[14]}$⬆[14]

While elements of uncertainty in transferor state law would alone not justify a denial of transfer to another district under 28 USC 1404(a), the uncertainty is one factor, among others, to be considered in assessing the desirability of transfer.

[***LEdHN15]

APPEAL §1692.2

grounds for remand -- misconception of law --

Headnote:$^{LEdHN[15]}$⬆[15]

Upon reversal of a judgment of a Court of Appeals which vacated in mandamus proceedings an order of a District Court transferring a case to another district under 28 USC 1404 (a), the United States Supreme Court will remand the case to the District Court for reconsideration of the transfer motion, where both courts below erred in their fundamental assumptions regarding the state law to be applied by the transferee court.

## SYLLABUS

Respondents, personal representatives of Pennsylvania decedents, instituted in the United States District Court for the Eastern District of Pennsylvania 40 wrongful death actions arising from an airplane crash in Massachusetts. Acting on petitioners' motion under § 1404 (a) of the Judicial Code of 1948, which provides for transfer of civil actions for the convenience of parties and witnesses, in the interest of justice, to any district where such action "might have been brought," the District Court ordered that the actions be transferred to the District of Massachusetts, where over 100 other actions arising out of the same disaster are pending. The Court of Appeals, interpreting § 1404 (a) and relying on Rule 17 (b) of the Federal Rules of Civil Procedure, vacated the transfer order, holding that it could be granted only if at the time the actions were filed respondents were personal representatives qualified to sue in Massachusetts courts. *Held*:

1. In § 1404 (a) the phrase "where it might have been brought" must be construed with reference to federal venue laws setting forth the districts where such actions "may be brought" and not with reference to the laws, such as those relating to damages and the capacity of personal representatives to sue, of the State where the transferee district court is located. Pp. 616-626.

2. In a case such as this where the actions were properly brought in the transferor district court and where defendants seek transfer under § 1404 (a), the change of venue should not be accompanied by a change in the governing state laws. Pp. 626-640.

3. Where a § 1404 (a) transfer is held not to effect a change of state law but essentially only to authorize a change of federal courtrooms, the provision in Rule 17 (b) that the capacity of personal representatives to sue or be sued shall be determined by the law of the State "in which the district court is held" should similarly be interpreted to refer to the law of the State in which the transferor District Court is located. Pp. 640-643.

4. The general criteria of convenience and fairness of § 1404 (a) include what witnesses may be heard, the evidence which will be relevant and important under the applicable state laws, and, also, consideration of the judicial familiarity with the governing state laws and the relative ease and practicality of trying the actions in the proposed transferee District Court. Pp. 643-646.

**COUNSEL:** Owen B. Rhoads argued the cause for petitioners in No. 56. With him on the briefs were George J. Miller, J. Welles Henderson, Jr., J. Grant McCabe III and Sidney L. Wickenhaver.

Morton Hollander argued the cause for petitioners in No. 80. With him on the brief were Solicitor General Cox and Assistant Attorney General Douglas.

John R. McConnell argued the cause for respondents. With him on the brief were Seymour I. Toll, T. E. Byrne, Jr., Lee S. Kreindler, Abram P. Piwosky, Ralph Earle II, Abraham E. Freedman and Milton M. Borowsky.

**OPINION BY:** GOLDBERG

**OPINION**

   [*613]  [***948]  [**807]  MR. JUSTICE GOLDBERG delivered the opinion of the Court.

This case involves the construction and application of § 1404 (a) of the Judicial  [**808] Code of 1948. Section 1404 (a), which ᴴᴺ¹⚡allows a "change of venue" within the federal judicial system, provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U. S. C. § 1404 (a).

The facts, which need but brief statement here, reveal that the disputed change of venue is set against the background of an alleged mass tort. On October 4, 1960, shortly after departing from a Boston airport, a commercial airliner, scheduled to fly from Boston to Philadelphia, plunged into Boston Harbor. As a result of the crash, over 150 actions for personal injury and wrongful death  [*614]  have been instituted against the airline, various manufacturers, the United States, and, in some cases, the Massachusetts Port Authority. In most of these actions the plaintiffs have alleged that the crash resulted from the defendants' negligence in permitting the aircraft's engines to ingest some birds. More than 100 actions

were brought in the United States District Court for the District of Massachusetts, and more than 45 actions in the United States District Court for the Eastern District of Pennsylvania.

The present case concerns 40 of the wrongful death actions brought in the Eastern District of Pennsylvania by personal representatives of [***949] victims of the crash. ¹ The defendants, petitioners in this Court, moved under § 1404 (a) to transfer these actions to the District of Massachusetts, where it was alleged that most of the witnesses resided and where over 100 other actions are pending. The District Court granted the motion, holding that the transfer was justified regardless of whether the transferred actions would be governed by the laws and choice-of-law rules of Pennsylvania or of Massachusetts. 204 F.Supp. 426. The District Court also specifically held that transfer was not precluded by the fact that the plaintiffs had not qualified under Massachusetts law to sue as representatives of the decedents. The plaintiffs, respondents in this Court, sought a writ of mandamus from the Court of Appeals and successfully contended that the District Court erred and should vacate its order of transfer. 309 F.2d 953. The Court of Appeals held that a § 1404 (a) transfer could be granted only if at the time the suits were brought, the plaintiffs had qualified to sue in Massachusetts, the State of the transferee District Court. The Court of Appeals relied in part upon [*615] its interpretation of Rule 17 (b) of the Federal Rules of Civil Procedure. ²

**FOOTNOTES**

1 The plaintiffs are "Pennsylvania fiduciaries representing the estates of Pennsylvania decedents."


[***LEdHR1]  LEdHN[1]✦[1]


**FOOTNOTES**

2 Rule 17 (b), Fed. Rules Civ. Proc., 28 U. S. C.: HN2✦"Capacity to Sue or Be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U. S. C., §§ 754 and 959 (a)."


We granted certiorari to review important questions concerning the construction and operation of § 1404 (a). 372 U.S. 964. For reasons to be stated below, we hold that the judgment of the Court of Appeals must be reversed, that both the Court of Appeals and the District Court erred in their fundamental assumptions regarding the state law to be applied to [**809] an action transferred under § 1404 (a), and that accordingly the case must be remanded to the District Court. ³

**FOOTNOTES**

3 Although it is clear that this Court has jurisdiction to review the judgment of the Court of Appeals, the Government, a defendant in this case, urges that the judgment below be reversed because mandamus was an improper remedy. However, in *Hoffman* v. *Blaski*,

363 U.S. 335, as the Government concedes, *HN3*this Court reviewed decisions in § 1404 (a) transfer cases which the Court of Appeals reviewed through exercise of the mandamus power. See also *Norwood v. Kirkpatrick*, 349 U.S. 29; *Ex parte Collett*, 337 U.S. 55. Since in our opinion the courts below erred in interpreting the legal limitations upon and criteria for a § 1404 (a) transfer, we find it unnecessary to consider the mandamus contentions advanced by the Government. Cf. *Platt* v. *Minnesota Mining & Mfg. Co., ante*, at 240.

[*616] I. WHERE THE ACTION "MIGHT HAVE BEEN BROUGHT."

[***LEdHR2] *LEdHN[2]*[2]*HN4*Section 1404 (a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and [***950] justice. 4 Thus, as the Court recognized in *Continental Grain Co.* v. *Barge FBL-585*, 364 U.S. 19, 26, 27,*HN5*the purpose of the section is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." To this end it empowers a district court to transfer "any civil action" 5 to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice. This transfer power is, however, expressly limited by the final clause of § 1404 (a) restricting transfer to those federal districts in which the action "might have been brought." Although in the present case the plaintiffs were qualified to bring suit as personal representatives under Pennsylvania law (the law of the State of the transferor federal court), the Court of Appeals ruled that the defendants' transfer motion must be denied because at the time the suits were brought in Pennsylvania (the transferor forum) the complainants had not obtained the appointments requisite to initiate such actions in Massachusetts (the transferee forum). [*617] At the outset, therefore, we must consider whether the incapacity of the plaintiffs at the time they commenced their actions in the transferor forum to sue under the state law of the transferee forum renders the latter forum impermissible under the "might-have-been-brought" limitation.

## FOOTNOTES

4 See, *e. g., Norwood v. Kirkpatrick, supra*, at 32: "When Congress adopted § 1404 (a), it intended to do more than just codify the existing law on *forum non conveniens*. . . . Congress, in writing § 1404 (a), which was an entirely new section, was revising as well as codifying." 1 Moore, Federal Practice (2d ed., 1961), pp. 1751-1758.

5 See *Ex parte Collett, supra*, and *United States* v. *National City Lines, Inc.*, 337 U.S. 78 (interpreting "any civil action" to include actions governed by special, as well as general, venue provisions).

There is no question concerning the propriety either of venue or of jurisdiction in the District of Massachusetts, the proposed transferee forum. 6 The Court of Appeals conceded that it was "quite likely" that the plaintiffs could have obtained ancillary appointment in Massachusetts but held this legally irrelevant. 309 F.2d, at 957-958. In concluding that [**810] the transfer could not be granted, the Court of Appeals relied upon *Hoffman* v. *Blaski*, 363 U.S. 335, as establishing that "unless the plaintiff *had an unqualified right to bring suit* in the transferee forum at the time he filed his original complaint, transfer to that district is not authorized by § 1404 (a)." 309 F.2d, at 957. (Emphasis in original.) The court found the analogy to *Hoffman* particularly persuasive because it could "perceive no basis in either logic or policy for making any distinction between the absence of venue in the transferee forum and a prospective plaintiff's lack of capacity [***951] to sue there." *Ibid*. In addition, the court held that the transfer must be denied because in actions by personal representatives

[*618]  "Rule 17 (b), Fed.R.Civ.P., requires the district court to refer to the law of the state in which it sits to determine capacity to sue." ⁷ *Id.*, at 958.

## FOOTNOTES

₆ See 204 F.Supp. 426, 437. Nor is there any question concerning the propriety either of venue or of jurisdiction in the Eastern District of Pennsylvania, the transferor forum. The District Court indicated that one of the cases arising from the Boston Harbor crash had "already been transferred due to improper venue . . . ." *Id.*, at 427, n. 1. The Court of Appeals noted that counsel suggested that two other cases "must eventually be transferred to the district court in Massachusetts since venue in the Eastern District of Pennsylvania is improper." 309 F.2d 953, at 958. The transfers ordered in these cases were not contested in the Court of Appeals, *ibid.*, and are not involved in the present case. See notes 11, 29, *infra*.

₇ The text of Rule 17 (b) is set forth in note 2, *supra*.

The defendants contend that the concluding phrase of § 1404 (a) -- "where it might have been brought" -- refers to those districts in which Congress has provided by its venue statutes that the action "may be brought." Applying this criterion, the defendants argue that the posture of the case under state law is irrelevant. They contend that *Hoffman v. Blaski, supra*, did not rule that the limitations of state law were relevant to determining where the action "might have been brought" but ruled only that the requirement prohibited transfer where the proposed transferee forum lacked both venue of the action and power to command jurisdiction over the defendants when the suits were originally instituted. The defendants contend further that the decision below is contrary to the policy underlying *Hoffman*, since this decision effectively enables a plaintiff, simply by failing to proceed in other potential forums and qualify as a personal representative, to restrict and frustrate efforts to have the action transferred to a federal forum which would be far more convenient and appropriate. Finally, with regard to the conclusion that Rule 17 (b) precludes transfer, the defendants argue that under § 1404 (a) the effect of the Rule, like the existence of different state laws in the transferee forum, is not relevant to a determination of where, as indicated by federal venue laws, the action "might have been brought." The defendants conclude that the effect of transfer upon potential state-law defenses and upon the state law applied under Rule 17 (b) should instead be considered and assessed with reference to the criterion that the transfer be "in the interest of justice." See *infra*, pp. 624-626, 640-643.

[*619]  The plaintiffs respond emphasizing that they are "Pennsylvania fiduciaries representing the estates of Pennsylvania decedents." They were not and are not qualified to bring these or related actions in Massachusetts and their lack of capacity would, under Massachusetts law, constitute "an absolute defense." The plaintiffs contend that *Hoffman v. Blaski* established that transfer must be denied unless, at the time the action was brought, the complainant had an independent right to institute that action in the transferee forum regardless of the fact that the defendant in seeking transfer might expressly or implicitly agree to venue and jurisdiction in the transferee forum and waive defenses that would have been available only under the law of the transferee State. In addition, the plaintiffs argue, even if the limiting phrase "where-it-might-have-been-brought" relates only to federal venue laws, Rule 17 (b) expressly provides that the capacity of a fiduciary to sue in a United States district court shall be determined "by the law of the state in which the district court is held." The [**811]  plaintiffs understand the language of the Rule to refer to the law of the State in which the transferee court is held rather than to the law of the State of the transferor court. They conclude that since they "were not qualified to sue in Massachusetts [the State in which the transferee court would be held], they were not qualified to sue in the United States district [***952]  court in Massachusetts and the District of Massachusetts was not a

district in which these actions 'might have been brought.'"

A. In *Hoffman* v. *Blaski* this Court first considered the nature of the limitation imposed by the words "where it might have been brought." The plaintiff opposed the defendant's motion to transfer on the ground that the proposed transferee forum lacked both "venue over the action and ability to command jurisdiction over the . . ." [*620] defendant. 8 363 U.S., at 337. The question, as stated by the Court, was "whether a District Court, in which a civil action has been properly brought, is empowered by § 1404 (a) to transfer the action, on the motion of the defendant, to a district in which the plaintiff did not have a *right* to bring it." *Id., at 336*. (Emphasis in original.) The defendant emphasized that "venue, like jurisdiction over the person, may be waived." *Id., at 343*. This Court held that, HN6 despite the defendant's waivers or consent, a forum which had been improper for both venue and service of process was not a forum where the action "might have been brought." 9

## FOOTNOTES

8 In the two cases decided *sub nom. Hoffman* v. *Blaski, supra*, the petitioners conceded "that statutory venue did not exist over either of these actions in the respective transferee districts, and that the respective defendants were not within the reach of the process of the respective transferee courts." *Id., at 341*.

9 Two weeks after *Hoffman* the Court decided *Continental Grain Co.* v. *Barge FBL-585*, 364 U.S. 19. See *infra*, at 622. In that case a cargo owner, seeking damages from a barge owner, had joined in a single complaint an *in personam* claim against the barge owner and an *in rem* claim against the barge. The complaint was filed in the Federal District Court in New Orleans. At that time the barge, or the *res*, was in New Orleans. The plaintiff-cargo owner opposed a motion to transfer to the District Court in Memphis on the ground that the *in rem* claim could not have been brought in that forum which had only personal jurisdiction over the barge owner at the time the New Orleans suit was brought. The Court, rejecting this argument, held that for purposes of assessing where the litigation "might have been brought" the *in personam* and *in rem* claims should be practically viewed as a single "civil action" in which the complainant had chosen "an alternative way of bringing the owner into court." *Id., at 26*. See Comment, 31 U. of Chi. L. Rev. 373 (1964).

In the present case the Court of Appeals concluded that transfer could not be granted because here, as in *Hoffman* v. *Blaski*, the plaintiffs did not have an "independent" or "unqualified" right to bring the actions in the transferee [*621] forum. 10 The propriety of this analogy to *Hoffman* turns, however, on the validity of the assumption that the "where-it-might-have-been-brought" clause refers not only to federal venue statutes but also to the laws applied in the State of the transferee forum. It must be noted that the instant case, unlike *Hoffman*, involves a motion to transfer to a district in which both venue and jurisdiction are proper. This difference plainly demonstrates that the Court of Appeals extended the *Hoffman* decision and increased the restrictions on transfers to convenient federal forums. The issue here is not that presented in *Hoffman* but instead is whether the limiting words of § 1404 (a) prevent a change of venue within the federal system because, under the law of the [**812] State of the transferee forum, the plaintiff was not qualified [***953] to sue or might otherwise be frustrated or prejudiced in pursuing his action.

## FOOTNOTES

10 A similar rule had been applied in *Felchlin* v. *American Smelting & Refining Co.*, 136 F.Supp. 577 (D. C. S. D. Cal. 1955).

**[\*\*\*LEdHR3A]**  *LEdHN[3A]*⚓[3A]

We cannot agree that the final clause of § 1404 (a) was intended to restrict the availability of convenient federal forums by referring to state-law rules, such as those concerning capacity to sue, which would have applied if the action had originally been instituted in the transferee federal court. Several considerations compel this conclusion. First, if the concluding clause is considered as an independent entity and perused for its plain meaning, it seems clear that the most obvious referents of the words are found in their immediate statutory context. [11] Section [\*622] 1404 (a) was enacted as part of Chapter 87 of Part IV of the Judicial Code of 1948. That Chapter is designated "District Courts; Venue." The Chapter itself is in that Part of the Code dealing generally with "Jurisdiction and Venue." In the immediate Chapter, which includes §§ 1391-1406, the phrase "may be brought" recurs at least 10 times [12] and the phrase "may be prosecuted" at least 8 times. [13] The statutory context is thus persuasive evidence that *HN7*⚓the "might-have-been-brought" language of § 1404 (a) plainly refers to the similar wording in the related federal statutes and not directly to the laws of the State of the transferee forum.

**FOOTNOTES**

[11] See Note, 60 Yale L. J. 183 (1951). The analogous provisions of § 1406 (a), which shares the same statutory context, contain a similar phrase: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division *in which it could have been brought*." 28 U. S. C. § 1406 (a). (Emphasis added.) See *Goldlawr, Inc., v. Heiman*, 369 U.S. 463; Hart and Wechsler, The Federal Courts and the Federal System (1953), p. 979; Comment, 30 U. of Chi. L. Rev. 735 (1963).

[12] 28 U. S. C. §§ 1391 (a)(b), 1392 (a)(b), 1393 (b), 1395 (d), 1396, 1397, 1399, 1400 (b).

[13] 28 U. S. C. §§ 1394, 1395 (a)(b)(c)(e), 1401, 1402 (a)(b). Other venue provisions in the same chapter of the Judicial Code use language such as: "may be sued," § 1391 (d); "must be brought," § 1393 (a); "shall be brought," §§ 1398, 1403; and "may be instituted," § 1400 (a).

**[\*\*\*LEdHR4]**  *LEdHN[4]*⚓[4]Secondly, it should be asked whether the purposes of § 1404 (a) warrant a broad or generous construction of the limiting clause. The answer, we think, is quite evident. As MR. JUSTICE BLACK said, speaking for the Court in *Continental Grain Co. v. Barge FBL-585*, 364 U.S., at 26: *HN8*⚓"The idea behind § 1404 (a) is that where a 'civil action' to vindicate a wrong -- however brought in a court -- presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." This remedial purpose -- the individualized, case-by-case consideration of convenience and fairness -- militates against restricting the number of permissible forums within the federal system. [14] [\*623] *HN9*⚓There is no valid reason for reading the words "where it might have been brought" to narrow the range of permissible federal forums beyond those permitted by federal venue statutes which, after all, are generalized attempts to promote the same goals of convenience and fairness.

**FOOTNOTES**

**14** Note, 76 Harv. L. Rev. 1679, 1680 (1963).

[***LEdHR3B] *LEdHN[3B]*🔆[3B] [***LEdHR5] *LEdHN[5]*🔆[5]Finally, *HN10*🔆in construing § 1404 (a) we should consider whether a suggested interpretation would discriminatorily enable parties opposed to transfer, by means of their own acts or omissions, to prevent a transfer otherwise proper and warranted by [***954] convenience and justice. In *Continental Grain Co.* v. *Barge FBL-585, supra,* the plaintiff, having joined in a single complaint both *in rem* and *in personam* damage claims, opposed [**813] transfer to a convenient forum on the ground that the *in rem* claim could not have been brought in the transferee forum. **15** In approving the transfer order, this Court observed that failure to adopt a "common-sense approach . . . would practically scuttle the *forum non conveniens* statute so far as admiralty actions are concerned. All a plaintiff would need to do to escape from it entirely would be to bring his action against both the owner and the ship, as was done here." *Id., at 24-25.* The case at bar presents a similar situation. The Court of Appeals' decision would grant personal representatives bringing wrongful-death actions the power unilaterally to reduce the number of permissible federal forums simply by refraining from qualifying as representatives in States other than the one in which they wished to litigate. The extent of that power is graphically illustrated by the laws of the American jurisdictions, the vast majority of which require that, as a condition of qualifying to bring suit, a foreign executor or representative must obtain ancillary appointment [*624] or perform some preliminary act. **16** The possibilities thus suggested by the facts of the present case amply demonstrate that the limiting phrase of § 1404 (a) should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just. *HN11*🔆The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum.

**FOOTNOTES**

**15** See note 9, *supra.*

**16** See Note, 17 Rutgers L. Rev. 664, 668 (1963); 52 A. L. R. 2d 1048. The implications of the Court of Appeals' decision are plainly indicated by two subsequent decisions, *Goranson* v. *Capital Airlines, Inc.,* 221 F.Supp. 820 (D. C. E. D. Va.), and *Thompson* v. *Capital Airlines, Inc.,* 220 F.Supp. 140 (D. C. S. D. N. Y.).

In summary, then, we hold that *HN12*🔆the words "where it might have been brought" must be construed with reference to the federal laws delimiting the districts in which such an action "may be brought" and not with reference to laws of the transferee State concerning the capacity of fiduciaries to bring suit.

[***LEdHR6] *LEdHN[6]*🔆[6]B. The Court of Appeals, in reversing the District Court, relied in part upon Rule 17 (b) of the Federal Rules of Civil Procedure. The relevant portion of *HN13* 🔆the Rule provides that the capacity of personal representatives "to sue or be sued shall be determined by the law of the state in which the district court is held." **17** In our view the "where-it-might-have-been-brought" clause does not refer to this Rule and the effect of the Rule, therefore, raises a separate question. This conclusion does not, however, establish that Rule 17 (b), if applied as interpreted by the Court of Appeals, would not preclude the

requested transfer. The reliance placed on Rule 17 (b) necessarily assumes that its language -- which is [*625] not free from ambiguity -- requires the application of the law of the State of the transferee district court rather than that of the transferor district court. [18] On this assumption, [***955] the defendants in the present case, after a transfer to Massachusetts, would be entitled to raise the defense of incapacity under Massachusetts law and thereby defeat the actions. Thus a § 1404 (a) transfer might result in a prejudicial change in the applicable state law. This possibility makes it apparent, that, *HN14* although Rule 17 (b) may be irrelevant to a determination of where an action "might have been brought," the effect of the Rule may [**814] necessarily render a change of venue against the "interest of justice."

## FOOTNOTES

**17** The text of Rule 17 (b) is set forth in note 2, *supra*.

**18** See the rationale adopted in *Felchlin v. American Smelting & Refining Co.*, 136 F.Supp. 577 (relied upon by the Court of Appeals in the present case, 309 F.2d, at 957).


Although the Court of Appeals specifically relied on Rule 17 (b), in our opinion the underlying and fundamental question is whether, in a case such as the present, a change of venue within the federal system is to be accompanied by a change in the applicable state law. [19] *HN15* Whenever the law of the transferee State significantly differs from that of the transferor State -- whether that difference relates to capacity to sue, statutes of limitations, or "substantive" rules of liability -- it becomes necessary [*626] to consider what bearing a change of venue, if accompanied by a change in state law, would have on "the interest of justice." This fundamental question underlies the problem of the interpretation of the words of Rule 17 (b) and requires a determination of whether the existence of differing state laws would necessarily render a transfer against "the interest of justice." In view of the facts of this case and their bearing on this basic question, we must consider first, insofar as is relevant, the relationship between a change of venue under § 1404 (a) and the applicable state law.

II. "THE INTEREST OF JUSTICE": EFFECT OF A CHANGE OF VENUE UPON APPLICABLE STATE LAW.

## FOOTNOTES

**19** It has been observed that in the present case "the [Court of Appeals'] foray into Massachusetts substantive law need never have been undertaken had the court been confident that the transferee forum would treat the question of qualification as governed by the doctrine . . . that the transferee court should apply the law of the transferor forum." Note, 76 Harv. L. Rev. 1679, 1681 (1963). Similarly, it has been noted that if under the Court of Appeals decision "there is no significant difference between venue-jurisdiction and capacity, there may be no adequate difference between capacity and a host of other defensive bars that may foreseeably subject a plaintiff to dismissal." Note, 17 Rutgers L. Rev. 664, 666 (1963); cf. Comment, 51 Col. L. Rev. 762, 771 (1951).


A. The plaintiffs contend that the change of venue ordered by the District Court was necessarily precluded by the likelihood that it would be accompanied by a highly prejudicial change in the applicable state law. The prejudice alleged is not limited to that which might flow from the Massachusetts laws governing capacity to sue. Indeed, the plaintiffs emphasize the likelihood that the defendants' "ultimate reason for seeking transfer is to move to a

forum where recoveries for wrongful death are restricted to sharply limited punitive damages rather than compensation for the loss suffered." **20** It is argued that Pennsylvania choice-of-law rules would result in the application of laws substantially different from those that would be applied by courts sitting in Massachusetts. **[***956]** The District Court held, however, that transfer could be ordered regardless of the state laws and choice-of-law rules to be applied in the transferee forum and regardless **[*627]** of the possibility that the laws applicable in the transferor State would significantly differ from those applicable in the transferee State. This ruling assumed that transfer to a more convenient forum may be granted on a defendant's motion even though that transfer would seriously prejudice the plaintiff's legal claim. If this assumption is valid, the plaintiffs argue, transfer is necessarily precluded -- regardless of convenience and other considerations -- as against the "interest of justice" in dealing with plaintiffs who have either exercised the venue privilege conferred by federal statutes, or had their cases removed from state into federal court.

## FOOTNOTES

**20** See Cavers, Change in Choice-of-Law Thinking and Its Bearing on the Klaxon Problem, in A. L. I., Study of the Division of Jurisdiction between State and Federal Courts (Tent. Draft No. 1, 1963), pp. 154, 193.

**[***LEdHR7]** *LEdHN[7]*[7]If conflict of laws rules are laid aside, it is clear that Massachusetts (the State of the transferee court) and Pennsylvania (the State of the transferor court) have significantly different laws concerning **[**815]** recovery for wrongful death. *HN16*The Massachusetts Death Act provides that one who negligently causes the death of another "shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability . . . ." Mass. Ann. Laws, c. 229, § 2 (Supp. 1961). By contrast, *HN17*under Pennsylvania law the recovery of damages (1) is based upon the more common principle of compensation for losses rather than upon the degree of the tortfeasor's culpability and (2) is not limited to $ 20,000. **21** Some of the defendants urge, however, that **[*628]** these differences are irrelevant to the present case because Pennsylvania state courts, applying their own choice of law rules, would require that the Massachusetts Death Act be applied in its entirety, including its culpability principle and damage limitation. **22** It follows that a federal district court sitting in Pennsylvania, and referring, as is required by *Klaxon Co.* v. *Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, to Pennsylvania choice-of-law rules, would therefore be applying the same substantive rules as would a state or federal court in Massachusetts if the actions had been commenced there. This argument highlights the fact that *HN18*the most convenient forum is frequently the place where the cause of action arose and that the conflict-of-laws **[***957]** rules of other States may often refer to the substantive rules of the more convenient forum. **23** The plaintiffs, however, point to the decision of the New York Court of Appeals in *Kilberg* v. *Northeast Airlines, Inc.*, 9 N. Y. 2d 34, 211 N. Y. S. 2d 133, 172 N. E. 2d 526, and the decision of the Court of Appeals for the Second Circuit in *Pearson* v. *Northeast Airlines, Inc.*, 309 F.2d 553, cert. denied, 372 U.S. 912, as indicating that Pennsylvania, in light of its laws and policies, **[*629]** might not apply the culpability and damage limitation aspects of the Massachusetts statute. The District Court, in ordering that the actions be transferred, found it both undesirable and unnecessary to rule on the question of whether Pennsylvania courts would accept the right of action provided by the Massachusetts statute while at the same time denying enforcement of the Massachusetts measure of recovery. **24** 204 F.Supp., at 433-436. The District Court found it undesirable to resolve this question because the Pennsylvania courts had **[**816]** not yet considered it and because they would, in view of similar pending cases, soon have an opportunity to do so. The District Court, being of the opinion that the District of Massachusetts was in any event a more convenient place for trial, reasoned that the transfer should be granted forthwith and that the transferee court could proceed to the trial of the

actions and postpone consideration of the Pennsylvania choice-of-law rule as to damages until a later time at which the Pennsylvania decisions might well have supplied useful guidance. Fundamentally, however, the transferring District Court assumed that the Pennsylvania choice of law rule was irrelevant because the transfer would be permissible and justified even if accompanied by a significant change of law.

## FOOTNOTES

21 In *Massachusetts Bonding & Ins. Co.* v. *United States*, 352 U.S. 128, this Court reviewed the relationship between the provisions of the Federal Tort Claims Act and the principles of the Massachusetts Death Act. Only two States, Alabama and Massachusetts, "award only punitive damages for wrongful deaths." *Id., at* 130-131. The Court stated: "The assessment of damages with reference to the degree of culpability of the tort-feasor, rather than with reference to the amount of pecuniary loss suffered by the next of kin, makes those damages punitive in nature. That has been the holding of the Supreme Judicial Court of Massachusetts. . . . The standard of liability under the Massachusetts Death Act is punitive -- *i. e.*, 'with reference to the degree' of culpability -- not compensatory. . . . There is nothing in the Massachusetts law which measures the damages by 'pecuniary injuries.'" *Id., at* 129, 132, 133. E. g., *Beatty* v. *Fox*, 328 Mass. 216, 102 N. E. 2d 781; *Macchiaroli* v. *Howell*, 294 Mass. 144, 200 N. E. 905; *Boott Mills* v. *Boston & M. R. Co.*, 218 Mass. 582, 106 N. E. 680; *Bagley* v. *Small*, 92 N. H. 107, 26 A. 2d 23. Compare 12 Purdon's Pa. Stat. Ann. §§ 1601-1604; *Spangler* v. *Helm's New York-Pittsburgh Motor Express*, 396 Pa. 482, 153 A. 2d 490; cf. *Thirteenth & Fifteenth Street Passenger R. Co.* v. *Boudrou*, 92 Pa. 475, 481-482.

22 Cf. *Goranson* v. *Kloeb*, 308 F.2d 655.

23 See Blume, Place of Trial of Civil Cases, 48 Mich L. Rev. 1, 37 (1949).

24 The defendants, rejecting the view adopted by the Second Circuit in *Pearson* v. *Northeast Airlines, Inc.*, 309 F.2d 553, contend that the Full Faith and Credit Clause requires Pennsylvania courts to follow all the terms of the Massachusetts Death Act. We intimate no view concerning this contention.

The possibilities suggested by the plaintiffs' argument illustrate the difficulties that would arise if a change of venue, granted at the motion of a defendant, were to result in a change of law. Although in the present case the contentions concern rules relating to capacity to sue and damages, in other cases the transferee forum might have a shorter statute of limitations or might refuse to **[*630]** adjudicate a claim which would have been actionable in the transferor State. In such cases a defendant's motion to transfer could be tantamount to a motion to dismiss. 25 In light, therefore, of this background and the facts of the present case, we need not and do not consider the merits of the contentions concerning the meaning and proper application of Pennsylvania's laws and choice of law rules. For present purposes it is enough that the potential prejudice to the plaintiffs is so substantial as to require review of the assumption that a change of state law would be a permissible result of transfer under § 1404 (a).

## FOOTNOTES

25 See, *e. g.*, Note, 64 Harv. L. Rev. 1347, 1354-1355 (1951), which assumes that changes of venue might be accompanied by changes of law and concludes that: "To make the transfer purely for reasons of convenience, without considering the difference in law, would amount to directing a verdict on the merits without examining them."

*HN19* The [***958] decisions of the lower federal courts, taken as a whole, reveal that courts construing § 1404 (a) have been strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws. [26] Although the lower federal courts have [*631] utilized a variety of doctrines in order to approve a desirable transfer and at the same time protect the plaintiffs, [27] the prevailing view in the lower federal courts is that adopted by the Court of Appeals for the Tenth Circuit in 1950, only two years after the enactment of § 1404 (a), in *Headrick* v. [**817] *Atchison, T. & S. F. R. Co.*, 182 F.2d 305, and further developed in the recent decision of the Court of Appeals for the Second Circuit in *H. L. Green Co., Inc.*, v. *MacMahon*, 312 F.2d 650. These cases have adopted and applied a general interpretative principle which we believe faithfully reflects the purposes underlying § 1404 (a).

## FOOTNOTES

**26** See *H. L. Green Co., Inc.*, v. *MacMahon*, 312 F.2d 650; *Benton v. Vinson, Elkins, Weems & Searls*, 255 F.2d 299; *Headrick v. Atchison, T. & S. F. R. Co.*, 182 F.2d 305. See also, e. g., *King Bros. Productions, Inc.*, v. *RKO Teleradio Pictures, Inc.*, 208 F.Supp. 271; *Gomez v. The SS Dorothy*, 183 F.Supp. 499; *Hargrove v. Louisville & N. R. Co.*, 153 F.Supp. 681; *Heaton v. Southern R. Co.*, 119 F.Supp. 658; *Frechoux v. Lykes Bros. S. S. Co., Inc.*, 118 F.Supp. 234; *Greve v. Gibraltar Enterprises, Inc.*, 85 F.Supp. 410; cf. *Curry v. States Marine Corp. of Delaware*, 118 F.Supp. 234. But cf. *Goranson v. Kloeb*, 308 F.2d 655 (transfer granted because, even assuming transferee law applied, the substantive rules would be identical); *Felchlin v. American Smelting & Refining Co.*, 136 F.Supp. 577 (see note 18, *supra*); *Curry v. States Marine Corp. of Delaware, supra* (transfer denied upon failure of parties to stipulate that transferor statute of limitations would apply). See also authorities cited, note 39, *infra*.

**27** Frequently courts, dealing with a defendant's motion to transfer, have relied at least in part upon a transfer-on-condition or estoppel approach to grant transfer and protect the plaintiff. E. g., *Frechoux v. Lykes Bros. S. S. Co., supra*; *Greve v. Gibraltar Enterprises, Inc., supra*; *Crawford v. The SS Shirley Lykes*, 148 F.Supp. 958; *May v. The Steel Navigator*, 152 F.Supp. 254; *Hokanson v. Helene Curtis Industries, Inc.*, 177 F.Supp. 701.

In *Headrick v. Atchison, T. & S. F. R. Co., supra*, the plaintiff, a Missouri citizen, had been injured in an accident in California. He contended that responsibility lay with the defendant railroad, a Kansas corporation doing business in a number of States. The plaintiff's Missouri attorney entered into settlement negotiations with the defendant but "these negotiations continued until after an action was barred by the statute of limitations of California; [and] thereafter the attorney was advised that the defendant would rely upon such statute as a bar to the plaintiff's claim . . . ." *Id., at* 307. The plaintiff thereupon filed his action in a state court in New Mexico, where the defendant was amenable to process and where, by virtue of a longer statute of limitations, suit was not barred. The defendant then removed the case to the United States District Court for the District of New Mexico on the ground of diversity. In the District Court the [*632] defendant moved for dismissal "or in the alternative to transfer the cause to the United States District Court of California, Northern Division, pursuant to . . . § 1404 (a)." *Ibid.* The court denied the transfer, indicating "that it would have transferred the action to California had the statute of limitations of that state not run, but since it had, a transfer would be futile and unavailing." *Id., at* 308. The Court of Appeals reversed, observing first that the plaintiff:

"had a legal right to select any forum where the defendant was amenable to process and no

contention is made here that the case was not **[\*\*\*959]** properly brought in the New Mexico state court. It is conceded that the action is not barred by the New Mexico statute. Had the case been tried in the New Mexico state court, the procedural laws of New Mexico including the statutes of limitations would be applicable. . . . *HN20*"In removal cases the Federal Court must apply the state law and the state policy." *Id.,* at 309.

From this it followed, the court concluded, that:

"Upon removal to the Federal Court in New Mexico, the case would remain a New Mexico case controlled by the law and policy of that state, and if § 1404 (a) is applicable and a transfer to the California court is ordered for the convenience of the parties the witnesses and in the interests of justice, there is no logical reason why it should not remain a New Mexico case still controlled by the law and policy of that state." *Id.,* at 309-310.

Although the cases following the *Headrick* principle have usually involved a similar problem concerning statutes of limitations, the Court of Appeals for the Second Circuit plainly indicated in *H. L. Green Co., Inc.,* v. **[\*633]** *MacMahon, supra,* that the *Headrick* rule was equally applicable to other laws of the transferor State, including choice-of-law rules, which might affect the outcome of the litigation. The plaintiff in that case brought an action under the Securities Exchange Act in the District Court for the Southern District of New York and there moved to amend his complaint to add a common-law claim arising under New York law. Without ruling on the motion to add to the complaint, the District Court granted a motion by the defendant to transfer to the Southern District of Alabama pursuant to § 1404 (a). The plaintiff objected to transfer not only because the Alabama statute of limitations would be unfavorable but also because prejudice would result from applying Alabama law "to the common law claim [which the plaintiff] **[\*\*818]** has moved to join with the statutory claim." 312 F.2d, at 652. The Court of Appeals rejected these contentions:

*HN21*"Although as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case should remain as it was in all respects but location. Headrick v. Atchison, T. & S. F. Ry. Co., 182 F.2d 305 . . . ." *Id.,* at 652-653.

The Court made the import of this rule plain by expressly declaring first that the transferee court sitting in Alabama should apply New York law in ruling on the motion to add to the complaint and, secondly, that if the complaint were thus amended, the transferee court "will apply New York law (including any relevant New York choice-of-law rules)." *Id.,* at 654.

**[\*\*\*LEdHR8]** *LEdHN[8]*[8]Of course these cases allow *HN22*plaintiffs to retain whatever advantages may flow from the state laws of the forum they have initially selected. There is nothing, however, in the language or policy of § 1404 (a) to justify **[\*634]** its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue. In this regard the transfer provisions of § 1404 (a) may be compared with those of § 1406 (a). [28] Although both sections **[\*\*\*960]** were broadly designed to allow transfer instead of dismissal, § 1406 (a) *HN23*provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404 (a) *HN24*operates on the premise that the plaintiff has properly exercised his venue privilege. [29] This distinction underlines the fact that Congress, in passing § 1404 (a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one. [30]

**FOOTNOTES**

**28** See note 11, *supra.*

**29** In *Viaggio* v. *Field*, 177 F.Supp. 643, 648, the District Court suggested that cases where defendants sought transfer under § 1404 (a) were the "converse of the situation . . . in the instant case [under § 1406 (a)] where it is the plaintiff who brought the suit incorrectly in this court and is now asking to have it transferred to another court and hopes thereby to obtain an advantage with respect to [the transferee state's statute of] limitations." See *Skilling* v. *Funk Aircraft Co.,* 173 F.Supp. 939; Comment, 61 Col. L. Rev. 902, 914 (1961); Comment, 30 U. of Chi. L. Rev. 735, 745, n. 68 (1963); Comment, 1962 Wis. L. Rev. 342, 354. Cf. *Goldlawr, Inc., v. Heiman,* 369 U.S., at 466-467. See note 6, *supra.*

**30** See *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 507: "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy." The Revisor's Note to § 1404 (a) states that it "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see *Baltimore & Ohio R. Co.* v. *Kepner,* 1941, 62 S. Ct. 6, 314 U.S. 44, 86 L. Ed. 28, which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so." Revision of Title 28, United States Code, Report of the House Committee on Revision of the Laws on H. R. 7124, 79th Cong., 2d Sess., p. A127.

**[*635]** In considering the Judicial Code, Congress was particularly aware of the need for provisions to mitigate abuses stemming from broad federal venue provisions. The venue provision of the Federal Employers' Liability Act was the **[**819]** subject of special concern. [31] However, while the Judicial Code was pending, Congress considered and rejected the Jennings bill which, as the Court stated in *Ex parte Collett,* 337 U.S. 55, 64, "was far more drastic than § 1404 (a)," and which "would in large part have repealed [the venue section] of the Liability Act" by severely delimiting the permissible forums. [32] This legislative background supports the view that § 1404 (a) [HN25] was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting **[***961]** transfer to a convenient federal court. The legislative **[*636]** history of § 1404 (a) certainly does not justify the rather startling conclusion that one might "get a change of law as a bonus for a change of venue." [33] Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of § 1404 (a). If a change of law were in the offing, the parties might well regard the section primarily as a forum-shopping instrument. [34] And, more importantly, courts would at least be reluctant to grant transfers, despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff who had initially selected a permissible forum. [35] We believe, therefore, that [HN26] both the history and purposes of § 1404 (a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally **[*637]** intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms. [36]

**FOOTNOTES**

**31** See *Ex parte Collett, supra*, at 68-69; Revisor's Note following § 1404 (a) (note 30, *supra*); Moore, Commentary on the U.S. Judicial Code (1949), p. 206.

**32** In *Ex parte Collett, supra*, at 60, the Court observed: "Section 6 of the Liability Act defines the proper forum; § 1404 (a) of the Code deals with the right to transfer an action properly brought. *The two sections deal with two separate and distinct problems.* Section 1404 (a) does not limit or otherwise modify any right granted in § 6 of the Liability Act or elsewhere to bring suit in a particular district. An action may still be brought in any court, state or federal, in which it might have been brought previously." (Emphasis added.)

**33** Mr. Justice Jackson, dissenting in *Wells* v. *Simonds Abrasive Co.*, 345 U.S. 514, 522, expressed dismay at what he viewed as such a suggestion: "Are we then to understand that parties may get a change of law as a bonus for a change of venue? If the law of the forum in which the case is tried is to be the sole test of substantive law, burden of proof, contributory negligence, measure of damages, limitations, admission of evidence, conflict of laws and other doctrines, . . . then shopping for a favorable law via the [transfer] route opens up possibilities of conflict, confusion and injustice greater than anything *Swift* v. *Tyson*, 16 Pet. 1, ever held."

**34** See Currie, Change of Venue and the Conflict of Laws, 22 U. of Chi. L. Rev. 405, 441 (1955): "If it should be established as a rule of thumb that the transferee court is to apply the law of the state in which it sits, every case in which there is a difference of law between the original and the transferee state would become a game of chess, with Section 1404 (a) authorizing a knight's move; and nothing would be certain except that the parties would land on a square of a different color."

**35** See, *e. g.*, Note, 64 Harv. L. Rev. 1347, 1355 (1951): "It would seem best, therefore, not to transfer at all where the law which would be applied in the transferee forum would be materially different from that applied by the transferring court."

**36** For recent proposals, see A. L. I., Study of the Division of Jurisdiction between State and Federal Courts (Tent. Draft No. 1, 1963), §§ 1306, 1307, 1308. The commentary on the proposed § 1306 notes that, where the defendant seeks transfer, the section would provide "that the transferee court shall apply the rules which the transferor court would have been bound to apply. . . . The effect is to give the plaintiff the benefit which traditionally he has had in the selection of a forum with favorable choice-of-law rules. . . . It may be thought undesirable to let the plaintiff reap a choice-of-law benefit from the deliberate selection of an inconvenient forum. In a sense this is so, but the alternatives seem even more undesirable. If the rules of the State where the transferee district is located were to control, the judge exercising his discretion upon a motion for transfer might well make a ruling decisive of the merits of the case. Whether he should simply decide the appropriate place for trial, letting the choice-of-law bonus fall as it may, or include in his consideration of 'the interest of justice' the 'just' choice-of-law rule, the result is unfortunate. . . ." *Id.*, at 65-66.

**[\*\*\*LEdHR9]** *LEdHN[9]*[9]Although we deal here with a congressional statute apportioning the business of the federal courts, our interpretation **[\*\*820]** of that statute fully accords with and is supported by the policy underlying *Erie R. Co.* v. *Tompkins*, 304 U.S. 64.*HN27*This Court has often formulated the *Erie* doctrine by stating that it establishes "the principle of uniformity within a state," *Klaxon Co.* v. *Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, and declaring that federal courts in **[\*\*\*962]** diversity of citizenship cases are to

apply the laws "of the states in which they sit," _Griffin_ v. _McCoach, 313 U.S. 498, 503_. [37] A superficial reading of these formulations might suggest that a transferee federal court should apply the law of the State in which it **[*638]** sits rather than the law of the transferor State. Such a reading, however, directly contradicts the fundamental _Erie_ doctrine which the quoted formulations were designed to express. As this Court said in _Guaranty Trust Co_. v. _York, 326 U.S. 99, 109_:

"_Erie R. Co_. v. _Tompkins_ was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. . . . The nub of [HN28]the policy that underlies _Erie R. Co_. v. _Tompkins_ is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result."

Applying this analysis to § 1404 (a), we should ensure that the "accident" of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed. This purpose would be defeated in cases such as the present if nonresident defendants, properly subjected to suit in the transferor State (Pennsylvania), could invoke § 1404 (a) to gain the benefits of the laws of another jurisdiction (Massachusetts). What _Erie_ and the cases following it have sought was an identity or uniformity between federal and state courts; [38] and the fact that in most instances this could be achieved by directing federal courts to apply the laws of the States "in which they **[*639]** sit" should not obscure that, in applying the same reasoning to § 1404 (a), the critical identity to be maintained is between the federal district court which decides the case and the courts of the State in which the action was filed. [39]

## FOOTNOTES

[37] See also, _e. g., Guaranty Trust Co_. v. _York, 326 U.S. 99, 108_ ("a federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State . . .").

[38] In _Klaxon Co_. v. _Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496_, the Court observed that: "Whatever lack of uniformity [the _Erie_ doctrine] may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors." See note 36, _supra_.

[39] See cases cited, notes 26-27, _supra_. See 1 Moore, _supra_, at 1772-1777; Currie, Change of Venue and the Conflict of Laws, 22 U. of Chi. L. Rev. 405, 410-413, 438-439 (1955); Currie, Change of Venue and the Conflict of Laws: A Retraction, 27 U. of Chi. L. Rev. 341 (1960); Note, 60 Yale L. J. 537 (1951). But see Kaufman, Observations on Transfers under § 1404 (a) of the New Judicial Code, 10 F.R.D. 595, 601 (1951); Note, 64 Harv. L. Rev. 1347, 1354-1355 (1951); cf. Note, 35 Cornell L. Q. 459, 462, 464 (1950).

**[***LEdHR10]** [LEdHN[10]][10]We **[**821]** conclude, therefore, that in cases such as the present, [HN29]where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404 (a) generally **[***963]** should be, with respect to state law, but a change of courtrooms. [40]

**FOOTNOTES**

40 Of course *HN30* the transferee District Court may apply its own rules governing the conduct and dispatch of cases in its court. We are only concerned here with those state laws of the transferor State which would significantly affect the outcome of the case.


We, therefore, reject the plaintiffs' contention that the transfer was necessarily precluded by the likelihood that a prejudicial change of law would result. In so ruling, however, we do not and need not consider whether in all cases § 1404 (a) would require the application of the law of the transferor, as opposed to the transferee, State. 41 **[*640]** We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404 (a) 42 or if it was contended that the transferor State would simply have dismissed the action on the ground of *forum non conveniens*. 43

**FOOTNOTES**

41 We do not suggest that the application of transferor state law is free from constitutional limitations. See, *e. g.*, *Watson v. Employers Liability Assurance Corp., Ltd.*, 348 U.S. 66; *Hughes v. Fetter*, 341 U.S. 609; *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493; *Alaska Packers Assn. v. Industrial Accident Comm'n*, 294 U.S. 532; *Home Ins. Co. v. Dick*, 281 U.S. 397.

42 Cf. note 29, *supra*.

43 Compare Currie, Change of Venue and the Conflict of Laws: A Retraction, 27 U. of Chi. L. Rev., at 348 (1960); with Note, 60 Yale L. J. 537, 539-541 (1951). In *Parsons v. Chesapeake & O. R. Co.*, 375 U.S. 71, involving a suit arising under the Federal Employers' Liability Act, the Court ruled in a *per curiam* opinion that: "a prior state court dismissal on the ground of *forum non conveniens* can never serve to divest a federal district judge of the discretionary power vested in him by Congress to rule upon a motion to transfer under § 1404 (a)." *Id., at 73-74*.


B. It is in light of the foregoing analysis that we must consider the interpretation of Rule 17 (b) of the Federal Rules of Civil Procedure and the relationship between that Rule and the laws applicable following a § 1404 (a) transfer. As indicated, *supra, at 619*, the plaintiffs contend that transfer cannot be granted because, although they are fully qualified as personal representatives to sue in courts in Pennsylvania, they lack the qualifications necessary to sue in Massachusetts. *HN31* Rule 17 (b) provides that for such personal representatives "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." 44 The question arising here is whether the Court of Appeals was correct in assuming that, in the context of a § 1404 (a) transfer between district courts, the language of the Rule referred to the law of the State in which the transferee district court is held, rather than to the law of the State of the transferor district court.

**FOOTNOTES**

44 The text of Rule 17 (b) is set forth in note 2, *supra*.


The plaintiffs, arguing that Rule 17 (b) refers only to the transferee district court, suggest that their interpretation **[*641]** is necessary to protect the interest of States in controlling

the qualifications of foreign fiduciaries. The plaintiffs state that the vast majority of American jurisdictions permit only locally qualified foreign [**822] representatives because safeguards are needed "to protect local citizens who are potential defendants from suits by more than one fiduciary purporting to represent the same decedent and protect all persons from losses caused by the actions of irresponsible out-of-state fiduciaries." These considerations [***964] do not, however, support the plaintiffs' interpretation of Rule 17 (b). 45 In the present case, for example, it is conceded that the plaintiffs are qualified as personal representatives under the laws of the transferor State (Pennsylvania). It seems clear that the defendants, who are seeking transfer to another jurisdiction, will be equitably protected if Rule 17 (b) is interpreted to refer to the laws of the transferor State (Pennsylvania). It would be ironic if Rule 17 (b) were construed so that these plaintiffs could defeat transfer by arguing that the defendants would receive inadequate protection against "foreign" fiduciaries.

## FOOTNOTES

45 The Court of Appeals, referring to Rule 17 (b), observed: "That most jurisdictions do not permit foreign personal representatives to bring suit in their courts as a matter of right is a well known rule of law, and we cannot presume that Congress intended to alter state policy to the extent of permitting transfer of such suits to the federal courts sitting in those states." 309 F.2d, at 958. This assumes that it is consistent with the purposes of Rule 17 (b) that the governing or prevailing "state policy" be the policy of the transferee State rather than that of the transferor State. Since, however, the actions when originally instituted were subject to the transferor State's laws, it is misleading to suggest that the continued application of those laws would "alter" state policy. To the contrary, if the plaintiffs have selected a proper state forum and have qualified therein as personal representatives, the policy of that State would be "altered" if as a result of the defendants' motion to transfer under § 1404 (a) the plaintiffs lost their status as qualified representatives.

[*642]   [***LEdHR11]  LEdHN[11] [11]We think it is clear that HN32 the Rule's reference to the State "in which the district court is held" was intended to achieve the same basic uniformity between state and federal courts as was intended by the decisions which have formulated the *Erie* policy in terms of requiring federal courts to apply the laws of the States "in which they sit." 46 See *supra, at 637-639*. The plaintiffs' argument assumes, 47 incorrectly we think, that the critical phrase -- "in which the district court is held" -- carries a plain meaning which governs even in the case of a § 1404 (a) transfer involving two district courts sitting in different States. It should be remembered, however, that this phrase, like those which were formulated to express the *Erie* doctrine, was employed long before the enactment of a § 1404 (a) provision for transfer within the federal system. 48 We believe that HN33 Rule 17 (b) was intended to work an accommodation of interests within our federal system and that in interpreting it in new contexts we should look to its guiding policy and keep it "free from entanglements with analytical or terminological niceties." Cf. *Guaranty Trust Co.* v. *York*, 326 U.S., at 110.

## FOOTNOTES

46 Cf. Note, 62 Harv. L. Rev. 1030, 1037-1041 (1949).

47 See *Felchlin* v. *American Smelting & Refining Co.*, 136 F.Supp. 577, 581-582 (note 18, *supra*).

**48** The relevant provisions of <u>Rule 17 (b)</u> were adopted by this Court and transmitted to Congress on December 20, 1937. See <u>308 U.S. 649, 685</u>. Section 1404 (a) was first enacted in the Judicial Code of 1948.

**[\*\*\*LEdHR12]** *LEdHN[12]*✦[12]Since in this case the transferee district court must under § 1404 (a) apply the laws of the State of the transferor district court, it follows in our view that <u>Rule 17 (b)</u> must be interpreted similarly so that the capacity to sue will also be governed by the laws of the transferor State. *HN34*✦Where a § 1404 (a) transfer is thus held not to effect a change of law but essentially only to authorize a change of courtrooms, the reference in <u>Rule 17 (b)</u> **[\*\*\*965]** to the **[\*643]** law of the **[\*\*823]** State "in which the district court is held" should be applied in a corresponding manner so that it will refer to the district court which sits in the State that will generally be the source of applicable laws. We conclude, therefore, that the Court of Appeals misconceived the meaning and application of <u>Rule 17 (b)</u> and erred in holding that it required the denial of the § 1404 (a) transfer.

III. APPLICABLE LAW: EFFECT ON THE CONVENIENCE OF PARTIES AND WITNESSES.

**[\*\*\*LEdHR13]** *LEdHN[13]*✦[13]The holding that a § 1404 (a) *HN35*✦transfer would not alter the state law to be applied does not dispose of the question of whether the proposed transfer can be justified when measured against the relevant criteria of convenience and fairness. Though the answer to this question does not follow automatically from the determination that the transferred actions will carry with them the transferor's laws, that determination nevertheless may make the transfer more -- or less -- practical and desirable. *HN36*✦The matters to be weighed in assessing convenience and fairness are pervasively shaped by the contours of the applicable laws. The legal rules obviously govern what facts will be relevant and irrelevant, what witnesses may be heard, what evidence will be most vital, and so on. Not only do the rules thus affect the convenience of a given place of trial but they also bear on considerations such as judicial familiarity with the governing laws and the relative ease and practicality of trying the cases in the alternative forums.

In the present case the District Court held that the requested transfer could and should be granted regardless of whether the laws of the transferor State or of the transferee State were to be applied. <u>204 F.Supp., at 433-436</u>. The court based its ruling on a general finding that transfer to Massachusetts would be sufficiently convenient and **[\*644]** fair under the laws of either Pennsylvania or Massachusetts. We do not attempt to review this general conclusion or to reassess the discretion that was exercised. We do conclude, however, that the District Court in assuming that the transferee court would be free to determine which State's laws were to be applied, overlooked or did not adequately consider several criteria or factors the relevance of which is made more apparent when it is recognized that even after transfer the laws of the transferor State will continue to apply.

It is apparent that the desirability of transfer might be significantly affected if Pennsylvania courts decided that, in actions such as the present, they would recognize the cause of action based on the Massachusetts Death Act but would not apply that statute's culpability principle and damage limitation. In regard to this possibility it is relevant to note that the District Court in transferring these actions generally assumed that transfer to Massachusetts would facilitate the consolidation of these cases with those now pending in the Massachusetts District Court and that, as a result, transfer would be accompanied by the full benefits of consolidation and uniformity of result. <u>204 F.Supp., at 431-432</u>. Since, however, Pennsylvania laws would govern the trial of the transferred cases, insofar as those laws may be significantly different from the laws governing the cases already pending in Massachusetts, the feasibility of consolidation **[\*\*\*966]** and the benefits therefrom may be substantially altered. Moreover, if the transferred actions would not be subject to the Massachusetts

culpability and damage limitation provisions, then the plaintiffs might find a relatively greater need for compensatory damage witnesses to testify with regard to the economic losses suffered by individuals. It is possible that such a difference in damage rules could make the plaintiffs relatively more dependent upon witnesses more conveniently located for a trial in Pennsylvania. [*645] In addition, it has long been recognized that: *HN37*"There [**824] is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509.* Thus, to the extent that Pennsylvania laws are difficult or unclear and might not defer to Massachusetts laws, it may be advantageous to retain the actions in Pennsylvania where the judges possess a more ready familiarity with the local laws.

If, on the other hand, Pennsylvania courts would apply the Massachusetts Death Act in its entirety, these same factors might well weigh quite differently. Consolidation of the transferred cases with those now pending in Massachusetts might be freed from any potential difficulties and rendered more desirable. The plaintiffs' need for witnesses residing in Pennsylvania might be significantly reduced. And, of course, the trial would be held in the State in which the causes of action arose and in which the federal judges are more familiar with the governing laws.

[***LEdHR14] *LEdHN[14]*[14]In pointing to these considerations, we are fully aware that the District Court concluded that the relevant Pennsylvania law was unsettled, that its determination involved difficult questions, and that in the near future Pennsylvania courts might provide guidance. [49] We think that this uncertainty, however, should itself have been considered as a factor bearing on the desirability of transfer. *HN38*Section 1404 (a) provides for transfer to a more [*646] convenient forum, not to a forum likely to prove equally convenient or inconvenient. We do not suggest that elements of uncertainty in transferor state law would alone justify a denial of transfer; but we do think that the uncertainty is one factor, among others, to be considered in assessing the desirability of transfer.

## FOOTNOTES

[49] 204 F.Supp., at 435 and n. 20. The District Court opinion was filed in April 1962. The defendants allege that a subsequent Pennsylvania decision, *Griffith* v. *United Air Lines, Inc.* (Pa. C. P., Phila. Cty., June Term, 1962, No. 2013), indicates that Pennsylvania courts would accept and apply the Massachusetts Death Act in its entirety. Of course we intimate no view with respect to this contention.

[***LEdHR15] *LEdHN[15]*[15]We have not singled out the above criteria for the purpose of suggesting either that they are of controlling importance or that the criteria actually relied upon by the District Court were improper. We have concluded, however, that the District Court ignored certain considerations which might well have been more clearly appraised and might have been considered controlling had not that court assumed that even after transfer to Massachusetts the transferee District Court would be free to decide that the law of its State might apply. It is appropriate, [***967] therefore, to reverse the judgment of the Court of Appeals and to remand to the District Court to reconsider the motion to transfer.

Accordingly, the judgment of the Court of Appeals for the Third Circuit is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK concurs in the reversal substantially for the reasons set forth in the

opinion of the Court, but he believes that, under the circumstances shown in the opinion, this Court should now hold it was error to order these actions transferred to the District of Massachusetts.

## REFERENCES

Construction and application of forum non conveniens provision of the Judicial Code (28 USC 1404(a))

   Annotation References:

1. Construction and application of forum non conveniens provisions of 28 USC 1404(a). 93 L ed 1218, 99 L ed 799. As to state statutes of this kind, see 74 ALR2d 16.

2. Constitutionality, construction, and application of federal statutes providing for transfer of civil actions to another district or division. 5 ALR2d 1239, 10 ALR2d 932.

3. Duty of federal courts, under Erie R. Co. v Tompkins, to follow decisions of state courts as to questions of conflict of laws. 21 ALR2d 247.

4. Construction and application of federal statute (28 USC 1406) providing for transfer of case laying venue in the wrong division or district. 8 L ed 2d 852.


   Service: **Get by LEXSEE®**
   Citation: **376 U.S. 612**
   View: Full
   Date/Time: Sunday, March 30, 2008 - 10:47 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

 LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

LexisNexis® *Total Research System*

Switch Client ⦙ Preferences ⦙ Sign Off ⦙ ? Help

*My Lexis™* ⦚ Search ⦚ Research Tasks ⦚ Get a Document ⦚ *Shepard's*® ⦚ Alerts ⦚ Total Litigator ⦚ Transactional A

Source: My Sources > States Legal - U.S. > California > Find Cases > **CA Federal & State Cases, Combined** ⓘ
Terms: **choice of law venue transfer 1404** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

✔Select for FOCUS™ or Delivery
☐

*494 U.S. 516, \*; 110 S. Ct. 1274, \*\*;*
*108 L. Ed. 2d 443, \*\*\*; 1990 U.S. LEXIS 1197*

⬆ View Available Briefs and Other Documents Related to this Case

FERENS et ux. v. JOHN DEERE CO., aka DEERE & CO.

No. 88-1512

SUPREME COURT OF THE UNITED STATES

494 U.S. 516; 110 S. Ct. 1274; 108 L. Ed. 2d 443; 1990 U.S. LEXIS 1197; 58 U.S.L.W. 4333

November 6, 1989, Argued
March 5, 1990, Decided

**PRIOR HISTORY:** CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE
THIRD CIRCUIT.

**DISPOSITION:** 862 F. 2d 31, reversed and remanded.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff farmer filed a petition for a writ of certiorari to the
United States Court of Appeals for the Third Circuit to challenge its decision to affirm a
district court's judgment to dismiss plaintiff's tort action against defendant manufacturer.
The appellate court held that after plaintiff transferred the action from a Mississippi federal
court to a Pennsylvania federal court, the tort action was time-barred under Pennsylvania
**law.**

**OVERVIEW:** Plaintiff farmer was injured in an accident with a combine harvester. Plaintiff
brought an action in a Pennsylvania federal court against defendant manufacturer, raising
contract and warranty claims, and an action in a Mississippi federal court, based on
diversity jurisdiction, alleging negligence and products liability. The tort action was not
barred under Mississippi **law.** Plaintiff then filed an action under 28 U.S.C.S. § **1404**(a) to
**transfer** the Mississippi action to the Pennsylvania federal court as a more convenient
forum. The motion was granted, but the district court dismissed the tort action after
invoking the Pennsylvania two-year statute of limitations period. The appellate court
affirmed, holding that a transferor court's **choice**-of-**law** rules did not apply after a
**transfer** under § **1404**(a). On a writ of certiorari, the Court reversed, holding that the
Mississippi statute of limitation governed the action. The Court found that § **1404**(a) did
not deprive parties of state-**law** advantages that existed absent diversity jurisdiction. The
Court noted that the decision to **transfer venue** under § **1404**(a) turned on
considerations of convenience and the interest of justice.

**OUTCOME:** The Court reversed the appellate court's affirmance of the district court's
dismissal of plaintiff farmer's tort action against defendant manufacturer. The Court held

that Mississippi **choice**-of-**law** applied even after the action was transferred from a Mississippi federal court to a Pennsylvania federal court. Thus, the action was not time-barred by Pennsylvania's two-year statute of limitation.

**CORE TERMS:** venue, transferee, transferor, diversity, statute of limitations, shopping, choice-of-law, convenience, inconvenient forum, favorable, initiated, litigate, inconvenience, state-law, convenient forum, deprive, interest of justice, limitations period, inconvenient, substantive law, tort action, plaintiff-initiated, systemic, choice of law, discourage, warranty, diversity jurisdiction, sua sponte, transferred, convenient

**LEXISNEXIS® HEADNOTES**                                        ⊟ **Hide**

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 
*HN1* See 28 U.S.C.S. § **1404**(a). *Shepardize*: Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place
*HN2* Following a **transfer** under 28 U.S.C.S. § **1404**(a) initiated by a defendant, the transferee court must follow the **choice**-of-**law** rules that prevailed in the transferor court. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN3* 28 U.S.C.S. § **1404**(a) states only that a district court may **transfer venue** for the convenience of the parties and witnesses when in the interest of justice. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place
*HN4* A **transfer** under 28 U.S.C.S. § **1404**(a) does not change the **law** applicable to a diversity case. More Like This Headnote | *Shepardize*: Restrict By Headnote

**⊼Available Briefs and Other Documents Related to this Case:**

Go to Supreme Court Brief(s)
Go to Oral Argument Transcript

**LAWYERS' EDITION DISPLAY**                                     ⊟ **Hide**

**DECISION:**

Federal District Court to which action was transferred under 28 USCS **1404**(a) held required to apply **law** of transferor court, regardless of which party initiated **transfer.**

**SUMMARY:**

In the third year after a farmer was injured on his farm in Pennsylvania, the farmer and his wife brought a diversity action in the United States District Court for the Western



District of Pennsylvania against the manufacturer of the farm machinery which had allegedly caused the accident. Pennsylvania's 2-year limitations period for tort suits had expired, but the farmer's action raised warranty claims as to which the Pennsylvania limitations period had not yet run. Later that same year, the farmer and his wife filed a second diversity action, raising tort claims of negligence and products liability, against the manufacturer in the United States District Court for the Southern District of Mississippi. The statute of limitations for tort claims under Mississippi **law,** which **law** governed diversity actions in Mississippi District Courts under Mississippi **choice**-of-**law** principles, was 6 years. Subsequently, the couple--acting on the assumption that the Mississippi limitations statute would continue to govern the tort claims thereafter--filed a motion in the Mississippi District Court, pursuant to 28 USCS **1404**(a), to **transfer** the action to the District Court for the Western District of Pennsylvania, on the ground that Pennsylvania was a more convenient forum. The Mississippi District Court granted the motion, and the action was transferred to the Pennsylvania District Court and there consolidated with the pending warranty action. On the manufacturer's motion for summary judgment, the Pennsylvania District Court invoked Pennsylvania's 2-year limitations period for tort actions, and dismissed the couple's tort claims (639 F Supp 1484). On appeal, the United States Court of Appeals for the Third Circuit, in eventually affirming, ruled that a transferor court's **choice**-of-**law** rules do not apply after a **transfer** under **1404**(a) on a motion by a plaintiff (862 F2d 31).

On certiorari, the United States Supreme Court reversed and remanded. In an opinion by Kennedy, J., joined by Rehnquist, Ch. J., and White, Stevens, and O'Connor, JJ., it was held that (1) a District Court to which an action has been transferred pursuant to **1404**(a) must apply the **law** of the transferor District Court--including the **choice**-of-**law** rules that prevailed in such transferor court--regardless of which party initiated the **transfer;** (2) such a rule, as applicable to plaintiffs who initiated a **transfer** as well as to defendants who did so, was required by (a) the policy that **1404**(a) should not deprive parties of state-**law** advantages that exist absent diversity jurisdiction, (b) the policy that **1404**(a) should not create or multiply opportunities for forum shopping, (c) the policy that the decision to **transfer venue** under **1404**(a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of **law,** and (d) considerations of foresight and judicial economy; and (3) thus, Mississippi's statute of limitations ought to govern the couple's tort action.

Scalia, J., joined by Brennan, Blackmun, and Marshall, JJ., dissenting, expressed the view that (1) it was unlikely that Congress, in enacting **1404**(a), meant to provide a plaintiff with a vehicle by which to appropriate the **law** of a distant and inconvenient forum in which he does not intend to litigate, and to bring such **law** back to the state in which the plaintiff wishes to try the case, and (2) application of the transferor court's **law** in such context would encourage forum shopping between federal and state courts in the same jurisdiction on the basis of differential substantive **law.**

## LAWYERS' EDITION HEADNOTES:

### [***LEdHN1]

COURTS §631

District Court **transfer** -- occasion -- effect as dependent on initiating party -- diversity -- applicable state **law** -- statute of limitations --

Headnote:LEdHN[1A]⬇[1A]LEdHN[1B]⬇[1B]LEdHN[1C]⬇[1C]LEdHN[1D]⬇[1D]LEdHN[1E]⬇[1E]

*LEdHN[1F]*⬇[1F]

A Federal District Court to which an action has been transferred pursuant to 28 USCS **1404**(a), which authorizes a District Court to **transfer** a civil action to another district where it might have been brought for the convenience of parties and witnesses and in the interest of justice, must apply the **law** of the transferor Federal District Court--including the **choice-of-law** rules that prevailed in such transferor court--regardless of which party initiated the **transfer,** and a **transfer** under **1404**(a) does not change the **law** applicable to a diversity case; such a rule, as applicable to plaintiffs who initiate a **transfer** as well as to defendants who do so, is required by (1) the policy that **1404**(a) should not deprive parties of state-**law** advantages that exist absent diversity jurisdiction, since the only advantage that a nonmoving defendant loses is the ability to assert the inconvenience of litigating in the transferor forum, (2) the policy that **1404**(a) should not create or multiply opportunities for forum shopping, since applying the transferor **law** does not give a plaintiff an opportunity to use a **transfer** to obtain a **law** that he could not obtain through his initial forum selection, (3) the policy that the decision to **transfer venue** under **1404** (a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of **law,** and (4) considerations of foresight and judicial economy; furthermore, application of the **law** of the transferor forum effects the appropriate balance between fairness and simplicity; thus, Mississippi's statute of limitations governs two Pennsylvania plaintiffs' federal diversity tort action arising out of an alleged Pennsylvania accident, even if the plaintiffs' action would be time barred under Pennsylvania's statute of limitations but not under Mississippi's, where (1) the plaintiffs, after initially filing the action in a District Court in Mississippi, have obtained a **1404**(a) **transfer** of the action to a District Court in Pennsylvania, and (2) it is agreed that Mississippi's statute of limitations would have applied if the plaintiffs had not moved for a **transfer.** (Scalia, Brennan, Marshall, and Blackmun, JJ., dissented from this holding.)

## [***LEdHN2]

COURTS §630

District Court **transfer** -- purpose of statute --

Headnote:*LEdHN[2A]*⬇[2A]*LEdHN[2B]*⬇[2B]

28 USCS **1404**(a), which authorizes a Federal District Court to **transfer** a civil action to another district where it might have been brought for the convenience of parties and witnesses and in the interest of justice, exists to eliminate inconvenience without altering permissible **choices** under the federal **venue** statutes, and it is not the purpose of **1404** (a) to protect a party's ability to use inconvenience as a shield to discourage or hinder litigation otherwise proper; so construed, **1404**(a) carries out its design to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, but does not provide a shelter for proceedings in costly and inconvenient forums.

## [***LEdHN3]

COURTS §630

District Court **transfer** -- entities benefited --

Headnote:*LEdHN[3]*⬇[3]

By its own terms, 28 USCS **1404**(a)--which authorizes a Federal District Court to **transfer** a civil action to another district where it might have been brought for the convenience of

parties and witnesses and in the interest of justice--not only is for the benefit of the moving party, but also exists for the benefit of the witnesses and the interest of justice, which must include the convenience of the court.

[***LEdHN4]

COURTS §757

duty to decide question -- applicable **law** following **transfer** of **venue** --

Headnote: *LEdHN[4]*⚓[4]

The United States Supreme Court has a duty, in deciding whether the **law** of the transferor forum--which **law** applies in cases where a defendant obtains **transfer** of **venue** from one Federal District Court to another under 28 USCS **1404**(a), which authorizes a District Court to **transfer** an action to another district where it might have been brought for the convenience of parties and witnesses and in the interest of justice--is also applicable where the **transfer** is initiated by the plaintiffs in an action which originated in a District Court, to consider whether the Supreme Court's decision will create litigation and uncertainty as to the applicability of the transferor **law** in other situations, such as where (1) both a defendant and a plaintiff move for a **transfer,** (2) the court **transfers venue** on its own motion, (3) the plaintiff moves for **transfer** following a removal from state court by the defendant, (4) only one of several plaintiffs requests the **transfer,** or (5) circumstances change through no fault of the plaintiff so as to make a once-convenient forum inconvenient.

[***LEdHN5]

COURTS §631

**transfer** -- actions in different District Courts --

Headnote: *LEdHN[5]*⚓[5]

The simultaneous pending, in different Federal District Courts, of two cases which involve precisely the same issues leads to the wastefulness of time, energy, and money that 28 USCS **1404**(a), which authorizes a District Court to **transfer** an action to another district where it might have been brought for the convenience of parties and witnesses and in the interest of justice, was designed to prevent.

[***LEdHN6]

COURTS §631

District Court **transfer** -- interest of justice --

Headnote: *LEdHN[6]*⚓[6]

28 USCS **1404**(a)--which authorizes a Federal District Court to **transfer** an action to another district where it might have been brought for the convenience of parties and witnesses and in the interest of justice--does not provide for an automatic **transfer** of **venue;** a court, in determining the "interest of justice" under **1404**(a), (1) cannot ignore the systemic costs of inconvenience, but (2) may consider the course that the litigation already has taken.

**SYLLABUS**

Petitioner husband lost a hand in Pennsylvania when it allegedly became caught in a harvester manufactured by respondent Deere, a Delaware corporation. Petitioners, Pennsylvania residents, delayed taking legal action against Deere until after Pennsylvania's 2-year tort limitations period expired. In the third year, they filed proper diversity suits (1) in a Federal District Court in Pennsylvania, raising contract and warranty claims as to which the applicable Pennsylvania limitations period had not yet run, and (2) in a Federal District Court in Mississippi, where Deere did business, alleging tort causes of action. As to the latter suit, petitioners knew that the federal court had to apply the Mississippi state courts' **choice**-of-**law** rules, *Klaxon Co.* v. *Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, under which Mississippi's 6-year tort statute of limitations would apply. The Mississippi court then granted petitioners' motion to **transfer** the tort action to the Pennsylvania court under 28 U. S. C. § **1404** (a), which allows such **transfers** "[f]or the convenience of parties and witnesses, in the interest of justice." However, the Pennsylvania court declined to honor the Mississippi tort statute of limitations, ruling that, since petitioners had moved for **transfer** as plaintiffs, the rule in *Van Dusen* v. *Barrack,* 376 U.S. 612 -- that, following a defendant-initiated § **1404**(a) **transfer,** the transferee court must follow the **choice**-of-**law** rules prevailing in the transferor court -- was inapplicable. The court therefore dismissed the tort action under Pennsylvania's tort statute of limitations, and the Court of Appeals affirmed.

*Held:* The policies underlying *Van Dusen,* as well as other considerations, require a transferee forum to apply the **law** of the transferor court, regardless of who initiated the **transfer.** Pp. 521-532.

(a) The *Van Dusen* policy that § **1404**(a) should not deprive parties of state-**law** advantages that exist absent diversity jurisdiction is not violated by applying that case's rule to **transfers** initiated by plaintiffs. Applying the transferor **law** will not deprive plaintiffs of any state-**law** advantages. Moreover, although a defendant may lose a nonlegal advantage if the transferor **law** controls -- *e. g.,* Deere would lose whatever advantage inheres in forcing petitioners to litigate in Mississippi or not at all -- that loss is slight, since a plaintiff always can sue in the favorable state court or in diversity and not seek a **transfer.** Section **1404**(a) exists to eliminate inconvenience without altering permissible **choices** under the federal **venue** statutes, and it is not its purpose to protect a party's ability to use inconvenience as a shield to discourage or hinder litigation otherwise proper. Applying the transferor **law** in these circumstances is in full accord with the rule in *Erie R. Co.* v. *Tompkins,* 304 U.S. 64, whereas applying the transferee **law** would seriously undermine *Erie,* since it would mean that initiating a § **1404**(a) **transfer** changes the state **law** applicable in a diversity case, a result disapproved generally by this Court. See *Van Dusen, supra,* at 636-637. Pp. 524-527.

(b) Applying the transferor State's **law** with respect to plaintiff-initiated § **1404**(a) **transfers** does not contravene *Van Dusen's* policy against forum shopping, since, even without § **1404**(a), a plaintiff already has the option of shopping for a forum with the most favorable **law.** Applying the transferee **law,** by contrast, might create opportunities for forum shopping in an indirect way, since such application, to the extent that it discourages plaintiff-initiated **transfers,** might give States incentives to enact **laws** similar to Mississippi's long tort statute of limitations in order to bring in out-of-state business that would not be moved at the instance of the plaintiff. Pp. 527-528.

(c) The *Van Dusen* policy mandating that the § **1404**(a) **transfer** decision turn upon considerations of convenience rather than on the possibility of prejudice resulting from a change in the applicable **law** requires application of the transferor **law** when a plaintiff initiates the **transfer.** If a **law** change were to occur following such a **transfer,** a district

court would be at least reluctant, despite convenience considerations, to grant a **transfer** that would prejudice the defendant. Hardship might occur because plaintiffs may find as many opportunities to exploit application of the transferee **law** as they would the transferor **law.** If the transferee **law** were to apply, moreover, the plaintiff simply would not move to **transfer** unless the benefits of convenience outweighed the loss of favorable **law.** The desire to punish the plaintiff who has chosen an inconvenient forum overlooks the facts that § **1404** (a) exists for the benefit of witnesses and courts as well as the moving party, and that litigation in an inconvenient forum harms the entire judicial system. Pp. 528-530.

(d) Foresight and judicial economy also favor the simple rule that the transferor **law** should apply regardless of who makes the § 1404(a) motion. While applying the transferee **law** to plaintiff-initiated **transfers** would eliminate cases such as this in the future, that rule would produce undesirable complications and would result in litigation and uncertainty in cases presenting other situations -- e. g., a **transfer** at the request of both parties or by the court on its own motion. Pp. 530-531.

(e) Although requiring a district court in Pennsylvania to apply a Mississippi statute of limitations to a Pennsylvania cause of action might seem to be too generous to petitioners and even to reward them for manipulative conduct, that does not affect the outcome of this case, since Congress gave them the power to seek a § 1404(a) **transfer,** and *Van Dusen* already could require the same result. Moreover, no alternative rule would be more acceptable. Applying the transferee **law** would, in effect, tell petitioners that they should have continued litigating their separate actions in Pennsylvania and Mississippi, thereby causing the wastefulness of time, energy, and money that § 1404(a) was designed to prevent. Allowing them simply to file in the convenient forum and then to request application of the **law** of the inconvenient forum would ignore the fact that § 1404(a) does not provide for an automatic **transfer,** but requires a showing of convenience and that the **transfer** is "in the interest of justice." And there is no need to develop more sophisticated federal **choice**-of-**law** rules to cover all diversity actions involving **transfers,** since state conflicts rules already ensure generally that appropriate **laws** will apply, and, even if more elaborate federal rules would not run afoul of *Klaxon* and *Erie*, applying the transferor **law** effects the appropriate balance between fairness and simplicity. Pp. 531-532.

**COUNSEL:** Richard B. Tucker III argued the cause for petitioners. With him on the briefs was Stanley V. Ostrow.

David P. Helwig argued the cause for respondent. With him on the brief was Gary F. Sharlock. *

* *Hugh C. Griffin* filed a brief for the Product Liability Advisory Council as *amicus curiae* urging affirmance.

*Larry L. Simms, Steven C. Kany*, and *C. Paul Cavender* filed a brief for Pfizer Inc. as *amicus curiae.*

**JUDGES:** Kennedy, J., delivered the opinion of the Court, in which Rehnquist, C. J., and White, Stevens, and O'Connor, JJ., joined. Scalia, J., filed a dissenting opinion, in which Brennan, Marshall, and Blackmun, JJ., joined, post, p. 533.

**OPINION BY:** KENNEDY

**OPINION**

[*518]   [***449]   [**1277]  JUSTICE KENNEDY delivered the opinion of the Court.

[***LEdHR1A]  LEdHN[1A]†[1A]HN1†Section **1404**(a) of Title 28 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may **transfer** any civil action to any other district or division where it might have been brought." 28 U. S. C. [*519] § **1404**(a) (1982 ed.). In Van Dusen v. Barrack, 376 U.S. 612 (1964), we held that, HN2†following a **transfer** under § **1404**(a) initiated by a defendant, the transferee court must follow the **choice**-of-**law** rules that prevailed in the [***450]  transferor court. We now decide that, when a plaintiff moves for the **transfer,** the same rule applies.

I

Albert Ferens lost his right hand when, the allegation is, it became caught in his combine harvester, manufactured by Deere & Company. The accident occurred while Ferens was working with the combine on his farm in Pennsylvania. For reasons not explained in the record, Ferens delayed filing a tort suit, and Pennsylvania's 2-year limitations period expired. In the third year, he and his wife sued Deere in the United States District Court for the Western District of Pennsylvania, raising contract and warranty claims as to which the Pennsylvania limitations period had not yet run. The District Court had diversity jurisdiction, as Ferens and his wife are Pennsylvania residents, and Deere is incorporated in Delaware with its principal place of business in Illinois.

[**1278]  Not to be deprived of a tort action, the Ferenses in the same year filed a second diversity suit against Deere in the United States District Court for the Southern District of Mississippi, alleging negligence and products liability. Diversity jurisdiction and **venue** were proper. The Ferenses sued Deere in the District Court in Mississippi because they knew that, under Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941), the federal court in the exercise of diversity jurisdiction must apply the same **choice**-of-**law** rules that Mississippi state courts would apply if they were deciding the case. A Mississippi court would rule that Pennsylvania substantive **law** controls the personal injury claim but that Mississippi's own **law** governs the limitation period.

Although Mississippi has a borrowing statute which, on its face, would seem to enable its courts to apply statutes of limitations [*520] from other jurisdictions, see Miss. Code Ann. § 15-1-65 (1972), the State Supreme Court has said that the borrowing statute "only applies where a nonresident [defendant] in whose favor the statute has accrued afterwards moves into this state." Louisiana & Mississippi R. **Transfer** Co. v. Long, 159 Miss. 654, 667, 131 So. 84, 88 (1930). The borrowing statute would not apply to the Ferenses' action because, as the parties agree, Deere was a corporate resident of Mississippi before the cause of action accrued. The Mississippi courts, as a result, would apply Mississippi's 6-year statute of limitations to the tort claim arising under Pennsylvania **law** and the tort action would not be time barred under the Mississippi statute. See Miss. Code Ann. § 15-1-49 (1972).

The issue now before us arose when the Ferenses took their forum shopping a step further: having chosen the federal court in Mississippi to take advantage of the State's limitations period, they next moved, under § **1404**(a), to **transfer** the action to the federal court in Pennsylvania on the ground that Pennsylvania was a more convenient forum. The Ferenses acted on the assumption that, after the **transfer,** the **choice**-of-**law** rules in the Mississippi forum, including a rule requiring application of the Mississippi statute of limitations, would continue to govern the suit.

Deere put up no opposition, and [***451]  the District Court in Mississippi granted the § **1404**(a) motion. The court accepted the Ferenses' arguments that they resided in Pennsylvania; that the accident occurred there; that the claim had no connection to Mississippi; that a substantial number of witnesses resided in the Western District of Pennsylvania but none resided in Mississippi; that most of the documentary evidence was

located in the Western District of Pennsylvania but none was located in Mississippi; and that the warranty action pending in the Western District of Pennsylvania presented common questions of **law** and fact.

The District Court in Pennsylvania consolidated the transferred tort action with the Ferenses' pending warranty action **[*521]** but declined to honor the Mississippi statute of limitations as the District Court in Mississippi would have done. It ruled instead that, because the Ferenses had moved for **transfer** as plaintiffs, the rule in *Van Dusen* did not apply. Invoking the 2-year limitations period set by Pennsylvania **law,** the District Court dismissed their tort action. *Ferens* v. *Deere & Co.*, 639 F. Supp. 1484 (WD Pa. 1986).

The Court of Appeals for the Third Circuit affirmed, but not, at first, on grounds that the Ferenses had lost their entitlement to Mississippi **choice**-of-**law** rules by invoking § **1404** (a). The Court of Appeals relied at the outset on the separate theory that applying Mississippi's statute of limitations would violate due process because Mississippi had no legitimate interest in the case. *Ferens* v. *Deere & Co.*, 819 F. 2d 423 (1987). We vacated this decision and remanded in light of *Sun Oil Co.* v. *Wortman*, 486 U.S. 717 (1988), in which we held that a State may choose to apply its own statute of limitations to claims governed by **[**1279]** the substantive **laws** of another State without violating either the Full Faith and Credit Clause or the Due Process Clause. *Ferens* v. *Deere & Co.*, 487 U.S. 1212 (1988). On remand, the Court of Appeals again affirmed, this time confronting the *Van Dusen* question and ruling that a transferor court's **choice**-of-**law** rules do not apply after a **transfer** under § **1404**(a) on a motion by a plaintiff. 862 F. 2d 31 (1988). We granted certiorari, 490 U.S. 1064 (1989).

II

**HN3** Section **1404**(a) states only that a district court may **transfer venue** for the convenience of the parties and witnesses when in the interest of justice. It says nothing about **choice** of **law** and nothing about affording plaintiffs different treatment from defendants. We touched upon these issues in *Van Dusen*, but left open the question presented in this case. See 376 U.S., at 640. In *Van Dusen*, an airplane flying from Boston to Philadelphia crashed into Boston Harbor soon after takeoff. The personal representatives of the accident **[*522]** victims brought more than 100 actions in the District Court for the District of Massachusetts and more than 40 actions in the District Court for the Eastern District of Pennsylvania. When the defendants moved to **transfer** the actions brought in Pennsylvania to the federal court in Massachusetts, a number of the Pennsylvania plaintiffs objected because they lacked capacity under Massachusetts **law** to sue as representatives of the decedents. **[***452]** The plaintiffs also averred that the **transfer** would deprive them of the benefits of Pennsylvania's **choice**-of-**law** rules because the transferee forum would apply to their wrongful-death claims a different substantive rule. The plaintiffs obtained from the Court of Appeals a writ of mandamus ordering the District Court to vacate the **transfer.** See *id.*, at 613-615.

We reversed. After considering issues not related to the present dispute, we held that the Court of Appeals erred in its assumption that Massachusetts **law** would govern the action following **transfer.** The legislative history of § **1404**(a) showed that Congress had enacted the statute because broad **venue** provisions in federal Acts often resulted in inconvenient forums and that Congress had decided to respond to this problem by permitting **transfer** to a convenient federal court under § **1404**(a). *Id.*, at 634-636. We said:

"This legislative background supports the view that § **1404**(a) was not designed to narrow the plaintiff's **venue** privilege or to defeat the state-**law** advantages that might accrue from the exercise of this **venue** privilege but rather the provision was simply to counteract the inconveniences that flowed from the

venue statutes by permitting **transfer** to a convenient federal court. The legislative history of § **1404**(a) certainly does not justify the rather startling conclusion that one might 'get a change of a **law** as a bonus for a change of **venue**.' Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of § **1404**(a). If a change in the **law** were in the offing, the parties might **[*523]** well regard the section primarily as a forum-shopping instrument. And, more importantly, courts would at least be reluctant to grant **transfers,** despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff who initially selected a permissible forum. We believe, therefore, that both the history and purposes of § **1404**(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms." _Id.,_ at 635-637 (footnotes omitted).

We thus held that the **law** applicable to a diversity case does not change upon a **transfer** initiated by a defendant.

**[**1280]** III

**[\*\*\*LEdHR1B]** _LEdHN[1B]_ [1B]The quoted part of _Van Dusen_ reveals three independent reasons for our decision. First, § **1404**(a) should not deprive parties of state-**law** advantages that exist absent diversity jurisdiction. Second, § **1404**(a) should not create or multiply opportunities for forum shopping. Third, the decision to **transfer venue** under § **1404**(a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of **law**. Although commentators have questioned whether the scant legislative history of § **1404**(a) compels reliance on these three policies, see Note, **Choice** of **Law** after **Transfer** of **Venue**, 75 Yale L. J. 90, 123 (1965), **[\*\*\*453]** we find it prudent to consider them in deciding whether the rule in _Van Dusen_ applies to **transfers** initiated by plaintiffs. We decide that, in addition to other considerations, these policies require a transferee forum to apply the **law** of the transferor court, regardless of who initiates the **transfer.** _HN4_ A **transfer** under § **1404**(a), in other words, does not change the **law** applicable to a diversity case.

**[\*524]** A

The policy that § **1404**(a) should not deprive parties of state-**law** advantages, although perhaps discernible in the legislative history, has its real foundation in _Erie R. Co._ v. _Tompkins, 304 U.S. 64 (1938)._ See _Van Dusen, 376 U.S., at 637._ The _Erie_ rule remains a vital expression of the federal system and the concomitant integrity of the separate States. We explained _Erie_ in _Guaranty Trust Co._ v. _York, 326 U.S. 99, 109 (1945),_ as follows:

"In essence, the intent of [the _Erie_] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies _Erie R. Co._ v. _Tompkins_ is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result."

In _Hanna_ v. _Plumer, 380 U.S. 460, 473 (1965),_ we held that Congress has the power to prescribe procedural rules that differ from state-**law** rules even at the expense of altering the

outcome of litigation. This case does not involve a conflict. As in *Van Dusen*, our interpretation of § **1404**(a) is in full accord with the *Erie* rule.

The *Erie* policy had a clear implication for *Van Dusen*. The existence of diversity jurisdiction gave the defendants the opportunity to make a motion to **transfer venue** under § **1404**(a), and if the applicable **law** were to change after **transfer,** the plaintiff's **venue** privilege and resulting state-**law** advantages could be defeated at the defendant's option. 376 U.S., at 638. To allow the **transfer** and at the same time preserve the plaintiff's state-**law** advantages, we held **[\*525]** that the **choice**-of-**law** rules should not change following a **transfer** initiated by a defendant. *Id., at 639*.

**Transfers** initiated by a plaintiff involve some different considerations, but lead to the same result. Applying the transferor **law,** of course, will not deprive the plaintiff of any state-**law** advantages. A defendant, in one sense, also will lose no legal advantage if the transferor **law** controls after a **transfer** initiated by the plaintiff; the same **law,** after all, would have applied if the plaintiff had not made the motion. In another sense, however, a defendant may lose a nonlegal advantage. Deere, for example, would lose whatever advantage inheres in not having to litigate in Pennsylvania, or, put another way, in **[\*\*\*454]** forcing the Ferenses to litigate in Mississippi or not at all.

**[\*\*1281]** **[\*\*\*LEdHR1C]** <sup>LEdHN[1C]</sup>[1C] **[\*\*\*LEdHR2A]** <sup>LEdHN[2A]</sup>[2A]We, nonetheless, find the advantage that the defendant loses slight. A plaintiff always can sue in the favorable state court or sue in diversity and not seek a **transfer.** By asking for application of the Mississippi statute of limitations following a **transfer** to Pennsylvania on grounds of convenience, the Ferenses are seeking to deprive Deere only of the advantage of using against them the inconvenience of litigating in Mississippi. The text of § **1404**(a) may not say anything about **choice** of **law,** but we think it not the purpose of the section to protect a party's ability to use inconvenience as a shield to discourage or hinder litigation otherwise proper. The section exists to eliminate inconvenience without altering permissible **choices** under the **venue** statutes. See *Van Dusen, supra, at 634-635*. This interpretation should come as little surprise. As in our previous cases, we think that "[t]o construe § **1404** (a) this way merely carries out its design to protect litigants, witnesses and the public against unnecessary inconvenience and expense, not to provide a shelter for . . . proceedings in costly and inconvenient forums." *Continental Grain Co.* v. *Barge FBL-585*, 364 U.S. 19, 27 (1960). By creating an opportunity to have **venue** transferred between courts in different States on the basis of convenience, an option **[\*526]** that does not exist absent federal jurisdiction, Congress, with respect to diversity, retained the *Erie* policy while diminishing the incidents of inconvenience.

Applying the transferee **law,** by contrast, would undermine the *Erie* rule in a serious way. It would mean that initiating a **transfer** under § **1404**(a) changes the state **law** applicable to a diversity case. We have held, in an isolated circumstance, that § **1404**(a) may pre-empt state **law.** See *Stewart Organization, Inc.* v. *Ricoh Corp.*, 487 U.S. 22 (1988) (holding that federal **law** determines the validity of a forum selection clause). In general, however, we have seen § **1404**(a) as a housekeeping measure that should not alter the state **law** governing a case under *Erie*. See *Van Dusen, supra, at 636-637*; see also *Stewart Organization, supra, at 37* (Scalia, J., dissenting) (finding the language of § **1404**(a) "plainly insufficient" to work a change in the applicable state **law** through pre-emption). The Mississippi statute of limitations, which everyone agrees would have applied if the Ferenses had not moved for a **transfer,** should continue to apply in this case.

In any event, defendants in the position of Deere would not fare much better if we required application of the transferee **law** instead of the transferor **law.** True, if the transferee **law** were to apply, some plaintiffs would not sue these defendants for fear that they would have no **choice** but to litigate in an inconvenient forum. But applying the transferee **law** would not discourage all plaintiffs from suing. Some plaintiffs would prefer to litigate in an inconvenient

forum with favorable **law** than to litigate in a convenient forum with unfavorable **law** or not to litigate at all. The Ferenses, no doubt, would have abided by their initial **choice** of the District Court in Mississippi had they known that the **[\*\*\*455]** District Court in Pennsylvania would dismiss their action. If we were to rule for Deere in this case, we would accomplish little more than discouraging the occasional motions by plaintiffs to **transfer** inconvenient cases. Other plaintiffs would sue in an **[\*527]** inconvenient forum with the expectation that the defendants themselves would seek **transfer** to a convenient forum, resulting in application of the transferor **law** under *Van Dusen*. See Note, **Choice** of **Law** in Federal Court After **Transfer** of Venue, 63 Cornell L. Rev. 149, 156 (1977). In this case, for example, Deere might have moved for a **transfer** if the Ferenses had not.

B

*Van Dusen* also sought to fashion a rule that would not create opportunities for forum shopping. Some commentators have seen this policy as the most important rationale **[\*\*1282]** of *Van Dusen*, see, *e. g.*, 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4506, p. 79 (1982), but few attempt to explain the harm of forum shopping when the plaintiff initiates a **transfer.** An opportunity for forum shopping exists whenever a party has a **choice** of forums that will apply different **laws.** The *Van Dusen* policy against forum shopping simply requires us to interpret § **1404(**a) in a way that does not create an opportunity for obtaining a more favorable **law** by selecting a forum through a **transfer** of **venue.** In the *Van Dusen* case itself, this meant that we could not allow defendants to use a **transfer** to change the **law.** 376 U.S., at 636.

**[\*\*\*LEdHR1D]** $^{LEdHN[1D]}$[1D] **[\*\*\*LEdHR2B]** $^{LEdHN[2B]}$[2B]No interpretation of § **1404(**a), however, will create comparable opportunities for forum shopping by a plaintiff because, even without § **1404(**a), a plaintiff already has the option of shopping for a forum with the most favorable **law.** The Ferenses, for example, had an opportunity for forum shopping in the state courts because both the Mississippi and Pennsylvania courts had jurisdiction and because they each would have applied a different statute of limitations. Diversity jurisdiction did not eliminate these forum shopping opportunities; instead, under *Erie*, the federal courts had to replicate them. See *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S., at 496 ("Whatever lack of uniformity *[Erie]* may produce between federal courts in different states is **[\*528]** attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors"). Applying the transferor **law** would not give a plaintiff an opportunity to use a **transfer** to obtain a **law** that he could not obtain through his initial forum selection. If it does make selection of the most favorable **law** more convenient, it does no more than recognize a forum shopping **choice** that already exists. This fact does not require us to apply the transferee **law.** Section **1404(**a), to reiterate, exists to make **venue** convenient and should not allow the defendant to use inconvenience to discourage plaintiffs from exercising the opportunities that they already have.

Applying the transferee **law,** by contrast, might create opportunities for forum shopping in an indirect way. The advantage to Mississippi's personal injury lawyers that resulted from the State's then applicable **[\*\*\*456]** 6-year statute of limitations has not escaped us; Mississippi's long limitation period no doubt drew plaintiffs to the State. Although *Sun Oil* held that the federal courts have little interest in a State's decision to create a long statute of limitations or to apply its statute of limitations to claims governed by foreign **law,** we should recognize the consequences of our interpretation of § **1404(**a). Applying the transferee **law,** to the extent that it discourages plaintiff-initiated **transfers,** might give States incentives to enact similar **laws** to bring in out-of-state business that would not be moved at the instance of the plaintiff.

C

*Van Dusen* also made clear that the decision to **transfer venue** under § **1404**(a) should turn on considerations of convenience rather than on the possibility of prejudice resulting from a change in the applicable **law**. See 376 U.S., at 636; *Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 253-254, and n. 20 (1981). We reasoned in *Van Dusen* that, if the **law** changed following a **transfer** initiated by the defendant, a district **[\*529]** court "would at least be reluctant to grant **transfers,** despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff." 376 U.S., at 636. The court, to determine the prejudice, might have to make an elaborate survey of the **law,** including statutes of limitations, burdens of proof, presumptions, and the like. This would turn on what is supposed to be a statute for convenience of the courts into one expending extensive judicial time and resources. Because **[\*\*1283]** this difficult task is contrary to the purpose of the statute, in *Van Dusen* we made it unnecessary by ruling that a **transfer** of **venue** by the defendant does not result in a change of **law.** This same policy requires application of the transferor **law** when a plaintiff initiates a **transfer.**

If the **law** were to change following a **transfer** initiated by a plaintiff, a district court in a similar fashion would be at least reluctant to grant a **transfer** that would prejudice the defendant. Hardship might occur because plaintiffs may find as many opportunities to exploit application of the transferee **law** as they would find opportunities for exploiting application of the transferor **law**. See Note, 63 Cornell L. Rev., at 156. If the transferee **law** were to apply, moreover, the plaintiff simply would not move to **transfer** unless the benefits of convenience outweighed the loss of favorable **law.**

**[\*\*\*LEdHR3]** ᴸᴱᵈᴴᴺ[3]✦[3]Some might think that a plaintiff should pay the price for choosing an inconvenient forum by being put to a **choice** of **law** versus forum. But this assumes that § **1404**(a) is for the benefit only of the moving party. By the statute's own terms, it is not. Section **1404**(a) also exists for the benefit of the witnesses and the interest of justice, which must include the convenience of the court. Litigation in an inconvenient forum does not harm the plaintiff alone. As Justice Jackson said:

> "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has **[\*530]** no relation to the litigation. In cases which **[\*\*\*457]** touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness too, in having the trial of a diversity case in a forum that is at home with the state **law** that must govern the case, rather than having a court in some other forum untangle problems in conflicts of **laws,** and in **law** foreign to itself." *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 508-509 (1947).

The desire to take a punitive view of the plaintiff's actions should not obscure the systemic costs of litigating in an inconvenient place.

D

**[\*\*\*LEdHR1E]** ᴸᴱᵈᴴᴺ[1E]✦[1E]This case involves some considerations to which we perhaps did not give sufficient attention in *Van Dusen.* Foresight and judicial economy now seem to favor the simple rule that the **law** does not change following a **transfer** of **venue** under § **1404**(a). Affording **transfers** initiated by plaintiffs different treatment from **transfers** initiated by defendants may seem quite workable in this case, but the simplicity is an illusion. If we were to hold that the transferee **law** applies following a § **1404**(a) motion by a plaintiff, cases such as this would not arise in the future. Although applying the transferee **law,** no doubt, would catch the Ferenses by surprise, in the future no plaintiffs in

their position would move for a change of **venue**.

**[\*\*\*LEdHR4]** ᴸᴱᵈᴴᴺ⁽⁴⁾✦[4]Other cases, however, would produce undesirable complications. The rule would leave unclear which **law** should apply when both a defendant and a plaintiff move for a **transfer** of **venue** or when the court **transfers venue** on its own motion. See Note, 63 Cornell L. Rev., at 158.The rule also might require variation in certain situations, such as when the plaintiff moves for a **transfer** following a removal from state court by the defendant, or when only one of several **[\*531]** plaintiffs requests the **transfer,** or when circumstances change through no fault of the plaintiff making a once convenient forum inconvenient. True, we could reserve any consideration of these questions for a later day. But we have a duty, in deciding this case, to consider whether our decision will create litigation and uncertainty. On the basis of these considerations, **[\*\*1284]** we again conclude that the transferor **law** should apply regardless of who makes the § **1404**(a) motion.

IV

**[\*\*\*LEdHR5]** ᴸᴱᵈᴴᴺ⁽⁵⁾✦[5]Some may object that a district court in Pennsylvania should not have to apply a Mississippi statute of limitations to a Pennsylvania cause of action. This point, although understandable, should have little to do with the outcome of this case. Congress gave the Ferenses the power to seek a **transfer** in § **1404**(a), and our decision in *Van Dusen* already could require a district court in Pennsylvania to apply the Mississippi statute of limitations to Pennsylvania claims. Our rule may seem too generous because it allows the Ferenses to have both their **choice** of **law** and their **choice** of forum, or even to reward the Ferenses for conduct that seems manipulative. We nonetheless see no alternative rule that would **[\*\*\*458]** produce a more acceptable result. Deciding that the transferee **law** should apply, in effect, would tell the Ferenses that they should have continued to litigate their warranty action in Pennsylvania and their tort action in Mississippi. Some might find this preferable, but we do not. We have made quite clear that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § **1404**(a) was designed to prevent." *Continental Grain*, 364 U.S., at 26.

**[\*\*\*LEdHR6]** ᴸᴱᵈᴴᴺ⁽⁶⁾✦[6]From a substantive standpoint, two further objections give us pause but do not persuade us to change our rule. First, one might ask why we require the Ferenses to file in the District **[\*532]** Court in Mississippi at all. Efficiency might seem to dictate a rule allowing plaintiffs in the Ferenses' position not to file in an inconvenient forum and then to return to a convenient forum though a **transfer** of **venue**, but instead simply to file in the convenient forum and ask for the **law** of the inconvenient forum to apply. Although our rule may invoke certain formality, one must remember that § **1404**(a) does not provide for an automatic **transfer** of **venue**. The section, instead, permits a **transfer** only when convenient and "in the interest of justice." Plaintiffs in the position of the Ferenses must go to the distant forum because they have no guarantee, until the court there examines the facts, that they may obtain a **transfer.** No one has contested the justice of transferring this particular case, but the option remains open to defendants in future cases. Although a court cannot ignore the systemic costs of inconvenience, it may consider the course that the litigation already has taken in determining the interest of justice.

**[\*\*\*LEdHR1F]** ᴸᴱᵈᴴᴺ⁽¹ᶠ⁾✦[1F]Second, one might contend that, because no *per se* rule requiring a court to apply either the transferor **law** or the transferee **law** will seem appropriate in all circumstances, we should develop more sophisticated federal **choice**-of-**law** rules for diversity actions involving **transfers**. See Note, 75 Yale L. J., at 130-135.To a large extent, however, state conflicts-of-**law** rules already ensure that appropriate **laws** will apply to diversity cases. Federal **law,** as a general matter, does not interfere with these rules. See *Sun Oil*, 486 U.S., at 727-729. In addition, even if more elaborate federal **choice**-

of-**law** rules would not run afoul of *Klaxon* and *Erie*, we believe that applying the **law** of the transferor forum effects the appropriate balance between fairness and simplicity. Cf. R. Leflar, American Conflicts **Law** § 143, p. 293 (3d ed. 1977) (arguing against a federal common **law** of conflicts).

For the foregoing reasons, we conclude that Mississippi's statute of limitations should govern the Ferenses' action. **[*533]** We reverse and remand for proceedings consistent with this opinion.

*It is so ordered*.

**DISSENT BY:** SCALIA


 **DISSENT**


JUSTICE **[***459]** SCALIA, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.

Plaintiffs, having filed this diversity action in Federal District Court in Mississippi, successfully **[**1285]** moved for a **transfer** of **venue** to the District Court in Pennsylvania where their warranty action was then pending. The question we must decide is which State's **choice**-of-**law** principles will govern the case now that it is to be litigated in that court.

The Rules of Decision Act, first placed in the Judicial Code by the Judiciary Act of 1789, currently provides:

> "The **laws** of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U. S. C. § 1652 (1982 ed.).

In *Erie R. Co.* v. *Tompkins, 304 U.S. 64 (1938)*, we held that the Act requires a federal court to apply, in diversity cases, the **law** of the State in which it sits, both statutory **law** and common **law** established by the courts. Three years later, in *Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 494 (1941)*, we considered "whether in diversity cases the federal courts must follow conflict of **laws** rules prevailing in the states in which they sit." We answered the question in the affirmative, reasoning that, were the rule otherwise, "the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side," a state of affairs that "would do violence to the principle of uniformity within a state, upon which the *Tompkins* decision is based." *Id., at 496*. See also *Griffin v. McCoach, 313 U.S. 498, 503 (1941)*. Although the **venue** provision of § **1404**(a) was enacted after **[*534]** *Klaxon*, see 62 Stat. 937, we have repeatedly reaffirmed *Klaxon* since then. See *Nolan v. Transocean Air Lines, 365 U.S. 293 (1961)*; *Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3 (1975)*.

The question we must answer today is whether 28 U. S. C. § **1404**(a) (1982 ed.) and the policies underlying *Klaxon* -- namely, uniformity within a State and the avoidance of forum shopping -- produce a result different from *Klaxon* when the suit in question was not filed in the federal court initially, but was transferred there under § **1404**(a) on plaintiff's motion. In *Van Dusen v. Barrack, 376 U.S. 612 (1964)*, we held that a result different from *Klaxon* is produced when a suit has been transferred under § **1404**(a) on defendant's motion. Our reasons were two. First, we thought it highly unlikely that Congress, in enacting § **1404**(a), meant to provide defendants with a device by which to manipulate the substantive rules that would be applied. 376 U.S., at 633-636. That conclusion rested upon the fact that the **law**

grants the plaintiff the advantage of choosing the **venue** in which his **[\*\*\*460]** action will be tried, with whatever state-**law** advantages accompany that **choice**. A defensive use of § **1404(a)** in order to deprive the plaintiff of this "**venue** privilege," *id., at 634*, would allow the defendant to "'get a change of **law** as a bonus for a change of **venue**,'" *id., at 636* (citation omitted), and would permit the defendant to engage in forum shopping among States, a privilege that the *Klaxon* regime reserved for plaintiffs. Second, we concluded that the policies of *Erie* and *Klaxon* would be undermined by application of the transferee court's **choice**-of-**law** principles in the case of a defendant-initiated **transfer,** *id., at 637-640*, because then the 'accident' of federal diversity jurisdiction" would enable the defendant "to utilize a **transfer** to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," *id., at 638*. The goal of *Erie* and *Klaxon*, we reasoned, was to prevent "forum shopping" as between state and federal systems; the plaintiff makes a **[\*535] choice** of forum **law** by filing the complaint, and that **choice** must be honored in federal court, just as it would have been honored in state court, where the **[\*\*1286]** defendant would not have been able to **transfer** the case to another State.

We left open in *Van Dusen* the question presented today, viz., whether "the same considerations would govern" if a plaintiff sought a § **1404**(a) **transfer.** 376 U.S., at 640. In my view, neither of those considerations is served -- and indeed both are positively defeated -- by a departure from *Klaxon* in that context. First, just as it is unlikely that Congress, in enacting § **1404**(a), meant to provide the defendant with a vehicle by which to manipulate in his favor the substantive **law** to be applied in a diversity case, so too is it unlikely that Congress meant to provide the *plaintiff* with a vehicle by which to appropriate the **law** of a distant and inconvenient forum in which he does not intend to litigate, and to carry that prize back to the State in which he wishes to try the case. Second, application of the transferor court's **law** in this context would encourage forum shopping between federal and state courts in the same jurisdiction on the basis of differential substantive **law**. It is true, of course, that the plaintiffs here did not select the *Mississippi* federal court in preference to the Mississippi state courts because of any differential substantive **law**; the former, like the latter, would have applied Mississippi **choice**-of-**law** rules and thus the Mississippi statute of limitations. But one must be blind to reality to say that it is the *Mississippi* federal court in which these plaintiffs have chosen to sue. That was merely a way station en route to suit in the *Pennsylvania* federal court. The plaintiffs were seeking to achieve exactly what *Klaxon* was designed to prevent: the use of a Pennsylvania federal court instead of a Pennsylvania state court in order to obtain application of a different substantive **law**. Our decision in *Van Dusen* compromised "the principle of uniformity within a state," *Klaxon, supra, at 496*, only in the abstract, but today's decision compromises it precisely in the respect that **[\*536]** matters -- *i. e.*, insofar as it bears upon the plaintiff's **choice** between a state and a federal forum. The significant federal **[\*\*\*461]** judicial policy expressed in *Erie* and *Klaxon* is reduced to a laughingstock if it can so readily be evaded through filing-and-**transfer.**

The Court is undoubtedly correct that applying the *Klaxon* rule after a plaintiff-initiated **transfer** would deter a plaintiff in a situation such as exists here from seeking a **transfer,** since that would deprive him of the favorable substantive **law**. But that proves only that this disposition achieves what *Erie* and *Klaxon* are designed to achieve: preventing the plaintiff from using "the accident of diversity of citizenship," *Klaxon, 313 U.S., at 496*, to obtain the application of a different **law** within the State where he wishes to litigate. In the context of the present case, he must either litigate in the State of Mississippi under Mississippi **law**, or in the Commonwealth of Pennsylvania under Pennsylvania **law**.

The Court expresses concern, *ante*, at 529-530, that if normal *Erie-Klaxon* principles were applied a district judge might be reluctant to order a **transfer,** even when faced with the prospect of a trial that would be manifestly inconvenient to the parties, for fear that in doing so he would be ordering what is tantamount to a dismissal on the merits. But where the plaintiff himself has moved for a **transfer,** surely the principle of *volenti non fit injuria* suffices to allay that concern. The Court asserts that in some cases it is the defendant who

will be prejudiced by a **transfer**-induced change in the applicable **law.** That seems likely to be quite rare, since it assumes that the plaintiff has gone to the trouble of bringing the suit in a *less* convenient forum, where the **law** is *less* favorable to him. But where the defendant is disadvantaged by a plaintiff-initiated **transfer,** I do not see how it can reasonably be said that he has been "prejudiced," since the plaintiff could have brought the suit in the "plaintiff's-**law** forum" with the **law** more favorable **[\*\*1287]** to him (and the more convenient forum) in the first place. Prejudice to the defendant, it **[\*537]** seems to me, occurs only when the plaintiff is enabled to have his cake and eat it too -- to litigate in the more convenient forum that he desires, but with the **law** of the distant forum that he desires.

The Court suggests that applying the **choice**-of-**law** rules of the forum court to a transferred case ignores the interest of the federal courts themselves in avoiding the "systemic costs of litigating in an inconvenient place," citing Justice Jackson's eloquent remarks on that subject in *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 508-509 (1947). *Ante,* at 530. The point, apparently, is that these systemic costs will increase because the change in **law** attendant to **transfer** will not only deter the plaintiff from moving to **transfer** but will also deter the court from ordering *sua sponte* a **transfer** that will harm the plaintiff's case. Justice Jackson's remarks were addressed, however, not to the operation of § **1404(a)**, but to "those rather rare cases where the doctrine [of *forum non conveniens*] should be applied." 330 U.S., at 509. Where the systemic costs are that severe, **transfer** ordinarily will occur whether the plaintiff moves for it or not; the district judge can be expected to order it *sua sponte*. I do not think that the prospect of depriving the plaintiff of favorable **law** will any more deter a **[\*\*\*462]** district judge from transferring [1] than it would have deterred a district judge, under the prior regime, from ordering a dismissal *sua sponte* pursuant to the doctrine of *forum non conveniens*. In fact the deterrence to *sua sponte* **transfer** will be considerably less, since **transfer** involves no risk of statute-of-limitations bars to refiling.

## FOOTNOTES

[1] The prospective transferor court would not be deterred at all, of course, if we simply extended the *Van Dusen* rule to court-initiated **transfers.** In my view that would be inappropriate, however, since court-initiated **transfer,** like plaintiff-initiated **transfer,** does not confer upon the defendant the advantage of forum shopping for **law,** *Van Dusen* v. *Barrack,* 376 U.S. 612, 636 (1964), and does not enable the defendant "to utilize a **transfer** to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," *id.,* at 638.

**[\*538]** Thus, it seems to me that a proper calculation of systemic costs would go as follows: Saved by the Court's rule will be the incremental cost of trying in forums that are inconvenient (but not so inconvenient as to prompt the court's *sua sponte* **transfer**) those suits that are now filed in such forums for **choice**-of-**law** purposes. But incurred by the Court's rule will be the costs of considering and effecting **transfer,** not only in those suits but in the indeterminate number of additional suits that will be filed in inconvenient forums now that filing-and-**transfer** is an approved form of shopping for **law;** plus the costs attending the necessity for transferee courts to figure out the **choice**-of-**law** rules (and probably the substantive **law**) of distant States much more often than our *Van Dusen* decision would require. It should be noted that the file-and-**transfer** ploy sanctioned by the Court today will be available not merely to achieve the relatively rare (and generally unneeded) benefit of a longer statute of limitations, but also to bring home to the desired state of litigation all sorts of favorable **choice**-of-**law** rules regarding substantive liability -- in an era when the diversity among the States in **choice**-of-**law** principles has become kaleidoscopic. [2]

## FOOTNOTES

**2** The current edition of Professor Leflar's treatise on American Conflicts **Law** lists 10 separate theories of **choice** of **law** that are applied, individually or in various combinations, by the 50 States. See R. Leflar, L. McDougall III, & R. Felix, American Conflicts **Law** §§ 86-91, 93-96 (4th ed. 1986). See also Kay, Theory into Practice: **Choice** of **Law** in the Courts, 34 Mercer L. Rev. 521, 525-584, 591-592 (1983).

The Court points out, apparently to deprecate the prospect that filing-and-**transfer** will become a regular litigation strategy, that there is "no guarantee" that a plaintiff will be accorded a **transfer;** that while "[n]o one has **[**1288]** contested the justice of transferring this particular case," that option "remains open to defendants in future cases"; and that "[a]lthough a court cannot ignore the systemic costs of inconvenience, it may consider the course that the litigation already has taken in determining the interest of justice." *Ante*, at 532. I am **[*539]** not sure what this means -- except that it plainly does not mean what it must mean to foreclose the filing-and-**transfer** option, namely, that **transfer** can be denied because the plaintiff was **law** shopping. The whole theory of the Court's opinion is that it is not in accord with the policy of § **1404(a)** to deprive the plaintiff of the "state-**law** advantages" to which **[***463]** his "**venue** privilege" entitles him. *Ante*, at 524. The Court explicitly repudiates "[t]he desire to take a punitive view of the plaintiff's actions," *ante*, at 530, and to make him "pay the price for choosing an inconvenient forum by being put to a **choice** of **law** versus forum," *ante*, at 529. Thus, all the Court is saying by its "no guarantee" language is that the plaintiff must be careful to choose a *really inconvenient* forum if he wants to be sure about getting a **transfer.** That will often not be difficult. In sum, it seems to me quite likely that today's decision will cost the federal courts more time than it will save them.

Thus, even as an exercise in giving the most extensive possible scope to the policies of § **1404**(a), the Court's opinion seems to me unsuccessful. But as I indicated by beginning this opinion with the Rules of Decision Act, that should not be the object of the exercise at all. The Court and I reach different results largely because we approach the question from different directions. For the Court, this case involves an "interpretation of § **1404**(a)," *ante*, at 524, and the central issue is whether *Klaxon* stands in the way of the policies of that statute. For me, the case involves an interpretation of the Rules of Decision Act, and the central issue is whether § **1404**(a) alters the "principle of uniformity within a state" which *Klaxon* says that Act embodies. I think my approach preferable, not only because the Rules of Decision Act does, and § **1404**(a) does not, address the specific subject of which **law** to apply, but also because, as the Court acknowledges, our jurisprudence under that statute is "a vital expression of the federal system and the concomitant integrity of the separate States," *ante*, at 523. To ask, as in effect the Court **[*540]** does, whether *Erie* gets in the way of § **1404** (a), rather than whether § **1404**(a) requires adjustment of *Erie* , seems to me the expression of a mistaken sense of priorities.

For the foregoing reasons, I respectfully dissent.

## REFERENCES

32B Am Jur 2d, Federal Practice and Procedure 2333, 2386

1 Federal Procedure, L Ed, Access to District Courts 1:795, 1:850

3 Am Jur Trials 553, Selecting the Forum--Plaintiff's Position; 4 Am Jur Trials 441, Solving

Statutes of Limitation Problems

28 USCS **1404(**a)

Am **Law** Prod Liab 3d 46:43

US L Ed Digest, Courts 632, 787, 900

Index to Annotations, Change of **Venue;** District Courts; Removal of Actions; **Venue**

        Annotation References:

Construction and application of change of **venue** or **transfer** provision of Judicial Code (28 USCS **1404**(a)), apart from questions of convenience and justice of **transfer.** 7 ALR Fed 9.

Questions as to convenience and justice of **transfer** under forum non conveniens provision of Judicial Code (28 USCS **1404** (a)). 1 ALR Fed 15.

Duty of federal courts, under Erie R. Co. v Tompkins, to follow decisions of state courts as regards question of public policy as to recognition or enforcement of rights or obligations arising in another state, or other questions as to conflict of **laws.** 21 ALR2d 247.

---

Source: My Sources > States Legal - U.S. > California > Find Cases > **CA Federal & State Cases, Combined** [i]
Terms: **choice of law venue transfer 1404** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Friday, March 28, 2008 - 4:35 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

---

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help



LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

LexisNexis® *Total Research System*                    Switch Client ┆ Preferences ┆ Sign Off ┆ ？Help

*My Lexis*™ ▍ Search ▍ Research Tasks ▍ Get a Document ▼ *Shepard's*® ▍ Alerts ▍ Total Litigator ▍ Transactional A

Service: **Get by LEXSEE®**
Citation: **523 So. 2d 1126, 1129**

*523 So. 2d 1126, \*; 1988 Fla. LEXIS 392, \*\*;*
*13 Fla. L. Weekly 224*

Josephine Sturiano, Petitioner v. Martin Brooks, as Guardian Ad Litem of the Estate of Vito
Sturiano, Deceased, Respondent

No. 69,743

Supreme Court of Florida

523 So. 2d 1126; 1988 Fla. LEXIS 392; 13 Fla. L. Weekly 224

March 24, 1988

**PRIOR HISTORY:  [\*\*1]** Application for Review of the Decision of the District Court of
Appeal -- Certified Great Public Importance, Fourth District - Case No. 85-2177.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner widow appealed from a judgment of the Fourth
District Court of Appeal (Florida), which reversed the trial court's verdict for petitioner,
who had sued respondent, her husband's estate, for negligence.

**OVERVIEW:** Petitioner was injured in Florida when her husband caused an automobile
accident that resulted in his death. She sued respondent, and the trial court granted
petitioner a verdict in the amount of the applicable insurance coverage. The appellate
court reversed, finding that no insurance coverage was available because the policy was
issued in New York, where insurance did not cover actions between spouses unless
specifically included in the policy. The Florida Supreme Court affirmed, holding that
although interspousal tort immunity did not bar the claim under Florida law, a policy made
in New York had to be interpreted under New York law, which did not allow the claim.

**OUTCOME:** The Florida Supreme Court affirmed, holding that although interspousal tort
immunity did not bar the claim under Florida law, a policy made in New York had to be
interpreted under New York law, which did not allow the claim.

**CORE TERMS:** interspousal, immunity, spouse, lex loci contractus, certified questions,
policy reasons, significant relationships, collusion, insurance coverage, liability insurance,
policy considerations, guardian ad litem, family unit, choice of law, local law, insurance
policy, passenger's, casualty, answered, approve, harmony, marital, insured, waived, died,
entity, common law doctrines, husband's estate, valid claim, cases involving

**LEXISNEXIS® HEADNOTES**                                        ⊟ **Hide**

Insurance Law > General Liability Insurance > Coverage

Torts > Negligence > Defenses > Private Immunities > Spousal Immunity 🖰
        Actions between spouses must be barred when the policy reasons for maintaining

HN1 ⬇ the doctrine exist, such as the fear of disruption of the family or other marital discord, or the possibility of fraud or collusion. When no such policy considerations exist, the doctrine of interspousal tort immunity is waived to the extent of applicable liability insurance. More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > Claims & Contracts > Contract Formation

HN2 ⬇ In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** Leonard Robbins, Joseph J. Huss and Linda Raspolich Pratt of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., for Petitioner.

Steven Billing of Billing, Cochran & Heath, and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., for Respondent.

**JUDGES:** Kogan, J. McDonald, C.J., and Overton, Shaw and Barkett, JJ., concur. Grimes, J., concurs with an opinion, in which Overton, J., concurs. Ehrlich, J., concurs in part and dissents in part with an opinion.

**OPINION BY:** KOGAN

**OPINION**

[*1126] This action is before the Court on review of a decision by the Fourth District Court [*1127] of Appeal, *Brooks v. Sturiano*, 497 So. 2d 976 (Fla. 4th DCA 1986). Because that court certified two questions to this Court as being of great public importance, we have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

The petitioner, Mrs. Sturiano, was injured when the car in which she was a passenger, struck a tree. Her husband, Vito Sturiano, the driver of the car, was killed in the collision, and Mrs. Sturiano brought an action against his estate alleging [**2] negligence on the part of Mr. Sturiano. Because Mrs. Sturiano was also the personal representative of her husband's estate, a guardian ad litem was appointed to represent the interests of the estate. Other than Mrs. Sturiano, Vito Sturiano was survived by no heirs or lineal descendents.

Following a jury verdict for Mrs. Sturiano and a reduction to the amount of applicable insurance coverage, Brooks, the guardian ad litem, appealed to the fourth district. That court held the doctrine of interspousal immunity did not bar the action, reasoning that the traditional policy reasons for maintaining the doctrine simply did not apply. However, the court reversed the verdict, holding the doctrine of lex loci contractus required that New York law apply because the contract was executed there. Under a New York statute, the action is barred unless the insurance policy specifically includes coverage for claims between spouses. Absent such a provision, no coverage exists. The fourth district then certified questions regarding both issues to this Court.

Both certified questions involve challenges to established common law doctrines followed in Florida. The first question, which we will answer last, [**3] involves the conflict of laws doctrine known as lex loci contractus. The other question, which we shall address first, requires this Court to again examine the doctrine of interspousal tort immunity. That question, as phrased by the district court, asks:

DOES THE DOCTRINE OF INTERSPOUSAL IMMUNITY BAR AN OTHERWISE VALID
CLAIM BY AN INJURED PASSENGER WHOSE NEGLIGENT SPOUSE DIED AS A
RESULT OF THE ACCIDENT, WHERE THE CLAIM IS LIMITED TO THE AMOUNT OF
INSURANCE COVERAGE, THE PLAINTIFF IS THE ONLY PARTY INTERESTED IN THE
ESTATE AND A GUARDIAN AD LITEM IS APPOINTED?

497 So. 2d at 979. We answer this question in the negative and approve the district court
decision regarding the issue of interspousal tort immunity.

The doctrine of interspousal tort immunity has a long and established history in Florida law.
This common law doctrine has, until this decade, barred actions by one spouse against the
other. [1] Recently, however, inroads have been made eroding the traditional basis for
upholding the doctrine. [2] The policy reasons for upholding the doctrine in these instances
either do not exist or cannot justify immunity from liability.

**FOOTNOTES**

[1] See *Corren v. Corren*, 47 So. 2d 774, (Fla. 1950). **[**4]**

[2] See *Dressler v. Tubbs*, 435 So. 2d 792 (Fla. 1983) (Wrongful death action by wife's
estate against husband's estate was not barred by the doctrine of interspousal
immunity); *Ard v. Ard*, 414 So. 2d 1066 (Fla. 1982) (abolishing interfamily (but not
interspousal) immunity to the extent of liability insurance).

These policy considerations have been debated strenuously in judicial opinions for many
years. The doctrine of interspousal tort immunity has its origins in the fiction that the
marriage of two people creates a unified entity of one singular person. [3] The reasoning was
that a person or entity cannot sue itself. Despite dicta to the contrary in prior opinions of this
Court, we believe that this outdated policy consideration can no longer be regarded as a valid
reason to bar actions. We no longer live in an age where the wife is subservient to her
husband. A married woman now has power to control her separate property and enter into
contracts with her husband. [4] With these expansions of individual freedom, **[*1128]** legal
status, and power, it can no longer be said that a woman becomes part of an entity
represented by the husband. **[**5]** Thus "the common law unity concept is no longer a
valid justification for the doctrine of interspousal immunity." [5] Several other reasons to bar
interspousal actions, however, still exist under certain conditions. Domestic tranquility, peace
and harmony in the family unit, and the possibilities of fraud or collusion are the most
frequently cited policy reasons for maintaining interspousal immunity. In cases where these
considerations apply, the doctrine of interspousal immunity shall continue to bar actions
between spouses.

**FOOTNOTES**

[3] *Corren v. Corren*, 47 So. 2d 774 (Fla. 1950).

[4] § 708.08, Fla. Stat. (1977).

[5] *Raisen v. Raisen*, 379 So. 2d 352, 357 (Fla. 1979) (England, C.J. and Adkins and
Sundberg, JJ., dissenting), *cert. denied*, 449 U.S. 886, 66 L. Ed. 2d 111, 101 S. Ct. 240
(1980).

This Court's most recent pronouncement on this issue, _Snowten v. United States Fidelity and Guaranty Co._, 475 So. 2d 1211 (Fla. 1985), demonstrates the application of interspousal immunity. In that case, the injured plaintiff and the negligent defendant spouse were both living. Any recovery would be covered by an applicable insurance policy, so there **[**6]** was ample reason to believe collusion was a possibility. Alternatively, the spectre of a lawsuit by one spouse charging negligence against the other spouse would be extremely disruptive to the family, causing significant disharmony within the family unit. This state has long maintained a policy of promoting family harmony. The lawsuit in the _Snowten_ case would have only served to promote marital discord, assuming the couple was not working in collusion to perpetrate a fraud upon the insurance company.

In this case, however, there is no fear of disharmony or collusion. Sadly, Vito Sturiano is indeed, leaving only Mrs. Sturiano as the sole remaining member of the family. While this tragedy works a great loss on Mrs. Sturiano, it also clears the way for an action against the estate. Because the family unit died with Vito Sturiano, there is no marital harmony to disrupt, no domestic tranquility to destroy. Moreover, we cannot presume any possibility of collusion or fraud when there is nobody with whom she could conspire.

Brooks, the guardian ad litem, argues that the doctrine of interspousal immunity should continue without exception, regardless of the absence of policy reasons for doing **[**7]** so. He contends that _Snowten_ should control and interspousal tort immunity must apply in all cases involving actions between spouses to maintain consistency in law. We disagree. _Snowten_ is clearly distinguishable on the facts. In that case, because both spouses were alive, the policy reasons for barring the action were strong. Here, because the defendant spouse is deceased, the policy reasons for barring the action do not exist. Moreover, in this case, there are no surviving lineal descendents, and thus no one left to be victimized by a disruption of the family unit. We will not blindly adhere to a doctrine that has no application to these facts. To do so would promote injustice for the sake of expediency and consistency.

We note at this point that _Snowten_ and the doctrine of interspousal tort immunity are still good law. _HN1_ Actions between spouses must be barred when the policy reasons for maintaining the doctrine exist, such as the fear of disruption of the family or other marital discord, or the possibility of fraud or collusion. However, under the circumstances of this case, we hold that when no such policy considerations exist, the doctrine of interspousal tort immunity **[**8]** is waived to the extent of applicable liability insurance.

The other question posed by the fourth district requires us to address the doctrine of lex loci contractus. Specifically, we must examine whether the rule requiring that the laws of the jurisdiction where the contract was executed should apply. The fourth district has certified the following question:

> DOES THE _LEX LOCI CONTRACTUS_ RULE GOVERN THE RIGHTS AND LIABILITIES OF THE PARTIES IN DETERMINING THE APPLICABLE LAW ON AN ISSUE OF INSURANCE COVERAGE, PRECLUDING CONSIDERATION **[*1129]** BY THE FLORIDA COURTS OF OTHER RELEVANT FACTORS, SUCH AS THE SIGNIFICANT RELATIONSHIP BETWEEN FLORIDA AND THE PARTIES AND/OR THE TRANSACTION?

497 So. 2d at 979. We answer the certified question in the affirmative, limiting this answer to contracts for automobile insurance, and approve the decision of the district court.

The Sturianos, lifelong residents of New York, purchased automobile insurance in New York

six years prior to the accident which took the life of Vito Sturiano and injured Josephine Sturiano. Subsequently, the couple moved to Florida each year for the winter months. They did not notify the insurance company **[\*\*9]** of this migration, and the insurance company had no way of knowing that such a move had taken place.

Under the doctrine of lex loci contractus, it is clear that New York law must apply. That rule specifies that the law of the jurisdiction where the contract was executed should control. However, in recent years this doctrine has been criticized and, in several jurisdictions, [6] discarded in favor of the more flexible "significant relationships" test.

**FOOTNOTES**

[6] *See, e.g., Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 601 P.2d 1369 (1979); *Champagnie v. W.E. O'Neil Constr. Co.,* 77 Ill. App. 3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979); *Choate, Hall & Stewart v. SCA Services, Inc.,* 378 Mass. 535, 392 N.E.2d 1045 (1979); *State Farm Mut. Auto. Ins. Co. v. Simmons's Estate,* 84 N.J. 28, 417 A.2d 488 (1980); *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954).

That test, as stated in the Restatement (Second) of Conflict of Laws § 188 (1971), provides:

§ 188. Law Governing in Absence of Effective Choice **[\*\*10]** by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. [7]

Thus, under the Restatement view, and seemingly the trend of courts around the nation, the place the contract is executed is only one of five factors used in determining which jurisdiction's law should control.

**FOOTNOTES**

7 Restatement (Second) of Conflict of Laws § 181 (1971).

Sturiano argues that in this modern, migratory [**11] society, choice of law rules must be flexible to allow courts to apply the laws which best accommodate the parties and the host jurisdiction. She contends that the archaic and inflexible rule of lex loci contractus does not address modern issues or problems in the area of conflict of laws. While it is true that lex loci contractus is an inflexible rule, we believe that this inflexibility is necessary to ensure stability in contract arrangements. When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary. This benefits both parties, not merely an insurance company. The view espoused in the Restatement fails, in our opinion, to adequately provide security to the parties to a contract.

Although lex loci contractus is old, it is not yet outdated. The very reason Sturiano gives as support for discarding lex loci contractus, namely that we live in a migratory, transitory society, provides support for upholding that doctrine. Parties have a [*1130] right to know what the agreement they have executed provides. To allow one party to modify the contract simply by moving to another [**12] state would substantially restrict the power to enter into valid, binding, and stable contracts. There can be no doubt that the parties to insurance contracts bargained and paid for the provisions in the agreement, including those provisions that apply the statutory law of that state.

We recognize that this Court has discarded the analogous doctrine of lex loci delicti with respect to tort actions 8 and limitations of actions. 9 However, we believe that the reasoning controlling those decisions does not apply in the instant case. With tort law, there is no agreement, no foreseen set of rules and statutes which the parties had recognized would control the litigation. HN2 In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement. The parties to this contract did not bargain for Florida or any other state's laws to control. We must presume that the parties did bargain for, or at least expected, New York law to apply.

**FOOTNOTES**

8 *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980). [**13]

9 *Bates v. Cook, Inc.*, 509 So.2d 1112 (Fla. 1987).

For these reasons, we answer the certified question concerning conflict of laws in the affirmative, limiting that answer to situations involving automobile insurance policies. As stated, we answer the certified question concerning interspousal immunity in the negative and approve the decision of the Fourth District Court of Appeal.

It is so ordered.

McDONALD, C.J., and OVERTON, SHAW and BARKETT, JJ., Concur.

GRIMES, J., Concurs with an opinion, in which OVERTON, J., Concurs.

EHRLICH, J., Concurs in part and dissents in part with an opinion.

**CONCUR BY:** GRIMES; EHRLICH (In Part)

## CONCUR

GRIMES, J., concurring.

The more I read of it the more I tend to agree with Dean Prosser when he said that "the realm of the conflict of laws is a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in a strange and incomprehensible jargon. The ordinary court, or lawyer, is quite lost when engulfed and entangled in it." [1]

## FOOTNOTES

[1] Prosser, *Interstate Publication*, 51 Mich. L. Rev. 959, 971 (1953).

The rule of lex loci contractus has been roundly **[\*\*14]** criticized as mechanistic [2] and unworkable in practice. [3] It has seldom been applied to issues concerning the performance of a contract. [4] While it is true that more states retain lex loci contractus than have abandoned it, perhaps this is so only because many of them have not addressed the issue in recent years. [5] The emerging consensus, even in cases involving questions of contract validity, is to apply the most significant relationship test of <u>section 188 of the Restatement (Second) of Conflict of Laws</u> (1971). [6]

## FOOTNOTES

[2] R. Weintraub, Commentary on the Conflict of Laws, § 7.3A (3d ed. 1986).

[3] E. Scoles and P. Hay, Conflict of Laws, § 18.13 (1984).

[4] A. Ehrenzweig, Conflict of Laws, § 174 (1962).

[5] E. Scoles and P. Hay, Conflict of Laws, § 18.21 (1984).

[6] R. Weintraub, Commentary on the Conflict of Laws, § 7.3D (3d ed. 1986).

In this complex area of law concerning which I claim no expertise, I am inclined toward the recommendations of the American Law Institute. Because contractual disputes arise in such a great variety of settings, rules of broad application cannot do justice to the various interests and expectations involved. While the application of the **[\*\*15]** significant relationship test may be less certain, it reflects a more realistic standard by which a choice of laws may be made. Furthermore, I believe the majority's **[\*1131]** concern for predictability and the parties' right to know what the agreement provides is adequately taken into account by factors (d) (the protection of justified expectations) and (f) (certainty, predictability and uniformity of result) of section 6 of the Second Restatement which is made applicable to <u>section 188</u>.

I nevertheless agree with the result reached in the instant case because it would come out the same under the Restatement. Section 193 of the Second Restatement sets forth a more specific rule with respect to casualty insurance:

§ 193. Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights

created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, **[**16]** in which event the local law of the other state will be applied.

Here, the policy was issued by a New York company to an insured with a New York address to cover an automobile presumably garaged in New York. When the policy was issued, the insurer was entitled to assume that its potential for liability under the contract would not be increased by its policyholder taking the car to another state. In fact, there was nothing in the record to indicate that the insurer even knew that the insured kept the car in Florida for a substantial period of time each year. Thus, under any theory of conflicts, New York law should apply.

OVERTON, J., Concurs.

**DISSENT BY:** EHRLICH (In Part)

**DISSENT**

EHRLICH, J., concurring in part and dissenting in part.

I concur with the Court's opinion as to the certified question last answered dealing with the conflict of law question, and I concur with the Court's reasoning in its response to the certified question first answered relating to the applicability of the doctrine of interspousal immunity, but I do not agree with the Court's answer to the question as phrased.

The Court expressly recognized that "*Snowten*, [1] and the doctrine of interspousal immunity are still good law." **[**17]** Maj. op. at p. 1128. However, the opinion then terminates its discussion of that issue by saying that where no policy considerations for maintaining the doctrine of interspousal immunity exist, the doctrine "is waived, to the extent of applicable liability insurance." *Id.*

**FOOTNOTES**

[1] In *Snowten v. United States Fidelity and Guaranty Co.*, 475 So.2d 1211 (Fla. 1985), the certified question "is the doctrine of interspousal immunity waived, to the extent of available liability insurance, when the action is for a negligent tort" was answered in the negative.

I agree with the Court that there are no policy considerations in this case for maintaining the doctrine of interspousal immunity for the reasons well articulated in the opinion, and, in my view, where this is the case, the doctrine should not exist. The existence vel non of liability insurance should play no part. [2]

**FOOTNOTES**

[2] While the Court's answer to the certified question dealing with interspousal immunity seemingly is a victory for a plaintiff, I think this is nothing more than a Pyrrhic victory

because this Court has approved the inclusion of the family exclusion clause in liability policies. *Florida Farm Bureau Insurance Co. v. Government Employees Insurance Co.*, 387 So.2d 932 (Fla. 1980).

[**18] The bottom line of the Court's decision is that even though the plaintiff has recovered a judgment, it will be set aside because this Court has held, and correctly so, that New York law applies and hence there is no applicable insurance coverage, and since there is no insurance coverage, there is no waiver of interspousal immunity.

I would rephrase the certified question to read "Does the doctrine of interspousal immunity bar an otherwise valid claim by an injured passenger's spouse against the estate of the deceased spouse who died as a result of the accident, and whose negligence proximately caused such injuries." I [*1132] would answer that question, as rephrased, in the negative, and to the extent necessary, I would recede from *Roberts v. Roberts*, 414 So.2d 190 (Fla. 1982).

Service: **Get by LEXSEE®**
Citation: **523 So. 2d 1126, 1129**
View: Full
Date/Time: Sunday, March 30, 2008 - 11:02 AM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🅠 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.