

Jon D. Derrevere, Esquire (FBN: 330132)
Derrevere, Hawkes & Black
470 Columbia Drive, Bldg B
West Palm Beach, FL 33409
561-684-3222
*Pro Hac Vice*

CHARLES K. BRUNN (CBN: 28021)
BRUNN & FLYNN
928 12th Street, Suite 200
P.O. Box 3366 (95353)
Modesto, California 95354

Attorneys for Plaintiff
FIREMAN'S FUND INSURANCE COMPANY,
a foreign corporation a/s/o BASIC RESOURCES, INC.
and GEORGE REED, INC., a foreign corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, a foreign corporation a/s/o BASIC RESOURCES, INC. and GEORGE REED, INC., a foreign corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GERLING AMERICA INSURANCE COMPANY, a foreign corporation,<br><br>Defendant. | CASE NO.  C 07 06302 CRB<br><br>**PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT [F.R.C.P. 56]**<br><br>**Hearing Date:  August 8, 2008**<br>**Time:          10:00 a.m.**<br>**Courtroom:      8** |

**TO: THE HONORABLE COURT AND TO DEFENDANT AND COUNSEL OF RECORD:**

### PREFACE

Pursuant to Federal Rule of Civil Procedure 56, Civil L.R. 7-1 through 7.5, inclusive, as well as the legal authorities cited herein, Plaintiff, FIREMAN'S FUND INSURANCE COMPANY a/s/o BASIC RESOURCES, INC. and GEORGE REED, INC. ("FFIC") respectfully files/serves this Motion for Summary Judgment. In support of this Motion, FFIC has filed true copies of the GENCOR contract, trial transcripts and other relevant court records from the Underlying State

i

Court Action, See: D.E. 36-1, with Exhibits; 49-2, with Exhibits; 56-2 with Exhibits; and 29-1, 29-2, 29-3 ("Tr. Tr."). FFIC also relies upon matters already of record as offered in support of FFIC's Response and Cross Motion for Judgment on the Pleadings and for all other Purposes and certain discovery responses filed herein. D.E. 36, 36-1; 36-2. GERLING admits: (1) that the Policy attached as Exhibit 1 to the Fourth Amended Complaint is a true and correct copy of the Policy in effect at the time of the explosion which gave rise to the Underlying State Court Action D.E. 31; (2) that GERLING insured the underlying Defendant, GENCOR INDUSTRIES, INC. ("GENCOR") pursuant to the policy; (3) that GERLING defended GENCOR pursuant to that policy but with "an express reservation of rights; (4) that a jury returned a verdict in favor of FFIC determining that GENCOR breached its contract with BASIC RESOURCES and GEORGE REED (FFIC Insureds); and (5) that GENCOR was 60% negligent and BASIC RESOURCES and GEORGE REED were 40% negligent for the explosion." D.E. 31, ¶ 4-12. Judgments have been entered in favor of FFIC against GENCOR for $1,751,913.10 (comprising $959,787.00 for physical damage to property, $64,322.00 for lost profits and $169,716.00 for additional expense along with $558,088.15 for pre-judgment interest) and $42,000.00 for costs. D.E. 29; 29-2; 29-3. FFIC has demanded payment for all of the foregoing sums "covered" under GERLING's policy in addition to post Judgment interest at 11% per year as provided in F.S. § 55.03 (D.E. 29).

1

# **TABLE OF CONTENTS**

2                                                                                               **Page(s)**

3    1.    Table of Contents                                                          iii

4
     2.    Table of Citations                                                         iv-ix
5

6    3.    Introduction                                                               1

7              a) Relief Requested                                                    1
               b) Question of Law Presented                                          1
8

9    4.    Standard for Final Summary Judgment                                        2

10
     5.    Statement of Undisputed Material Record Fact                               2-5
11
               a) Stipulated Statement of Facts                                       2-3
12             b) Adjudicated Facts in Underlying State Court Action                  3-5

13   6.    Argument                                                                   5-24

14
     7.    Conclusion                                                                 24
15

16   8.    Proof of Service                                                           x

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

1

## TABLE OF CITATIONS

2

**Cases**                                                              **Page(s)**

3

*Action Auto Stores v. United Capital Insurance Co.*
4     *845 F.Supp. 428, 442 (W.D. Mich. 1993)*                             11

5

6

7     *Aerothrust Corporation v. Granada Insurance Company*
*904 So.2d 470 (Fla. 3d DCA 2005)*                                   19, 20
8

9

10    *American Equity Ins. Co. v. Don Van Ginhoven*
11    *788 So.2d 388 (Fla. 5ᵗʰ DCA 2001)*                                12, 13, 18

12

13    *American Family Mutual Insurance Co. v.*
*American Girl, Inc., 673 NW 2d 65, 73 (Wis. 2004)*                  6, 10, 11, 14
14

15

16

17    *Assurance Company of America v. Lucas Waterproofing,*
18    *2008 U.S. Dist. LEXIS 35802 (S.D. Fla. 2008)*                       2, 5

19

20    *Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34*
21    *(Fla. 2000)*                                                        5

22

23    *Broward Marine, Inc. v. Aetna Insurance Company*
*459 So.2d 330 (Fla. 4ᵗʰ DCA 1984)*                                 17
24

25

26    *Burns v. Cal Fair Plan*                                             21
*61 Cal. Rptr 3d 809, 816-17 (Cal. Ct. App. 2007)*
27

28

*Cessna Aircraft Company v. Avior F Technologies, Inc.*
*33 FLWD 35*
*(Fla. 3d DCA, Opinion Filed June 11, 2008)* ............ 20

*Cochran v. BJ Services Co., USA*, 302 F.3d 499
*(5th Cir. 2002)* ............ 20

*Container Corp. of America v. Maryland Casualty Company*
*707 So.2d 733, 736 (Fla. 1998)* ............ 11

*Cotton States Mutual Insurance Company v.* ............ 17
*Norell Heating & Air Conditioning Company, Inc.*
*370 So.2d 270 (Ala. 1979)*

*Dimmitt Chevrolet, Inc. v. SE. Fid. Ins. Corp.*
*636 So.2d 700, 702 (Fla. 1993)* ............ 5

*Employers Insurance Company of Wausau v.* ............ 21
*National Union Fire Insurance Co., of Pittsburgh,*
*Pennsylvania and Underwriters at Lloyds London*
*2008 U.S. Dist. LEXIS 32312 (U.S.D.C. M.D. Fla. 2008)*

*Garcia v. Federal Ins. Co.*, 969 So.2d 288 (Fla. 2007) ............ 6

*Gibbs M. Smith, Inc. v. United States Fidelity and*
*Guarantee Co.*, 949 P.2d 337, 341 (Utah 1997) ............ 11

*Hamilton Die Cast, Inc. v. United States Fidelity &* ............ 16
*Guarantee Co.*, 508 F.2d 417, 419-420 (7 Cert. 1975)

*Herrera v. C.A. Seguros Catatumbo*                                    6
844 So.2d 644 (Fla. 3d DCA 2003)

*La Reunion Francaise, S.A. v. Christy,*                               2
122 F.Supp. 2d, 1235 (M.D. Fla. 1999)

*Moransais v. Heathman,* 744 So.2d 973 (Fla. 1999)                    20

*Marlin v. Wetzel Co. Board of Education,* 212 W.VA.
215, 569 SE2d 462, 469 (W.VA. 2002)                                   11

*Maryland Casualty Co. v. Reeder*                                     16, 18
270 Cal Rptr 719 (Cal. App. 4 Dist 1990)

*Minergy Neehan LLC v. Rotary Dryer Parts, Inc.*
2008 U.S. Dist. LEXIS 33814 U.S.D.C.                                  12
(E.D. WI April 24, 2008)

*Musgrove v. Southland Corp.,* 898 F.2d 1041, 1044
(5th Cir 1990)                                                        11

*Nehme v. Smith Kline Beach and Clinical Laboratory*
863 So.2d 201, 205 (Fla. 2003)                                        20

*Oak Ford Owners Association v. Auto Owners Insurance Co.*
510 F.Supp. 2d 812, 2007 U.S. Dist. LEXIS 14453
(U.S.D.C. M.D. Fla., February 28, 2007)                               13

*Pacific Employers Insurance Company v.*
*Alex Hofrichter, P.A.,* 670 So.2d 1023 (Fla. 3d DCA 1996)                    23

*Pensacola Executive House Condominium Association v.*
*Baskerville-Donovan Engineers, Inc.*
566 So.2d 850, 851 (Fla. 1st DCA 1990)
approved 581 So.2d 1301 (Fla. 1991)                                           20

*RAD Source Tech, Inc. v. Colony National Insurance Company*
914 So.2d 1006 (Fla. 4th DCA 2005)                                   10, 11, 16

*Saint Paul Fire & Marine Insurance Company v.*
*Lexington Insurance Company,*                                                21
2006 U.S. Dist. LEXIS 31397 (S.D. Fla., 2006)

*Scottsdale Insurance Co., v. Deer Run Property*                              23
*Owners Association,* 642 So.2d 786 (Fla. 4th DCA 1994)

*State Farm Fire & Cas. Co. v. CTC Dev. Corp.*
720 So.2d 1072 (Fla. 1998)                                                  5, 6

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*
913 So.2d 528, 532 (Fla. 2005)                                       5, 6, 7, 19

*Thermo Terratech v. GDC Enviro Solutions, Inc.*
265 F.3d 329 (5th Cir. 2001)                                                 20

*Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*
216 S.W. 3d 302, 305 (Tenn. 2007)                                            5

*Tri-State Insurance Company of Minnesota v. Fitzgerald*
 *593 So.2d 1118 (Fla. 3d DCA 1992)*                    23


*Twin City Fire Insurance Co. v. Fireman's Fund*        22
 *Insurance Co., 386 F.2d 1272 (S.D. Fla. 2005)*


*United Concrete Pipe Co. v. Bould*, *437 So.2d 1061*    6
*(Fla. 1983)*


*US Fire Insurance Company v. J.S.U.B.*
 *979 So.2d 871 (Fla. 2007*                              1, 5, 6, 11, 17


*Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 795*
*(N.J. 1979)*                                            14, 17

**Statutes, Rules, Codes and Other Commentators**

Federal Rule of Civil Procedure 56                      i


Civil L.R. 7-1 through 7.5                               i


F.S. § 55.03                                            ii, 1


F.S. § 768.79                                           1, 5, 24


Appleman's 3d Ed § 1329 at P 148                        1, 5, 24


Anderson, Insurance Coverage Litigation
Section 14.07 [a] at 14-117                             15

1

2  Black's Law Dictionary 1246 (8th Ed. 2004)                    20

3

4
   F.S. § 95.11(4)                                               21
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

#### a. Relief Requested:

This is a coverage dispute. FFIC seeks Final Summary Judgment against GERLING for insurance benefits pursuant to and in accordance with GERLING's Commercial General Liability (CGL) Policy No.: 4003527GLP (D.E. 29-1) issued to GENCOR. Based upon the Final Judgments entered in favor of FFIC against GENCOR in the Underlying State Court Action, FFIC is entitled to One Million Dollars representing "property damage" provided by the "Products-Completed Operations" aggregate policy limit, pre-judgment interest from the dates of payment made by FFIC in the sum of $467,478.90,[1] post-judgment interest on the full amount of the Judgment (from June 11, 2007 through August 8, 2008 that sum is $222,827.22), $42,000.00 in costs awarded to FFIC along with post judgment interest on the cost award of $5,506.57, for a total of $1,737,812.60 exclusive of taxable costs and attorney fees [2] incurred in prosecuting this action.

#### b. Question of Law Presented:

The question of law presented herein is whether the GERLING CGL insurance policy at issue covers the damages awarded to FFIC in the Underlying State Court Action against GENCOR. GERLING is liable to FFIC according to the terms of the CGL policy. There are no materials facts that would otherwise preclude entry of Final Summary Judgment in favor of FFIC. This dispute turns on the Court's construction of the terms of the GERLING policy which is a question of law. *U.S. Fire Ins. Co. v. J.S.U.B.*, 979 So.2d 871 (Fla. 2007).

---

[1] The interest award of $558,088.00 for the full $1,751,913.10 Judgment must be reduced to reflect the interest on the $1,000,000.00 policy limit in accordance with the Supplementary Payments section. Per F.S. § 55.03, interest runs at 11% per year or .0003014 times the principal amount per day.

[2] Although FFIC is not entitled to statutory or contractual attorney fees in this action, an attorney fee award may be appropriate pursuant to F.S. § 768.79.

## II. STANDARD FOR FINAL SUMMARY JUDGMENT

In *Assurance Company of America v. Lucas Waterproofing*, *2008 U.S. Dist. LEXIS 35802 (S.D. Fla. 2008)* the Court outlined the summary judgment standard in the context of a coverage dispute:

> Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, *25 F.3d 1551, 1554 (11th Cir. 1994)*. The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, *398 U.S. 144, 157, 90 S.Ct. 1590, 26 L.Ed. 2d 142 (1970)*. An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, *121 F.3d 642, 646 (11th Cir. 1997)*. It is "genuine" if the record as a whole could lead a rational trier of fact to find for the non-moving party.
> See also: *La Reunion Francaise, S.A. v. Christy*, *122 F.Supp. 2d, 1235 (M.D. Fla. 1999)*.

The parties agree, and the Court has previously ruled, that the GERLING policy should be interpreted according to Florida Law (D.E. 27).

## III. STATEMENT OF UNDISPUTED MATERIAL RECORD FACTS

In the Joint Pretrial Statement filed in the Underlying Action, FFIC and GENCOR stipulated:

### a. Stipulated Statement of the Facts:

This action arises out of an explosion at the Basic Resources/George Reed asphalt plant located near Lodi, California which occurred on April 18, 2001. The plant consisted of equipment including a cold feed system, stationary dryer, batch tower, stationary bag house, stationary silos, salt conveyer with cleanout, and other miscellaneous materials sold by Gencor at a total cost to Basic Resources/George Reed of $1,989,679.00. At the time of the explosion, Gencor had delivered all of the equipment called for in the contract, Basic Resources/George Reed personnel had completed erection and installation of the equipment and service tests of the electrical system were being performed by Gencor employee, Calvin Dixon. As part of those tests, Mr. Dixon electronically bypassed the system exhaust fans and he attempted to electronically bypass the main gas feed line prior to electronically operating the main burner. When Mr. Dixon electrically "lit the burner" the plant exploded.
As a result of the explosion and the property damage it caused, Basic Resources incurred losses for damage to the facility. Basic Resources/George Reed made a

claim for those damages with their insurance company, FFIC which made payments in the sum of $1,324,475.00. FFIC seeks reimbursement from Gencor for the amounts paid to settle the claim. Gencor has denied liability for the loss and asserts that George Reed/Basic Resources is responsible in whole or in part for causing the loss. D.E. 36-2, Exhibit 1

b. **Adjudicated Facts in the Underlying State Court Action:**

Pursuant to a February 10, 2000 purchase and sale contract, GENCOR sold and delivered component parts to FFIC's Insureds, GEORGE REED and BASIC RESOURCES, for their subsequent construction and use of a 12,000 lb hot asphalt batch plant located in Lodi/Clements, California. Vol. 1, P. 75-77; 86-87; 115, L. 4-10. GENCOR completed delivery of the components subject to the contract in June 2000. Vol. 1, P. 84-87. GEORGE REED built the asphalt plant with its own forces and GENCOR was not involved in construction of the plant. Vol. 1, P. 84, L. 7-19; P. 88-89. GENCOR agreed to provide "field engineering service" to make the initial calibration of the equipment and to train the operator in the calibration and production process including the plant's computerized temperature control system. Vol. 1, P. 84-85. On April 12, 2001, GENCOR service technician, Calvin Dixon, arrived to service the plant. Prior to Mr. Dixon's arrival, the plant was certified for operation by the State of California. See: D.E. 49-2, Composite Ex. 1: Tr. Tr. Vol. 2, P. 292, L. 16-17. "But for" the explosion, the plant would have been producing asphalt for previously executed GEORGE REED contracts on April 19, 2001. See: D.E. 49-2, Composite Ex. 1: Tr. Tr. Vol. 3, P. 350, L. 5-12; Vol. 1, P. 87-90. The plant exploded at approximately 4:10 p.m. on April 18, 2001.D.E. 49-2, Composite Ex. 1: Tr. Tr. Vol. 2, P. 168-169; 189-216; P. 250-254. Earlier that day, the plant produced asphalt "batch"; however, a problem was encountered with the computerized temperature control system. In an effort to correct that problem, Mr. Dixon attempted a "dry run" during which he "electronically bypassed" the exhaust fans and the main gas feed line. D.E. 36-2, Ex. 1. Unfortunately, Mr. Dixon unwittingly energized the main gas line allowing propane to enter the "drum" and when he electronically "lit the burner" the plant exploded. D.E. 36-

2, Ex. 1. At such time, GERLING insured GENCOR pursuant to a post-1986 ISO Standard Form commercial general liability ("CGL") policy with Florida endorsements providing Products-Completed Operations (PCOH) Hazard coverage (D.E. 29-1). FFIC paid claim benefits to BASIC RESOURCES and GEORGE REED of $1,324,475.00.  Of that sum, GEORGE REED paid $671,259.00, inclusive of shipping charges, to replace the separate GENCOR components damaged/destroyed in the explosion; $50,000.00 was allocated to replace the Control Center which Calvin Dixon was "operating" in order to calibrate the electrical system. Composite Ex. 1: Tr. Tr. Vol. 1, P. 93-105; D.E. 56-2; Bates Stamped: 423, 424, 280; Vol. 5, 618-640.  As a subrogee, FFIC sued GENCOR for property damage to the plant, lost profits and additional expenses on claims sounding in negligence and breach of contract. Prior to trial, FFIC filed a Notice of Withdrawal of its Claims for implied warranty of merchantability, breach of express warranty and strict liability. D.E. 49-2, Ex. 2.   At the time of filing the Underlying Action, GENCOR was a Discharged Bankrupt. D.E. 36-1, Ex. 2, 3, 4. Counsel for FFIC, GERLING (in its individual capacity), GENCOR's defense counsel and GENCOR's Bankruptcy counsel executed a "Bankruptcy Stipulation" wherein all parties agreed that "the discharge injunction resulting from the confirmation of GENCOR's fourth amended plan of reorganization in the GENCOR Bankruptcy does not prohibit Fireman's Fund from pursuing this action against GENCOR solely for the purpose of recovering any and all available insurance proceeds which may cover the claims; provided, however, that any judgment obtained against GENCOR in this action may not be collected by Fireman's Fund in personam against GENCOR." D.E. 36-2, Ex. 4. After a jury trial, an Amended Final Judgment was entered in favor of FFIC against GENCOR solely on the breach of contract claim in the total sum of $1,751,913.10 with pre-judgment interest running at 11% per annum from June 11, 2007. Subsequently, a Cost Judgment was entered in favor of FFIC in the sum of

$42,000.00 with pre-judgment interest running at 11% from September 7, 2007, D.E. 29-2.[3]

GERLING has answered with a general denial asserting that no coverage exists for the Judgments

and with Affirmative Defenses relating to the policy exclusions. D.E. 40.

## IV. ARGUMENT

In *U.S. Fire Ins. Co. v. J.S.U.B.*, the Florida Supreme Court stated:

### A. Standards for Construing Insurance Contracts:

Our interpretation of insurance contracts, such as CGL policies in this case, is
governed by generally accepted rules of construction. Insurance contracts are
construed according to their plain meaning, with any ambiguities construed against
the insurer and in favor of coverage. See: *Taurus Holdings, Inc. v. U.S. Fid. & Guar.
Co.*, 913 So.2d 528, 532 (Fla. 2005). Further, "in construing insurance policies,
courts should read each policy as a whole, endeavoring to give every provision its
full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29,
34 (Fla. 2000). Accordingly, "although exclusionary clauses cannot be relied upon to
create coverage, principles governing the construction of insurance contracts dictate
that when construing an insurance policy to determine coverage the pertinent
provisions should be read in *pari materia.*" *State Farm Fire & Cas. Co. v. CTC Dev.
Corp.*, 720 So.2d 1072 (Fla. 1998) (citations, alterations, and internal quotation
marks omitted).

### B. The Origin and Evolution of CGL Policies:

Commercial General Liability policies are designed to protect an insured against
certain losses arising out of business operations. See: *Travelers Indem. Co. of Am. v.
Moore & Assocs., Inc.*, 216 S.W. 3d 302, 305 (Tenn. 2007). The first standard form
comprehensive general liability insurance policy was drafted by the insurance
industry in 1940. See: *21 Eric Mills Holmes, Holmes' Appleman on Insurance 2d, §
129.1 at 7 (2002)*. The standard policy was the result of a voluntary effort in the
insurance industry to address the misunderstanding, coverage disputes, and litigation
that resulted from the unique language used by each liability insurer. See: Id., see
also: *Dimmitt Chevrolet, Inc. v. SE. Fid. Ins. Corp.*, 636 So.2d 700, 702 (Fla. 1993)
(explaining that CGL policies "are standard insurance policies developed by

---

[3] The Cost Judgment also includes $42,000.00 in attorney fees awarded per F.S. § 768.79. This
Court has previously ruled that the fee award is not "covered" under the GERLING policy. D.E. 27.
However, in *Assurance Company of America v. Lucas Waterproofing Co., Inc.* the Court determined
that attorney's fees are in fact "covered" as damages under a standard CGL Policy. FFIC
respectfully requests that the Court reconsider its April 3, 2008 Order denying FFIC leave to assert
entitlement to fees awarded in the Underlying Action and to award FFIC $42,000.00 plus Post
Judgment interest on that sum in the amount of $5,506.57.

insurance industry trade associations, and these policies are the primary form of commercial insurance coverage obtained by businesses throughout the country").

Since 1940, the standard policy has been revised several times. See: 21 Homes, supra, § 129.1, at 7-8. We review these changes because the insuring agreement has been expanded over the years and the exclusions narrowed. With regard to the insuring agreement, the language was expanded from providing coverage only for damages " caused by an accident" to include coverage for damages caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Compare 16 Id. § 117.1, at 215, with 20 Id. § 129.2, at 104. In *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072 (Fla. 1998, we explained that an "occurrence," which is defined as an "accident," encompasses damage that is "neither expected nor intended from the standpoint of the insured." 720 So.2d at 1076. See: *U.S. Fire Ins. Co. v. J.S.U.B.*, 970 2d at 877-878.

In evaluating an insurer's obligation, if any, to pay a claim, the issues are: is the loss "covered" under the policy terms; if so, do any exclusions apply to diminish or eliminate coverage; finally are there exceptions to the exclusions that restore coverage. See: Concurring Opinion, *U. S. Fire Ins. Co. v. J.S.U.B.*, 979 So.2d at 891, 892-893, [citing *American Family Mutual Insurance Co. v. American Girl, Inc.*, 673 NW 2d 65, 73 (Wis. 2004)]. Under Florida law, ambiguities in an insurance policy are resolved in favor of coverage. *Taurus Holdings, Inc. v. U.S. Fidelity & Guarantee Co.*, 913 So.2d 528 (Fla. 2005); *Garcia v. Federal Ins. Co.*, 969 So.2d 288 (Fla. 2007). Exclusions are construed narrowly and most significantly, the insurer bears the burden of demonstrating that an exclusion bars coverage. See: *United Concrete Pipe Co. v. Bould*, 437 So.2d 1061 (Fla. 1983); *Herrera v. C.A. Seguros Catatumbo*, 844 So.2d 644 (Fla. 3d DCA 2003).

The property damage, lost profits and additional expense damages awarded to FFIC are "covered losses". Under the facts adduced in the Underlying Action, neither the Exclusions nor any miscellaneous policy provisions raised by GERLING are applicable and none operate to deny or otherwise exclude FFIC's Claim for Relief. GERLING's CGL policy provides $1,000,000.00 in

PCOH coverage [4] to satisfy the Underlying State Court Judgment along with coverage for pre-judgment interest, post judgment interest on the **full** judgment amount plus Costs Awarded to FFIC per the Policy's "Supplementary Payments Provision" (SPP). D.E. 29-1, P. 6 of 13; 29-2; 29-3.

### 1.    The GERLING policy provides $1,000,000.00 in PCOH coverage to satisfy the Underlying Judgment

The GERLING policy "Declarations" provides PCOH coverage with an "aggregate limit" of $2,000,000.00 and a "per occurrence" limit of $1,000,000.00. The policy states:

### SECTION III "LIMITS OF INSURANCE"

> 3.    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "Products-Completed Hazard." …
>
> 5.    Subject to 2. or 3. above, which ever applies, the Each Occurrence Limit is the most we will pay for the sum of:
> a.    Damages under Coverage A.
> D.E. 29-1

Subject to the grant of coverage and applicable exclusions, the PCOH limit for this claim is $1,000,000.00 (exclusive of SPP obligations). **SECTION V – "DEFINITIONS"** states in pertinent part:

> 14.    "Products-Completed Operations Hazard"
> a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> (1)    Products that are still in your physical possession; or
> (2)    Work that is not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

---

[4] In *Taurus Holdings,* the Court contrasted the products hazard exclusion involved in that case to products-completed operations hazard coverage stating "Taurus' policy, for example, contains an optional products-completed operations hazard coverage that exactly dovetails the exclusion. Essentially, the exclusion and the optional coverage are mirror images, containing the same definition of a products-completed operations hazard. *Therefore, the optional coverage covers everything the exclusionary provision excludes.* An insured such as *Taurus* has the option of purchasing such coverage." (Emphasis supplied). Id at 538.

        (a)     When all of the work called for in your contract has been completed.

        (b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one jobsite.

        (c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. [D.E. 29-1]

FFIC's Insureds sustained "property damage" as defined in the GERLING policy [D.E. 29-1, Sec. V., ¶ 15] which occurred away from premises owned or rented by GENCOR. The property damage occurred when the batch plant was operable and otherwise complete with the exception of Calvin Dixon's "service", "correction" or "repair" of the temperature control system [D.E. 36-1, Ex. 1]. As stipulated pretrial, at the time of the explosion, GENCOR had delivered all the equipment called for in the contract. BASIC RESOURCES/GEORGE REED personnel had completed erection and installation of the equipment. See: D.E. 36-2, Ex. 1. Based upon trial testimony, the plant had been certified by the State of California and was operational as of April 18, 2001, before the explosion, D.E. 49-2, Vol. 2, P. 292. Subsection (2)(c) of the PCOH definition is satisfied and covers this loss subject to the limitation set forth in **SECTION I** of the policy which states:

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABIITY

1. Insuring Agreement
    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)    The "bodily injury" or "property damage" occurs during the policy period.

This Court has previously ruled that GENCOR is "legally obligated to pay" the Final Judgments entered non personam against GENCOR.[5] The Judgments resulted from "property damage" including physical injury to tangible property and loss of use of that property, caused by an "occurrence". Clearly, the explosion was an "accident" which occurred in the "coverage territory" during the policy period[6] as those terms are defined in the policy. D.E. 29-1, Sec. V, ¶ 12, 14, 15. In accordance with the Insuring Agreement, subject to exclusions or other limiting conditions, (which GERLING has the burden to establish) FFIC is entitled to recover One Million Dollars, the available PCOH policy limit.

**Exclusion 2.b. Regarding "Contractual Liability" is not applicable,** Exclusion 2.b. provides in pertinent part:

2.    **Exclusions**

This insurance does not apply to:

---

[5] See: D.E. 39, Order Denying Motion for Judgment on the Pleadings. FFIC has "standing" to maintain this claim Section IV, ¶ 3 "…a person or organization may sue us to recover on an agreed settlement or on a Final Judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance." D.E. 29-1, SECTION IV.

[6] Gerling admits that the Gerling policy was in effect at the time of the explosion. D.E. 40, ¶ 4, ¶ 12.

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement.

In *RAD Source Tech, Inc. v. Colony National Insurance Company, 914 So.2d 1006 (Fla. 4th DCA 2005)* the insurer attempted to deny coverage to a manufacturer of medical equipment arising from a claim alleging that the manufacturer breached its contract to deliver that equipment to a customer based upon the contractual exclusion involved herein. The Court rejected the insurer's position and held that the purchase order between *RAD Source* and its customer did not include any language wherein the insured assumed liability to its customer. *RAD Source* is consistent with case law throughout the Country that liability "incurred' because of the existence of a contract is not liability "assumed" thereby. See: *Amer. Fam. Mut. Ins. Co. v. American Girl, Inc., 673 NW 2d 65 (Wisc. 2004)*, wherein the Wisconsin Supreme Court considered whether the "contractually-assumed liability" exclusion applied to a breach of contract claim, and rejected the insurer's assertion. The Wisconsin Supreme Court quoted a commentator stating:

Although, arguably, a person or entity assumes liability (that is, a duty of performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the CGL policy and other liability policies an "assumed" liability is generally understood and interpreted by the courts to mean the liability of a third party, which liability one "assumes" in the sense that one agrees to indemnify or hold the other person harmless. 2. Roland H. Long, the Law of Liability Insurance, Section 10.05 [2], 10-56, 10-57 (2002). Id. at 79-81

The term "assumption" must be interpreted to add something to the phrase "assumption of liability in a contract or agreement." Reading the phrase to apply to all liability sounding in contract renders the term "assumption" superfluous. We conclude that the contractually-assumed liability exclusion applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to preclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally. Id at 81.

*American Girl* identifies numerous cases which have held that the contractually assumed liability exclusion refers to a specific contractual assumption of liability by the insured as exemplified by an indemnity agreement. Citing to 21 Holmes, Holmes' Appleman on Insurance Section 132.3, 40. See also: *Musgrove v. Southland Corp.*, 898 Fd.2d 1041, 1044 (5th Cir 1990); *Action Auto Stores v. United Capital Insurance Co.*, 845 F.Supp. 428, 442 (W.D. Mich. 1993); *Gibbs M. Smith, Inc. v. United States Fidelity and Guarantee Co.*, 949 P.2d 337, 341 (Utah 1997); *Marlin v. Wetzel Co. Board of Education,* 212 W.VA. 215, 569 SE2d 462, 469 (W.VA. 2002).

Most recently, in *U.S. Fire Ins. Co. v. J.S.U.B.*, the Florida Supreme Court relied on *American Girl* to reject the insurer's assertion that the assumed liability exclusion removes coverage when a claim is based upon a breach of contract stating:

> If *U.S. Fire* intended to preclude coverage based on the cause of action asserted, it was incumbent on *U.S. Fire* to include clear language to accomplish this result. See: *Container Corp. of America v. Maryland Casualty Company*, 707 So.2d 733, 736 *(Fla. 1998)* ("had Maryland wish to limit container coverage to vicarious liability, it could have done so by clear policy language). In fact, there is a breach of contract endorsement exclusion, not present in the CGL policy at issue in this case, that excludes coverage for breach of contract claims. See: *B. Hall Contracting, Inc. v. Evanston Insurance Co.*, 447 F.Supp.2d 634, 639 (N.D. Text. 2006).

Herein, GENCOR did not agree to defend, indemnify or hold harmless BASIC RESOURCES/GEORGE REED. D.E. 49-2, Ex. 3. GENCOR did not contractually "assume" liability. D.E. 49-2, Ex. 3; 49-2, Composite Ex. 1; 29-2. See: *RAD Source, American Girl, Inc*. The GERLING policy does not contain a "Breach of Contract" Exclusionary Endorsement. The "assumed liability" Exclusion is inapplicable.

> **3.      Exclusion 2.J. relating to "Damage to Property" is inapplicable.**
>
> **Exclusion 2.J** provides:
>
> **2.      Exclusions**
>
> This insurance does not apply to:
>
> **J.      Damage to Property**
>
> "Property Damage" to:
>
> (1)      Property you own, rent, or occupy;

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard". D.E. 29-1.

Exclusion 2.J "is a combination of the care, custody or control and the alienated premises exclusions of the 1973 CGL Coverage part and various Broad Form Property Damage (BFPD) exclusions." Appleman's 3d Ed § 1329 at P 148. SECTION I Exclusion 2.J.(6) does not apply to "property damage" included in the PCO hazard. SECTION I Exclusion 2.J.(5) is similarly inapplicable because service, repair or maintenance does not amount to "performing operations" on real property.[7] GERLING has acknowledged the foregoing in its Affirmative Defense 11 and 12. Therein, GERLING asserts that to the extent installation of the plant was allegedly completed, the "damage to your work" exclusion of the GERLING policy would apply (as opposed to the "property damage" exclusion) and "In the alternative, to the extent that GENCOR's work was not

---

[7] To the extent that Exclusion 2.J.(5) is applicable notwithstanding application of the PCOH, the only item subject thereto would be direct damage to the control center as the "particular part" of the property upon which Calvin Dixon was "performing operations" at the time of the explosion. The cost to replace the Control Center was $50,000.00. (Bates Stamped: 423, 424, 280 (Tr. Ex. 3)). _American Equity Insurance Co. v. Don Van Ginhoven_, 788 So.2d 388 (Fla. 5th DCA 2001); _Minergy Neehan LLC v. Rotary Dryer Parts, Inc._, 2008 U.S. Dist. LEXIS 33814 (E.D. WI April 24, 2008).

completed at the time of the explosion, the "Damage to Property" exclusion of the HDI-GERLING

policy would bar FFIC's claims in whole or in part." D.E. 40, Aff. Def. 11, 12. Further, GERLING

responded to FFIC's Interrogatory # 13 regarding the "damage to property" exclusion stating:

> If GENCOR's obligations under the written contract are not deemed completed at
> the time of the explosion, the GERLING policy contains a provision that excludes
> damage to property for work performed. This provision states that the insurance does
> not apply to property damage to "[t]hat particular part of any property that must be
> restored, repaired or replace because 'your work' was incorrectly performed on it."
> This exclusion "does not apply to 'property damage' included in the 'products-
> completed operations hazard.'" Therefore, if it is determined that the plant was not
> complete at the time of the explosion, then this exclusion for damage to the property
> would apply, and GERLING is not obligated to indemnify GENCOR for the costs of
> restoring, repairing or replacing the plant. D.E. 55, Ex. 1.

In *Oak Ford Owners Assoc. v. Auto Owners Ins. Co.*, 510 F.Supp. 2d 812, 2007 U.S. Dist.

*LEXIS 14453 (M.D. Fla., Feb. 28, 2007)* the Court considered applicability of a standard 2.J

Exclusion. In *Oak Ford*, the insured sought coverage for sums it became liable to pay regarding a

dredging project undertaken on neighboring land. As a result of the insured's removal of fill,

environmental impacts occurred, reducing the functional value of vegetation and wildlife utilization

of vegetation at the bottom of a creek. In evaluating the "damage to property" exclusion the Court

stated:

> As noted, exclusions 2.j.(5) and 2.j.(6) operate in tandem, excluding coverage for
> property damage arising from ongoing work and for repair or restoration of property
> because of deficient work. See: [*American Equity Ins. Co. v. Don Van Ginhoven*, 788
> *So.2d [388 at 391] (Fla. 5th DCA 2001)]* (making no distinction between 2.J. (5) and
> 2.J. (6) in the analysis). These exclusions do not apply, however, to off-premises,
> property damage arising from *completed* work.

The Court determined that "the existence of coverage turns on whether the damage to the real

property 'arose out of' ongoing work or completed work." *Oak Ford, 510 F.Supp. 2d 812 Id at 820.*

As stipulated by GENCOR and FFIC, at the time of the explosion, GENCOR had delivered

all the equipment called for in the contract and service tests of the electrical system were being

performed by GENCOR employee Calvin Dixon. See: D.E. 36-2, Ex. 1. At the time of the

explosion, construction of the plant was complete and "stickered" by the State of California meaning it was ready for operation [D.E. 49-2, Comp. Ex. 1: Tr. Tr. Vol. 2, P. 292, L. 16-17]. The plant had produced "batch"; clearly, the component parts supplied by GENCOR had been put to their intended use by GEORGE REED. This means GENCOR's "work" was not "on going." Exclusion 2.j. "Damage to Property" does not apply.

### 4. Exclusions 2.K., "Damage to Your Product" and 2.L. "Damage to Your Work", are inapplicable

SECTION I Exclusions 2.k. and 2.l state:

**2. Exclusions**

This insurance does not apply to:

**K. Damage to Your Product**

"Property damage" to "your product"[8] arising out of it or any part of it.

**L. Damage to Your Work**

"Property damage" to "your work"[9] arising out of it or any part of it and included in the "products-completed operations hazard."

The "Damage to Your Product" and "Damage to Your Work" Exclusions are typically labeled the "business risk" exclusions. See: *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979); *Amer. Girl*, 673 N.W. 2d 65 at 74. The business risk exclusions are intended to preclude coverage for defects or deficiencies in performance which can be calculated and allocated as part of contract negotiations. By comparison, insurance coverage is premised upon risks and losses which

---

[8] The Gerling policy defines "Your Product" as: a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You; (2) Others trading under your name; or (3) A person or organization whose business or assets you have acquired; and b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. "Your product" includes: a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and b. The providing of or failure to provide warnings or instructions. D.E. 29-1 Sec. V, ¶ 18.

[9] The Gerling policy defines "Your Work" as: a. Work or operations performed by you or on your behalf; and b. Materials, parts or equipment furnished in connection with such work or operations. "Your work" includes: a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and b. The providing of or failure to provide warnings or instructions. D.E. 29-1 Sec. V, ¶ 19.

involve "statistical loss probability". In <u>Anderson, Insurance Coverage Litigation,</u> Section 14.07 [a] at 14-117 the author states:

> Commentators suggest that the theory behind business risk exclusions "is that an insured should remain liable for losses that are within its control, such as the quality and conformity of its product." As stated by another commentator, the difference lies in the distinction between 'business risks" and "insurable risks":

> Risk may be grossly divided into two types: business risks and insurable risks. Business risks logically involve the success or failure of the particular business, based upon factors such as management's ability to gauge the market, product development/research, and logistics. In order to assure a profit and minimize losses, businesses employ experienced managers, accountants, and other skilled personnel. The risk of profit or loss is thus a distinguishable "business risk."

> Insurable risks do not hinge on management ability and success; rather, they turn on fortuitous losses. Insurable risks involve statistical loss probability. The application of statistical abstract to certain factual parameters drives insurance underwriting. Insurable risks are thus fundamentally different from business risks. It follows that commercial general liability insurance policies cover only "insurable risks" and exclude business risks.

Thus, to the extent that an insured is held liable for property damage resulting from "fortuitous events" (like explosions) as opposed to a failure of product conformity, CGL insurance is bound to pay for the policyholder's liability.

By way of example, if the plant failed to produce the quantity or quality of batch contemplated by GEORGE REED as a result of a defect or deficiency in the components supplied by GENCOR, or if the "work" performed by Calvin Dixon was untimely causing the plant not to open as anticipated, any losses arising therefrom would be business risks not subject to coverage under the GERLING policy. Similarly, if an insured's work or product is "defective" making the product inherently less valuable resulting in damage to the product or work itself, there is no coverage for the cost of repairing or replacing the defective product or work. Conversely, if the loss is occasioned by an unanticipated calamity or "accident" coverage is available. Thus, the primary issue in determining whether a claim is subject to the "Business Risk" exclusions is whether defects

in the "product" or "work" itself makes the product or work "inferior" or alternatively, whether the finished product or other property is damaged as a result of the product or work. See: *Maryland Cas. Co. v. Reeder*, 270 Cal Rptr 719 (Cal. App. 4 Dist 1990) wherein the court quoted from *Hamilton Die Cast, Inc. v. United States Fidelity and Guarantee Co.*, 508 F.2d 417, 419-420 (7 Cert. 1975) stating:

> "We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy. For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not been 'injury to or destruction of tangible property' [within the coverage provisions]."

The purpose for the business risk exclusions is to remove coverage for defects in a product or workmanship that simply damages or degrades itself without causing damage to other property or the finished product.

In *RAD Source*, the insurer denied coverage to the manufacturer of a blood irradiation machine based upon the standard "your product" exclusion because the machine was damaged "in transit." 914 So.2d 1006 at 1007. The Court rejected the insurer's reliance on the "Your Product" exclusion stating:

> The policy excludes "property damage" to "your product" arising out of it or any part of it. The language "arising out of it or any part of it" limits the scope of the exclusion to situations wherein the product itself is defective. In this case, the university does not allege that the irradiator was defectively manufactured or that a defect within the machine caused the damage. As such, it was error to grant Colony National's Motion for Summary Judgment based on the "your product" policy exclusion. Id at 1009.

Under Florida law, the "Your Product" exclusion is inapplicable where there is no evidence that the property damage was caused by a product's defective manufacture i.e., from a defect within the product itself. In the underlying case, there was no evidence at trial that established that any

"product" manufactured by GENCOR was "defective" or that there was a "defect" in the component parts sold by GENCOR. Quite the contrary, FFIC withdrew all of its pretrial claims asserting "products liability" theories D.E.49-2, Ex. 2. The only evidence adduced at trial established that the explosion and resulting property damage to the completed plant occurred during the course of Calvin Dixon's servicing/calibrating of the temperature control system and was caused by his failure to use due care rather than a "product defect." D.E. 36-1, Ex. 1; 49-2, Composite Ex. 1.

In addition to the fact that no defect in any product caused any property damage, the completed plant was neither GENCOR's "product" nor "work." GENCOR did not build the plant. GENCOR did not sell a fully-assembled plant to FFIC's insureds, just component parts. The plant's construction was completed **before** Calvin Dixon arrived to "service", "correct" or "repair" the temperature control system which was the "work" out of which the explosion arose. The fully-assembled plant was never the work or product of GENCOR. See: *Broward Marine, Inc. v. Aetna Insurance Company*, 459 So.2d 330 (Fla. 4th DCA 1984); *Cotton States Mutual Insurance Company v. Norell Heating & Air Conditioning Company, Inc.*, 370 So.2d 270 (Ala. 1979). The "Damage to Your Product" exclusion is inapplicable to deny FFIC the Relief Sought because there is a total failure of any evidence demonstrating that the explosion and resulting property damage was caused by a defect in any part manufactured by GENCOR.

Like the "Damage to Your Product" exclusion, the "Damage to Your Work" exclusion is typically intended to compel contractors to remain responsible for defective or deficient workmanship which renders a project less valuable than expected by the owner. Most of the cases dealing with this post-1986 Standard ISO "Damage to Your Work" exclusions involve claims for defects in construction performed by general contractors. *U.S. Fire Ins. Co. v. J.S.U.B.*; *Weedo v. Stone-E-Brick, Inc.*; *Amer. Fam. Mut. Ins. Co. v. Amer. Girl, Inc.* These cases establish that the

general contractor's "work" encompasses physical construction of the allegedly defective condition either directly or through subcontractors. Here, GENCOR did not act in the capacity of a general contractor. GENCOR has stipulated that BASIC RESOURCES/GEORGE REED personnel "completed erection and installation of the equipment" prior to the explosion. D.E. 36-2, Exhibit 1. GEORGE REED built the asphalt plant with its own forces. GENCOR was not "on-site" and was not involved in construction of the plant. Vol. 1. P. 84, L. 7-19; P. 88-89. In this case, the "work" performed by GENCOR through Calvin Dixon at the time of the explosion was limited to service on the Control Center electrical system including the temperature controls. Calvin Dixon's "work" in no way included construction of the finished plant and he had nothing to do with the stationary cold feed system, the stationary dryer, the batch tower, the knockout primary collector mounted over dryer, the stationary bag house, the stationary mineral/dust silo with weigh batcher, the deluxe stationary silo with safety gates, the deluxe salt conveyor with cleanout , the two way top of silo transport conveyor, the flop chute, the hot oil hy-way heater, the two 30,000 gallon indirect fire AC skidded tanks or the two 4 " batch AC pumps and 4" batching/recirculating piping for two tanks. See: GENCOR contract, Summary of components D.E. 49-2, Ex. 3, See also: *Maryland Cas. v. Reeder, 270 Cal. Rptr. 719 at 725*, wherein the Court stated: "The ISO explains the broad form endorsement is intended to exclude only damages caused by the named insured to his own work" and *American Equity Ins. Co. v. Don Van Ginhoven, 788 So.2d 388 (Fla. 5th DCA 2001)*.

The physical damage to the finished plant caused extensive loss of use of the plant and additional expenses delineated in the Final Judgment and exhibits which in no way was part of any "work" performed by Calvin Dixon. Calvin Dixon's "operation" at the time of the explosion resulted in direct damage to the Control Center, resulting in $50,000.00 for replacement costs. The remaining $929,787.00 in physical damage is related to the remainder of the plant, including demolition, new erection, etc. Even if the cost to replace the Control Center is deducted from

FFIC's award, GERLING remains liable for $1,000,000.00 because the damage subject to coverage far exceeds the available PCOH policy limit.

### 5.    The "Engineers, Architects or Surveyors Professional Liability" Exclusion Endorsement is inapplicable

The GERLING policy contains a very limited/restricted professional services endorsement whose exclusionary language applies only to "Engineers, Architects or Surveyors Professional Liability" which provides in pertinent part as follows:

> The following exclusion is added to Paragraph 2., Exclusions of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I-COVERAGES)** and Paragraph 2.,Exclusions of **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I-COVERAGES):**
>
> > This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
> >
> > **Professional services include:**
> > **1.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and**
> > **2.    Supervisory, inspection, architectural or engineering activities.**

GERLING asserts that this exclusion defeats coverage for damages caused by GENCOR's failure to use due care in servicing the plant. The exclusion is inapplicable. There is a total lack of evidence that Calvin Dixon was an architect, engineer or surveyor at the time he blew up the plant. He was a technician, and no more. D.E. 49-2, Composite Ex. 1, Tr. Tr. Vol. 2, P. 166-168. In *Aerothrust Corporation v. Granada Insurance Company, 904 So.2d 470 (Fla. 3d DCA 2005)*[10] the Court

---

[10] It is interesting to note that in *Aerothrust*, coverage was denied based upon a PCO exclusion; presumably, if the policy contained PCO coverage (as is the case here), the claim would have been covered based upon the "mirror image" concept described in *Taurus*.

rejected an insurer's similar argument that a hoist inspector was a "professional services" provider,

stating:

> Under the Doctrine *Noscitur a sociis*, a word is known by the company it keeps, and one must examine the other words used in a string of concepts to derive the drafters' intent. See: *Nehme v. Smith Kline Beach and Clinical Laboratory, 863 So.2d 201, 205 (Fla. 2003).* It is apparent from the types of services listed that the services which are meant to be excluded as professional are those which require specialized training. This is consistent with the general definition of "professional." See: Black's Law Dictionary 1246 (8th Ed. 2004) (defining "professional" as a "[a] person who belongs to learned profession or whose occupation requires a high level of training and proficiency.") Therefore, in accordance with the Doctrine of *Noscitur a sociis*, although the exclusionary list includes "inspection...services," only those inspections services which require specialized training should be considered professional services. In an affidavit, Sunshine's president stated that personnel who perform inspections on cranes and hoists such as those performed by *Aerothrust* are not required to have any specialized training or experience, or even a college or high school diploma. He further stated that there is no entity that certifies or accredits people who perform such inspections, or that regulates or sets forth standards for such personnel. Under these circumstances, the inspection and maintenance of hoists is not a professional service within the meaning of the professional services' exclusion. Therefore, we conclude that the professional services exclusion does not exclude coverage for the damages which *Aerothrust* sustained.

Similar results were reached in *Cochran v. BJ Services Co., USA, 302 F.3d 499 (5th Cir. 2002)* and

*Thermo Terratech v. GDC Enviro Solutions, Inc., 265 F.3d 329 (5th Cir. 2001)* wherein those courts

looked to the services that were provided which did not require specialized training.

　　　　GERLING's professional services exclusion is a "short-list," applicable only to "engineers,

architects or surveyors professional liability." "Professionals" in Florida are viewed as an exclusive

group. Insurance agents are not "professionals." Licensed engineers are professionals. *Pensacola*

*Executive House Condominium Association v. Baskerville-Donovan Engineers, Inc., 566 So.2d 850,*

*851 (Fla. 1st DCA 1990), approved 581 So.2d 1301 (Fla. 1991).* In *Moransais v. Heathman, 744*

*So.2d 973 (Fla. 1999)* the Florida Supreme Court held that a "professional" must be required to

have a four-year college degree as a mandatory condition for state licensure. Most recently, in

*Cessna Aircraft Company v. Avior F Technologies, Inc. 33 FLWD 1535 (Fla. 3d DCA, Opinion*

*Filed June 11, 2008)* the Court held that mechanics who service aircraft are not professionals stating "while we acknowledge the experience and skill both auto and aircraft mechanics possess, neither group meets the legal definition of a "professional." Id at footnote 7.

Herein, Calvin Dixon was not a licensed professional nor did he hold a four year college degree. Nothing in the court record indicates that Calvin Dixon was at any time a professional engineer, architect or surveyor nor that Mr. Dixon was undertaking professional activities. FFIC did not sue GENCOR based upon any claim of "professional malpractice" and GENCOR did not assert that the professional malpractice statute of limitations, F.S. § 95.11(4), was in any way applicable to this lawsuit. The "engineers, architects or surveyors professional liability" exclusion does not apply.

> **6.    The "Other Insurance" Provision contained in the GERLING Policy does not apply to Reduce or Exclude Coverage**

The "other insurance" provision in the GERLING's Policy provides:

> SECTION    IV-COMMERCIAL    GENERAL    LIABILITY CONDITIONS
> **4.    Other Insurance**
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
> > **a.    Primary Insurance**
> > This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

As a matter of law, "other insurance" refers to two or more policies insuring the same risk, and the same interest, for the benefit of the same person, during the same period. *Burns v. Cal Fair Plan, 61 Cal. Rptr 3d 809, 816-17 (Cal. Ct. App. 2007)*. See also: *Employers Insurance Company of Wausau v. National Union Fire Insurance Co., of Pittsburgh, Pennsylvania and Underwriters at Lloyds London, 2008 U.S. Dist. LEXIS 32312 (U.S.D.C. M.D. Fla. 2008); Saint Paul Fire & Marine*

*Insurance Co. v. Lexington Insurance Co.*, 2006 U.S. Dist. LEXIS 31397 (S.D. Fla., 2006); *Twin City Fire Insurance Co. v. Fireman's Fund Insurance Co.*, 386 F.2d 1272 (S.D. Fla. 2005).

Herein, it is unclear whether GERLING asserts by way of its 15th Affirmative Defense that the FFIC policy is "other insurance" available to GENCOR, or alternatively, whether some other liability policy issued to GENCOR also applies to cover this loss.[11] In relation to the former, the FFIC policy was not issued to GENCOR and does not provide liability coverage for GENCOR; clearly, FFIC's policy is not "other insurance" available to GENCOR. As to the availability of some additional liability coverage for GENCOR through another carrier, FFIC would be pleased to learn of the existence thereof. To date however, no such policies have been identified by GERLING or discovered by FFIC. There is no "other insurance" which applies to this loss.

### 7.    The SPP portion of the GERLING Policy provides coverage for Costs awarded to FFIC along with Pre-Judgment and Post-Judgment Interest

The GERLING Policy provides Supplementary Payment coverage which states in pertinent part:

### SUPPLEMENTARY PAYMENTS –COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

> 5.    All costs taxed against the insured in the "suit".
> 6.    Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
> 7.    All interest on the full amount of any judgment that accrues after entry of the judgment and before we

---

[11] In Answer to FFIC's Interrogatory #16 regarding the "other insurance" affirmative defense, Gerling states "FFIC's coverage of the damages from the explosion of the plant pursuant to its commercial general liability policy to George Reed/Basic Resources could be considered "other insurance" for the plant as the issue of whether Gencor's obligation under its written contract to sell the plant and provide services had been completed."

have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance. See: D.E. 29-1, P. 6 of 13.

These payments will not reduce the limits of insurance.

As set forth above, GERLING is obligated to pay "all costs taxed against the insured", pre-judgment interest awarded against the insured on that part of the judgment GERLING pays and all post-judgment interest on the full amount of the judgment prior to payment of that part of the judgment included within the policy limits. Additionally, supplementary payments are "over and above" the available limits of insurance. Therefore, in addition to the amount owed under Coverage A pursuant to the PCOH limit of One Million Dollars, GERLING is obliged to pay the costs taxed against GENCOR in the Underlying State Court Action, pre-judgment interest on the amount that is covered and post-judgment interest on the full amount of the judgment that has accrued after entry of judgment and before GERLING has paid or offered to pay the part of the judgment that is within the applicable limit of insurance.

Here, it is admitted that GERLING defended GENCOR in the State Court Action (D.E. 40, ¶ 14) which resulted, *inter alia*, in a Final Judgment Awarding Costs to FFIC against GENCOR. (D.E. 29-3). As a matter of law, GERLING is "legally obligated" to satisfy the $42,000.00 Cost Judgment regardless of the amount recovered by FFIC pursuant to the PCOH coverage. See: *Pacific Employers Insurance Company v. Alex Hofrichter, P.A.*, 670 So.2d 1023 (Fla. 3d DCA 1996), (holding that the Supplementary Payments provision of a CGL policy applies independent of whether or not there is coverage.); *Tri-State Insurance Company of Minnesota v. Fitzgerald*, 593 So.2d 1118 (Fla. 3d DCA 1992); *Scottsdale Insurance Co., v. Deer Run Property Owners Association*, 642 So.2d 786 (Fla. 4th DCA 1994).

FFIC is entitled to recover the full One Million Dollars PCOH coverage limit; therefore, FFIC is also entitled to pre-judgment interest on that sum from the "date of loss" to the date Final

Judgment was entered and calculated at the statutory rate (which totals $467,478.90), post-judgment interest on the entire judgment until payment by GENCOR, (which amounts to $222,827.22 through August 8, 2008) and post-judgment interest on the cost award (which totals $5,506.57). Pursuant to the SPP, FFIC is entitled to recover $737,812.60 over and above the PCOH policy limits.

## V. CONCLUSION

GERLING is legally obligated to satisfy the Judgment entered in favor of FFIC and against GENCOR up to the available policy limits of One Million Dollars pursuant to GENCOR's PCO Hazard coverage. None of the exclusions raised by GERLING defeats coverage. Because the "work" performed by Calvin Dixon at the time of the explosion involved "service" to the temperature control system in the Control Center, the damages incurred by FFIC's insureds subject to the Final Judgment are covered under the PCOH. Because physical damage to property, lost profits and additional expense awards exceed the PCOH policy limit even if the $50,000.00 cost to replace the Control Center is deducted therefrom, FFIC is entitled to recover One Million Dollars under the PCOH, $42,000.00 in costs taxed against GENCOR, $467,478.90 in pre-judgment interest on the Final Judgment, $222,872.22 in post-judgment interest and $5,506.57 in interest on the Cost Judgment.

**WHEREFORE**, FIREMAN'S FUND INSURANCE COMPANY a/s/o BASIC RESOURCES, INC. and GEORGE REED, INC., respectfully prays that this Court determine that GERLING has breached the terms of its policy of insurance regarding satisfaction of the Final Judgments rendered against GENCOR and that Judgment should be entered in favor of FFIC and against GERLING in the total sum of $1,737,812.60 exclusive of taxable costs and attorney's fees incurred in prosecuting this action. FFIC further requests that this Court reserve jurisdiction to award costs and to consider entitlement to attorney's fees pursuant to F.S. § 768.79 along with any other relief which the Court deems just and appropriate.

**DATED**: _3rd_ DAY OF _July_ 2008.

By:

JON D. DERREVERE
Fla. Bar No.: 330132
Derrevere, Hawkes & Black
470 Columbia Drive, Bldg B
West Palm Beach, FL 33409
jdd@derreverelaw.com

*Admitted Pro Hac Vice*

Counsel for Plaintiff

CHARLES K. BRUNN
CBN: 28021
BRUNN & FLYNN
928 12th Street, Suite 200
P.O. Box 3366 (95353)
Modesto, California 95354
Email: CBrunn@Brunn-Flynn.com

Co-counsel for Plaintiff

PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

**PROOF OF SERVICE**

*Fireman's Fund Ins. Co. v. Gerling American Ins.*

United States District Court, Northern District of California

Case No.: C 07 06302 CRB

I am employed in the City and County of West Palm Beach, State of Florida. I am over the age of 18 and not a party to the within action; my business address is: Derrevere, Hawkes & Black, 470 Columbia Drive, Building "B", West Palm Beach, Florida 33409.

On this 3rd day of July, 2008, I served the foregoing document(s) described as:

**PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT**

On the interested parties in this action by placing [  ] the original [X] a true copy thereof enclosed in a sealed enveloped addressed as stated below:

**[ ] BY REGULAR MAIL:**

I caused such envelopes to be deposited in the United States Mail at West Palm Beach, Florida with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with United States postal service each day and that practice was followed in the ordinary course of business for the service herein attested to.

**[X] BY ECF:**

I HEREBY CERTIFY that on this 3rd day of July, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on: TINO X. DO, Barger & Wolen, LLP, 650 California Street, 9th Floor, San Francisco, CA 94108, tdo@barwol.com and CHARLES K. BRUNN, Brunn & Flynn, 928 12th Street, Suite 200, P.O. Box 3366, Modesto, CA 95354, CBrunn@Brunn-Flynn.com via transmission of Notices of Electronic Filing generated by CM/ECF.

**[X] FEDERAL** - I declare that I am employed in the office of a member of the Florida Bar, admitted to practice in all Florida Courts and who makes this Pro Hac Vice Application, that our co-counsel and sponsor is a member of the bar of this California Court, and at their direction this service was made. Executed at West Palm Beach, Florida on this 3rd day of July, 2008.

NAME: *Deanna N. Menendez*                    Signature: