1   Thomas R. Beer (148175), tbeer@barwol.com
    Tino X. Do (221346), tdo@barwol.com
2   BARGER & WOLEN LLP
    650 California Street, 9th Floor
3   San Francisco, California  94108-2713
    Telephone:   (415) 434-2800
4   Facsimile:   (415) 434-2533

5   Attorneys for Defendant
    GERLING AMERICA INSURANCE COMPANY

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  FIREMAN'S FUND INSURANCE            )   CASE NO.:  3:07-CV-06302-CRB
    COMPANY, a foreign corporation a/s/o )
12  BASIC RESOURCES, INC. and GEORGE    )   **DEFENDANT GERLING AMERICA**
    REED, INC., a foreign corporation,   )   **INSURANCE COMPANY'S NOTICE OF**
13                                       )   **MOTION, MOTION, AND**
                Plaintiff,               )   **MEMORANDUM OF POINTS AND**
14                                       )   **AUTHORITIES IN SUPPORT OF**
            vs.                          )   **MOTION FOR SUMMARY JUDGMENT**
15                                       )
    GERLING AMERICA INSURANCE            )   Date:       August 8, 2008
16  COMPANY, a foreign corporation,      )   Time:       10:00 AM
                                         )   Courtroom:  8
17              Defendant.               )
                                         )
18

19

20

21

22

23

24

25

26

27

28  j:\office2\29218\011\08pleadings\msj fnl.doc

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO: 3:07-CV-06302-CRB

# TABLE OF CONTENTS

PAGE

1. INTRODUCTION ...................................................................................................1

2. STATEMENT OF FACTS .......................................................................................2

    A.    The Gerling Policy and Relevant Policy Provisions .......................................2

    B.    FFIC's Judgment Against Gencor from the Underlying Florida State Court Action.........................................................................................................6

        (1)    Gencor's written contract with George Reed .......................................6

        (2)    Installation and explosion of the Plant .................................................6

        (3)    FFIC's lawsuit against Gencor in Florida State Court .........................7

            (a)    FFIC's breach of contract claims against Gencor.......................7

            (b)    FFIC's negligence claims against Gencor ...................................8

3. ARGUMENT ........................................................................................................10

    A.    Standard on Summary Judgment ..................................................................10

    B.    FFIC Has No Standing to Challenge Gerling's Declination of Coverage ....10

        (1)    The Florida "non-joinder" statute does not give FFIC standing to challenge Gerling's coverage decisions with regard to its insured ......10

    C.    FFIC's Claims Are Specifically Excluded by the Gerling Policy.................12

        (1)    The "Contractual Liability" exclusion bars FFIC's claims to coverage for the underlying loss................................................................................12

            (a)    Gencor assumed liability under the contract with FFIC's insured ............12

            (b)    Gencor's liability under the contract was established by FFIC's claims of defects to the Plant in the underlying state court action.............13

            (c)    Other courts apply the "Contractual Liability" exclusion in cases with similar facts................................................................................14

        (2)    The "Damage to Your Product" provision of the Gerling policy excludes coverage for FFIC's claims for damages.............................................15

            (a)    The Gerling policy does not provide coverage to damages to the insured's product itself.................................................................16

            (b)    Courts broadly interpret the phrase, "arising out of"................16

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

(c)  Under Florida law, the "Damage to Your Product" Exclusion is implicated by FFIC's claims that the Plant itself was defective ...............17

(3)  The "Damage to Your Work" Exclusion further bars coverage for FFIC'S claims that arise out of Gencor's workmanship ....................................17

(a)  The replacement or repair of an insured's work is not covered by liability policies......................................................................................18

(b)  FFIC's claims arise out of Gencor's work or operations...........................18

(c)  The "Damage to Your Work" Exclusion encompasses the insured's completed products or work......................................................................19

(d)  As the subcontractor exception is not at issue, the "Damage to Your Work" Exclusion applies and bars coverage for FFIC's claims ................19

(e)  Courts have applied the "Damage to Your Work" Exclusion in similar circumstances............................................................................20

(4)  The "Professional Liability" Exclusion bars coverage for FFIC's claims ...........21

(a)  The Gencor employee was performing field engineering services at the time of the explosion to the Plant..........................................................22

(b)  Courts broadly apply the "Professional Liability" Exclusion in similar cases ....................................................................................23

4.  CONCLUSION................................................................................................................24

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.:  3:07-cv-06302-CRB

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................................10

*Collett v. Insurance Co. of the West*, 64 Cal.App.4th 338 (1998).........................20

*DeMeo v. Frenchy's Worldwide Helmets, Inc.*, 732 So.2d 12 (Fla.App. 1999)...........11

*Dimmit Chevrolet, Inc. v. S.E. Fid. Ins. Corp.*, 636 So.2d 700 (Fla. 1993) ...................2

*Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800 (10th Cir. 1998) .................................16

*Hartzell Industries, Inc. v. Federal Ins. Co.*, 168 F.Supp.2d 789 (S.D. Ohio 2001) ...................16

*J.S.U.B., Inc. v. United States Fire Ins. Co.*, 906 So.2d 303 (Fla.App. 2005) ...............3

*Magill v. Owen Const. Co., Inc.*, 434 So.2d 520 (La.Ct.App. 1983) .............................16

*Rad Source Technologies, Inc. v. Colony Nat. Ins. Co.*, 914 So.2d 1006 (Fla.App. 2005) ..........14

*Ryan Homes, Inc. v. Home Indem. Co.*, 647 A.2d 939 (1994) ......................................18

*Stone v. Hartford Cas. Co.*, 470 F.Supp.2d 1088 (C.D. Cal. 2006) ...............................23

*Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So.2d 634 (La. 2007).........16

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal.App.4th 794 (2002)....................23

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871 (Fla. 2007).....................................19

*Universal Security Ins. Co. v. Spreadbury*, 524 So.2d 1167 (Fla.App. 1988) .............11

*Victoria's Secret Stores, Inc. v. Epstein Contracting, Inc.*, 2002 WL 723215 (Ohio App. 2002)...................14

*Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788 (1979)...................................................18

**Statutes**

Fed. R. Civ. P. 56(c)........................................................................................................10

Florida Statute § 627.4136 .....................................................................................10, 11

**Other Authorities**

2 Jeffrey W. Stempel, *Stempel on Insurance Contracts* § 14.13[D] at 14-224.9 (3d ed. Supp. 2007)..................................................................................................................20

-iii-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1
## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE THAT, on August 8, 2008, at 10:00 AM, or as soon thereafter as

3    the matter may be heard in Courtroom 8 before the Honorable Charles R. Breyer at the

4    above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94012,

5    Defendant Gerling America Insurance Company will move this Court for an order granting

6    summary judgment pursuant to Federal Rule of Civil Procedure 56 and for dismissal of Plaintiff

7    Fireman's Fund Insurance Company's entire complaint.

8    The motion is made on the grounds that Plaintiff Fireman's Fund Insurance Company does

9    not have standing to challenge Gerling's denial of coverage to its insured in the underlying action

10   brought by Fireman's Fund and its insureds, George Reed and Basic Resources against Gerling's

11   insured, Gencor Industries, Inc., which resulted in a judgment for breach of contract against Gencor.

12   Moreover, Plaintiff's lack of standing aside, Gerling's liability insurance policy provides no

13   coverage for alleged liability assumed under contract, alleged damage arising from the insured's

14   product, alleged damage arising from the insured's work, or alleged damage arising from

15   professional services rendered by the insured, based on exclusions that expressly bar coverage for

16   Plaintiff's claims.

17   The motion is based on the Notice of Motion and Motion, the accompanying Memorandum

18   of Points and Authorities, the Declaration of Thomas R. Beer in Support of Defendant Gerling

19   America Insurance Company's Motion for Summary Judgment, Defendant Gerling America

20   Insurance Company's Request for Judicial Notice, the pleadings and papers filed in this matter, the

21   pleadings and records in this case, and such other evidence as the Court may deem appropriate to

22   consider.

23   Dated:  July 3, 2008                                    BARGER & WOLEN LLP

24

25                                                          By:  _____/s/ Thomas R. Beer_____
                                                            THOMAS R. BEER
26                                                          TINO X. DO
                                                            Attorneys for Defendant GERLING
27                                                          AMERICA INSURANCE COMPANY

28   j:\office2\29218\011\08pleadings\msj fnl.doc

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO: 3:07-CV-06302-CRB

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

In its complaint for declaratory relief and breach of contract, Plaintiff Fireman's Fund Insurance Company ("FFIC") alleges that the insurance policy issued by Defendant Gerling America Insurance Company ("Gerling") provides coverage for damages FFIC obtained in an underlying lawsuit against Gencor Industries, Inc. ("Gencor"). That action arose out of an explosion of a completed asphalt plant designed and sold by Gencor, Gerling's insured. FFIC's arguments for coverage are contrary to the plain language and intent of the Gerling policy.

FFIC alleges that it is a third-party beneficiary of the Gerling policy based on a judgment for breach of contract its insured, George Reed ("Reed"), and Basic Resources ("Basic"), obtained against Gencor in the underlying Florida state court action. However, FFIC never obtained an assignment from Gencor to proceed against the Gerling policy and to challenge Gerling's declination of coverage. Gencor, in fact, never challenged Gerling's declination of coverage. Additionally, in the underlying action, FFIC's insured obtained a judgment solely for breach of contract damages arising out of the design, sale and start-up services for an asphalt plant pursuant to a written contract with Gencor. The claims for which FFIC now seeks reimbursement, as they were alleged in the state court action, are specifically excluded from coverage in the Gerling policy.

FFIC, as a as a non-party to the insurance agreement, has no standing to challenge Gerling's denial of coverage to Gencor. Gerling's declination was based on unambiguous policy provisions that preclude coverage for damages arising out of: (1) liability assumed under a contract; (2) damage to the insured's product; (3) damage to the insured's work; and (4), professional services performed by the insured. These exclusions plainly apply to the facts alleged and established in the underlying state court action against Gencor. In particular, liability for damage to the asphalt plant due to a construction defect was assumed by Gencor in a warranty provision contained in the written contract with Reed for delivery of the plant. Additionally, it is undisputed that the property damages at issue occurred from an explosion of the plant itself (i.e., the insured's product and the insured's work). Lastly, FFIC has acknowledged that the actions of Gencor's

j:\office2\29218\011\08pleadings\msj fnl.doc

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

1  employee in providing field engineering service may have caused the explosion.  Given these

2  undisputed facts, the exclusions contained in the Gerling policy apply and preclude coverage for

3  FFIC's claims even if FFIC had standing to litigate these issues.

4       As a matter of law, the Gerling policy does not provide coverage for FFIC's claims, and

5  Gerling's motion for summary judgment should be granted.

6  ## 2.    STATEMENT OF FACTS

7  **A.**    **The Gerling Policy and Relevant Policy Provisions**

8       Gerling issued a commercial general liability policy,[1] Policy No. 4003-527-GLP, to Gencor

9  for the period commencing June 30, 2000 to June 30, 2001.  (Plaintiff's Fourth Amended

10  Complaint, Ex. 1.)  The Gerling policy proves in relevant part:

11  **DECLARATIONS**

12  Limits of Insurance

13     •  General Aggregate Limit (Other Than Products-Completed Operations) – $2,000,000

14     •  Products-Completed Operations Aggregate Limit – $2,000,000

15     •  Each Occurrence Limit – $1,000,000

16  . . .

17  **SECTION I – COVERAGES**

18  **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

19  **1. Insuring Agreement**

20  a. We will pay those sums that the insured becomes legally obligated to pay as damages

21  because of "bodily injury" or "property damage" to which this insurance applies.

22  . . .

23

24  _____

25  [1] The policy is a post-1986 standard form commercial generally liability ("CGL") policy promulgated by the Insurance Services Office ("ISO"), an insurance industry service organization. *See Dimmit Chevrolet, Inc. v. S.E. Fid. Ins. Corp.*, 636 So.2d 700, 702 (Fla. 1993) (explaining that CGL policies "are standard insurance policies developed by insurance industry trade associations, and these policies are the primary form of commercial insurance coverage obtained by businesses throughout the country").  The main change in the post-1986 CGL policies is the inclusion of "products-completed operations hazard" coverage.  *See J.S.U.B., Inc. v. United States Fire Ins. Co.*,

28  -2-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

**2. Exclusions**

This insurance does not apply to:

b.  Contractual Liability

"Bodily injury" or "property damage"' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    (1)  That the insured would have in the absence of the contract or agreement; or

    . . .

k.  Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

    . . .

l.  Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

    . . .

Exclusion – Engineers, Architect, Or Surveyors Professional Liability

This endorsement modifies insurance provided under the following:

The following exclusion is added to paragraph 2., Exclusions of Coverage A – Bodily Injury and Property Damage Liability (Section I – Coverages):

This insurance does not apply to "bodily injury," "property damage" . . . arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by your or performing work on your behalf in such capacity.

Professional services include:

    1. . . .

906 So.2d 303, 308 (Fla.App. 2005).

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

2. Supervisory, inspection, architectural or engineering activities.

. . .

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to . . . any "suit" against an insured we defend:

1. All expenses we incur.

. . .

5. All costs taxed against the insured in the "suit."

6. Prejudgment interest awarded against the insured on that part of the judgment we pay

. . . .

These payments will not reduce the limits of insurance.

. . .

**SECTION IV – Commercial General Liability Conditions**

**3. Legal Action Against Us**

. . .

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part . . . .

. . .

**SECTION V – DEFINITIONS**

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

. . .

14. "Products-completed operations hazard"

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

. . .

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1    Work that may need service, maintenance, correction, repair or replacement, but which is

2  otherwise complete, will be treated as completed.

3    . . .

4    15. "Property damage" means:

5    a. Physical injury to tangible property, including all resulting loss of use of that property.

6  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

7    b. Loss of use of tangible property that is not physically injured. All such loss of use shall

8  be deemed to occur at the time of the "occurrence" that caused it.

9    . . .

10    18. "Your product" means:

11    a. Any goods or products, other than real property, manufactured, sold, handled, distributed

12  or disposed of by:

13    (1) You; . . .

14    "Your product" includes:

15    a. Warranties or representations made at any time with respect to the fitness, quality,

16  durability, performance or use of 'your product'; and

17    b. The providing of or failure to provide warnings or instructions

18    . . .

19    19. "Your work" means:

20    a. Work or operations performed by you or on your behalf; and

21    b. Materials, parts or equipment furnished in connection with such work or operation.

22    "Your work" includes

23    a. Warranties or representations made at any time with respect to the fitness, quality,

24  durability, performance or use of "your work"; and

25    b. The providing of or failing to provide warnings or instructions.

26

27

28

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

**B.**    **FFIC's Judgment Against Gencor from the Underlying Florida State Court Action**

**(1)    Gencor's written contract with George Reed**

Gencor is a Florida-based manufacturer of asphalt plants and other equipment for the road and highway construction industry. Plaintiff's Fourth Amended Complaint, ¶¶ 4, 7. On or about February 8, 2000, Gencor entered into a written contract with George Reed Co. ("Reed") for the manufacture and sale of a 12,000 lb. stationary batch asphalt plant ("Plant"). *Id.*, ¶ 7; *see also* Declaration of Thomas R. Beer in Support of Defendant Gerling America Insurance Company's Motion for Summary Judgment ("Beer Decl."), Ex. A. In addition to manufacturing and providing the Plant itself, Gencor was contractually obligated to provide "adequate field engineering service to assist and train [Reed's] installation crew and operator in the proper manner to install and operate the equipment." Beer Decl., Ex. A at p. 33. The contract also stated that Gencor's field engineers would provide "on-site supervision for erection of all new equipment, [including] initial calibration, start-up operation, shut down and clean up of the system." *Id.* Furthermore, Gencor ensured in the contract that it had "developed field-proven installation procedures . . . [whose] basic intent is to install the equipment in a safe manner through procedures that minimize damages to the equipment and/or injury to personnel." *Id.*

The contract expressly warranted that if the Plant was defective, Gencor would:

> either (a) repair or replace such defective Product or Part; or (b) pay the cost of repairing such defective Product or Part, provided, however, if Gencor determines that the nature of the defect or other circumstances precludes repair or replacement, then Gencor shall have the right, at its option, to fully satisfy the warranty obligations hereunder by refunding to Purchaser the full purchase price . . . .

*Id.*

**(2)    Installation and explosion of the Plant**

In or about June 2000, Gencor completed the delivery of all component parts of the Plant to Reed's facility in Clement, California. Defendant Gerling America Insurance Company's Request for Judicial Notice in Support of Motion for Summary Judgment ("RJN"), Ex. 1, Transcript of Proceedings, Vol. 1, 86:25-87:5. Reed personnel then assembled the Plant in March-April 2001. It is not disputed that the Plant was "complete" for coverage purposes. *Id.*, Ex. 1, 130:3-11;

-6-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 64108
(415) 434-2800

1    157:19-158:19. However, Reed still required assistance in maximizing the Plant's output and

2    production after Reed assembled the Plant, and requested that Gencor send personnel to assist with

3    such tasks pursuant to the contract. *Id.*, at 84:15-85:9; Ex. 2, Transcript of Proceedings, Vol. 2,

4    240:20-24.

5         On April 12, 2001, Calvin Dixon, a Gencor field service technician arrived at the site to

6    provide start-up engineering services. RJN, Ex. 2, 182:21-183:2. On April 18, 2001, while

7    Mr. Dixon was performing work on the Plant, an explosion ensued which destroyed a significant

8    portion of the Plant. Plaintiff's Fourth Amended Complaint, ¶ 9. No cause for the explosion was

9    ever determined. Reed and its parent company, Basic, submitted a claim for property damages and

10   loss of use to their insurer, FFIC. *Id.*, ¶ 10. FFIC accepted coverage and paid the claim. *Id.*

11           **(3)    FFIC's lawsuit against Gencor in Florida State Court**

12        In September 2004, FFIC, as subrogee of Basic Resources and George Reed, sued Gencor in

13   Florida state court. RJN, Ex. 3, FFIC's Complaint against Gencor in Florida state court.

14   FFIC/Reed alleged claims for breach of contract, negligence, breach of implied warranty of

15   merchantability, breach of express warranty, and strict liability for the damages to the Plant. *Id.*,

16   Ex. 3, ¶¶ 10-49. FFIC later voluntarily dismissed all claims except those for breach of contract and

17   negligence. RJN, Ex. 4, FFIC's Notice of Withdrawal of Claims in Florida state court action.

18           **(a)    FFIC's breach of contract claims against Gencor**

19        In its breach of contract claim, FFIC alleged that Gencor breached the contract with Reed in

20   the following ways:

21        • Failing to initially install, and calibrate the equipment in a safe manner

22        • Failing to provide an Asphalt Batching System guaranteed to meet all existing state

23          specifications

24        • Failing to provide a safe ignition system

25        • Failing to provide a safe burner management system

26        • Failing to provide a safe ventilation system

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1       • Failing to provide adequately trained Gencor personnel for the initial safe
2           installation, calibration and testing of the product
3       • Failing to provide adequate field engineering services necessary to properly assist
4           and train Basic/Reed personnel and/or installation crew in the appropriate manner to
5           safely install and operate all of the Plant's equipment
6       • Failing to provide a complete product of merchantable quality
7       • Failing to provide products free from defects in workmanship and material.
8   RJN, Ex. 3, ¶¶ 11(a), (b), (c), (d), (e), (f), (g), (n), and (o).

9                   **(b)    FFIC's negligence claims against Gencor**

10      In its negligence claim, FFIC alleged that Gencor negligently breached its duties in the
11  following manner:

12      • Gencor designed, manufactured, and assembled a Plant that among other things
13          contained a faulty starting and ventilation system that was prone or subject to failure,
14          and/or an ultimate explosion thus creating a dangerous condition
15      • Failed to otherwise exercise due care with respect to designing, manufacturing,
16          assembling, installing, calibrating, operating and training for the use and care of the
17          Plant involved in this action
18      • Failed to adequately examine or recognize any known defects or existing problems
19          with the ignition or ventilation systems of the Plant involved in this action
20      • Gencor designed, manufactured, and assembled a Plant that among other things
21          contained a faulty starting and ventilation system that was prone or subject to failure,
22          and/or an ultimate explosion thus creating a dangerous condition
23      • Failed to otherwise exercise due care with respect to designing, manufacturing,
24          assembling, installing, calibrating, operating and training for the use and care of the
25          Plant involved in this action
26      • Failed to adequately examine or recognize any known defects or existing problems
27          with the ignition or ventilation systems of the Plant involved in this action
28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  RJN, Ex. 3, ¶¶ 46(a), (h), (i).

2      Additionally, FFIC's negligence claim alleged:

3      Defendant, Gencor controlled and exclusively supervised all phases of the design,
       manufacture, delivery, installation, calibration, start up, testing, maintenance and
4      operation of the Plant that is the subject matter of this lawsuit. Defendant, Gencor
       further controlled and exclusively provided its own professional field personnel, for
5      its claimed supervision, training of and assistance to Basic/Reed personnel in the
       initial start up, calibration, testing, maintenance and operation of the Plant during the
6      time period in which the explosion took place.

7  *Id.*, Ex. 3, ¶ 47.

8      Gerling defended Gencor[2] under an express reservation of rights in the state court action.

9  Beer Decl., Ex. B. On or about May 14, 2007, Gerling denied coverage for FFIC's claims. Beer

10 Decl., Ex. C.

11     Following trial, a jury found Gencor liable to FFIC/Reed for damages for breach of contract

12 in the amount of $1,193,825 and negligence in the amount of $716,194. Plaintiff's Fourth

13 Amended Complaint, Ex. 2. FFIC's insured was assessed 40 percent fault for negligently causing

14 the explosion of the Plant. *See* RJN, Ex. 6. Significantly, FFIC subsequently rejected the

15 negligence portion of the award and elected to accept solely that part of the judgment for breach of

16 contract damages, as that election allowed FFIC to maximize its potential recovery. An Amended

17 Final Judgment was then entered on behalf of FFIC in the amount of $1,751,913.10 solely for

18 breach of contract damages. Plaintiff's Fourth Amended Complaint, Ex. 2. Subsequently, a Final

19 Judgment Awarding Fees and Costs in the amount of $42,000 in fees and $42,000 in costs, which

20 was again limited to the breach of contract damages award, was entered in favor of FFIC.[3]

21 Plaintiff's Fourth Amended Complaint, Ex. 3.

22     FFIC never obtained an assignment of rights from Gencor to proceed against the Gerling

23 policy, nor did it ever obtain a direct judgment against Gerling that could be enforced here.

24     On May 2, 2007, FFIC filed its initial Complaint for Declaratory Relief and Breach of

25 Contract against Gerling pursuant to its alleged rights under the Amended Final Judgment against

26 _____

27 [2] Gencor had filed for bankruptcy prior to the filing of FFIC's state court action. *See* RJN, Ex. 5.
   [3] In its April 3, 2008 Order, this Court ruled that FFIC cannot obtain its attorneys' fees under the
28 Gerling policy.

-9-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

1  Gencor.  The operative Fourth Amended Complaint was filed on April 10, 2008.  Plaintiff's Fourth

2  Amended Complaint.

3  ### 3.    ARGUMENT

4  **A.    Standard on Summary Judgment**

5  Federal Rule of Civil Procedure 56(c) provides for summary judgment where no genuine

6  issue exists as to any material fact and where the moving party is entitled to judgment as a matter of

7  law.  FRCP 56(c).  While the burden initially rests on the moving party to establish that there is no

8  genuine issue of material fact, once it has done so, the burden shifts to the non-moving party who,

9  in opposing the motion, may not rest upon the mere allegations or denials contained in the

10  pleadings.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

11  **B.    FFIC Has No Standing to Challenge Gerling's Declination of Coverage**

12  All of FFIC's claims against Gerling are based upon the judgment FFIC/Reed obtained

13  against Gencor in the underlying Florida state court action.  FFIC did not obtain an assignment of

14  rights from Gencor to proceed against Gerling, nor is Gerling FFIC's judgment debtor.  As such,

15  FFIC has no standing to challenge Gerling's decision to deny coverage to Gencor.

16  **(1)    The Florida "non-joinder" statute does not give FFIC standing to challenge Gerling's coverage decisions with regard to its insured**

17  

18  Florida Statute section 627.4136 states in pertinent part:

19  (1)  It shall be a condition precedent to the accrual or maintenance of a cause of
action against a liability insurer by a person not an insured under the terms of the
liability insurance contract that such person shall first obtain a settlement or verdict

20  against a person who is an insured under the terms of such policy for a cause of
action which is covered by such policy.

21  

22  (2)  . . .  No person who is not an insured under the terms of a liability insurance
policy shall have any interest in such policy, either as a third-party beneficiary or

23  otherwise, prior to first obtaining a settlement or verdict against a person who is an
insured under the terms of such policy for a cause of action which is covered by such

24  policy.

25  (3)  . . .

26  (4)  At the time a judgment is entered or a settlement is reached during the pendency
of litigation, a liability insurer may be joined as a party defendant for the purposes of

27  entering final judgment or enforcing the settlement by the motion of any party,
unless the insurer denied coverage under the provisions of s. 627.426(2) or defended

28  under a reservation of rights pursuant to s. 627.426(2). A copy of the motion to join

-10-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

the insurer shall be served on the insurer by certified mail. If a judgment is reversed or remanded on appeal, the insurer's presence shall not be disclosed to the jury in a subsequent trial.

This statute grants a claimant who is not an insured under a liability policy a direct right of action against an insurance carrier after that claimant has obtained "a settlement or verdict" against the carrier's insured. It does not, however, grant a claimant the right to contest the insurer's reservation of rights or declination of coverage to the insured.

In *Universal Security Ins. Co. v. Spreadbury*, 524 So.2d 1167 (Fla.App. 1988), the court held that a third party, Spreadbury, could not maintain an action against the alleged insurer to determine if coverage existed because the claimant had not obtained judgment against the insured. *Id.* at 1168. The court noted that:

> Moreover, the trial court's denial of [the insurer's] motion to dismiss cannot be upheld on the basis of a factual issue associated with the [insureds'] coverage. That question is to be resolved, if at all, between the [the insureds] and [the insurer], but not between [the insurer] and Spreadbury. Under section 627.7262 [predecessor statute to 627.4136], Spreadbury, a third party, cannot maintain a cause of action against [the insurer] to determine if such coverage exists.

*Id.* This language plainly indicates that a third party, such as FFIC in this case, cannot contest coverage.

Similarly, in *DeMeo v. Frenchy's Worldwide Helmets, Inc.*, 732 So.2d 12, 13 (Fla.App. 1999), an insurer obtained a declaratory judgment that it had no obligation to pay third party claims against its insured, and withdrew defense of that insured in a concurrent action brought by a third party against the insured. The third party claimant argued that because she was not a party in the insurer's declaratory judgment action, she was not bound by the order. *Id.* at 13. The court rejected this argument and stated:

> [Section 627.4136] expressly excludes joinder of an insurer as a party defendant when the insurer denied coverage pursuant to section 627.426(2). [Internal citations omitted.] [The third party claimant] did not raise the issue of lack of compliance with section 627.426(2), Florida Statutes, before the trial court, nor did she argue that there was a lack of evidence regarding compliance with the statute. She cannot raise these issues for the first time on appeal. [Internal citation omitted.] *[The insurer's] obligation to defend [the insured] was resolved as between [the insured] and [the insurer] in the declaratory judgment action before Judge Moe.* Therefore, [the insurer] could not be joined pursuant to section 627.4136(4).

*Id.* at 13-14 (emphasis added).

-11-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800
DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

1    In this case, Gerling, in a letter dated May 14, 2007, expressly denied indemnity coverage

2    for FFIC's breach of contract damages award against Gencor.  Beer Decl., Ex. C.  Moreover,

3    Gencor has never given FFIC an assignment of rights to the Gerling policy.  As FFIC is not an

4    insured under the Gerling policy, and because Gerling properly declined indemnity coverage to

5    Gencor, FFIC has no standing to proceed with its claims in the present action.

6    **C.    FFIC's Claims Are Specifically Excluded by the Gerling Policy**

7    The standing issue aside, there is no coverage available under the Gerling policy for the

8    underlying loss.  Several exclusions in the Gerling policy expressly and independently preclude

9    such coverage.

10    **(1)    The "Contractual Liability" exclusion bars FFIC's claims to coverage
           for the underlying loss**

11

12    Under Exclusion 2(b), the "Contractual Liability" provision, the policy excludes coverage

13    for:

14    'Property damage' for which the insured is obligated to pay damages by reason of
       the assumption of liability in a contract or agreement.

15    FFIC's claims in this action are based solely on its breach of contract judgment award for

16    damages caused by an explosion of an asphalt plant manufactured and serviced by Gencor pursuant

17    to a written contract with FFIC's insured, George Reed.  It is undisputed that the plant at issue in the

18    Gencor/George Reed contract had been completed and that Reed had taken possession of the Plant.

19    Thus, Gencor would not have had any liability to FFIC's insured if not for its obligations under the

20    contract.  The Gerling policy's "Contractual Liability" exclusion applies and bars coverage for

21    FFIC's claims as a matter of law.

22    **(a)    Gencor assumed liability under the contract with FFIC's insured**

23    Under the written contract with Reed, Gencor had the duty to manufacture and provide the

24    Plant itself.  Beer Decl., Ex. A.  Gencor also had the contractual obligation to provide "adequate

25    field engineering service to assist and train [George Reed's] installation crew and operator in the

26    proper manner to install and operate the equipment."  *Id.*, Ex. A at p. 33.  Gencor promised in the

27    contract that it had "developed field-proven installation procedures . . . [whose] basic intent is to

28    -12-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

1   install the equipment in a safe manner through procedures that minimize damages to the equipment

2   and/or injury to personnel." *Id.*

3         The written contract also contained a warranty provision in which Gencor assumed liability

4   in the event the Plant was defective:

5         [Gencor will] either (a) repair or replace such defective Product or Part; or (b) pay
         the cost of repairing such defective Product or Part, provided, however, if Gencor

6         determines that the nature of the defect or other circumstances precludes repair or
         replacement, then Gencor shall have the right, at its option, to fully satisfy the

7         warranty obligations hereunder by refunding to Purchaser the full purchase price . . .
         Any refund of the purchase price as provided hereunder shall completely discharge

8         any and all obligations and liabilities of Gencor in connection with this Warranty or
         any such defect.

9   Beer Decl., Ex. A, p. 40 ¶ 6.4.

10        Damages arising out of Gencor's assumption of liability in the contract with Reed are

11   expressly excluded from coverage under the Gerling policy.

12            **(b)**    **Gencor's liability under the contract was established by FFIC's**

13                   **claims of defects to the Plant in the underlying state court action**

14         In its complaint for breach of contract against Gencor, FFIC alleged that:

15       •  Gencor breached its contractual obligations by failing to provide an Asphalt

16          Batching System guaranteed to meet all existing state specifications

17       •  Gencor breached its contractual obligations by failing to provide a safe ignition

18          system

19       •  Gencor breached its contractual obligations by failing to provide a safe burner

20          management system

21       •  Gencor breached its contractual obligations by failing to provide a safe ventilation

22          system

23       •  Gencor breached its contractual obligations by failing to provide a complete product

24          of merchantable quality

25       •  Gencor breached its contractual obligations by failing to provide products free from

26          defects in workmanship and material

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  RJN, Ex. 3, ¶¶ 11(b), (c), (d), (e), (n), (o), ¶ 46(a), (i). Given its prior unambiguous claims of

2  defects in the Plant based on breach of contract, and ultimate judgment award based solely on those

3  contract claims, FFIC cannot now try to recast its theory of liability to create coverage after the fact.

4  FFIC plainly alleged that the Plant was defective, which implicated the express warranty provision

5  in the written contract between Gencor and Reed. As Gencor assumed liability for damages to the

6  Plant in the event it was defective, the "Contractual Liability" Exclusion applies. In *Rad Source*

7  *Technologies, Inc. v. Colony Nat. Ins. Co.*, 914 So.2d 1006, 1007-08 (Fla.App. 2005), a Florida

8  court found that the "Contractual Liability" Exclusion did not apply in a case involving a blood

9  irradiation machine that was damaged in transit. The court found that the insurer failed to prove

10 that the exclusion applied because there was no language in the contract at issue wherein the insured

11 assumed liability for property damaged to the irradiator during shipment. *Id.* at 1008. This was the

12 only reason cited by the court for the non-application of this exclusion. *Id.* The present case is

13 distinguishable, in that the written agreement between Gencor and George Reed contained an

14 express warranty provision in which Gencor assumed liability in the event the Plant was defective,

15 as cited above. Beer Decl., Ex. A, p. 40, ¶ 6.4.

        **(c)**      **Other courts apply the "Contractual Liability" exclusion in cases
with similar facts**

17       In *Victoria's Secret Stores, Inc. v. Epstein Contracting, Inc.*, 2002 WL 723215 (Ohio App.

18  2002), an Ohio appellate court found that the "Contractual Liability" Exclusion applied in a case

19  that involved similar facts as the present action. In *Victoria's Secret*, the insured-contractor was

20  hired to remove a suspended ceiling and install a new ceiling in a retail store. *Id.* at *1. The

21  contractor specifically warranted that "all work performed under this contract shall be free from

22  defects in workmanship or materials . . . ." *Id.* Rather than connecting the new ceiling to the

23  building's main structural support beams, the contractor installed the new ceiling to a second

24  existing suspended ceiling. *Id.* Four months after its installation, the ceiling collapsed, causing

25  property damage and loss of use damages. *Id.* The retailer proceeded to arbitration against the

26  contractor, as required under the contract, and prevailed. *Id.* at *1-*2. The retailer then filed suit

-14-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1    against the contractor's insurers for coverage of the arbitration award. *Id.* at *2. The trial court

2    granted summary judgment in favor of the insurers, and the retailer appealed. *Id.*

3        The appellate court affirmed the trial court's judgment. *Victoria's Secret Stores, Inc.*, 2002

4    WL 723215 at *6. The court concluded that the policy did not provide coverage because of the

5    express exclusion for contractual liability applied. *Id.* at *4. The court reached this conclusion by

6    applying the plain language of the exclusion to the facts, and rejected the retailer's argument that

7    the exclusion should not apply because the arbitrator's award was for both breach of contract and

8    negligence. *Id.* The court noted that the arbitration award was vague as to the prevailing legal

9    theory, but concluded that, under either legal theory, the insured/contractor was obligated to pay by

10   reason of assumption of liability in a contract, and that the insured/contractor would not have been

11   liable to the retailer for the types of damages at issue in the absence of the contract. *Id.* at *5.

12       In the present action, Gencor assumed liability for damages to the Plant. The underlying

13   jury verdict found that Gencor breached its contractual obligations. This cause of action arises

14   directly out of the written contract between Gencor and Reed, which imposed upon Gencor the duty

15   to provide products and services free from defects in material and workmanship. As such, the

16   "Contractual Liability" Exclusion directly bars coverage under the Gerling policy.

17       **(2)    The "Damage to Your Product" provision of the Gerling policy excludes
                    coverage for FFIC's claims for damages**

18

19       The "Damage to Your Product" exclusion in the Gerling policy precludes coverage for

20   damages arising out of the insured's product. Plaintiff's Fourth Amended Complaint, Ex. 1,

21   Exclusion 2(k). "Your Product" is defined as any goods or products manufactured or sold by the

22   insured, and includes warranties or representations made at any time by the insured with respect to

23   the fitness, quality, durability, performance or use of its product. *Id.*, Ex. 1, Definitions (18).

24       The exclusion unambiguously excludes "property damage" to the insured's product arising

25   out of it or any part of it. In the present case, it is undisputed that the damages at issue arise solely

26   out of the explosion of the Plant, which is Gencor's product. Thus, it is beyond dispute that this

27   exclusion applies to bar coverage for FFIC's claims.

28

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

(a)    **The Gerling policy does not provide coverage to damages to the insured's product itself**

In the present action, it is undisputed that FFIC is claiming "property damage" for "physical injury to tangible property, including all resulting loss of use of that property." RJN, Ex. 3, ¶¶ 14, 49. It is undisputed that the Plant was a product manufactured and sold by Gencor, and qualifies as "your product" as defined under the Gerling policy. Beer Decl. Ex. A. FFIC is not claiming damages to any property other than the Plant itself. RJN, Ex. 3. Accordingly, the "Damage to Your Product" Exclusion is applicable to the undisputed facts of this case.

Liability polices do not insure or guarantee the insured's property. *See, e.g., Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So.2d 634, 641-45 (La. 2007); *Magill v. Owen Const. Co., Inc.*, 434 So.2d 520, 522 (La.Ct.App. 1983) ("A liability insurer who includes a work product exclusion in its policy is not liable for damages to work product of the insured due to negligent, faulty or defective construction and workmanship. In other words, the courts recognize that liability policies are not performance bonds."). Insurance policies are intended to provide coverage for damages awarded by reason of an injury caused by the insured's product to some other property or to a person. *E.g., Hartzell Industries, Inc. v. Federal Ins. Co.*, 168 F.Supp.2d 789, 798 (S.D. Ohio 2001) ("The exclusion does not preclude coverage for property damage to the property of a third party arising out of the insured's product.").

(b)    **Courts broadly interpret the phrase, "arising out of"**

Most jurisdictions interpret the phrase "arising out of" to encompass a meaning broader than mere proximate cause. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 535 (Fla. 2005). In fact, one court has held that:

> [t]he general consensus [is] that the phrase 'arising out of' should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with' – that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense.

*Id.* (quoting *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998).

In the present case, the explosion of the Plant was not caused by any outside source, but rather came solely from within the Plant itself. RJN, Ex. 7, Transcript of Proceedings, Vol. 7,

-16-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

967:19-969:7.  That is, gas accumulated inside the Plant and was not purged prior to ignition.  *Id.*  The gas exploded and destroyed the Plant.  *Id.*

**(c)**     **Under Florida law, the "Damage to Your Product" Exclusion is implicated by FFIC's claims that the Plant itself was defective**

It is expected that FFIC will attempt to argue that it did not allege that the Plant itself was defective in the underlying state court action, and therefore the subject exclusion should not apply in this action.  FFIC's argument is directly contradicted by the plain language of its complaint in the underlying state court action.  Specifically, FFIC alleged that the following product defects affected the Plant:

- Gencor breached its contractual obligations by failing to provide products free from defects in workmanship and material

- Gencor committed negligence by failing to adequately examine or recognize any known defects or existing problems with the ignition or ventilation systems of the Plant involved in this action.

RJN, Ex. 3, ¶ 11(o), ¶ 46(i).

It is undisputed that the jury verdict found that Gencor breached its contract and was negligent by providing a defective Plant.  RJN, Ex. 6.  Given that all of FFIC's claims were based on allegations of defects to the Plant itself, the "Damage to Your Product" Exclusion applies and precludes coverage of FFIC's claims in the present action.

**(3)**     <u>**The "Damage to Your Work" Exclusion further bars coverage for FFIC'S claims that arise out of Gencor's workmanship**</u>

The Gerling policy specifically excludes, in Exclusion (l) "Damage to Your Work":

'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'  This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Your work" is defined in the policy as "[w]ork or operations performed by you or on your behalf . . . ."  FFIC alleges that the damages to the Plant were caused by the faulty work of Gencor's employee.  The exclusion applies and bars coverage.

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

(a)    **The replacement or repair of an insured's work is not covered by liability policies**

Similar to the "Damage to Your Product" exclusion, liability policies do not insure or guarantee the insured's work. *See Ryan Homes, Inc. v. Home Indem. Co.*, 647 A.2d 939, 942 (1994) ("General liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property of another . . . . Such policies are . . . not intended to act as performance bonds."). One court explained how liability policies work in these circumstances as follows:

> The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contract in order to satisfy customers.

*Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 790-92 (1979).

(b)    **FFIC's claims arise out of Gencor's work or operations**

FFIC alleges that damage to the Plant was the result of the faulty services performed by the Gencor employee who was sent to assist with the start up of the Plant. RJN, Ex. 3.

Under the written contract, Gencor was obligated to design and produce the Plant, and to provide "adequate field engineering service to assist and train [George Reed's] installation crew and operator in the proper manner to install and operate the equipment." Beer Decl., Ex. A at p. 33. The contract provides that Gencor had "developed field-proven installation procedures . . . [whose] basic intent is to install the equipment in a safe manner through procedures that minimize damages to the equipment and/or injury to personnel." *Id.* FFIC alleged that Gencor's work was deficient in multiple respects:

- Gencor failed to provide adequate field engineering services necessary to properly assist and train Basic/Reed personnel and/or installation crew in the appropriate manner to safely install and operate all of the Plant's equipment

- Gencor failed to properly and safely calibrate the machine once installed

- Gencor failed to safely operate the ignition system

- Gencor failed to properly vent the dryer assembly prior to ignition

- Gencor failed to safely operate the asphalt Plant

-18-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

- Gencor negligently designed, manufactured and assembled a Plant that contained a faulty starting and ventilation system that was prone or subject to failure
- Gencor negligently failed to properly train its authorized technicians and/or other professional personnel in the safe installation and start up procedures necessary for the safe and effective start up of the Plant
- Gencor negligently failed to properly train its professional field personnel in the proper ventilation of the ignition starting system

RJN, Ex. 3, ¶¶ 11(g), (h), (s), (t), (u); ¶¶ 46(a), (e), (f).  As such, FFIC's claims in this action directly relate to Gencor's work or operations, and trigger application of the "Damage to Your Work" exclusion.

### (c)    The "Damage to Your Work" Exclusion encompasses the insured's completed products or work

It is undisputed that the Plant was complete at the time of the explosion, and thus subject to the "products-completed operations hazard."  At the time George Reed requested Gencor to send a field technician to assist with the start up of the Plant, the Plant was fully constructed in Clement, California, away from Gencor's premises in Florida.  RJN, Ex. 1, 76:24-77:3; Ex. 2, 240:16-19.  George Reed only required Gencor's assistance with service for the start up of the Plant.  *Id.*, Ex. 1, 84:15-85:3.  Under the Gerling policy, the Plant is deemed complete as "work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as complete."  Plaintiff' Fourth Amended Complaint, Ex. 1, Section V. ¶ 14.  Given that the "Damage to Your Work" exclusion expressly includes the "product-completed operations hazard," the fact that the Plant was complete does not affect the applicability of this exclusion to FFIC's claims.

### (d)    As the subcontractor exception is not at issue, the "Damage to Your Work" Exclusion applies and bars coverage for FFIC's claims

In *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 875 (Fla. 2007), the Florida Supreme Court reviewed the possible application of the "Damage to Your Work" exclusion in an action concerning damages to homes caused by a subcontractor's use of poor soil and improper soil

-19-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.:  3:07-cv-06302-CRB

1   compaction.  In that case, the court focused on the 1986 revision of the insurance policy that added

2   the subcontractor exception to the exclusion, which was explained as follows:

3       [T]he insurance and policyholder communities agreed that the CGL policy should
        provide coverage for defective construction claims so long as the allegedly defective
4       work had been performed by a subcontractor rather than a policyholder itself.

5   *Id.* at 879 (quoting 2 Jeffrey W. Stempel, *Stempel on Insurance Contracts* § 14.13[D] at 14-224.9

6   (3d ed. Supp. 2007).  As the work in the *J.S.U.B.* case was undisputedly performed by a

7   subcontractor, the court found that the "Damage to Your Work" Exclusion was not applicable.  *Id.*

8   at 879-80.  The subcontractor exception to this exclusion was the only reason the court cited for the

9   non-application of this exclusion.  *Id.*  The present action is clearly distinguishable as FFIC has not

10  alleged that any work at issue was performed by a subcontractor.  RJN, Ex. 1.  In addition, Calvin

11  Dixon, the Gencor field service technician who was working on the Plant when it exploded, testified

12  in deposition that he was employed by Gencor at the time of his work.  RJN, Ex. 2, 167:14-168:14.

13  It is undisputed that Mr. Dixon was a Gencor employee when he performed the work at issue.  As

14  the subcontractor exception to this exclusion is inapplicable, the "Damage to Your Work"

15  Exclusion applies to bar coverage for FFIC's claims.

16          (e)     **Courts have applied the "Damage to Your Work" Exclusion in
                    similar circumstances**
17

18  In *Collett v. Insurance Co. of the West*, 64 Cal.App.4th 338 (1998), a California appellate

19  court found that the "Damage to Your Work" exclusion applied in an action involving the

20  construction of retaining walls by a masonry contractor.  In *Collett*, the masonry contractor had

21  employed an inspector to verify and report to the structural engineer that the retaining walls were

22  constructed according to specifications.  *Id.* at 340.  Nine months after the walls were completed,

23  some walls collapsed and others were damaged.  *Id.*  The masonry contractor claimed coverage

24  under a commercial general liability policy, which contained the "Damage to Your Work"

25  Exclusion.  *Id.* at 340-41.  The court found that this exclusion applied and that the inspector did not

26  qualify as a subcontractor.  *Id.* at 343.  The court further held that the masonry contractor was

27  attempting to recover costs he incurred in repairing and replacing the defective walls, which was

28  contrary to the intent of the insurance policy:

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB

> Generally liability policies . . . are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. [Citation]  The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer.  [Citations.]  Rather[,] liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products."

*Id.*

In the present case, FFIC claims that the damages at issue arise from the faulty work of Gencor's employee, which directly implicates the "Damage to Your Work" exclusion.  The "product-completed operations hazard" is expressly included in this exclusion, and the only exception to this exclusion is not applicable.  As such, FFIC's claims are specifically excluded from coverage by the "Damage to Your Work" exclusion.

### (4)    The "Professional Liability" Exclusion bars coverage for FFIC's claims

The Gerling policy contains an endorsement entitled "Exclusion – Engineers, Architects, or Surveyors Professional Liability," which excludes coverage for "property damage" that arises out of:

> The rendering or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

> Professional services include: . . . Supervisory, inspection, architectural or engineering activities.

Plaintiff's Fourth Amended Complaint, Ex. 1.

This exclusion broadly precludes coverage for the "rendering . . . [of] *any professional services* by you," as alleged in Plaintiff's Fourth Amended Complaint, Ex. 1 (emphasis added).  It is undisputed that a Gencor employee was performing supervisory, inspection and field engineering services to the Plant when the explosion occurred.  Accordingly, the "Professional Liability" Exclusion bars coverage for FFIC's claims as such professional services allegedly caused the damages at issue in the present case.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.:  3:07-cv-06302-CRB

(a)    **The Gencor employee was performing field engineering services at the time of the explosion to the Plant**

Gencor was obligated, under the written contract with Reed, to provide "adequate field engineering service" to assist in the start-up of the Plant.  Beer Decl., Ex. 1, p. 33.  After Reed requested that Gencor send personnel to assist in making the Plant fully functional, Gencor dispatched Calvin Dixon, who performed various technical services on the Plant.  Plaintiff's Fourth Amended Complaint, ¶ 9; RJN, Ex. 2, 182:21-183:20.

Mr. Dixon was performing services within the meaning of the "Professional Liability" Exclusion, as cited above, on April 18, 2001 when the Plant exploded.  FFIC alleged in its complaint in the underlying state court action that:

- Gencor failed to provide adequate field engineering services necessary to properly assist and train Basic/Reed personnel and/or installation crew in the appropriate manner to safely install and operate all of the Plant's equipment

- Gencor negligently failed to properly train its professional field personnel in the proper ventilation of the ignition starting system

- Gencor failed to provide the type of quality of work and standard of care in the installation, start up, testing, calibration, maintenance and operation of the Plant that is known and expected by like professionals within the industry and/or in similar occupations

RJN, Ex. 1., ¶ 11(g), ¶ 46(f), (j).  Furthermore, FFIC alleges in its complaint that:

Defendant, Gencor controlled and exclusively supervised all phases of the design, manufacture, delivery, installation, calibration, start up, testing, maintenance and operation of the Plant that is the subject matter of this lawsuit.  Defendant, Gencor further controlled and exclusively provided its own professional field personnel, for its claimed supervision, training of and assistance to Basic/Reed personnel in the initial start up, calibration, testing, maintenance and operation of the Plant during the time period in which the explosion took place.

*Id.*, Ex. 1, ¶ 47.

Mr. Dixon's activities, as alleged even by FFIC, constitute "professional services" as they involved engineering, inspection and supervisory services under the "Professional Liability"

-22-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1    Exclusion.  Since the damages arose out of the professional services provided by Gencor's

2    employee, this endorsement excludes coverage for FFIC's claims.

               **(b)**       **Courts broadly apply the "Professional Liability" Exclusion in similar cases**

3

4    While Florida courts have not addressed the application of the "Professional Liability"

5    Exclusion, other courts have applied it broadly.  *Stone v. Hartford Cas. Co.*, 470 F.Supp.2d 1088

6    (C.D. Cal. 2006).  In *Stone*, plaintiff homeowners, who obtained judgment against

7    insured-draftsman for breach of contract and negligence for work contracted on the plaintiffs'

8    home, brought action against the draftsman's liability insurer for the amount of the judgment.  *Id.* at

9    1090-92.  The court granted summary judgment to the insurer based partly on the policy's

10   "professional services" exclusion.  *Id.* at 1097-98.  The court found that the policy's "professional

11   services" exclusion clearly applied to the homeowners' claims based on the draftsman's

12   professional undertaking to draft plans for room additions, construct and/or supervise construction

13   of the additions, and install a driveway."  *Id.* at 1098.  The court stated that:

14
> 'Professional services' are defined as those arising out of a vocation, calling,
15   occupation, or employment involving specialized knowledge, labor, or skill, and the
     labor or skill involved is predominantly mental or intellectual rather than physical or
16   manual.  It is a broader definition than 'profession' and encompasses services
     performed for remuneration.

17   *Id.* (quoting *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal.App.4th 794, 713 (2002)).

18
19   In this case, the actions performed by Mr. Dixon as Gencor's field service technician,

20   undisputedly involved specialized knowledge and skill that was predominantly intellectual rather

21   than manual.  Mr. Dixon testified that he had many years of on-the-job training on electrical

22   systems and asphalt plants.  RJN, Ex. 2, 166:15-169:25.  He further testified that he had performed

23   field engineering services on approximately one hundred asphalt plants.  *Id.*, Ex. 2, 188:18-189:4.

24   Additionally, Mr. Dixon stated that he was performing field engineering services on a number of

25   components of the Plant to complete the installation and start up of the Plant.  *Id.*, Ex. 2,

26   183:3-215:20.  Furthermore, these services were so specialized that Reed, which assembled and

27   completed the Plant, had to request that Gencor send its field service technician to maximize its

28   production output.  *See* RJN. Ex. 1, 125:10-17 (Wendell Reed, the President of CEO of George

-23-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  Reed testified that Reed continued to use Gencor employees after the explosion of the Plant because

2  of Gencor's specialized knowledge with regard to Plant operations); 132:11-20 (Mr. Reed testifying

3  that ". . . our people would not be conversant with doing any repairs on that at all or any

4  maintenance on it. We would always use outside experts, and they were the experts."). While FFIC

5  will attempt to argue that Mr. Dixon's actions were not "professional services," this argument is

6  contrary to the evidence and has no support. The "Professional Liability" Exclusion plainly applies

7  to the facts of the underlying action against Gencor, and FFIC's claims are barred as a matter of

8  law.

9                                          4.    **CONCLUSION**

10        For the foregoing reasons, and each of them, the Court should grant summary judgment in

11  favor of Gerling.

12

13  Dated: July 3, 2008                              BARGER & WOLEN LLP

14

15                                          By:    __/s/ Thomas R. Beer__
16                                                 THOMAS R. BEER
                                                   TINO X. DO
17                                                 Attorneys for Defendant GERLING
                                                   AMERICA INSURANCE COMPANY

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S NOTICE OF MOTION, MOTION,
AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-cv-06302-CRB