# EXHIBIT "C"

LAW OFFICES
# HYMAN SPECTOR & MARS, LLP

MICHAEL L. HYMAN
ANDREW R. SPECTOR
GARY M. MARS
MARC A. RUBIN

ALSO MEMBER OF THE CALIFORNIA BAR
ALSO MEMBER OF THE NEW YORK BAR
ALSO MEMBER OF THE TEXAS BAR
ALSO MEMBER OF NEW JERSEY AND
PENNSYLVANIA BARS

MUSEUM TOWER
TWENTY-SEVENTH FLOOR
150 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

DADE (305) 371-4244
BROWARD (954) 763-8908
TOLL FREE 1 (800) 443-1335
FAX (305) 371-5930
REAL ESTATE FAX (305) 371-4105
E-MAIL: RECEPTION@hsmattys.com
WEBSITE: WWW.HSMATTYS.COM

ELIZABETH A. BOWEN
ANTHONY R. GARRETT
MARNIE DALE RAGAN
JEFFREY S. RESPLER
SHARI R. WALD
YE'ELA HAGGAI
ROBERT BORAK

Writer's e-mail address: Andrews@hsmattys.com

May 14, 2007

<u>Via Certified 7005 2570 0001 6115 2442</u>
<u>U.S. Mial & Email: GBrown@pszyjw.com</u>
Gillian N. Brown, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub
Los Angeles Office
10100 Santa Monica Boulevard
11th Floor
Los Angeles, CA 90067 - 4100

Re:  Fireman's Fund v. Gencor
     Our File No:        2453/27578
     Insured:            Gencor Industries, Inc.
     Claimant:           George Reed, Inc.
     Primary Policy:     Gerling Commercial Lines
     Policy No.:         4 003 527 GLP
     Policy Period:      June 30, 2000 to June 30, 2001
     Date of Occurance:  April 18, 2001
     Gerling File No.:   GLP 06076

Dear Ms. Brown:

As you know the undersigned represents Gerling America Insurance Company ("Gerling"). The foregoing is submitted without prejudice to the rights and remedies of Gerling. We submit this letter to you as legal counsel and duly authorized representative of Gencor Industries ("Gencor"). If you are not the authorized representative for Gencor with respect to receipt of this letter, please advise upon receipt and we will tender the letter directly to the above referenced assured.

Previously, Gerling has tendered specific reservation of rights letters to Gencor with respect to issues that would possibly preclude coverage and/or indemnity with respect to the transactions and occurrences that have been subject to the litigation, Fireman's Fund v. Gencor, case No 2004-CA-7746 pending in the Ninth Judicial Circuit in and for Orlando, Florida. As we have discussed, this

Letter to Gillian Brown, Esq.
Page 2 of 8

case was tried to jury verdict in favor of the Plaintiff. The trial commenced on January 22; a verdict was reached on January 26th.

The jury found that Gencor acted negligently and breached its contract with Basic Resources and/or George Reed (Fireman's Fund brought this claim on a subrogation basis). The jury determined damage as follows: 1) Physical damage to property $959,787.00 (the asphalt batch plant that was the subject of the Basic/Reed contract) 2.) Lost profits $64,322.00, 3) Additional expenses $169,716.00. It is noted that the jury did apportion negligence at 60% on Gencor and $40% on Basic Resources/Reed.

The Final Judgment that the Court has entered, however, includes awards for both Breach of Contract and Negligence, and provides that the Plaintiff shall recover a total of $1,916,089.12, exclusive of costs and attorney's fees. The Final Judgment provides that Plaintiff shall recover $1,193,825.00 on the Breach of Contract claim, and $716,194.00 on the Negligence claim. The Final Judgment also provides that Plaintiff shall recover pre-judgment interest in the amount of $722,264.12 on the Breach of Contract claim and $433,297.37 on the Negligence claim. Significantly, the Judgment specifically states that it is not an *in personam* judgment against Gencor and shall not be subject to execution against Gencor. This judgment is at present subject to a motion for re-hearing and Motion to Amend.

In terms of background, Basic/Reed had entered into a contractual agreement with respect to the purchase of a asphalt batch plant. The machine was at the buyers' premises post-installation and assembly wherein it exploded in the aftermath of service performed by Gencor personnel.

Gerling had afforded a defense to Gencor but has reserved its rights with respect to indemnification. In addition, the subject claim was submitted for coverage subject to the applicable policy conditions. Please be advised that no coverage can be afforded for the subject claim.

First and foremost, Section I, ¶ 1(a) of the policy provides, in pertinent part:

> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

Since the Final Judgment the Court has entered is not *in personam*, and since it provides specifically that it shall not be subject to execution against Gencor, the judgment provides no legal obligation for Gencor to pay the damages. Since Gencor will never be legally obligated to pay the judgment, Gerling has no obligation, pursuant to this policy part, to provide coverage for the judgment.

Additionally, the obligation to indemnify has not been triggered since no congnizable judgment has been entered, in accordance with the policy provision outlined above.

This determination is made in addition to, and in support of, the policy exclusions and conditions outlined below, which would apply if any type of judgment is entered against Gencor. We detail

2

Letter to Gillian Brown, Esq.
Page 3 of 8

the specific exclusions that apply to the record at hand and completely bar coverage in this matter should judgment be entered against Gencor that is either *in rem* or *in personam*.

Contractual Liability Exclusion

Section I, ¶ 2(b) of the Policy provides: that the insurance does not apply to:

> Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Gencor entered into a written contract with George Reed, Inc. and Basic Resources, Inc., with respect to the purchase of a 12,000 lb. stationary batch asphalt plant (hereinafter "the plant") on May 30, 2000. Fireman's Fund Insurance Company is the insurance carrier for Reed.

In the underlying case, the Court found that Gencor had breached the Contract by failing to fulfill its obligations under the Contract. These obligations included failure to install and/or improperly install the plant, failing to meet specifications, failing to provide a complete product of merchantable quality, failing to provide products free from defects of workmanship, and failing to properly operate the system's wood plant.

In particular, Gencor was responsible under the Contract for providing "adequate field engineering service to assist and train the Purchaser's installation crew and operator in the proper manner to install and operate the equipment." Contract, Page 33 ¶ 2.

The Contract further states that Gencor's field engineers will provide "on-site supervision for erection of all new equipment, [including] initial calibration, start-up operation, shut down and clean up of the system." Contract, Page 33 ¶ 2(a). In addition, Gencor ensured in the Contract that, over the years, it has "developed field-proven installation procedures...[whose] basic intent is to install the equipment in a safe manner through procedures that minimize damage to the equipment and/or injury to personnel." Contract, Page 33 ¶ 2. The Court in the underlying case found that Gencor breached the Contract by failing to provide trained personnel to provide these services.

Furthermore, the Contract, Page 40 ¶ 6.4., warrants that if the plant is defective,:

> Gencor shall, at its option, either (a) repair or replace such defective Product or Part; or (b) pay the cost of repairing such defective Product or Part, provided, however, if Gencor determines that the nature of the defect or other circumstance precludes repair or replacement, then Gencor shall have the right, at its option, to fully satisfy the warranty obligations hereunder by refunding to Purchaser the full purchase price....Any refund of the purchase price as provided hereunder shall completely discharge any and all obligations and liabilities of Gencor in connection with this Warranty or any such defect.

3

Letter to Gillian Brown, Esq.
Page 4 of 8

Gencor assumed responsibility under the Contract for providing adequately trained field personnel who would be able to bring the plant into full operation in a safe manner.

Since the Court in the underlying case found that the start-up operations performed by the Gencor personnel was the cause of the explosion which damaged the plant, Gencor's failure to provide sufficiently trained engineers constitutes a breach of contract for which liability is assumed by Gencor.

Additionally, since the warranty provisions in the Contract contemplate that Gencor would repair or replace the plant, or refund the purchase price of the plant, Gencor has assumed liability in the Contract for the damages to the plant, in violation of the Contractual Liability exclusion.

Gerling is under no obligation to indemnify or guarantee Gencor's performance under its contract with Basic/Reed by reason of the Contractual Liability exclusion since all of the claims made by FFIC as subrogee for Basic/Reed are predicated upon the contractual agreement between Basic/Reed and Gencor that allocated all rights, obligations and liabilities, including any tort or non-contractual theories of liability which arise out of the contractual undertaking. Therefore, Gerling is not obligated, by reason of the Contractual Liability exclusion, for any damages resulting from Gencor's performance under the Contract. Since the Court found that Gencor breached the contract, Gerling must deny coverage for all of the damages arising from this breach of contract.

Additionally, Gencor's negligence stems from contractual obligations it assumed as part of its performance under the contract. Gencor agreed to provide skilled professionals who were capable of initiating successful operations of the plant. Instead, the professionals provided by Gencor, pursuant to the Contract, performed actions in a negligent manner which caused the damages to the plant. The damages resulting from Gencor's negligence therefore stem from its performance under the Contract. Since the policy does not guarantee Gencor's performance under the contract, Gerling will not indemnify Gencor pursuant to the Contractual Liability exclusion, and must deny coverage for the damages.

Damage to Your Product Exclusion

Section I, ¶ k of the policy specifically excludes from coverage:

> Damage to Your Product
> "Property damage" to "your product" arising out of it or any part of it.

"Property Damage" is defined in the policy as "Physical injury to tangible property, including all resulting loss of use of that property." Policy, Section V, ¶ 15. "Your Product" is defined in the policy as "Any goods or products, other than real property, manufactured, sold, handled, distribute or disposed of by you...." Policy, Section V, ¶ 18. Therefore, the policy does not provide coverage for damages to the plant which arise from the plant or from any part of it.

Trial evidence revealed that the explosion was not caused by any outside source, but rather came from within the plant itself. That is, gas was allowed to accumulate inside the tank and was not

4

Letter to Gillian Brown, Esq.
Page 5 of 8

purged prior to ignition. The gas exploded and destroyed the plant. The resulting damage to the plant arose out of the plant itself. Therefore, these damages are specifically excluded under the policy pursuant to the Damage to Your Product Exclusion.

In addition, since the loss of use of the plant is expressly included in the definition of "property damage" in the policy, there is no coverage under the policy for any damages for the loss of use of the plant. Therefore, Gerling denies coverage, pursuant to the Damage to Your Product exclusion, and will not indemnify Gencor for damages to the plant and all resulting loss of use of the plant.

Engineers, Architects, Or Surveyors Professional Liability Exclusion

The policy contains an Endorsement entitled Exclusion – Engineers, Architects, or Surveyors Professional Liability, which provides:

> This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
> Professional services include:
> 2. Supervisory, inspection, architectural or engineering activities.

Gencor was obligated, under the contract to provide "adequate field engineering service" to assist in the start-up of the plant. After Basic/Reed requested that Gencor send personnel to assist in making the plant fully functional, Gencor sent in Calvin Dixon, who performed various operations on the plant, including the utilization of jumper wires and manipulation of the circuitry board.

Mr. Dixon was performing services within the meaning of the professional liability exclusion, as referenced above, on the plant when the plant exploded. Mr. Dixon was provided by Gencor to provide adequate field engineering services, as mandated by the Contract. Additionally, expert testimony at trial supports the assertion that Mr. Dixon was "in charge" of the plant and was responsible for ensuring that the main gas valve was turned off prior to ignition. Mr. Dixon's activities constitute engineering and/or supervisory services, as contemplated by the Professional Liability exclusion.

Since the damages arose out of the professional services provided by the Gencor personnel, this Endorsement will exclude coverage for the damages incurred. Gerling must therefore deny coverage pursuant to the Professional Liability exclusion, and will not indemnify Gencor for damages to the plant and all resulting loss of use of the plant.

Damage To Your Work Exclusion

The policy, Section I, ¶ L contains an additional exclusion, which provides:

> Damage to Your Work

5

Letter to Gillian Brown, Esq.
Page 6 of 8

> Property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

"Products-completed operations hazard", as it is defined in the Policy, "includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of the "your work...." Policy, Section V, ¶ 14. "Your work" is defined in the policy as "Work or operations performed by you or on your behalf and materials, parts or equipment furnished in connection with such work or operations." Policy, Section V, ¶ 19.

Once the product is completed, any damages arising from the product itself or from work performed on the plant would be excluded under the policy. The plant was delivered to Basic/Reed in Fall of 2000. Basic/Reed employees began to assemble the plant in February, 2001. Under the policy, "work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as complete." Policy, Section V, ¶ 14. The plant was operating successfully by Basic/Reed in April, 2001. However, Gencor personnel were called in to assist in increasing the plant's capacity. However, in all respects, the plant was complete at the time of the explosion. Therefore, the damages resulting from Gencor's work which arose out of it of any part of it, or from the plant itself, is expressly excluded under the policy.

Gerling must therefore deny coverage pursuant to the Damage to Your Work exclusion, and will not indemnify Gencor for damages to the plant and all resulting loss of use of the plant.

Damage to Property Exclusion

In the alternative, and without prejudice to the assertions already set forth, if the plant was not considered to be complete at the time of the explosion, the policy contains an additional provision which excluded damage to property for work performed.

This provision states that the insurance does not apply to property damage to "That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." Policy, Section I, ¶ J(6). However, this exclusion "does not apply to "property damage" included in the "products-completed operations hazard." Policy, Section I, ¶ J.

Since the Court determined that the work performed on the plant by Gencor personnel was the cause of the damages to the plant, the policy would not apply to the costs necessary to restore, repair or replace the plant. Therefore, if it is determined that the plant was not complete at the time of the explosion, then this exclusion for damage to property would apply, and Gerling is not be obligated to indemnify Gencor for the costs of restoring, repairing, or replacing the plant.

Gerling must therefore deny coverage pursuant to the Damage to Property exclusion, and will not indemnify Gencor for damages to the plant and all resulting loss of use of the plant.

6

Letter to Gillian Brown, Esq.
Page 7 of 8

Additional Considerations

Without prejudice to Gerling's positions, as previously set forth herein, with regard to the judgment and coverage issues, it is important to note that any potential liability of Gerling would be severely limited by the $2 million Aggregate Limit for Products-Completed Operations of the policy as clearly reflected in the Limits of Insurance contained in the Declarations of the policy.

Section III ¶ 3 of the policy provides:

> The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

Gerling has already made payments of $750,000 on products-completed operations cases relating to damages incurred during the applicable policy period. In addition, Gerling is currently involved in the defense of Gencor in the case styled *Dannolfo v. Gencor Industries, Inc.*, index number 020406/2001, that is set for trial in Kings County, New York on May 11, 2007, involving a claim for damages allegedly occurring during the same applicable policy period as the Basic/Reed explosion. Due to the payments already made for products-completed operations cases for damages incurred during the policy period, and the possible exposures that the Dannolfo matter presents, the available funds of the Products-Completed Operations Aggregate Limit may be limited and/or possibly exhausted. Therefore, any possible recovery for property damage included in the products-completed operations hazard would necessarily be limited to the remaining value of the Aggregate Limit. Please note, you should be aware, given the Fireman's Fund verdict and the pending Dannolfo matter, that the policy also includes a General Aggregate Limit in the amount of $2,000,000.

Conclusion

Based upon the grounds stated above, this shall confirm that there is no coverage for the jury verdict, nor Final Judgment rendered against Gencor. Since Gerling defended the case under a reservation of rights, it will continue to pay for defense counsel to conclude this litigation with respect to post-trial motions and potential appeals. In this regard, we acknowledge the request that has been made by Gencor by way of your letter to Gerling's undersigned counsel (January 29, 2007) and directed to plaintiff's counsel (January 30, 2007) with respect to the Stipulation that was previously agreed to on or about October, 2005, that prohibits Fireman's Fund from enforcing any judgment obtained in this action *in personam* against Gencor. Gerling's efforts in this regard on behalf of Gencor are strictly without prejudice and are not a waiver in any regard, but a mere courtesy in deference to the Stipulation. Gencor, is of course, free to assign its own counsel at its own expense in this regard if it chooses to do so. Furthermore, with respect to the Stipulation, Gerling asserts that there are no available insurance proceeds under the Gerling policy for the reasons stated above, as per the express terms of the policy.

However, to the extent that the judgment is subject to rehearing and reformation by the Court, we are willing to re-examine coverage issues. For example, the judgment includes awards for both

7

Letter to Gillian Brown, Esq.
Page 8 of 8

negligence and breach of contract. These awards are comprised of identical components including physical damage to property, lost profits, and additional expenses. Since the awards are coexistent and redress Plaintiff for the same wrong, the Judgment is subject to review since the Plaintiff was required to elect its remedy before the entry of judgment. If, on rehearing or review, Plaintiff elects a judgment solely for negligence, Gerling may reconsider coverage under such an occurrence for the loss of use and resultant consequential damages.

In the interim, Gerling has been reserving all of its rights and specifically refers to the fact that the policy explicitly provides that Gerling is only responsible for damages that Gencor is legally obligated to pay. Since no *in personam* judgment can entered, Gencor would never be legally obligated to pay the damages, and therefore Gerling is not obligated to provide coverage.

Therefore, without prejudice to its rights and without waiving any of its coverage defenses, in consideration that the judgment is subject to rehearing by the trial court and likely appeal by the appellate court, Gerling is willing to re-examine coverage issues at a later time should any circumstances change. However, given the nature of the judgment which precludes recovery against Gencor, Gerling has no obligation to pay. Moreover, we have outlined the provisions in the policy that would bar coverage in part or in total should an *in personam* judgment be entered against Gencor.

Should Gencor have any questions or comments please do hesitate to communicate same.

Very Truly Yours,

HYMAN SPECTOR & MARS, LLP

ANDREW R. SPECTOR, ESQ.
For the Firm

ARS /jm

F:\WP51\FILES\ARS\Fireman's Fund\Gencor\Corresp\Ltr to Gillian May 14.doc

8