# EXHIBIT "3"

IN THE CIRCUIT COURT, IN THE NINTH
JUDICIAL CIRCUIT, IN AND FOR ORANGE
COUNTY, FLORIDA

CASE NO.: 04-CA-7746

DIVISION: 33

FIREMAN'S FUND INSURANCE
COMPANY, a foreign corporation
as Subrogee of (a/s/o) BASIC RESOURCES, INC.,
and GEORGE REED, INC., foreign corporations,

    *Plaintiff,*

Vs.

GENCOR INDUSTRIES, INC.,
A foreign corporation,

    *Defendants.*



## COMPLAINT

Plaintiff, Fireman's Fund Insurance Company ("FFIC") a foreign corporation, as subrogee of ("a/s/o") Basic Resources, Inc. ("Basic"), and George Reed, Inc., ("Reed"), foreign corporations and FFIC's insureds, sues the Defendant, Gencor Industries, Inc., ("Gencor"), a foreign corporation, and states:

1. This is an action for damages which exceeds the sum of Fifteen Thousand ($15,000.00) Dollars exclusive of interest and costs.

2. Plaintiff, FFIC is a foreign corporation existing under the laws of the state of California and properly doing business in the State of Florida. At all times material hereto, FFIC insured Basic and its subsidiaries, (including but not limited to George Reed, Inc. ("Reed") under a policy of insurance numbered S 08 MZX 80757126. FFIC is subrogated, legally and equitably, to the interests of Basic and/or Reed to the extent of certain insurance

payments made for property damage incurred there under.

3. At all times material hereto, FFIC's insured, Basic Resources, Inc., is a foreign corporation authorized to do business in the State of California with its principal place of business at 928 12th Street, Modesto, California, 95354.

4. At all times material hereto, FFIC's insured, George Reed, Inc., is a foreign corporation authorized to do business in the State of California with its principal place of business at 928 12th Street, Modesto, California, 95354.

5. At all times material hereto, Defendant, Gencor Industries, Inc. is a foreign corporation organized and existing under the laws of Delaware, authorized and doing business in the State of Florida with its principal place of business and corporate headquarters located at 5201 N. Orange Blossom Trail, Orlando, FL, 32810.

6. At all times material to this complaint, Defendant Gencor held itself out to be a business engaged in the design, manufacture, assembly, sale, delivery, installation, training and supply of portable asphalt Plants in most if not all states of the United States. As such, they, in Florida:

(a) Operated, conducted, engaged in, or carried on a business or business venture;

(b) Had an office or agency, representative, employees, technicians or agents;

(c) Committed a tortious act or acts as further alleged in this complaint;

(d) Engaged in solicitation or service activities contributing to the damages suffered by Plaintiff; or

(e) Commercially provided by sale, lease or otherwise, products, materials, or things processed, serviced, or manufactured by them in the ordinary course of commerce, trade, or

damages suffered by Plaintiff

7. Defendant, Gencor, contracted with Basic and/or Reed, for the sale and installation of a 12,000 Lb. Stationary Batch Asphalt Plant ("Plant"). The total purchase cost of the Plant was $1,989,679.00. (A copy of the contract between the parties is attached hereto as Exhibit "A".) The contract price was paid in full to Gencor as agreed to by Basic and/or Reed.

8. Venue is proper in Orange County, Florida, pursuant to the express written venue provision clause contained in the attached contract between the parties. (See Composite Exhibit "A", pg 44, paragraph 19).

9. All requirements and conditions precedent to the filing of this lawsuit have been satisfied by Plaintiff and/or its insureds.

## COUNT I

## BREACH OF CONTRACT

Plaintiff, FFIC repeats and reaffirms all the allegations contained in paragraphs 1 through 9 as though fully set forth herein.

10. FFIC insureds, Basic/Reed, entered into a written contract with Defendant Gencor for the purchase of a 12,000 Lb. Stationary Batch Asphalt Plant ("Plant"). (See Exhibit "A".)

11. Defendant Gencor, breached the contract with Plaintiff's Insured in the following ways:

    a. Failing to initially install, and calibrate the equipment in a safe manner.

    b. Failing to provide an Asphalt Batching System guaranteed to meet all existing state specifications.

—3—

c. Failing to provide a safe ignition system;

d. Failing to provide a safe burner management system;

e. Failing to provide a safe ventilation system;

f. Failing to provide adequately trained Gencor personnel for the initial safe installation, calibration and testing of the product;

g. Failing to provide adequate field engineering services necessary to properly assist and train Basic/Reed personnel and/or installation crew in the appropriate manner to safely install and operate all of the Plant's equipment;

h. Failing to properly and safely calibrate the machine once installed;

i. Failing to adequately and safely provide qualified personnel and supervision for the initial calibration, startup, operation, shut down and clean up of the system;

j. Failing to properly review and supervise the daily start up, normal operating procedures and daily shut down procedures;

k. Failing to provide adequate daily maintenance procedures;

l. Failing to follow, explain, recommend, and implement recommended and known proper safety procedures for the operation of the Plant;

m. Failing to follow approved safety procedures that would minimize damage to the equipment;

n. Failing to provide a complete product of merchantable quality;

o. Failing to provide products free from defects in workmanship and material;

-4-

p. Violating and bypassing known safe operating procedures for the starting up of the Plant and its various processes.

q. Failing to meet with appropriate personnel involved in the daily operation of the equipment to review and explain recommended safety procedures.

r. Improperly modifying the product without proper supervision and/or authority to do so.

s. Failing to safely operate the ignition system.

t. Failing to properly vent the dryer assembly prior to ignition.

u. Failing to safely operate the asphalt Plant.

v. Failing to give adequate warnings of the product's dangers and failing to give adequate instructions to avoid such dangers.

w. Failing to notify or warn Basic/Reed of the risk of failure during normal use.

x. Failing to provide proper instruction in the use of the ventilation system.

y. Failing to provide proper instruction in the use of the ignition system.

12. As a direct and proximate result of the aforementioned (and possibly other) breaches of contract, the Plant suddenly and without warning exploded, causing significant and extensive property damage to the Plant, its surroundings, and personal injury to employees of Basic/Reed.

13. The defective condition(s) of the product was/were not readily observable by Basic/Reed.

14. As a direct and proximate result of Defendant's various breaches of contract and the resultant explosion, Plaintiff, FFIC has suffered compensatory and consequential

-5-

damages in the form of insurance payments paid to Basic/Reed for out of pocket expenses, replacement costs, repair and reimbursement costs, property damage, loss of profits, and business interruption, etc. These losses now total $959,787.22.

WHEREFORE, Plaintiff, FFIC requests judgment against Defendant, Gencor for compensatory and consequential damages, interest, attorneys' fees, and costs of this action, together with trial by jury and any further relief as the court deems proper.

## COUNT II

## BREACH OF IMPLIED WARRANTY

## OF MERCHANTABILITY

Plaintiff realleges and reaffirms the general allegations contained in paragraphs 1 through 9 as though fully contained herein.

15. At the time of the sale of the Plant in question, Defendant, Gencor, expressly and/or impliedly warranted and represented to Basic/Reed that the Plant was reasonably fit for the purposes for which the Defendant knew the Plant would be required, and that it was of good and merchantable quality, and otherwise fit for the purposes intended.

16. Defendant, Gencor, expressly and impliedly warranted that its professional field personnel had sufficient training, experience with and knowledge of the product so as to insure the safe installation, testing, calibration, operation, and maintenance of the system.

17. Basic/Reed relied on these implied warranties in purchasing the Plant.

18. The Plant and all of its independent parts were not of merchantable quality in that on April 18, 2001, during its normal and intended use, while being operated by Gencor personnel then on site at the Basic/Reed property, the Plant suddenly and without warning

—6—

exploded. The resultant explosion virtually destroyed or severely damaged the subject equipment and/or surrounding property and most if not all of its contents, and causing severe personal injury to employees of Basic/Reed, ultimately causing the complete shut down of Plant operations, and extensive replacement and repair of the asphalt manufacturing system.

19. Defendant, Gencor breached the implied and express warranties as contained in the contract and business dealings with Basic/Reed in that the Plant/equipment, and services sold were not as represented.

20. Defendant, Gencor breached the implied and express warranties as contained in the contract and business dealings with Basic/Reed in that the professional field personnel provided by Gencor did not have sufficient training, experience with and/or knowledge of the product so as to insure the safe installation, testing, calibration, operation, and maintenance of the entire system.

21. Plaintiff, FFIC has given prompt, reasonable and repeated notice of the various breaches of warranties and the resultant damages to Defendant, Gencor, but Defendant, Gencor has failed and/or refused to reimburse Plaintiff for the aforementioned damage.

22. As a direct and proximate result of Defendant's breaches of implied warranties of merchantability in designing, manufacturing, servicing, installing, maintaining and placing into the stream of commerce of an unreasonably dangerous product, and the resultant explosion, Plaintiff, FFIC has suffered compensatory and consequential damages in the form of insurance payments paid to Basic/Reed for out of pocket expenses, replacement costs, repair and reimbursement costs, property damage, loss of profits, and business interruption, etc. These losses now total $959,787.22.

WHEREFORE, Plaintiff, FFIC requests judgment against Defendant, Gencor for compensatory and consequential damages, interest, attorneys' fees and costs of this action, together with trial by jury and any further relief as the court deems proper.

## COUNT III

### BREACH OF EXPRESS WARRANTY

Plaintiff(s) repeats and reaffirms all the allegations contained in paragraphs 1 through 9 as though fully set forth herein.

23. In the contract between Gencor and Basic/Reed (attached hereto as Exhibit "A") Defendant Gencor provided to Basic/Reed an express written warranty that among other things, insured the purchaser that "each product and each part manufactured by or for Gencor to its detailed design shall (a) conform to the applicable specification for such product or part and (b) be free from defects in workmanship and material."

24. Defendant failed to provide said product that "(a) conforms to the applicable specifications for such product or parts, and (b) be free from defects in workmanship and material."

25. Specifically, Defendant, Gencor failed to properly design, manufacturer and/or install and maintain, adequate parts for the continued safe operation of the ventilation and ignition systems of the Plant.

26. Defendant, Gencor further breached the implied and express warranties as contained in the contract and business dealings with Basic and/or Reed in that the professional field personnel provided did not have sufficient training, experience with and knowledge of the product so as to insure the safe installation, testing, calibration, operation

-8-

and maintenance of the system.

27. Defendant, Gencor, failed to safely install, test, calibrate, operate, maintain and shutdown the Plant as had been expressly promised and warranted.

28. As a direct and proximate result of the aforementioned breaches of express warranty, the Plant suffered an explosion which virtually destroyed and/or damaged many if not all of its component parts and the surrounding property, causing severe personal injury to employees of Basic/Reed.

29. As a direct and proximate result of the breaches of express warranty and the resultant explosion, Plaintiff, FFIC has suffered damages in the form of insurance payments paid to Basic/Reed for out of pocket expenses, replacement costs, repair and reimbursement costs, property damage, loss of profits, and business interruption, etc. These losses now total $959,787.22.

30. Plaintiff, FFIC provided Defendant with timely, sufficient and repeated notice of said breaches of express warranty and the resultant damages, and Defendant has failed and or refused to provide Plaintiff with any of the remedies specifically contained in the contract.

WHEREFORE, Plaintiff, FFIC requests judgment against Defendant, Gencor for compensatory and consequential damages, interest, attorneys' fees and costs of this action, together with trial by jury and any further relief as the court deems proper.

## COUNT IV – STRICT LIABILITY

Plaintiff(s) repeats and reaffirms all the allegations contained in paragraphs 1 through 9 as though fully set forth herein.

31. At the time that Defendant, Gencor manufactured and/or distributed the Plant to

-9-

Basic and/or Reed, Defendant, Gencor knew it contained a defect or defects which made it unsafe for its intended use which included but was not limited to:

    a) Defective ventilation or "purge" cycle components.

    b) Defective ignition system.

    c) A control panel which allowed technicians to bypass normal and mandatory safety features, (including the use of ignition jumper wires in the ignition system).

Said defects were ultimately contributing and proximate causes of the Plant suddenly and without warning exploding.

32. The above listed defects described above rendered the Plant an unreasonably dangerous product and a product fraught with unexpected dangers to all foreseeable users and bystanders for which Defendant Gencor is strictly liable in tort.

33. As a direct and proximate result of Defendant, Gencor's designing, manufacturing and placing into the stream of commerce of an unreasonably dangerous Plant, and the resultant explosion, Plaintiff, FFIC has suffered compensatory damages in the form of insurance payments paid to Basic/Reed for out of pocket expenses, replacement costs, repair and construction costs, reimbursement costs, property damage, lost profits, and business interruptions damages, etc. Theses damages now total $959,787.22.

WHEREFORE, Plaintiff, FFIC requests judgment against Defendant, Gencor for compensatory and consequential damages, interest, and costs of this action, together with trial by jury and any further relief as the court deems proper.

## COUNT V – NEGLIGENCE

Plaintiff realleges and reaffirms all of the allegations contained in Paragraphs 1 through

9 as though fully set forth herein.

34. At all times material to this complaint, Defendant Gencor was in the business of designing, manufacturing, assembling, delivering, installing, training in the use and care of, and placing into the stream of commerce portable asphalt plants and other such like equipment.

35. Defendant Gencor, designed, manufactured, assembled, sold, delivered, installed, and placed into the stream of commerce the 12,000 Lb. Stationary Batch Asphalt Plant ("Plant") that is the subject matter of this action.

36. On or about May 30, 2000, Defendant Gencor, sold and delivered the Plant to Basic/Reed at its 17300 Jahant Road, Clements, California, location.

37. On April 18, 2001, while under the full and exclusive control of and operation by Gencor professional field personnel, the Plant without any warning suffered a violent explosion.

38. On the date of the explosion, Defendant, Gencor, represented that the engineering, technical and/or installation professional field personnel they were providing possessed the requisite expertise and instruction on the safe and proper installation, start up, testing, calibration, operation, maintenance and shutdown of the Plant.

39. Defendant, Gencor's professional field personnel did not have the requisite expertise, knowledge, experience and/or training required for the safe installation, start up, testing, calibration, operation, maintenance and shutdown of the Plant.

40. The aforementioned explosion occurred as a direct and proximate result of Gencor professional field personnel's negligent installation, start up, testing, calibration, operation, maintenance, and/or improper modification of the Plant.

41. Defendant Gencor owed a duty to foreseeable users, including Basic and/or Reed, to

-11-

exercise due care in the manufacture, assembly, distribution and installation, calibration, operation, maintenance and training of their products, including the Stationary Batch Asphalt Plant involved in this action.

42. Defendant Gencor owed a duty to foreseeable users to adequately and timely warn of known or potential dangers including the risk of explosion which could occur during the various stages of the start up or other operations of the Plant.

43. Defendant, Gencor owed a duty to foreseeable users of providing proper mechanical, electrical start up equipment and sufficiently trained professional field personnel as required and necessary for the safe installation and initial start up of the Plant.

44. Defendant, Gencor owed a specific duty to foreseeable users to follow all known safety procedures required to adequately and safely install, maintain, calibrate, start up, test, operate, and shut down the Plant.

45. Defendant, Gencor owed a duty to prevent and sufficiently warn against the improper installation and/or use of any type of "jumper wires" or any other unapproved modifications within any portion of the Plant's ignition system that might create an increased risk of explosion.

46. Defendant, Gencor negligently and carelessly breached their above-referenced duties of care owed to the Plaintiff, and/or its insureds, in one or several of the following manners:

    a) Defendant, Gencor designed, manufactured, and assembled a Plant that among other things contained a faulty starting and ventilation system that was prone or subject to failure, and/or an ultimate explosion thus creating a dangerous condition;

    b) Designed, manufactured and assembled a Plant that allowed their own

professional field personnel to circumvent safety features and thus causing the equipment to explode;

c) Failed and/or refused to properly and timely warn or provide adequate notice of the hazard created by this Plant's ability to suddenly and without warning explode during normal use;

d) Failed and/or refused to properly and timely warn or provide adequate notice of the possible danger of explosion involved in the use of ignition jumper wires to bypass safety features on the control panel during the start up of the Plant.

e) Failed and/or refused to properly train its authorized technicians and/or other professional personnel in the safe installation and start up procedures necessary for the safe and effective start up of the Plant.

f) Failed to properly train its professional field personnel in the proper ventilation of the ignition starting system.

g) Failed to use proper precautions in ventilating the system prior to start up which failure ultimately contributed to the explosion of the Plant.

h) Failed to otherwise exercise due care with respect to designing, manufacturing, assembling, installing, calibrating, operating and training for the use and care of the Plant involved in this action.

i) Failed to adequately examine or recognize any known defects or existing problems with the ignition or ventilation systems of the Plant involved in this action.

j) Failed to provide the type of quality of work and standard of care in the installation, start up, testing, calibration, maintenance and operation of the Plant that is known

and expected by like professionals within the industry and/or in similar occupations.

k) Failed to adequately and properly supervise and/or train its professional field personnel assigned to the Basic/Reed site.

47. Defendant, Gencor controlled and exclusively supervised all phases of the design, manufacture, delivery, installation, calibration, start up, testing, maintenance and operation of the Plant that is the subject matter of this lawsuit. Defendant, Gencor further controlled and exclusively provided its own professional field personnel, for its claimed supervision, training of and assistance to Basic/Reed personnel in the initial start up, calibration, testing, maintenance and operation of the Plant during the time period in which the explosion took place.

48. Due to no external causes of Plaintiff, and through the sole fault of Gencor and/or its professional field personnel, employees or agents, the Plant suddenly and without warning exploded. By application of the doctrine of res ipsa loquitur, Defendant, Gencor and/or its professional field personnel, and employees were negligent with respect to the design, manufacture, delivery, installation, calibration, start up, testing, maintenance and operation of the Plant.

49. That as a direct and proximate result of the Defendant's various breaches of duties owed to Basic/Reed, and ultimately to Plaintiff FFIC as their insurer, Plaintiff FFIC, has suffered extensive damage in the form of insurance payments made for the destruction to Basic/Reed's real and personal property. Said damages include, but are not limited to out of pocket expenses required to repair and/or replace said Plant/equipment, repair and replacement of personal property, construction costs, loss of profits, business interruption and for additional expenses incurred during the repair and/or replacement of the Plant. These

—14—

damages now total $959,787.22.

WHEREFORE, Plaintiff, FFIC requests judgment against Defendant, Gencor for compensatory and consequential damages, interest, and costs of this action, together with trial by jury and any further relief as the court deems proper.

Respectfully Submitted,

LAW OFFICES OF
JAMES P. GAINEY, P.A.

JAMES P. GAINEY, ESQUIRE
Florida Bar No.: 747033
Attorneys for Plaintiff, FFIC
One Enterprise Center
225 Water Street, Suite 1701
Jacksonville, FL 32202
Telephone: (904) 807.2505
Facsimile: (904) 355-9215