1  Thomas R. Beer (148175), tbeer@barwol.com
   Tino X. Do (221346), tdo@barwol.com
2  BARGER & WOLEN LLP
   650 California Street, 9th Floor
3  San Francisco, California  94108-2713
   Telephone:  (415) 434-2800
4  Facsimile:   (415) 434-2533

5  Attorneys for Defendant
   GERLING AMERICA INSURANCE COMPANY

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  FIREMAN'S FUND INSURANCE          )   CASE NO.: 3:07-cv-06302-CRB
    COMPANY, a foreign corporation a/s/o )
12  BASIC RESOURCES, INC. and GEORGE  )   **DEFENDANT GERLING AMERICA**
    REED, INC., a foreign corporation, )   **INSURANCE COMPANY'S OPPOSITION**
13                                     )   **TO PLAINTIFF FIREMAN'S FUND**
                                       )   **INSURANCE COMPANY'S MOTION**
           Plaintiff,                  )   **FOR SUMMARY JUDGMENT**
14                                     )
       vs.                             )
15                                     )   Date:        August 8, 2008
    GERLING AMERICA INSURANCE          )   Time:        10:00 AM
16  COMPANY, a foreign corporation,    )   Courtroom:   8
           Defendant.                  )
17                                     )
                                       )
18  _____)

19

20

21

22

23

24

25

26

27

28  j:\office2\29218\011\08pleadings\gerling' opp to ffics msj final.doc

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.:  3:07-CV-06302-CRB

## TABLE OF CONTENTS

PAGE

1.   INTRODUCTION .................................................................................................................. 1

2.   ARGUMENT ........................................................................................................................ 2

   A.   FFIC Has No Standing to Challenge Gerling's Declination of Coverage ...................... 2

   B.   Based on Its Argument That the Plant Was Neither Gencor's "Product" Nor "Work," FFIC Cannot Meet Its Burden of Proof That It Is Entitled To Coverage Under the Gerling Policy ................................................................................................ 2

       (1)   FFIC's factual basis for its coverage argument ...................................................... 3

       (2)   FFIC's coverage position ........................................................................................ 4

       (3)   Analysis of FFIC's coverage position .................................................................... 5

   C.   FFIC's Factual Admissions Support the Application of the "Damage to Your Work" Exclusion ............................................................................................................ 7

   D.   FFIC's Own Claims in the Underlying Action Confirm the Application of the "Damage to Your Product" Exclusion .......................................................................... 9

   E.   FFIC Misapplies Florida Law on the "Contractual Liability" Exclusion .................... 12

   F.   FFIC Misstates The Scope of the "Professional Services" Exclusion .......................... 13

3.   CONCLUSION .................................................................................................................... 15

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-i-

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

1

TABLE OF AUTHORITIES

2
PAGE

3
**Cases**

4
*Aerothrust Corp. v. Granada Ins. Co.*, 904 So.2d 470 (2005) ....................................... 13

5
*American Family Mutual Ins. Co. v. American Girl, Inc.*, 673 N.W.2d 65 (Wisc. 2004) ...... 12, 13

6
*Assurance Generale de France v. Catchcart*, 756 So.2d 1055 (Fla. 4th DCA 2000).................... 7

7
*Beretta U.S.A. Corp. v. Federal Ins. Co.*, 117 F.Supp.2d 489 (D. Md. 2000), aff'd, 17 Fed.
    Appx. 250 (4th Cir. 2001) ........................................................................... 10

8

9
*Broward Marine, Inc. v. Aetna Ins. Co.*, 459 So.2d 330 (1984) ........................................ 9

*Castillo v. State Farm Fla. Ins. Co.*, 971 So.2d 820 (Fla. 3d DCA 2007)............................ 7

10

*Cotton States Mut. Ins. Co. v. Norell Heating & Air Conditioning Co., Inc.*, 370 So.2d 270
11
    (Ala. 1979)............................................................................................... 9

12
*Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800 (10th Cir. 1998) ................................. 9

13
*Hamilton Die Cast, Inc. v. United States F. & G. Co.*, 508 F.2d 417 (1975) ........................ 9

14
*Herrera v. Catatumbo*, 844 So.2d 664, 668 (Fla. 3d DCA 2003)...................................... 7

15
*Hudson v. Prudential Property and Cas. Ins. Co.*, 450 So.2d 565 (Fla. 2d DCA 1984) ............... 7

16
*J.G.A. Const. Corp. v. Charter Oak Fire Ins. Co.*, 414 N.Y.S.2d 385 (1979) ........................ 10

17
*Maryland Cas. Co. v. Reeder*, 221 Cal.App.3d 961 (1990) ............................................ 9

18
*Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999) ................................................... 14

19
*Pensacola Executive House Condo. Ass'n v. Baskerville-Donovan Engineers, Inc.*, 566
    So.2d 850 (1990) ....................................................................................... 14

20

21
*Rad Source Tech., Inc. v. Colony National Ins. Co.*, 914 So.2d 1006 (2005)................... 10, 11, 12

22
*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528 (Fla. 2005) ....................... 9

23
*U.S. Fire Ins. Co. v. J.S.U.B.*, 979 So.2d 871 (Fla. 2007)...................................... 12, 13

24
*U.S. Liability Ins. Co. v. Bove*, 347 So.2d 678 (Fla. 3d DCA 1977)................................ 7

25

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

Plaintiff Fireman's Fund Insurance Company's ("FFIC") motion for summary judgment fails as a matter of law by its own terms. FFIC states unequivocally that the asphalt plant at issue was neither the "product" nor the "work" of Gerling's insured, Gencor, at the time of the explosion. While FFIC makes this assertion in an attempt to avoid policy exclusions, FFIC's assertion that the Plant was not Gencor's "product" or "work" also means that the Gerling policy does not provide coverage for FFIC's claims under the "Products-Completed Operations Hazard" ("PCOH") section. FFIC cannot meet its burden of proof that it is entitled to coverage under the Gerling policy and its motion for summary judgment must be denied.

With regard to the relevant policy exclusions, FFIC acknowledges that the undisputed facts support the application of Gerling's "Damage to Your Work" exclusion. That exclusion, therefore, bars coverage for FFIC's claims. FFIC's assertion that this exclusion should only preclude a portion of its total claimed damages has no support in law or fact. Similarly, FFIC's arguments against the application of the "Damage to Your Product," "Contractual Liability" and "Professional Services" exclusions also fail. Those arguments misapply Florida law and misstate the undisputed facts of the underlying action. FFIC accepted a premium from Reed and directly insured the risk of loss at issue in this case. FFIC accepted coverage for the risk and paid for the loss. FFIC now seeks to pass its risk on to Gerling, even though Gerling consistently took the position that it had no coverage obligation to Gencor, a position Gerling's insured never challenged. The Court should deny FFIC's motion for summary judgment.[1]

---

[1] In footnote 3 of FFIC's Motion for Summary Judgment, FFIC also requests that this Court reconsider its April 3, 2008 Order striking FFIC's prayer for attorneys' fees. FFIC's does not fulfill the Court's procedural requirements for reconsideration, nor is its request timely. The request should be denied on these grounds alone.

j:\office2\29218\011\08pleadings\gerling' opp to ffics msj final.doc

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

2. **ARGUMENT**

A.    **FFIC Has No Standing to Challenge Gerling's Declination of Coverage**

FFIC cites Section IV, ¶ 3 of the Gerling policy as its basis for standing to bring this action.[2] It is not disputed that Gerling declined indemnity coverage to Gencor for the claims at issue. (Declaration of Thomas R. Beer in Support of Defendant Gerling America Insurance Company's Motion for Summary Judgment ("Beer Decl."), Exhibit C). As FFIC obtained neither an assignment of policy rights from Gencor to proceed against the Gerling policy, nor a direct judgment against Gerling that could be enforced here, FFIC has no standing to challenge Gerling's declination of indemnity coverage or to proceed with this action.

B.    **Based on Its Argument That the Plant Was Neither Gencor's "Product" Nor "Work," FFIC Cannot Meet Its Burden of Proof That It Is Entitled To Coverage Under the Gerling Policy**

FFIC seeks to establish coverage under the PCOH section of the Gerling America Insurance Company ("Gerling") policy issued to Gencor Industries, Inc. ("Gencor"). FFIC's attempt to meet its burden of establishing, *prima facie*, that its claim falls within Gerling's basic coverage is anomalous, unsupported by the underlying facts, and, taken entirely on its own terms, fraught with internal inconsistencies.

Significantly, FFIC does not contend in its motion that its alleged damages were caused by any defect in the asphalt plant ("Plant") that exploded. In fact, FFIC makes no claim whatsoever based on the "product" prong of the PCOH. Rather, FFIC rests its entire coverage argument on the contention that Gencor's employee, Mr. Dixon, performed improper "work" on the Plant, which "work" FFIC contends was negligent, causing the explosion. Thus, FFIC bases its claim for coverage solely on the "work" prong of the PCOH. FFIC alleges that the PCOH is its only basis for recovery under the Gerling policy. To satisfy the PCOH's "completion" requirement, a prerequisite for coverage under either the "product" or "work" prongs, FFIC contends that Mr. Dixon was performing "work" that was already "complete," but merely required further "service," "correction"

---

[2] FFIC further cites the Court's May 20, 2008 Order. However, this Order, as Gerling reads it, did not hold that FFIC had "standing," it only denied Gerling's Motion for Judgment on the Pleadings based on a *non in personam* argument.

-2-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  or "repair." This conclusion, obviously designed to fit the claim within the coverage provision of

2  the PCOH while at the same time attempting to avoid certain policy exclusions, is supported by

3  neither logic, evidence in the record, nor policy definitions. At a minimum, FFIC's factual

4  assertions create triable issues of material fact, requiring that FFIC's motion be denied. FFIC's

5  argument undermines its *prima facie* case for coverage, and indeed, its entire claim.

### (1)    FFIC's factual basis for its coverage argument

FFIC takes the position that:

> . . . Gencor sold and delivered component parts to FFIC's Insureds . . . for their subsequent construction and use of a 12,000 lb hot asphalt batch plant . . . . George Reed built the asphalt plant with its own forces and Gencor was not involved in construction of the plant. Gencor agreed to provide 'field engineering service' to make the initial calibration of the equipment and to train the operator in the calibration and production process including the plant's computerized temperature control system . . . . A problem was encountered with the computerized temperature control system. In an effort to correct that problem, Mr. Dixon attempted a 'dry run' during which he 'electronically bypassed' the exhaust fans and the main gas feed line. Unfortunately, Mr. Dixon unwittingly energized the main gas line allowing propane to enter the 'drum' and when he electronically 'lit the burner' the plant exploded.

(FFIC MSJ, p. 3, lines 5-27 [FFIC's citations to sources omitted.]). FFIC argues that Mr. Dixon's negligence during his service visit caused the explosion of the Plant.

FFIC then argues that:

> In the underlying case, there was no evidence at trial that established that any 'product' manufactured by GENCOR was 'defective' or that there was a 'defect' in the component parts sold by GENCOR. Quite the contrary, FFIC withdrew all of its pretrial claims asserting 'products liability' theories. The only evidence adduced at trial established that the explosion and resulting property damage to the completed plant occurred during the course of Calvin Dixon's servicing/calibrating of the temperature control system and was caused by his *failure to use due care* rather than a 'product defect.'

(*Id.*, p. 16, line 27, p. 17, lines 1-7 [Emphasis supplied, FFIC's citations to sources omitted.]).

FFIC commits to the factual position that:

> In addition to the fact that no defect in any product caused any property damage, the completed plant was neither Gencor's 'product' nor 'work.' Gencor did not build the plant. Gencor did not sell a fully-assembled plant to FFIC's insureds, just component parts. The plant's construction was completed before Calvin Dixon arrived to 'service', 'correct' or 'repair' the temperature control system which was the 'work' out of which the explosion arose. The fully-assembled plant was never the work or product of Gencor.

-3-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

1    (*Id.*, p. 17, lines 9-20 [FFIC's citations to sources omitted.]).

2         By way of (consistent) limitation, FFIC recognizes that:

3    The physical damage to the finished plant caused extensive loss of use of the plant
     and additional expenses delineated in the Final Judgment and exhibits which in no
4    way was part of any 'work' performed by Calvin Dixon. Calvin Dixon's 'operation'
     at the time of the explosion resulted in direct damage to the Control Center, resulting
5    in $50,000.00 for replacement costs. The remaining $929,787.00 in physical damage
     is related to the remainder of the plant, including demolition, new erection, etc.

6
     (*Id.*, p. 18, lines 21-27 [FFIC's citations to sources omitted.]).

7
          In sum, the factual basis upon which FFIC builds all of its coverage theories is that Gencor's

8
     "product" was solely component parts, and that the cause of the explosion was Gencor's employee's

9
     negligent work. Stated otherwise, according to FFIC, the Plant, which was not Gencor's product,

10
     exploded.

11
          None of FFIC's factual allegations, nor its characterizations of relevant definitions of

12
     "product" in the Gerling policy or the written contract between Gencor and George Reed, are

13
     accurate.[3] FFIC's arguments fatally undermine its *prima facie* coverage case.

14
                    **(2)      FFIC's coverage position**

15
     FFIC claims:

16
     The property damage, lost profits and additional expense damages awarded to FFIC
17    are 'covered losses.' Under the facts adduced in the Underlying Action, neither the
     Exclusions nor any miscellaneous policy provisions raised by Gerling are applicable
18    and none operate to deny or otherwise exclude FFIC's Claim for Relief. Gerling's
     CGL policy provides $1,000,000.00 in PCOH coverage to satisfy the Underlying
19    State Court Judgment along with coverage for prejudgment interest, post judgment
     interest on the <u>full</u> judgment amount plus Costs Awarded to FFIC per the Policy's
20    "Supplementary Payments Provision" (SPP).

21   (FFIC MSJ p. 6, lines 21-27, p. , lines 1-3 [FFIC's citations to sources omitted.]).

22        At p. 7, lines 8-23 and p. 8, lines 1-8 of its MSJ, FFIC cites the Gerling PCOH definition:

23            14.   Products-completed operations hazard

24                a.  Includes all 'bodily injury' and 'property damage' occurring away
25                    from premises you own or rent and arising out of 'your product' or
                     'your work' except:

26                    (1)    Products that are still in your physical possession; or

27   _____
     [3] The written contract between Gencor and George Reed states that it is for the sale of a "12,000 Lb.
28   Stationary Batch Plant," not simply the components. Beer Decl., Ex. A.
                                        -4-

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

(2)    Work that is not yet been completed or abandoned.  However, 'your work' will be deemed completed at the earliest of the following times:

. . .

( c )    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Applying the provisions above, FFIC concludes:

FFIC's Insureds sustained 'property damage' as defined in the Gerling policy which occurred away from premises owned or rented by Gencor.  The property damage occurred when the batch plant was operable and otherwise complete with the exception of Calvin Dixon's 'service', 'correction' or 'repair' of the temperature control system.  As stipulated pretrial, at the time of the explosion, Gencor had delivered all the equipment called for in the contract.  Basic Resources/George Reed personnel had completed erection and installation of the equipment.  Based upon trial testimony, the plant had been certified by the State of California and was operational as of April 18, 2001, before the explosion.  Subsection (2)( c ) of the PCOH definition is satisfied and covers this loss subject to the limitation set forth in SECTION I of the policy which states:  . . . .

(FFIC MSJ, p. 8, lines 9-19 [FFIC's citations to sources omitted.]).

Accordingly, as quoted above, *FFIC contends* that the product, *i.e.*, the unassembled components originally delivered by Gencor, was complete, but that the property damage occurred while Mr. Dixon was servicing, correcting, or repairing the temperature control system (i.e., the "work").  FFIC appears to contend, however, that this "work" was complete, by virtue of (FFIC's reading of) Subsection (2)(c)'s specification that "work" is complete when it has been put to its intended use; or by the proviso following (2)(c), which specifies that "work" is complete when it was otherwise complete but might need some further service, maintenance, correction, repair, or replacement.

### (3)    Analysis of FFIC's coverage position

FFIC makes wildly inconsistent factual assertions as its basis for coverage.  First, FFIC unequivocally states, above, that the "work" was the operation performed by Calvin Dixon in servicing, correcting, or repairing the temperature control system.  Elsewhere, also quoted above,

-5-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1    FFIC states that the "work" was complete, with the exception of Calvin Dixon's service, correction,

2    or repair.  Lastly, FFIC contends Mr. Dixon's "work," if that in fact is the "work," *was* complete

3    because, pursuant to the applicable PCOH provision, that "work" had been put to use but may have

4    needed some further correction, repair, or replacement.  Is the "work" that FFIC claims as the basis

5    for coverage the components Gencor delivered, the Plant, the temperature control system, or Calvin

6    Dixon's calibration and testing?  FFIC variously appears to assert all of these mutually inconsistent

7    possibilities, and never settles this question.  Rather, FFIC skips around these options, attempting to

8    support whichever conclusion it is arguing at the moment.

9        FFIC appears to have backed itself into a corner.  FFIC absolutely (and wrongly) dismisses

10   the notion that the asphalt plant is the "product," and simultaneously argues that Mr. Dixon's visit

11   constituted "work."  Under that theory,  FFIC must satisfy the "work" prong of the two-pronged

12   definition in the PCOH for coverage to exist.  It cannot.  FFIC insinuates, but cannot support with

13   any evidence, that the "work" was some initial, earlier calibration and testing by Gencor, which

14   became complete once the batch plant was operable.  FFIC fails even to suggest, much less support

15   with any facts, any visit by Mr. Dixon or any other Gencor employee after delivery of the Plant and

16   before Mr. Dixon's visit during which the Plant exploded.  To support its theory, FFIC would then

17   need to prove that while Mr. Dixon's visit to calibrate and test, which allegedly caused the

18   explosion, was "work," it was essentially *remedial* "work."  The unspoken – and unsupported –

19   assumption is that there was some earlier work that Mr. Dixon remediated.  By operation of

20   Subsection 2(c) of the Gerling policy, remedial work would not change the fact that some earlier

21   "work" was complete when it was initially performed and put to use.  FFIC has not, and cannot,

22   assert that any such earlier work was ever performed.  In fact, Mr. Dixon's work, when the Plant

23   exploded, was ongoing, not remedial.

24       In sum, FFIC fails to bring its claim for coverage within the ambit of the PCOH.  Florida

25   law is consistent with the overwhelming majority of jurisdictions in holding that the insured has the

26   initial burden of proving that the alleged loss falls within a policy's initial grant of coverage.  Then,

27   and only then, does the burden shift to the insurer to show that an applicable exclusion takes the loss

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

1  out of coverage. *See Castillo v. State Farm Fla. Ins. Co.*, 971 So.2d 820, 824 (Fla. 3d DCA 2007);

2  *Herrera v. Catatumbo*, 844 So.2d 664, 668 (Fla. 3d DCA 2003); *Assurance Generale de France v.*

3  *Catchcart*, 756 So.2d 1055, 1058 (Fla. 4th DCA 2000); *Hudson v. Prudential Property and Cas.*

4  *Ins. Co.*, 450 So.2d 565, 568 (Fla. 2d DCA 1984); *U.S. Liability Ins. Co. v. Bove*, 347 So.2d 678,

5  680 (Fla. 3d DCA 1977); *Phoenix Ins. Co. v. Branch*, 234 So.2d 396, 398 (1970).

6      FFIC has not met this burden.

7  **C.    FFIC's Factual Admissions Support the Application of the "Damage to Your
       Work" Exclusion**

8

9      FFIC alleges that none of the Gerling policy exclusions apply, but plainly contradicts this

10  allegation and makes factual admissions that support the application of the "Damage to Your Work"

11  exclusion:

12      • "In this case, the 'work' performed by Gencor through Calvin Dixon at the time of

13        the explosion was limited to service on the Control Center electrical system

14        including the temperature controls."

15      • "Calvin Dixon's 'operations' at the time of the explosion resulted in direct damages

16        to the Control Center, resulting in $50,000.00 for replacement costs."[4]

17  (FFIC MSJ, Section IV, subsection 4, p. 18, lines 7-9 and 24-25).

18      In making these assertions, FFIC appears to acknowledge that the "Damage to Your Work"

19  exclusion might apply, but attempts to artificially limit its scope. FFIC claims that Mr. Dixon was

20  only performing "work" to the Control Center of the Plant at the time of the explosion, and

21  therefore, the exclusion should only preclude coverage for the damage to the Control Center, and

22  not for the rest of the Plant. This extremely narrow interpretation of the exclusion is contrary to the

23  very facts that FFIC has asserted in its own brief:

24      . . . service tests of the electrical system [of the Plant] were being performed by
         Gencor employee, Calvin Dixon. As part of those tests, Mr. Dixon electronically

25

26  [4] FFIC makes this bald assertion regarding the $50,000 "replacement costs" of the Control Center
    without any citation to actual evidence. In fact, the written contract between Gencor and George
27  Reed is for the sale of a "12,000 Lb Stationary Batch Plant," and does not contain any cost
    breakdown for individual component parts, and contemplates the sale of an entire Plant. Beer Decl.,
28  Ex. A.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  bypassed the system exhaust fans and he attempted to electronically bypass the main
   gas feed line prior to electronically operating the main burner. When Mr. Dixon
2  electronically 'lit the burner' the plant exploded. As a result of the explosion and the
   property damage it caused, [FFIC's insured] incurred losses for damage to the
3  facility.

4  (FFIC MSJ, Section III. p. 2). FFIC fails to cite *any* legal authority, from Florida or elsewhere, that

5  has applied or approved of FFIC's proposed distorted interpretation of the "Damage to Your Work"

6  exclusion.

7      The "Damage to Your Work" exclusion precludes coverage for property damage to the

8  "work" of the insured arising out of it or any part of it. The Gerling policy defines "your work" as

9  "work or operations performed by you or on your behalf." In this case, the scope of Gencor's

10  "work" is defined by its contractual obligations under the written contract between it and George

11  Reed.[5] Per the contract, Gencor performed "work" in manufacturing and delivering the Plant to

12  George Reed. Additionally, Gencor's "work" included the contractual obligation to perform "field

13  engineering service" to the entire Plant, which included:

14      • initial calibration

15      • start-up operation

16      • shut down

17      • clean up of the system

18  Beer Decl., Exhibit A. It is undisputed that Mr. Dixon had been performing this extensive "work"

19  on the entire Plant in fulfilling Gencor's contractual duties. (Defendant Gerling America Insurance

20  Company's Request for Judicial Notice in Support of Motion for Summary Judgment ("RJN"),

21  Ex. 2, Transcript of Proceedings, Vol. 2, 183:3-215:20.) Accordingly, FFIC's contention that

22  Gencor's "work" should be limited solely to the Control Center, or any other of the many parts that

23  comprise the Plant, has no factual or legal support whatsoever.

24      Additionally, the plain language of the "Damage to Your Work" exclusion precludes

25  coverage for all property damage (which encompasses loss of use) to the work of the insured that

26  _____

27  [5] As all the damages at issue in this case arise out of FFIC's breach of contract claim against
    Gencor, FFIC cannot dispute that the written contract controls the scope of Gencor's "work" with
28  regard to the Plant.

-8-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  "arises out of" the work or operations of the insured, or any part of it. The phrase "arising out of" is

2  broadly interpreted under Florida law:

3       [t]he general consensus [is] that the phrase 'arising out of' should be given a broad
        reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in

4       connection with' – that is, it requires some causal connection to the injuries suffered,
        but does not require proximate cause in the legal sense.

5  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 535 (Fla. 2005) (quoting *Fed. Ins.*

6  *Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998)). FFIC has alleged that Mr. Dixon's

7  actions caused the explosion, and that as a result of the explosion, FFIC's insureds incurred losses

8  that are at issue in this action. Accordingly, FFIC cannot now dispute that all damages at issue

9  originated or flowed from Mr. Dixon's "work" that allegedly caused the explosion. Given FFIC's

10  assertions that acknowledge the applicability of the "Damage to Your Work" exclusion, the

11  undisputed fact that Mr. Dixon was performing "work" on the entire Plant, and the broad scope of

12  the "arising out of" language under Florida law, all of FFIC's claim for damages is precluded by

13  this exclusion and FFIC's motion for summary judgment fails as a matter of law.

14      **D.**    **FFIC's Own Claims in the Underlying Action Confirm the Application of the**

15            **"Damage to Your Product" Exclusion**

16      While FFIC asserts that the Plant was not Gencor's "product" following assembly by

17  George Reed,[6] FFIC also argues that the "Damage to Your Product" exclusion[7] should not apply

18  

---

19  [6] FFIC cites *Broward Marine, Inc. v. Aetna Ins. Co.*, 459 So.2d 330 (1984) and *Cotton States Mut.*

20  *Ins. Co. v. Norell Heating & Air Conditioning Co., Inc.*, 370 So.2d 270 (Ala. 1979) for the
   proposition that the Plant was no longer Gencor's "product" or "work." However, neither case

21  addresses the issue of whether an item is no longer considered an insured's "product" or "work" for
   coverage purposes because it was assembled by another party. *Broward* addressed the issue of

22  whether a product remains the insured's "product" if <u>corrective</u> work is later performed on it.
   *Broward*, 459 So.2d at 331. *Cotton States* involved the installation of an air conditioning system in
   1965 and subsequent work done on it in 1976. *Cotton States*, 370 So.2d at 273. Accordingly, both

23  cases are distinguishable and do not support FFIC's argument. Gencor contracted to sell an entire
   Plant, manufactured the Plant, delivered all parts of the Plant and provided the assembly plans. The

24  mere assembly of the Plant by George Reed did not materially change the Plant as sold by Gencor.
   As such, the Plant was still Gencor's "product" at the time of the explosion.

25  [7] FFIC argues that the "Damage to Your Product" and "Damage to Your Work" exclusions should
   be considered "business risk" exclusions. FFIC MSJ, pp. 14-16. FFIC fails to cite <u>any</u> Florida case

26  that labels or treats these exclusions in the manner FFIC advocates. Instead, FFIC relies on
   *Maryland Cas. Co. v. Reeder*, 221 Cal.App.3d 961, 969 (1990) and *Hamilton Die Cast, Inc. v.*

27  *United States F. & G. Co.*, 508 F.2d 417, 419-20 (1975), cases addressing the issue of "property
   damage" under the "Impaired Property" exclusion in CGL policies. This discussion has no

28  relevance to the "Damage to Your Product" or "Damage to Your Work" exclusions, or whether

-9-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   because FFIC did not allege a defect to the Plant.  FFIC cites to *Rad Source Tech., Inc. v. Colony*

2   *National Ins. Co.*, 914 So.2d 1006 (2005) in support.  FFIC misstates its own claims from the

3   underlying action, and mischaracterizes the holding in *Rad Source*, which is does not support

4   FFIC's position.

5          FFIC makes the unsupported assertion that "[u]nder Florida law, the 'Your Product'

6   exclusion is inapplicable where there is no evidence that the property damage was caused by a

7   product's defective manufacture, *i.e.*, from a defect within the product itself."  (FFIC MSJ,

8   Section IV, subsection 4, p. 16, lines 24-25).  The court in *Rad Source* held that the "Damage to

9   Your Product" exclusion applied to situations "wherein the product itself is defective[8]," and also

10  found that the claimant had "not allege[d] that the [product] was defectively manufactured or that a

11  defect within the machine caused the damage."  *Rad Source*, 914 So.2d at 1009.  In its motion,

12  FFIC claims to have abandoned and waived any claim based on any defect in Gencor's product.  To

13  the extent this abandonment or waiver is not the case, then the "Damage to Your Product" exclusion

14  applies based on FFIC's numerous allegations of defect in the underlying complaint.  In this case,

15  FFIC did make specific product defect allegations in its complaint against Gencor in the underlying

16  Florida state court action:

17         • Gencor breached its contractual obligations by "[f]ailing to provide an Asphalt

18            Batching System guaranteed to meet all existing state specifications"

19         • Gencor breached its contractual obligations by "[f]ailing to provide a safe ignition

20            system"

21

22

23  either of these exclusions is inapplicable to the facts of this case.  Additionally, these exclusions are
    not dependent upon each other but must be analyzed independently of each other.  *See J.G.A. Const.*

24  *Corp. v. Charter Oak Fire Ins. Co.*, 414 N.Y.S.2d 385, 387-88 (1979) (holding that product
    exclusion applied but work exclusion did not apply due to subcontractor exception).

25  [8] The *Rad Source* court makes this holding regarding the need for allegations of defect without any
    citation to or support from prior caselaw.  *Rad Source*, 914 So.2d at 1009.  Other courts have held

26  that the "Damage to Your Product" exclusion is not limited to cases in which the product was
    defective due to the scope of the phrase, "arising out of."  *See, e.g., Beretta U.S.A. Corp. v. Federal*

27  *Ins. Co.*, 117 F.Supp.2d 489, 492-94 (D. Md. 2000), aff'd, 17 Fed. Appx. 250 (4th Cir. 2001).
    Additionally, no cases have cited *Rad Source* for its holding regarding the "Damage to Your

28  Product" exclusion.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

- Gencor breached its contractual obligations by "[f]ailing to provide a safe burner management system"

- Gencor breached its contractual obligations by "[f]ailing to provide a safe ventilation system"

- Gencor breached its contractual obligations by "[f]ailing to provide a complete product of merchantable quality"

- Gencor breached its contractual obligations by "[f]ailing to provide products free from defects in workmanship and material"

- Gencor committed negligence by "design[ing], manufactur[ing], and assembl[ing] a Plant that among other things contained a faulty starting and ventilation system that was prone or subject to failure, and/or an ultimate explosion thus creating a dangerous condition"

- Gencor committed negligence by "[f]ail[ing] to adequately examine or recognize any known defects or existing problems with the ignition or ventilation systems of the Plant involved in this action"

(Defendant's Judicial Notice in Support of Motion for Summary Judgment ("RJN"), Exhibit 3, ¶ 11(b), (c), (d), (e), (n), (o), ¶ 46(a), (i)).  Accordingly, the *Rad Source* case does not support FFIC's arguments regarding the "Damage to Your Product" exclusion in this case.

Additionally, FFIC cannot deny that the explosion of the Plant was not caused by any outside source, but rather came solely from within the Plant itself.  RJN, Ex. 7, Transcript of Proceedings, Vol. 7, 967:19-969:7.  Evidence suggests that gas accumulated inside the Plant, was not purged prior to ignition, and exploded.  *Id.*  As such, it cannot be disputed that the damages to the Plant arose out of an explosion that occurred from within the Plant.  As the "Damage to Your Product" exclusion precludes coverage for damages that "arise out of [the product] or any part of it," this exclusion applies to bar coverage to FFIC's claims.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

1    **E.    FFIC Misapplies Florida Law on the "Contractual Liability" Exclusion**

2    FFIC again misstates the *Rad Source* holding with regard to Gerling's "Contractual

3    Liability" exclusion. FFIC claims that *Rad Source* supports its argument that Florida has adopted

4    the Wisconsin case of *American Family Mutual Ins. Co. v. American Girl, Inc.*, 673 N.W.2d 65

5    (Wisc. 2004) in differentiating between liability "incurred" and liability "assumed." This is

6    incorrect.

7    In *Rad Source*, the court held that the "Contractual Liability" exclusion precludes coverage

8    for "damages by reason of the assumption of liability in a contractual agreement." *Rad Source*, 914

9    So.2d at 1008. The court found that the insurer failed to point out any language in the contract

10   between Rad Source and its customer wherein Rad Source assumed liability for property damage to

11   the product during shipment. *Id.* The court found that there was a disputed issue of material fact as

12   to whether Rad Source fulfilled its contractual obligation, and held that the trial court erred in

13   granting summary judgment based on this exclusion. *Id.* The *Rad Source* court interpreted the

14   "Contractual Liability" exclusion by its plain language and found that there was no provision in the

15   contract wherein the insured assumed liability. There was never a discussion of liability "assumed"

16   versus liability "incurred" as FFIC claims.

17   In the present case, the written contract between Gencor and George Reed contains an

18   express warranty provision in which Gencor "assumed liability" for damages to the Plant in the

19   event of defect. (Beer Decl., Ex. A, p. 40, ¶ 6.4). As stated above, while FFIC claims that it has

20   abandoned or waived any product defect claim against Gencor, in the event that this is not the case,

21   the contract's warranty provision would be implicated and the "Contractual Liability" exclusion

22   should apply based on FFIC's allegations of product defect in its complaint in the underlying

23   Florida state court action.

24   Furthermore, the *American Girl* case is based solely on Wisconsin law, and no Florida court

25   has adopted Wisconsin's interpretation of the "Contractual Liability" exclusion. FFIC inaccurately

26   describes the Florida Supreme Court's citation to *American Girl* in *U.S. Fire Ins. Co. v. J.S.U.B.*,

27   979 So.2d 871, 884 n.8 (Fla. 2007). The *J.S.U.B.* court never addressed the applicability of the

28

-12-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   "Contractual Liability" exclusion, and only cited *American Girl* with regard to the issue of whether
2   a breach of contract could be considered an "accident" or "occurrence" for purposes of coverage.
3   *J.S.U.B.*, 979 So.2d at 884.  This Court should interpret the "Contractual Liability" exclusion by its
4   plain language, as did the *Rad Source* court, and find that it applies to the undisputed facts of this
5   case.

6       **F.    FFIC Misstates The Scope of the "Professional Services" Exclusion**

7       FFIC claims that the "Professional Services" exclusion is "very limited/restricted" because
8   in its title, it refers only to engineers, architects and surveyors.  However, this argument ignores the
9   plain language of the exclusion itself, which states that it precludes coverage for property damage
10  "arising out of the rendering of or failure to render *any professional services* by you or any
11  engineer, architect or surveyor . . . ." (emphasis added).  Accordingly, this exclusion applies to "any
12  professional services" rendered by Gencor.

13      FFIC cites *Aerothrust Corp. v. Granada Ins. Co.*, 904 So.2d 470 (2005) in support of its
14  contention that Mr. Dixon's work on the Plant does not qualify as "professional services."  The
15  *Aerothrust* court held that "hoist inspectors" did not qualify as providers of "professional services"
16  because "only those inspection services which require specialized training should be considered
17  professional services."  *Id.* at 472.  The court further noted that hoist inspectors did not require any
18  specialized training or experience, did not need a high school diploma, and were not subject to any
19  standards of service.  *Id.*

20      In this case, Mr. Dixon was sent by Gencor to provide "adequate field engineering service to
21  assist and train [Reed's] installation crew and operator in the proper manner to install and operate
22  the equipment."  Beer Decl., Ex. A at p. 33.  As Gencor's field engineer, Mr. Dixon provided
23  "on-site supervision for erection of all new equipment, [including] initial calibration, start-up
24  operation, shut down and clean up of the system."  *Id.*  Gencor ensured in the written contract with
25  George Reed that it had "developed field-proven installation procedures . . . [whose] basic intent is
26  to install the equipment in a safe manner through procedures that minimize damages to the
27  equipment and/or injury to personnel."  *Id.*

28

-13-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1    Further, Mr. Dixon did have specialized training and experience, as well as many years of

2    on-the-job training on electrical systems and asphalt plants. RJN, Ex. 2, 166:15-169:25. There is

3    testimony that Mr. Dixon had performed field engineering services on approximately one hundred

4    asphalt plants. *Id.*, Ex. 2, 188:18-189:4. Furthermore, field engineering services provided by

5    Mr. Dixon and Gencor were so specialized that George Reed, which assembled the Plant, had to

6    request that Gencor send its field service technician to maximize its production output, even after

7    the explosion occurred. *See* RJN. Ex. 1, 125:10-17 (Wendell Reed, the President of CEO of George

8    Reed testified that Reed continued to use Gencor employees after the explosion of the Plant because

9    of Gencor's specialized knowledge with regard to Plant operations); 132:11-20 (Mr. Reed testified

10   that ". . . our people would not be conversant with doing any repairs on that at all or any

11   maintenance on it. We would always use outside experts, and they were the experts.").

12   Finally, FFIC argues that Mr. Dixon is not a "professional" under Florida law because he did

13   not have a four-year college degree. However, FFIC fails to cite any cases which hold that the

14   "Professional Services" exclusion can only be applied to employees who have a four-year college

15   degree. The cases on which FFIC relies do not address the definition of "professional services" in

16   an insurance context and are inapplicable here. *Pensacola Executive House Condo. Ass'n v.*

17   *Baskerville-Donovan Engineers, Inc.*, 566 So.2d 850 (1990) (finding that engineer was a

18   professional for purposes of professional malpractice statute); *Moransais v. Heathman*, 744 So.2d

19   973 (Fla. 1999) (discussing application of statute of limitations for professional malpractice).

20   The facts prove that that Mr. Dixon provided "professional services" that required

21   specialized training and experience. The "Professional Services" exclusion applies to preclude

22   coverage for FFIC's claims.

23

24

25

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT GERLING AMERICA INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-CV-06302-CRB

3.    **CONCLUSION**

For these reasons, the Court should deny FFIC's motion for summary judgment.

Dated:  July 18, 2008                          BARGER & WOLEN LLP


By:    /s/ Thomas R. Beer
       THOMAS R. BEER
       TINO X. DO
       Attorneys for Defendant GERLING
       AMERICA INSURANCE COMPANY

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 84108
(415) 434-2800