# IN THE DISTRICT COURT OF APPEAL OF FLORIDA, FIFTH DISTRICT

## CASE No.: 5D07-2157

---

### GENCOR INDUSTRIES, Inc. ,

**Appellant**

vs.

### FIREMAN'S FUND INSURANCE COMPANY, *etc.*,

**Appellee**

## ON APPEAL FROM THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT OF FLORIDA

---

## INITIAL BRIEF OF APPELLANT

---

Peter Hoenig, Esq.
Daniel F. Hayes, Esq.
BIEDERMANN, REIF,
HOENIG, & RUFF, PC
570 Lexington Avenue
16th Floor
New York, New York 10022
Phone: (212) 697-6555
Fax:  (212) 986-3509
Attorneys for Appellant,
Gencor Industries, Inc.
*Pro hac vice*

# TABLE OF CONTENTS

TABLE OF CITATIONS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I       FFIC'S THEORIES OF LIABILITY ARE BASED ONLY ON DIXON'S
        NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II      THE ECONOMIC LOSS RULE BARS THE CLAIM OF NEGLIGENCE
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        A. Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        B. The Economic Loss Rule Bars Recovery . . . . . . . . . . . . . . . . . . 12
        C. There Is No Independent Tort Here . . . . . . . . . . . . . . . . . . . 17
        D. That a Sudden Explosion Caused the Damage Is Irrelevant . . . . . . . 18

III     THE CLAIM OF BREACH OF CONTRACT IS BARRED BY THE
        CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        A. The Contract Allocated Risk of Loss to Reed . . . . . . . . . . . . . . 21
        B. The Contract Disclaims Liability for the Damages Awarded in This
           Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV      LACK OF A REMEDY IS THE RESULT OF THE PARTIES' BARGAIN
        EXPRESSED IN THE COMMERCIAL CONTRACT . . . . . . . . . . . . . . . 24

i

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE WITH FONT REQUIREMENTS . . . . . . . 28

# TABLE OF CITATIONS

Cases

*A.R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla. 1973) .......................................................... 25

*AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180 (Fla. 1987) ............................................... 15, 16

*Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,* 660 So.2d 628 (Fla. 1995) ............................ 5, 13, 18, 19, 25, 26

*BMC Industries, Inc. v. Barth Industries, Inc.,* 160 F.3d 1322 (11th Cir. 1998) .................................. 23, 24

*Casa Clara Condominium Assoc. v. Charley Toppino and Sons,* 620 So. 2d 1244 (Fla. 1993) .................. 13, 25, 26

*Diamond Surface, Inc. v. State Cement Plant Comm'n,* 583 N.W.2d 155 (S.D.1998) ....................................... 12

*East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) . 13, 19

*Florida Power & Light v. Westinghouse Electric,* 510 So. 2d 899 (Fla. 1987) ......................................... 16

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1236 (Fla. 1996) ......................................... 12, 18

*Indemnity Ins. Co. of North America v. American Aviation, Inc.,* 891 So.2d 532 (Fla. 2004) ................... 12-14, 16

*Latite Roofing Co., Inc. v. Urbanek,* 528 So.2d 1381(Fla. 4th DCA 1988) ............................................ 25

*Moransais v. Heathman* 744 So.2d 973 (Fla. 1999)
.................................................................... 15

*National Marine Underwriters, Inc. v. Donzi Marine Corp.*,
655 So.2d 176 (Fla. 3d DCA 1995)  ........................ 17

*Perfumeria Ultra, S.A. de C.V. v. Miami Customs Service,
Inc.* 231 F.Supp.2d 1218 (S.D.Fla. 2002)  ................ 17

*R.A.M. Sourcing Agency v. Seaboard Marine*, 995 F. Supp.
14657 (S.D.Fla. 1997)  ..................................... 12

*Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913
So.2d 714 (Fla. 3d DCA 2005) ........................... 19, 20

*United States Fidelity & Guar. Co. v. North Am. Steel
Corp.* 335 So.2d 18 (Fla. 2d DCA 1976) ................... 23

Statutes

§ 672.207, Fla. Stat.................................................................24

## STATEMENT OF CASE AND FACTS

This is an appeal from all parts of a judgment for plaintiff, based on a jury verdict on claims of negligence and breach of contract, and from awards of pre-judgment and post-judgment interest. The action was brought in Circuit Court by a property insurance carrier, Appellee Fireman's Fund Insurance Company (hereinafter, "FFIC"), as subrogee, against Gencor Industries, Inc. (hereinafter, "Gencor"). This appeal contends that the case should have been dismissed by application of Florida's economic loss rule and of the provisions of the written contract between Gencor and FFIC's commercial subrogor, George Reed Company (hereinafter, "Reed"). There are no material facts in dispute or evidentiary issues involved in this appeal.

Gencor manufactured and sold to Reed a new asphalt-manufacturing plant, under a written contract of sale (R. Vol. I, pages 20-64). The Plant was shipped to and installed at Clements, California. *Id.*

It is undisputed that the contract provided that Reed would install the Plant and that Gencor would provide specified "Installation and Start-Up Service" (*Id.*, Contract, Pages 33-34). [1].

---

[1]     By Mr. Derrevere, counsel for Appellee FFIC:

"In this case the agreement was that Gencor would simply deliver the pieces to the site in Clements, California and that George Reed personnel would build all the frames, all the foundations, and everything necessary on their existing site and erect all of the pieces into the batch Plant. And at

At trial, FFIC's theory of liability was that Gencor's employee, Calvin Dixon, while providing the start-up services at the Plant under the Contract, negligently allowed the electrical circuit which controlled the main supply of propane gas to become energized, so that when he pressed the pilot light button, the spark ignited a pool of gas and caused an explosion damaging the Plant.   FFIC,  Reed's property insurer, paid  Reed for the damage and became subrogated to its rights against Gencor.

The explosion occurred while Gencor was under an unrelated involuntary bankruptcy filing. Gencor was discharged by the Bankruptcy Court which enjoined the prosecution of any action based on pre-discharge liability.  Nevertheless, FFIC brought this action on September 22, 2004, in the Circuit Court, Orlando County. The complaint asserted claims in contract, warranty, strict liability, and negligence. (R. Vol. 1, pages 1-60).

---

> the end when the batch Plant was completed -- because this is all computerized, all kind of logic involved, electronic logic involved in how these batch Plants run. This is not sort of you just dump something in and you hope something comes out. They literally have 50 different mix -- types of mixes they can do through the computer. The Gencor folk were supposed to come out and work the logic, work the electronics, and make sure that all the bugs, shall we say, were out of the equipment."

R. Vol. 10, Trial Transcript at pages 35:11 - 36:2.

On November 8, 2004, the Clerk granted FFIC's motion for a default judgment (R. Vol. 1, page 70).

On September 8, 2005, FFIC's attorneys filed a motion to re-open the Chapter 11 case and modify the discharge injunction. On November 7, 2005, the parties entered into a Stipulation wherein it was agreed that FFIC could pursue Gencor for insurance proceeds (but not *in personam);* and that Gencor would be relieved of the default judgment. The Stipulation was signed also by Gerling America Insurance Company, Gencor's liability insurer, which had reserved its rights to disclaim coverage (R. Vol. 4, pages 590-599).

On  February 24, 2005, Gencor filed a Motion to Set Aside the Default Judgment, and attached its Answer to the Complaint denying liability and asserting affirmative defenses (R. Vol. 1, pages 109-112). On March 1, 2006, the Court approved and filed an Agreed Order setting aside the default judgment and accepting the Answer (R. Vol. 1, pages 188-189). On March 6, 2006, Gencor filed a motion to Amend its Answer *inter alia* to assert the affirmative defense of the economic loss rule (R. Vol. 1, pages 190-193).

Trial commenced on January 23, 2007 and concluded on January 26, 2007. FFIC  asserted claims in contract and in negligence (R. Vol. 17, Trial Transcript, pages 1103:11 - 1104:10). FFIC by counsel indicated that all of its theories of liability

4

were based on the negligence of the Gencor employee, Calvin Dixon and that it was not asserting any other basis for liability; and expressly disclaimed any claims for defects in the Plant (R. Vol. 17, Trial Transcript, pages 1023:2 - 1024:4).

At the close of plaintiff's case, Gencor moved for dismissal of the contract claim by the express terms of the contract (R. Vol. 17, Trial Transcript, page 1018, l. 12- page 1024, l.21); and dismissal of the negligence claim by the application of the economic loss rule (R. Vol. 17, Trial Transcript, page 1024, l. 23- page 1028, l.16). FFIC took the position that a claim for property damage is not barred by the economic loss rule [2]. The Court denied Gencor's motion without explanation (R.

---

[2]

> MR. DERREVERE: There's basically two components to the Economic Loss Rule. There's the Product Liability Economic Loss Rule. And if this was a product defect case, we would be in a Prevost vs. Airport Rent-A-Car and a defect caused it to damage -- itself, I agree with it. But this isn't a product case. This is a services case. So now we're over into . The exception to the Economic Loss Rule -- and that says if you've got a contract that only causes economic loss -- let's say hypothetically Mr. Dixon came out and the agreement was we'll get you up and running on the and they didn't get him up and running until the 20th. There would be two days of economic loss. **The exception is property damage**. Judge, we've spent five days looking at a million dollars in property damage, which is the exception to the Economic Loss Rule where services are involved. The Economic Loss Rule just doesn't apply here. The negligence case should go forward as will the breach of contract.

Vol.17, Trial Transcript, page 1028, ll.14-17).

FFIC obtained a jury verdict against Gencor. For physical damage to property, the jury awarded $959,787; for lost profits, $64,322; for additional expenses, $169,716; for a total of $1,193,825. All of the proof of damage to "Property" concerned damage to the Plant itself. [3] The award for "additional

------

R. Vol.17, Trial Transcript, page 1026, ll.15 - 1027, l.10 (emphasis added).

[3]    See, *e.g.*, direct testimony of Stephen Shawn McGuire, CPA, expert witness for plaintiff at R. Vol. 13, Trial Transcript, page 538:
        Q.  Okay. That's what we really want to get to.
9  The numbers are broken down into **hot plant repairs**,
10  959,782?
11      A.  Yes, sir.
12      Q.  Okay. The cost increase is due to **plant start**
13  **delays**, 182,470.73?
14      A.  Yes, sir.
15      Q.  And **profit loss**, 259,196.43?
16      A.  That's correct.

        See also, direct testimony of Wendell Reed, For FFIC at R. Vol. 10, Trial Transcript, page 93:
        But the baghouse was totally
13  destroyed, the dryer was pretty well damaged, just the
14  burner was pretty well damaged. There were significant
15  components that were going to need to be replaced.
16      Q.  Did it appear that cosmetic surgery could get
17  the plant up and running, or was this going to be a
18  whole new --
19      A.  The components had to be replaced. They
20  were -- they'd been blown up.
21      Q.  Okay.
22      A.  Pieces were all over the place.

expenses" covered an estimate of Reed's increased hauling costs from its existing Plants to customers it had planned on serving from the new Plant. [4] The jury apportioned fault at 60% against Gencor and 40% against Reed and FFIC.

On June 12, 2007, the Court entered a "Final Amended Judgment", awarding pre-judgment and post-judgment interest and different amounts for the verdicts based on contract and negligence. The Amended Final Judgment by its own terms cannot be executed against Gencor *in personam* (R. Vol. 7, pages 1158-1160). The Amended Final Judgment states that:

> On FFIC's Breach of Contract Count, Plaintiff shall recover the total sum of $1,193,825.00, comprising $959,787.00 for physical damage to property, $64,322.00 for lost profits, and $169,716.00 for additional expenses. FFIC shall also recover pre judgment interest on the foregoing....in the sum of $558,088.15. Post Judgment interest shall accrue at the rate of 11 percent per annum ...

> On FFIC's Negligence Count, Plaintiff shall recover the total sum of $716,194.00, comprising $575,872.00 for physical damage to property, $38,593.00 for lost profits, and $101,829.00 for additional expenses. FFIC shall also recover pre judgment interest on the foregoing....in the sum of $415,517.80. Post Judgment interest shall accrue at the rate of 11 percent per annum ...

> In accordance with the Stipulation of record executed by

---

[4]     Direct testimony of Wendell Reed, for FFIC at R. Vol. 10, Trial Transcript, page 95.

> and between the parties and GENCOR's insurer, Gerling
> America Insurance Company ("GERLING"), and pursuant
> to the terms and requirements of the GENCOR bankruptcy
> proceeding .....this is not an in personam Judgment against
> GENCOR and shall not be subject to execution against
> GENCOR....

R. Vol. 7, pages 1158-1160.

The Stipulation of November 7, 2005, referred to in the judgment, did not recite that a judgment could be executed against Gencor's liability insurer, Gerling America Insurance Company (R. Vol. 4, pages 590-599). On February 1, 2007, FFIC moved to amend the judgment to add Gerling America Insurance Company, which motion was denied (R. Vol. 3, pages 521-584).

## SUMMARY OF ARGUMENT

Since there was a contract between the parties, and since FFIC did not claim or prove any basis for an "independent tort", *i.e.*, a tort arising from extra - contractual duties, the economic loss rule barred the claim in negligence and the Court committed reversible error in denying the motion for a directed verdict dismissing the negligence claim.

In addition, since the written contract of sale contained the parties' agreement on limitations of rights and remedies and barred Reed and FFIC's recovery for breach of contract (R. Vol. I, pages 20-64), the Court committed reversible error in denying Gencor's motion for a directed verdict dismissing the claim of breach of contract.

8

## STANDARD OF REVIEW

The standard of review is *de novo*.

## ARGUMENT

## I

## FFIC'S THEORIES OF LIABILITY ARE BASED ONLY ON DIXON'S NEGLIGENCE

Plaintiff's attorney described the only basis for FFIC's case against Gencor in his opening statement to the jury:

> And the issues in the case are, in sum and substance, did Gencor through its employee, Calvin Dixon -- Calvin Dixon is a service technician, you will hear and the facts will show, employed by Gencor who was out at the Plant. Did Mr. Dixon do his job appropriately or inappropriately, and if he did it inappropriately, did his actions cause the Plant to blow up, and if so, what are the damages that flowed therefrom?

R. Vol. 10, Trial Transcript, pages 28:19 - 29:2

FFIC waived any factual basis for recovery other than Dixon's actions, as is clear in this statement to the Court by FFIC's attorney, Mr. Derrevere, made after counsel for defendant, Mr. Murphy, moved for a directed verdict:

> Mr. DERREVERE:  Sure.  It's possible because Mr. Murphy was not at the pretrial that he forgot or just missed that Fireman's Fund withdrew all the claims for breach of implied warranty, breach of merchantability and strict

9

liability. **There is no claim for product defect in this case. This is not a warranty case. This is a services case.** As the Court may recall, and we spent a little bit of time and effort on it, and I think all of the testimony shows **there is no claim that there's a product defect of any kind or nature whatsoever. The contract includes -- and we had Mr. Souza talk about it, Mr. Reed talk about it -- a services component as well as a product component.** And everything that Mr. Murphy just read to you relates to the product, the parts. It has nothing to do with the service aspect of this case. In fact, Mr. Murphy indicated to you in paragraph 6.6, with respect to any nonconformance or defect in any product or part, including but not limited to -- and then there's all kinds of warranty limitations on the products and the parts. **Mr. Dixon was there providing service to the Plant. There has been not a scintilla of evidence relating to a product or part deficiency. There's no product liability claim. And our testimony and our facts in this case show that Mr. Dixon, in providing the service, blew up the Plant.**

R. Vol. 17, Trial Transcript, pages 1023:2 - 1024:4 (emphasis added).

And to the jury in his closing argument, FFIC's attorney again made clear that

FFIC's entire case was based on Dixon's allegedly negligent actions:

And the two primary questions -- three primary questions are, first off: Did Gencor breach the contract? You're going to get a copy of the contract, and you've heard the testimony from all the witnesses about what Mr. Dixon was intending to do. And I hate to go to a worse trial metaphor, but Mr. Dixon was out there to start up the Plant, and unfortunately what George Reed got was he blew up the Plant. But they had a breach of contract, simple, plain and simple.

The second question is: Was there negligence. So was

10

there negligence on the part of Gencor?   Was there
negligence on Mr. Dixon that caused this explosion to
happen?  Those are the two questions you're going to be
asked first.

R. Vol. 17, Trial Transcript, pages 1103:11 - 1104:10.

In this appeal, Gencor argues that, assuming *arguendo* that  Mr. Dixon's

actions were "negligent" and caused the explosion and damaged the Plant, both

branches of FFIC's case against Gencor are barred and should have been dismissed;

namely, the negligence claim is barred  by the economic loss rule and the breach of

contract claim by the agreements contained in the written sales contract.

## II

## THE ECONOMIC LOSS RULE BARS THE CLAIM OF NEGLIGENCE

### A. Overview

Gencor moved to dismiss the negligence claim on the basis of the economic

loss rule, but the Court denied the motion without explanation (R. Vol. 17, Trial

Transcript, page 1028, ll.14-17).  In the colloquy before the Court ruled, plaintiff's

attorney denied that the rule applied, arguing that the damage complained of was

"property damage".  (R. Vol. 17, Trial Transcript, page 1024, l.23 to page 1026, l.12

and page 1027, l.16 to page 1028, l.10).

The court's denial of the motion to dismiss the negligence claim was reversible

error.  The Supreme Court of Florida has clearly established that the economic loss

11

rule bars the claim based in negligence; and that the exception for "property damage" is only for "other property" and does not exist when the property damaged is the product which is the subject of the contract.

## B. The Economic Loss Rule Bars Recovery

FFIC's negligence cause of action arises from "non professional" services provided pursuant to the written sales contract, which FFIC claims caused injury to the goods sold under the contract, namely, the Asphalt Plant. The economic loss rule applies to contracts whose "predominant purpose" is the "sale of goods". *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 546 (Fla. 2004), citing *Diamond Surface, Inc. v. State Cement Plant Comm'n,* 583 N.W.2d 155, 161 (S.D. 1998).

Under the Florida economic loss rule, FFIC's negligence action is barred. Florida courts apply the economic loss rule to prevent a recovery in tort when damages flow from a breach of contract except in those cases where the tort is independent of the breach of contract. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1236, 1240 (Fla. 1996).

FFIC paid Reed, and received a judgment, for "Economic losses" which are "defined as damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits." *R.A.M. Sourcing Agency v.*

12

*Seaboard Marine*, 995 F. Supp. 1465, 1467 (S.D. Fla. 1997) (citing *Casa Clara Condominium Assoc. v. Charley Toppino and Sons*, 620 So. 2d 1244, 1246 (Fla. 1993)(economic loss rule barred action in tort for defective concrete where there was no personal injury or damage to property other than to product itself). *Accord, Airport Rent-A-Car, Inc. v. Prevost Car, Inc.*, 660 So.2d 628, 630-31 (Fla.1995)(economic loss rule barred action for negligent manufacture of defective buses which suddenly caught fire where only damage alleged was to buses themselves).

As the District Court articulated in *Serina v. Albertson's*, 714 F. Supp. 1113, 1117 (M.D. Fla. 1990),

> [Where] the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action.

The rationale for the rule is that where there is a contract,

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. *The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product.*

*Indemnity Ins. Co., supra*, 891 So.2d at 540, quoting *East River Steamship Corp. v.*

13

*Transamerica Delaval, Inc.,* 476 U.S. 858, 872-73, 106 S.Ct. 2295, 90 L.Ed.2d 865

(1986) (emphasis supplied by Florida Supreme Court).

In *Indemnity Ins. Co., supra,* the Florida Supreme Court explained that absent

such a rule, the parties' bargain on the allocation of potential losses, expressed in the

contract, could be circumvented:

> The prohibition against tort actions to recover solely economic damages for those in contractual privity *is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract* by bringing an action for economic loss in tort.... *Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process.* A party to a contract who attempts to *circumvent the contractual agreement* by making a claim for economic loss in tort is, in effect, *seeking to obtain a better bargain than originally made.* Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties *have, or could have, addressed through their contractual agreement.* Accordingly, *courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract....*

891 So.2d at 536-537, 541 (emphasis added). [5]

---

[5]

*Indemnity Ins. Co., supra,* arose from damage to an aircraft in a landing mishap allegedly caused by negligent maintenance and inspection of the landing gear by mechanics under contract to a prior owner. The subsequent owner - plaintiff alleged he reasonably relied upon the mechanic's representations in the aircraft logbook that the work conformed to standard. The Supreme Court held that the economic loss rule does not apply in the services context **unless a contract exists** and

14

In *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180 (Fla. 1987), the Court extended the economic loss rule to preclude claims for the negligent performance of contracted - for "nonprofessional services", such as Mr. Dixon's services in this case. [6] AFM contracted with Southern Bell for a referral service for AFM's customers but Southern Bell mistakenly listed the wrong telephone number in its yellow pages and inadvertently disconnected the referral system. Because AFM's damages resulted from a breach of the underlying contract and not an independent tort, the Court held that AFM was limited to contractual remedies only, 515 So.2d at 181, a "sound outcome" according to the Court in 1999, in *Moransais v. Heathman, supra*, 744 So.2d at 981. The Court noted that AFM's contract with Southern Bell "defined the limitation of liability through bargaining, risk acceptance,

---

none of the established exceptions to the rule that the rule now applies where the parties are either in contractual privity [as here]; or where there is no contract, the defendant is a manufacturer or distributor of a product, and there is no "established exception" to the application of the rule, such as the exception for "professional services". 891 So.2d 532.

[6]

The Supreme Court has declined to extend the economic loss rule to bar claims of negligent services performed by "professionals" under a contract. A profession, within the meaning of FSA section 95.11, is "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." *Moransais v. Heathman* 744 So.2d 973, 976 (Fla.,1999)

and compensation." *Id.* [7]

In *Florida Power & Light v. Westinghouse Electric*, 510 So. 2d 899, 902 (Fla. 1987), FPL sued Westinghouse for breach of express warranties and for negligence; all theories were based on leaks in six steam generators manufactured and sold by Westinghouse to FPL.  FPL contended that the  contract created a "legal duty to use reasonable care in performing the contract and, even absent a contractual duty, tort law imposes a duty on Westinghouse to avoid harming Florida Power & Light." 510 So. 2d at 900.  Answering certified questions from the Eleventh Circuit, the Court concluded that the negligence claim was barred, since there was no personal injury

---

[7]

In *Indemnity Ins. Co., supra*, 891 So.2d at 542, the Court:

> [r]ecede[d] from *AFM Corp.* to the extent that it relied on the principles adopted by this Court in *Florida Power.* As we recognized in *Moransais, AFM Corp.* was 'unnecessarily over-expansive in [its] reliance on the economic loss rule as opposed to fundamental contractual principles.'

This adjustment of the economic loss rule does not affect this case, since the Court re-affirmed the application of the economic loss rule where there is contractual privity, as here:

> [W]e reiterate that when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss.

*Id.*

16

or property damage other than to the generators themselves. The contracting parties were in the best position to have anticipated potential problems with the items provided and could have adequately protected their respective interests through measures such as the applicable warranty law, "negotiation and contractual bargaining," *or insurance*. *Id.* (Emphasis added).

In *National Marine Underwriters, Inc. v. Donzi Marine Corp.*, 655 So.2d 176 (Fla. 3d DCA 1995), a property insurer paid its insured only for the value of a new boat destroyed by fire caused by a defective electrical component, since the insurer did not cover the value of an expensive navigational device or other destroyed contents. As subrogee, the insurer sued the manufacturers of the boat and of the component. The Court affirmed the dismissal of the insurer's subrogation claim because the insurer's losses did not include payments for "property other than the product itself."

In conclusion, FFIC's negligence cause of action should have been dismissed by the Court below as barred by the economic loss rule.

### C. There Is No Independent Tort Here

Where the damages do not emanate from an independent tort, the right of recovery is purely contractual and barred by the economic loss rule. *Perfumeria Ultra, S.A. de C.V. v. Miami Customs Service, Inc.* 231 F.Supp.2d 1218, 1223

(S.D.Fla.,2002) (contract for the warehousing, safekeeping, loading and shipping of duty-free cargo).

In *HTP, Ltd., supra*, the Court held that the economic loss rule has not eliminated causes of action based on torts independent of a contractual breach even though there exists a breach of contract action. 685 So.2d at 1239-40.    Such independent torts, like fraudulent inducement, require proof of facts separate and distinct from the breach of the contract. *Id.*

Both the facts of the case and the liability theories that FFIC presented at trial establish that there is no basis for the existence of an "independent tort" such as to be an exception to the economic loss rule in this case.

### D. That a Sudden Explosion Caused the Damage Is Irrelevant

The cause of Reed's damage was a sudden explosion; that fact, however, is irrelevant to the application of the economic loss rule, according to the Florida Supreme Court, as guided by the United States Supreme Court.

In *Airport Rent-A-Car, supra*, the Court, answering a question certified by the Eleventh Circuit, held that a "sudden calamitous event" **does not** provide an exception to or circumvent the application of the economic loss rule.    The plaintiff in *Airport Rent-A-Car* purchased vehicles from a third party which had been manufactured by the defendant. 660 So.2d at 629. Some of the busses caught fire and

18

were destroyed in transport. *Id.*

The Court "found guidance" in *East River S.S. Corp., supra*, which expresses "[t]his country's majority view of the rule...."and "[f]ound the following words dispositive of the sudden calamitous event issue":

> 'We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, *since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain-traditionally the core concern of contract law.*' 476 U.S. at 870, 106 S.Ct. at 2302 (citations omitted).

*Airport Rent-A-Car, supra*, 660 So.2d at 631 -632 (citations omitted and emphasis added). According to the Florida Supreme Court, The "key issue"

> [i]s whether there exists physical injury or other property damage; if not, then remedies in tort generally do not lie. It is of no moment that damage occurred over a period of time or that it occurred suddenly. Accordingly, we answer the second certified question in the negative and find that a sudden calamitous event will not circumvent the economic loss rule.

*Airport Rent-A-Car, supra*, 660 So.2d at 631 - 632.

In *Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913 So.2d 714 (Fla. 3d DCA 2005), the District Court of Appeal applied these principles and held that the

19

economic loss rule barred a helicopter owner from recovering from the engine manufacturer the value of an aircraft destroyed in a crash. Although the pilot and two passengers were injured, the owner suffered a purely economic loss and as a matter of law could not avoid the economic loss rule because it suffered no personal injury or damage to other property. 913 So.2d at 716. The "airframe" was not "other property", for which a claim would be allowed, since "[C]ourts have refused to bifurcate products into parts where a component part harms or destroys the finished product." 913 So.2d at 717.

## III

## THE CLAIM OF BREACH OF CONTRACT IS BARRED BY THE CONTRACT

FFIC limited the breach of contract claim to the actions of Dixon.  FFIC alleged that Dixon was performing his duties pursuant to the provisions of the written sales contract.  The claim of breach of contract was described as a breach of the contractual obligation of Gencor's employee to perform his services non-negligently. FFIC expressly stated in the Court below that it had no other claims to make against Gencor including any claim based on a defect in the Plant (R. Vol. 17, Trial Transcript, page 1023, l.2 to page 1024, l.4).

Since the risk of loss had passed to Reed under the written sales contract, the Court below committed reversible error in denying Gencor's motion to dismiss the breach of contract action.

### A. The Contract Allocated Risk of Loss to Reed

The Contract provides that all risk of loss passed to Reed:

> The Purchaser is responsible for and assumes all risks of loss or damage by fire, theft, lifting, hoisting, or other casualty for the full amount of the contract and agreement with Gencor.

R.  Vol. I, 20-64, Contract, Page 36.

The parties assigned the risk of loss of the Asphalt Plant to Reed after its "Acceptance":

> Title to, risk of, and liability for loss or damage to any Products or Parts shall pass to Purchaser on delivery at such F.O.B. point. ...

*Id.*, Contract, Page 39.

Consistently, in an "IMPORTANT NOTE", Gencor disclaimed any role or responsibility for the management, supervision, or safety of any personnel at the site other than its own employees. *Id.*, Contract, Page 33.

The contract specified that no warranty would survive the acceptance of the Asphalt Plant by Reed. *Id.*, Contract, Page 39. Pursuant to the terms of the Contract, delivery occurred at the time the equipment was disconnected from the tractor which transported it to the site, and "Acceptance" occurred before the loss. *Id.* Reed had waived the right to revoke acceptance once given. *Id.*, Contract, Page 33, paragraph 3.

## B. The Contract Disclaims Liability for the Damages Awarded in This Action

The contract provided a limited warranty against defects which were brought to Gencor's attention within six months of acceptance by Reed. *Id.*, Contract, Pages 39-40, paragraphs 6.1-6.2. It expressly limited Reed's remedies to replacement of defects. *Id.*, Contract, Page 40, paragraph 6.4. It expressly disclaimed and released Gencor from any other warranty or liability, including those in the breach of contract

claim. *Id.*, Contract, Page 40, paragraphs 6.6-6.7.

The written sales contract specifically excludes all losses, including lost profits and consequential damages, following acceptance by the Purchaser. The contract's limitations on rights and remedies of the parties apply equally to the service elements of the contract as they do to the "goods" elements of the contract, under the clear language of the contract itself.

Moreover, since the sales contract is predominantly for the sale of goods, all its aspects are covered by the Uniform Commercial Code. *United States Fidelity & Guar. Co. v. North Am. Steel Corp.* 335 So.2d 18, 21 (Fla. 2d DCA 1976). "[c]ontracts for the sale and installation of equipment are frequently (but not always) held to be transactions in goods". *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d 1322, 37 (11th Cir. 1998)(most courts follow the 'predominant factor' test to determine whether contracts containing service elements are transactions in goods, and therefore covered by the UCC, rather than apply the UCC only to the sale of goods elements of the contracts).

In *BMC Industries, supra*, the contract, which mirrors to a large extent the Gencor written sales agreement, provided that the Seller would "design, fabricate, debug/test and supervise field installation and start up of equipment to automate the operations of mold assembly declipping, clip transport, mold assembly clipping, and

23

mold filling." The contract referred to the transaction as a "purchase," and identified the parties as the "Buyer" and "Seller"; the contract price did not include the cost of services or allocate costs between services and goods; and the goods, were "movable"; all of these elements indicated that the transaction was predominantly for the sale of goods rather than services and the Florida UCC Article 2 was therefore applicable. *BMC Industries, supra.*

The terms of the contract are consistent with the Florida Uniform Commercial Code; namely, acceptance of goods occurs when the buyer, after having had a reasonable opportunity to inspect the goods, fails to make an effective rejection (§ 672.207, Fla. Stat.) Under the Contract and in accordance with the Florida Uniform Commercial Code, then, FFIC's claims in breach of contract must fail. The judgment based on the verdict for the claims for breach of Contract for "physical damage to property, lost profits, and additional expenses", must be reversed and the complaint dismissed.

## IV

## LACK OF A REMEDY IS THE RESULT OF THE PARTIES' BARGAIN EXPRESSED IN THE COMMERCIAL CONTRACT

Lack of a remedy does not alter legal analysis of FFIC's claims, since it is the result of the parties' bargain as expressed in their commercial contract. There is "[n]o reason to burden society as a whole with the losses of one [like FFIC's subrogor] who

24

has failed to bargain for adequate contractual remedies". *Airport Rent-A-Car, supra,* 660 So.2d at 630.

In *Airport Rent-A-Car, supra,* the plaintiff claimed there was

> a 'no alternative theory of recovery' exception to the economic loss rule, permitting tort recovery for purely economic losses when the plaintiff has no alternative remedy of recovery and that the absence of contractual privity between Prevost and itself places it within the exception.

*Airport Rent-A-Car, supra,* 660 So.2d at 631.

An earlier District Court of Appeal case, *Latite Roofing Co., Inc. v. Urbanek,* 528 So.2d 1381, 1383 (Fla.App. 4 Dist.,1988), had made an exception to the economic loss rule for "accident cases":

> [t]he seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes, as well as damage to any other property in the vicinity.

But the Supreme Court expressly disapproved this holding of *Latite Roofing* in *Casa Clara, supra,* 620 So.2d at 1248, and again in *Airport Rent-A-Car, supra,* 660 So.2d at 631. In *Airport Rent-A-Car,* the Supreme held that that "[t]he economic loss rule cannot be circumvented by the no alternative theory of recovery exception, absent the 'required supervisory responsibilities' as enunciated in *A.R. Moyer, Inc. v. Graham,*

25

285 So.2d 397 (Fla.1973)", a case which *Casa Clara* and *Airport Rent-A-Car* expressly limit to its facts. 660 So.2d at 631.

## CONCLUSION

Respectfully, the Court should reverse the decision of the Circuit Court, vacate the judgment *in toto*, and dismiss the complaint with prejudice.

Dated:     December 5, 2007     Respectfully submitted,

Daniel F. Hayes, Esq.
BIEDERMANN, REIF, HOENIG, & RUFF, PC
570 Lexington Avenue
16th Floor
New York, New York 10022
Phone: (212) 697-6555
Fax:  (212) 986-3509
Attorneys for Appellant Gencor Industries, *Pro hac vice*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via U.S. mail this ___th day of December, 2007, upon Shirley Jean McEachern, Esq., Attorney at Law, Derrevere, Hawkes & Black, 470 Columbia Drive, Bldg B, West Palm Beach, Florida 33409.

Daniel F. Hayes, Esq.
BIEDERMANN, REIF, HOENIG, & RUFF, PC
570 Lexington Avenue
16th Floor
New York, New York 10022
Phone: (212) 697-6555
Fax:  (212) 986-3509
Attorneys for Appellant Gencor Industries, Inc.
*Pro hac vice*

27

## CERTIFICATE OF COMPLIANCE WITH FONT REQUIREMENTS

We hereby certify that this Initial Brief of the Appellant complies with the requirements of Florida Rule of Appellate Procedure 9.210(a)(2).

Dated:      December 5, 2007

Daniel F. Hayes, Esq.
BIEDERMANN, REIF, HOENIG, & RUFF, PC
570 Lexington Avenue
16th Floor
New York, New York 10022
Phone: (212) 697-6555
Fax:   (212) 986-3509
Attorneys for Appellant Gencor Industries, Inc.
*Pro hac vice*

28